# EXHIBIT B

**Pages 1 - 27**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable William H. Alsup, Judge

GOOGLE LLC,                    )
                              )
            Plaintiff,         )
                              )
  VS.                          )  **NO. C 20-06754 WHA**
                              )
SONOS, INC.,                   )
                              )
            Defendant.         )
_____)

San Francisco, California
Thursday, November 19, 2020

<u>**TRANSCRIPT OF TELEPHONIC PROCEEDINGS**</u>

<u>**TELEPHONIC APPEARANCES**</u>:

For Plaintiff:
                        QUINN, EMANUEL, URQUHART & SULLIVAN LLP
                        50 California Street, 22nd Floor
                        San Francisco, California 94111
                   BY:  **CHARLES K. VERHOEVEN, ATTORNEY AT LAW**
                        **MELISSA J. BAILY, ATTORNEY AT LAW**
                        **LINDSAY M. COOPER, ATTORNEY AT LAW**

For Defendant:
                        ORRICK, HERRINGTON & SUTCLIFFE LLP
                        The Orrick Building
                        405 Howard Street
                        San Francisco, California 94105
                   BY:  **CLEMENT S. ROBERTS, ATTORNEY AT LAW**


          (APPEARANCES CONTINUED ON FOLLOWING PAGE)



Reported Remotely By:  Ana M. Dub, RMR, RDR, CRR, CCRR, CRG
                       CSR No. 7445, Official U.S. Reporter

```
 1   APPEARANCES:   (CONTINUED)

 2   For Defendant:
                         ORRICK, HERRINGTON & SUTCLIFFE LLP
 3                       777 South Figueroa Street, Suite 3200
                         Los Angeles, California 90017-5855
 4                  BY:  ALYSSA CARIDIS, ATTORNEY AT LAW

 5

 6   Also Present:        Joseph Shear, Google

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

| | |
|---|---|
| 1 | <u>Thursday - November 19, 2020</u>            <u>8:03 a.m.</u> |

2

3                     <u>P R O C E E D I N G S</u>

4        **THE CLERK:**  This court is now in session.

5 The Honorable William Alsup presiding.

6        Calling Civil Matter 20-6754, Google LLC versus Sonos

7 Incorporated.

8        Starting with plaintiff, will counsel please state your

9 appearances.

10                      (No response.)

11        **THE CLERK:**  Counsel?

12        **MR. ROBERTS:**  I think Google is the nominal plaintiff.

13 This is Mr. Roberts for Sonos, the defendant.

14        **MR. VERHOEVEN:**  Yes.  Sorry.  This is Charles

15 Verhoeven.  I was on mute and then forgot I was on mute.  I

16 apologize.

17        Charles Verhoeven.  With me is Melissa Baily and Lindsay

18 Graham from Quinn Emanuel on behalf of Google.  And Joseph

19 Shear, in-house counsel for Google, is here.

20        Your Honor, we're ready to proceed.

21        **MR. ROBERTS:**  And good morning, Your Honor.  This is

22 Clem Roberts from Orrick Herrington for the defendant, Sonos,

23 and with me this morning is also Alyssa Caridis.

24        **THE COURT:**  All right.  Good morning to all of you.

25        This is a motion by Sonos to dismiss.  So I'm up to speed,

1    but I'll give you a chance to summarize your position on the

2    moving party's side, and then we'll hear from Google.

3        Go ahead, please.

4        **MR. ROBERTS:**  Thank you, Your Honor.  This is

5    Mr. Roberts.

6        Your Honor, the purpose of the Declaratory Judgment Act is

7    not furthered by this lawsuit.

8        In *CTDI*, *Communications Test Design*, the Federal Circuit

9    case from 2020 about anticipatory suit just this year, the

10   Federal Circuit said, quote (reading):

11           "We have stated that 'the purpose of the

12       Declaratory Judgment Act . . . in patent cases is to

13       provide the allegedly infringing party relief from

14       uncertainty and delay regarding its legal rights.'"

15       There was no uncertainty or risk of delay regarding

16   Google's and Sonos's legal rights when Google filed this

17   action.

18       Sonos sent them a letter with an 87-page complaint,

19   stating in no uncertain terms that it, quote, will file the

20   complaint the following day.  In ten hours, Google, just

21   20 minutes before midnight, raced into court and filed a

22   barebones declaratory judgment complaint that portrays on its

23   face no effort or attempt to develop a factual basis for

24   pleading non-infringement.

25       It's our position, Your Honor, that the lawsuit was

1    anticipatory, that the lawsuit reflects a bad faith failure to

2    develop a factual basis for alleging non-infringement, and that

3    the convenience factors, which also must be considered, do not

4    leave much room for imagination that this case ought to be

5    dismissed or transferred.

6         In addition, Your Honor, in the papers we've argued that

7    the lawsuit, because it's so barebones, violates *Iqbal* and

8    *Twombly*.

9         And their response to that has been to point to a series

10   of cases which rest entirely on Form 18 and argue that they can

11   plead a case for declaratory judgment merely by pointing out

12   the categories of projects -- products and saying:  We don't

13   infringe.

14        In our view, Your Honor, that's also wrong, and leave to

15   amend should not be provided because, although it should be

16   liberally provided, it shouldn't be provided unless justice so

17   requires, and justice does not so require.

18        And we cited the Court to at least one case, although it's

19   outside this district, holding expressly that a party shouldn't

20   be allowed to file a peremptory lawsuit based on an inadequate

21   complaint and then use relation back to fix it in order to

22   dodge the anticipatory suit doctrine.

23        So, Your Honor, that's an overview.  My question is really

24   where the Court has questions, where the Court was concerned

25   from our papers.  If there's nothing specific, I have a couple

1  more points to make; but let me just pause there and ask if

2  there were specific areas of concern that the Court had.

3        THE COURT:  I did have this question, and that is:

4  Was the 87-page complaint that was sent the day before this

5  lawsuit was filed, was that the first time that Google knew

6  which claims were being asserted; or had there been preexisting

7  discussions, negotiations that put Google on notice of which

8  claims were at issue?

9        MR. ROBERTS:  So that is the very first time that they

10  were told about some of the patents.

11        Earlier in the discussions -- and I want to be careful

12  here, Your Honor, because I want to respect negotiation and not

13  be saying too much.  But earlier, for purposes of notice, Sonos

14  had given Google 150 patents with -- approximately 150.  I

15  don't want to represent the exact number.  It was certainly

16  more than a hundred but I -- between 100 and 150, let's say,

17  claim charts with a large variety of claims in it, earlier.

18        So they had -- for some of them, they had notice that we

19  were asserting at least some claims quite a while before; and

20  for some of them, it was brand-new.  So the answer is it's a

21  mix.

22        THE COURT:  All right.  Go ahead and make one more

23  point, and then I'll turn it over to Google.

24        MR. ROBERTS:  Thanks, Your Honor.

25        The other point I think is key is really understanding the

1    standard here.  And the reason I want to make this is point is

2    because I think in some case, Your Honor has an issue of first

3    impression.

4         If you look at *Electronics for Imaging* and you look at

5    *CTDI*, those cases make it very clear that in addition to

6    looking at whether or not the suit is anticipatory, the Court

7    must also consider what the Federal Circuit calls "other

8    factors."  And those other factors include the convenience of

9    witnesses, the availability of jurisdiction, a process of fair

10   and just administration of justice.

11        But the Court, the Federal Circuit has never set forth in

12   detail how the other factors and the anticipatory suit factors

13   must be balanced against one another.  The language in *CTDI* and

14   the language in *Electronics for Imaging* merely says that these

15   are other factors that must be considered, but they don't

16   purport to say, for example, that the other factors must favor

17   transfer or dismissal.  They merely say there are other factors

18   that must be considered.

19        And there are quite a number of cases, including the

20   *Activision v. Blizzard* case cited in our papers, Your Honor,

21   which is a district court case from this district, that say

22   it's a totality of the circumstances test.

23        And so I think, Your Honor, especially when you combine

24   the language of the Federal Circuit with the express

25   recognition that the Court has exceptionally wide discretion,

1    what the Federal Circuit has called a double dose of

2    discretion -- the first layer being the natural discretion to

3    decide whether or not to accept a declaratory judgment case and

4    the second level of discretion being the discretion to decide

5    whether the equitable exceptions apply anticipatory suit and

6    bad faith -- that no specific weighing of the factors is

7    required.

8        And thus, it would be our position, Your Honor, that even

9    were the Court to conclude, as we don't think it should, that

10   the convenience factors slightly favor keeping the case, even

11   if the Court were to make that conclusion, which is, I think,

12   the best Google can do on the convenience factors, I think it's

13   appropriate to dismiss or transfer the case because of what I

14   would submit is the really exceptional conduct on the part of

15   Google from an anticipatory and bad faith perspective.

16       Thank you.

17           **THE COURT:** All right. Let's hear from Google.

18       **MR. VERHOEVEN:** Good morning, Your Honor.

19   Mr. Verhoeven representing Google.

20       First point is on the anticipatory suit. Your Honor, on

21   that point, yes, of course, we got no- -- they told us they

22   were going to sue us in a forum that had absolutely no

23   connection to any of the parties, that is the new favorite

24   venue of the patent plaintiffs' bar, that's seen an explosion

25   in patent cases in the last year and a half. I think they're

1    up to 800 -- 700 to 800 new patent cases.

2         And we said to ourselves, that's forum shopping.  And we

3    want this case to be -- if they're going to sue us, the case

4    should be where it's properly -- where it should properly be,

5    which is in California.

6         And so the purpose of the anticipatory suit exception is

7    to prevent forum shopping.  I find it highly ironic that Sonos,

8    who is engaging in obvious forum shopping by filing a lawsuit

9    in Waco, Texas, that has absolutely no connection to anything

10   in this case, they come into this court and they say we're

11   forum shopping?  I say that's not right.

12        And the purpose of the anticipatory suit exception,

13   Your Honor, is to prevent forum shopping.  And in this case,

14   that purpose would counsel toward denying the motion to dismiss

15   and keeping the case where it belongs.

16        So that's our main argument on the anticipatory suit

17   exception.  We do not think that it should apply in this case.

18   And, of course, you're also supposed to consider, Your Honor,

19   the other factors, which I'll get to in a second.

20        On bad faith, the plaintiff is -- excuse me -- Sonos is

21   asserting that we acted in bad faith in filing a declaratory

22   relief suit.  The cases they cite are cases where one party

23   misled the other about the filing of suit or when they were

24   going to file suit.  That is not the factual situation here.

25        So then we get to Sonos basically saying we acted in bad

1  faith because we couldn't possibly have done enough work to
2  have a Rule 11 basis in the amount of time that has gone by.
3  None of the cases they cite support that notion.
4      In fact, the cases that we have cited to the Court
5  basically say that's a disguised Rule 11 motion; and if you
6  feel like that is not met, file a Rule 11 motion, number one.
7      Number two, the parties have been in the relationship
8  for years, going back and forth with a bunch of contracts, and
9  the contracts all say that the exclusive forum selection clause
10  is California, Your Honor.  We cited a couple of those
11  contracts that have that exclusive forum selection clause,
12  Your Honor, in the papers.
13      I neglected, Your Honor, to include in the papers -- or
14  the source documents, there's another license that's connected
15  to the license that we did cite.  The license we did cite is
16  incorporated by reference.  And that agreement concerns the
17  development of technology that they are accusing us of
18  infringing in this case.  It's clearly related.
19      And as Your Honor knows, mandatory exclusive forum
20  selection clauses are rigidly enforced by the courts.  But even
21  if Your Honor doesn't feel the record is adequate for that
22  conclusion, it certainly shows that the parties -- both parties
23  contemplated disputes in their relationship to be addressed in
24  the California courts, not in Waco, Texas, where no one has any
25  connection.

1    And finally, on the Rule 11, you know, you hear counsel

2    kind of waffling on your question there.  And the actual fact

3    is, they're claiming we had notice of infringement of all

4    but -- I think all but two of those patents.

5    Counsel, correct me if I'm wrong.

6    But, you know, so they're talking out of both sides of

7    their mouth here.  On one side, they're saying we couldn't

8    possibly have come up with our positions, which are, of course,

9    privileged; and on the other hand, they're saying:  Well, you

10   had notice that you were infringing from us already on three of

11   the five patents.

12   So, you know, given the circumstances and context

13   surrounding this, Your Honor, the bad faith argument doesn't

14   fly.  The cases they cite are in apposite to this case.  We did

15   not mislead Sonos into thinking we wouldn't file something and

16   did file it.  The Rule 11 argument has no support.  And that's

17   all they have on bad faith.

18   On the convenience factors, you'll notice counsel for

19   Sonos did not go through them.  That's because they all show

20   that the appropriate venue on the convenience factors is the

21   Northern District of California.  Google's principal place of

22   business is in the Northern District of California.  Google's

23   state of incorporation is Delaware.  Sonos's principal place of

24   business is in Santa Barbara, California; and they have offices

25   up here, too, in Northern California.  In fact, Sonos's main

office is in California.

In terms of offices, they pointed to an Austin office and said it concerns cloud computing, and that's all they've got. They say:  Well, there may be somebody relevant there in that office.  But the people who developed this technology, as Sonos knows full well, the people who developed this technology are out in California.  They're not in the office in Austin.

And just saying generally:  Well, cloud -- you know, there's a reference to cloud computing.  So that means Google's entire network of thousands of servers all over the world, and that gives you the appropriate forum?  I think not.

The accused products are not any cloud computing products that Google sells.  They're speaker patents.  They're speakers. And there's no connection to the Austin office for the development of that technology.

In contrast, if you look at the offices in the Northern District, we've identified several engineers by name that are resident there.  We've identified several third-party witnesses that are resident there.

I heard the argument in their papers that:  Well, we don't need to call them live.

Your Honor, I routinely call prior art witnesses live at trial, and the reason I do that is because it brings the case alive for the jury and it helps the jury understand the prior art when a human being is explaining what it is.  So the notion

1    that we should be deprived of that ability because it doesn't

2    really matter is a non-starter for us.

3        There's zero connection to Waco, Texas, in this case.

4    Plaintiffs can't argue otherwise.  All they can do is

5    speculate.  Clearly, the parties contemplated that disputes

6    would be resolved in California based on their course of

7    dealings.

8        Sonos also filed a complaint against Google in California.

9    It's a parallel complaint to its ITC action.  And it filed it

10   in California because it wanted California back then.  Now it

11   wants to forum shop.

12       And we have every right, once it's announced that it's

13   going to forum shop and file a case in an area that the parties

14   have no connection to, which is the new hot spot for the

15   plaintiffs' bar to file patent cases, is -- is perfectly okay.

16   We're allowed to say:  This case should be where the parties

17   are, where the accused technology was developed, where the

18   witnesses are, and not in some outpost in Waco, Texas.

19       Just one second, Your Honor.

20       I think I've covered everything in my summary, Your Honor,

21   unless you have any further questions.

22           **THE COURT:**  Maybe, but let's go back.  I want to ask

23   the other side.

24       Is it true that you previously filed a patent case against

25   Google here in our district?

1    **MR. VERHOEVEN:**  No, Your Honor, we did not file a
2    patent case against Google in the Northern District of
3    California.  It's not true.  We filed a patent case against
4    them in the Central District of California prior to COVID.

5    So let me be very clear because I think, Your Honor, this
6    goes to his forum shopping point.  Sonos is not forum shopping.
7    We have been very up front with everybody, and I will be with
8    the Court, that Sonos's entire litigation strategy depends upon
9    speed and time to trial.

10    When we first sued them, we sued them in the ITC because
11    it has, I think, the fastest time to resolution statutorily of
12    any venue we could get into.  And at the same time, we did file
13    a case that was and is stayed in the Central District of
14    California at the same time that we filed the ITC action.
15    That's totally standard.

16    Once COVID hit and we were faced with filing a second
17    action -- and, by the way, Your Honor, the reason we had to
18    file a second action is because Google responded to our ITC
19    complaint by filing actions against Sonos in Germany, France,
20    the Netherlands, and Canada.  So they went, in response to our
21    ITC complaint, and filed all around the world.  So this notion
22    that we're forum shopping when they went, in response to our
23    ITC complaint, and filed cases scattershot around the world and
24    we had the temerity to then sue them in Austin, Texas, I don't
25    think that dog hunts.

1    But the reason we filed, Your Honor, in Austin, Texas --

2  the reason we filed in the Western District of Texas is that it

3  is one of only two venues in the country, that I'm aware of,

4  along with the Eastern District of Texas, that is currently

5  holding patent trials.  This district is not.

6    They had a patent trial -- because of COVID and because of

7  the way in which it's affected different communities

8  differently -- this is an incredibly urban environment with

9  very dense population and rising COVID case counts, and we

10  can't safely hold jury trials here.  And the backlog that's

11  been created here in the Northern District of jury trials --

12  I'm sure Your Honor is aware; I don't need to tell you -- is

13  really quite incredible.

14    Meanwhile, they are still holding jury trials in western

15  Texas; and that's why we filed there, because we thought that

16  we would be able to get to trial in western Texas, where they

17  have -- they have more than a thou- -- as I understand it, more

18  than a thousand engineers in their Austin office.

19    So we picked the venue that had -- we didn't file in the

20  Eastern District.  We filed in the Western District where they

21  have a very, very substantial office and an incredibly fast

22  time to trial and can still hold patent cases, even in the

23  middle of the COVID pandemic.

24    And he says that's forum shopping.  But, Your Honor, in

25  the American system, a plaintiff has the right to choose the

1    forum.  That's not forum shopping.  That is a legitimate choice

2    of forum where they have a substantial presence and where the

3    time to trial allows us to get to trial quickly.

4         Yes, they would like to go to trial much more slowly.

5    They would prefer a venue where they don't have to face a quick

6    trial, absolutely.

7         And Mr. Verhoeven, my learned colleague, says that,

8    you know, once we decide we're going to be in Texas or we file,

9    they have the right to challenge it.  They sure do.  But the

10   proper way to challenge it is through a 1404(a) motion brought

11   in western Texas, through a motion to transfer.

12        And, Your Honor, by the way, if you grant our motion, they

13   can still do that.  There's nothing about this court declining

14   declaratory judgment jurisdiction that prohibits them from

15   bringing a motion to transfer in front of that court.  So they

16   absolutely do, if they think this is a more convenient venue,

17   have the right to file a motion to transfer in that district.

18   And if they can show that this district is clearly more

19   convenient, which they cannot, then the case would be

20   transferred.

21        But to accuse us of forum shopping and saying that that

22   district has absolutely no connection is just wrong.  They have

23   a thousand engineers there.

24        And, Your Honor, he says:  Well, you know, the only

25   connection Sonos can point to is the cloud infrastructure, and

1    the cloud infrastructure doesn't have a connection.

2         Your Honor, I think that's a gross oversimplification.

3    Two of the patents-in-suit are what we call our cloud queue

4    patents, and they deal with exactly how music streaming on a

5    cloud gets transferred between a device, let's say a cell

6    phone, and a speaker and how do you take a queue that's queued

7    up in the cloud and transfer that queue of music from one

8    device to another.  And that inherently deals with the

9    structure, function, and operation of the cloud infrastructure.

10        And that cloud infrastructure, as we understand it, is, in

11   fact, developed in Austin.  And we pointed out that they are

12   recruiting for engineers for that infrastructure, for the

13   development of that infrastructure, in Austin and that their

14   own websites say and talk about the fact that Austin is a hub

15   for that technology.

16        Now, I will readily admit that there is also accused

17   technology that was developed in Northern California for sure.

18   But to say that it has no connection to the lawsuit, that's

19   absolutely, absolutely not true.

20        Your Honor, if I had a couple more minutes, I'd love to

21   respond to his other points, but I do want to be respectful of

22   your time.

23        THE COURT:  I could have sworn that there was a Sonos

24   lawsuit.  Is it Judge Chen?

25        MR. ROBERTS:  That's correct, Your Honor.  They

1    filed -- that's a lawsuit Google filed against Sonos.  We're

2    the defendants in that lawsuit.

3        And, in fact, Your Honor, they attempted to relate this

4    lawsuit to that lawsuit and argued that they were related.  And

5    we wrote a contested motion on that.  And Judge Chen denied it,

6    finding that this lawsuit and that lawsuit don't even meet the

7    related standard, much less that it provides an opportunity for

8    consolidation.

9            **THE COURT:**  All right.  Okay.  Just take a deep breath

10   for a second.

11           **MR. ROBERTS:**  Yes, sir.

12           **THE COURT:**  Now, Mr. Verhoeven, I want you just to

13   answer one question.

14       A moment ago you said that Sonos itself had filed in this

15   district, and I would like for you to identify the case that

16   Sonos filed in this district.

17           **MR. VERHOEVEN:**  If I did, Your Honor, I misspoke.  I

18   thought I said in California.

19           **THE COURT:**  So what are you -- you're referring to the

20   Central District then?

21           **MR. VERHOEVEN:**  Yes.  I'm referring to their choice of

22   forum once the ITC case is done.

23       And Your Honor knows that when one files an ITC case, it's

24   relatively routine for that entity, the complainant, to file a

25   companion district court case, Your Honor.  Why?  Because the

1    plaintiff wants to preserve venue in that forum.  And they

2    deliberately chose California, not Waco, Texas.  Granted, it's

3    the Southern District.

4         **THE COURT:**  Okay, okay, okay.  All right.

5         All right.  Now, let me go back to the other side, to

6    Sonos.

7         Is it true there's a forum selection clause that has some

8    relationship here?

9         **MR. ROBERTS:**  No.  The forum selection clauses have

10   absolutely no relationship.  Your Honor, if you look at the

11   contracts that are before the clause, the forum selection

12   clauses in those contracts -- and I have to be careful,

13   Your Honor, because these are all filed under seal -- but they

14   all relate exclusively to the subject matter of those

15   contracts.  Not one of them relates to this case.  Not one of

16   them relates to patents.

17        And indeed, what Mr. Verhoeven said in his argument, as I

18   understood it, was that there's some other contract, which

19   isn't before the Court, which he wishes he had put before

20   the Court, which he contends has some relationship to this

21   case.  But I'm at a bit of a disadvantage because I don't know

22   what that is because, of course, it's not in their papers, and

23   so it's hard for me to respond to that.  But there isn't, in

24   the forum selection clauses, anything that relates or would

25   relate to this case.

1      And, of course, Your Honor, the fact that the parties

2  agree that for a breach of contract action, they'd litigate it

3  in one forum doesn't mean that Sonos is waiving, as a

4  plaintiff, its choice of forum in an unrelated patent case.

5      **THE COURT:**  I have a different question.  You say that

6  that district, Waco, is still trying patent cases.  Now, is

7  that still true in light of the dramatic surge in COVID-19

8  deaths and infections in the state of Texas?  Texas, I think,

9  has a million cases.  It's a huge problem there recently.  How

10  stale is your information on that point?

11      **MR. ROBERTS:**  Not at all stale.

12      So, Your Honor, there is -- there was a patent case that

13  was just tried in front of Judge Albright a couple of weeks

14  ago.  I can't give you a more precise date than that.  And he

15  has not changed in any way his statement that he will continue

16  trying patent cases in Waco.

17      He did move them from Austin to Waco because he found that

18  the Waco courthouse was a safer place to do it than the Austin

19  courthouse.  But, you know, this district has an order in place

20  saying that jury trials are suspended.  He has not issued such

21  an order.  There is an order suspending it in the Austin

22  courthouse, but there is no -- as I understand it from the

23  U.S. CalCurrent, I believe that it's true as of today that

24  there is no order suspending them in Waco; that he has -- I was

25  just in front of him a short time ago, and he said that they

1    were going to continue to go forward, so -- on another matter.

2        So I have every -- I have every confidence that if

3    Your Honor were to call him, he would tell you that they're

4    moving forward.

5        **THE COURT:** What do you say to this point, that by the

6    time you did all the discovery in this patent case and were

7    ready for trial, we would be back in the swing of things in

8    California, in this district, and we would be having civil

9    trials and the vaccine would have taken hold? And so, yes, it

10    is true right now, what you say sounds right; but maybe in nine

11    or ten months, it will be a different story. What do you say

12    to that?

13        **MR. ROBERTS:** So it certainly is possible. It

14    certainly is possible, but I think it's exceptionally unlikely,

15    Your Honor.

16        So Judge Albright has been setting cases for trial on an

17    18-month schedule. That's from the date you file. That's the

18    schedule I expect we would get because that's his practice.

19        And it strikes me as unlikely that 18 months from when we

20    file, especially given the backlog -- I mean, Your Honor

21    probably has more current information than me about the number

22    of cases, you know, set for trial that have backed up on this

23    court's calendar. And this court has a heavy trial docket in

24    the usual course. I know you're good about getting things to

25    trial, Your Honor, but there's a heavy workload.

1    And by the time we get to the point where, you know, maybe

2    there's a vaccine and this court can start setting things for

3    trial again, we're going to have at least a full year, if not a

4    year and a half, of jury trials in backlog.  And the notion

5    that we're going to work through those in any kind of a timely

6    way such that this case could get to trial in 18 months from

7    now or anything close to it strikes me as exceptionally

8    unlikely.

9        **THE COURT:**  The comment I'm about to make falls into

10    the category of:  You might get what you wish for.

11        My practice, when someone seeks declaratory relief as the

12    plaintiff that they don't infringe, is an automatic opening

13    their doors to bone-crushing discovery because they're the

14    plaintiff and they're the ones claiming they don't infringe.

15    It's the exact opposite of whenever the patent holder sues.

16        And you will be losing that advantage if you don't get me

17    as your judge.  I would make Google open their books, open

18    their records, all their source code, get those people up for

19    deposition pronto, because they're the ones seeking relief; and

20    it would be unfair to give them relief without giving you

21    bone-crushing discovery.  So if you win this motion, you're

22    going to lose out on that.  I'll just give you that point for

23    future reference.

24        And by the way, 18 months, in my view, is a long time.  I

25    usually get patent cases to trial in 12 to 14 months.  Now, the

```
 1   pandemic may screw that up, I agree.  But my normal practice is
 2   18 months is too long.
 3            MR. ROBERTS:  Thank you, Your Honor.  And --
 4            MR. VERHOEVEN:  Your Honor?
 5            MR. ROBERTS:  -- my only point there, Your Honor --
 6   this is Mr. Roberts, if I could -- was just that we filed in
 7   western Texas for legitimate reasons.
 8       This wasn't some attempt to engage in forum shopping.
 9   This was a legitimate plaintiff's choice of forum based on a
10   legitimate view about when we could get to trial and where they
11   had significant operations.
12       And if you buy that point, which I really hope you do
13   because it's the truth, then the moral force of their
14   argument -- they were, therefore, justified in filing an
15   anticipatory suit -- I think, goes right out the window.
16            THE COURT:  All right.  Let me ask -- Mr. Verhoeven,
17   I'm going to give you a chance to say something in addition.
18   But what do you say to counsel's point that it is true that we
19   have a general order in place that, on its face, says no civil
20   trials; whereas the Western District in Texas is holding patent
21   trials and I can see that as a legitimate reason to file there?
22       And the other thing is, he says that there are
23   thousands -- you said it was an outpost, and counsel says that
24   there is a website claiming that the cloud thing was developed
25   there in Texas and that you have a thousand engineers there.
```

1    So it doesn't sound like an outpost to me.  So tell me how you

2    respond to that.

3         MR. VERHOEVEN:  Okay, Your Honor.

4         On the second point, what he's talking about is an office

5    in Austin, Texas, that does all kinds of different things.

6    Mostly marketing, as far as I can tell.

7         They're not accusing -- there is a product that Google has

8    called a cloud product.  They're not accusing that product.

9         These are speaker patents, Your Honor.  These are not

10   Internet network patents.  They're speaker patents.  They're

11   limited to, like, group volume changes and trivial things like

12   that, Your Honor.  They're not --

13        What you're basically hearing is counsel saying:  Because

14   those speakers will work over the Internet, that -- or will

15   work over Google's thousands of servers throughout the world

16   and be interoperable with the back end, with the servers, that

17   therefore Google's entire network is accused.  That doesn't --

18   that's not an argument specific to Austin at all.

19        And, again, there's no employees in Waco.  Waco is where

20   this case is venued.  And the judge lives in Austin.  Sometimes

21   he does hearings in Austin.  But the forum is in Waco, and

22   nobody's in Waco, Your Honor.

23        And could I just say, what I just heard, Your Honor, was

24   counsel saying that the biggest factor in their decision was

25   getting to trial fast.  Your Honor has just said that you will

1    do that.  So what's their problem?  We're perfectly fine going

2    to trial quickly.  If Your Honor can do that, they should be

3    happy, because in addition to getting what they wanted, they

4    also -- all this discovery and all of this stuff can be done

5    without people having to risk their lives by traveling, which

6    brings me to the second -- the first point you asked about.

7        California's public policy is pretty clear here.  The

8    courts are closed because of risk of the pandemic.  Different

9    states make different policy choices.

10        In Waco, Texas, in Marshall, Texas, where I'd say the vast

11   majority of patent cases are filed in the country, those courts

12   are open.  Those courts are holding trials.  I just did a trial

13   a couple weeks ago in Marshall; and we were required to have

14   our witnesses travel by plane, increasing the risk to

15   themselves, to attend that trial.

16        Well, this forum doesn't do that because in this state, we

17   have a different policy.  And so, you know, suggesting that

18   Texas is the right forum because of COVID, I think, proves the

19   opposite.  It shows a difference in public policy for the

20   protection and safety of individuals amongst the different

21   states.

22        And what they're asking for, basically, is they're

23   assuming that the COVID will still -- COVID restrictions will

24   still stay in place, and they're telling this court that

25   the Court should be okay with our witnesses being required to

1    travel, which the government, both the federal government and
2    California have said don't do that.
3        But they're saying:  Well, this difference where there's a
4    Texas court that will say 'Yes, you should do that' is a valid
5    reason for filing there.
6        It's the opposite, Your Honor.  Their point highlights
7    that there's a difference between these forums.
8        And California has an interest in protecting its citizens
9    from the pandemic.  California has an interest in having its
10   judges in its forum make decisions about patent law and not a
11   judge in Waco, Texas.  The parties are all in California.
12   That's where the dispute is.
13       I also would like, if I could, Your Honor, to address --
14       **THE COURT:**  You're repeating yourself.
15       **MR. VERHOEVEN:**  I'm not.
16       **THE COURT:**  I've got to move to the next case.  But
17   was there anything else you wanted to say?
18       **MR. VERHOEVEN:**  Yes, really quickly.
19       The notion that we're going to get to trial in Texas
20   faster than before Your Honor is just not true.  The judge in
21   Waco has been on the bench since 2018.  Last -- the trial that
22   you just heard counsel refer to was his first trial, first
23   trial he's ever done.  So that took a year and a half.  And now
24   he has over 700 patent trials -- or patent cases ahead -- and I
25   might be wrong on the exact number, Your Honor -- but hundreds

1    ahead of this case, and he's only managed to do one trial since

2    he was appointed.

3         So if you look at the actual facts here and the number of

4    patents that have been filed there and the track record of only

5    one trial done so far, I suggest that there's absolutely no

6    problem making the argument that trial is going to be faster

7    before Your Honor, because we both -- I know Your Honor moves

8    cases quickly, and obviously you know, Your Honor, how you move

9    cases.  This is what they've expressed is their big concern, is

10   timing.  So fine.  Let's adjust the schedule on timing, and

11   otherwise, everything else suggests the case should be here.

12        Thank you, Your Honor.  That's -- I'm finished.

13            THE COURT:  All right.  I need to bring this to a

14   complete close here.

15        I don't have an answer for you yet, but I will soon.  I'm

16   going to postpone the case management part of this conference

17   until I decide whether to stay the case or not.

18        If we do keep it here, then I will get you on the phone

19   quickly, and we will do a case management conference.

20        So good luck to both sides.  Thank you, Counsel.

21            MR. ROBERTS:  Thank you, Your Honor.

22            MR. VERHOEVEN:  Thank you, Your Honor.

23            THE COURT:  You're most welcome.

24            (Proceedings adjourned at 8:42 a.m.)

25                        ---o0o---

## CERTIFICATE OF REPORTER

    I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

DATE:  Monday, November 23, 2020


_____

Ana M. Dub, CSR No. 7445, RDR, CRR, CCRR, CRG, CCG
Official Reporter, U.S. District Court