# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# WACO DIVISION

| | |
|---|---|
| SONOS, INC., <br><br> Plaintiff, <br><br> vs. <br><br> GOOGLE LLC, <br><br> Defendant. | Case No. 6:20-cv-00881-ADA <br><br> JURY TRIAL DEMANDED |

**GOOGLE LLC'S MOTION TO TRANSFER PURSUANT TO 28 U.S.C. § 1404(a)**

**TABLE OF CONTENTS**

**Page**

I.   INTRODUCTION ........................................................................................................1

II.   BACKGROUND .........................................................................................................1

    A.   The Parties Agreed To Litigate In California. ..............................................1

    B.   Both Parties Have A Significant Presence In The Northern District. ........2

    C.   Third-Party Witnesses And Evidence Are Located In – Or Within The Subpoena Power Of – The Northern District. ..........................................2

III.   ARGUMENT ...............................................................................................................3

    A.   The Court Should Transfer Based On The Parties' Forum Selection Clause. ............................................................................................................3

    B.   The Court Should Transfer For The Convenience Of Parties And Witnesses. ............................................................................................................6

        1.   Sonos Could Have Brought Its Case In The Northern District. ................6

        2.   The Private Interest Factors Weigh Heavily In Favor Of Transfer. ............6

            (a)   Convenience Of The Parties And Witnesses Favors Transfer. ............................................................................................................6

            (b)   Ease Of Access To The Evidence Favors Transfer. .........................9

        3.   The Public Interest Factors Weigh In Favor Of Transfer. .........................10

IV.   CONCLUSION..........................................................................................................10

# **TABLE OF AUTHORITIES**

**Page**

**Cases**

*Atl. Marine Constr. Co. v. U.S. Dist. Court for the W. Dist. of Tex.*,
  571 U.S. 49 (2013) .................................................................................................... 4, 5

*Bascom v. Maxim Integrated Prod., Inc.*,
  534 F. Supp. 2d 700 (W.D. Tex. 2008) ......................................................................... 8

*DataQuill, Ltd. v. Apple Inc.*,
  No. A–13–CA–706–SS, 2014 WL 2722201 (W.D. Tex. June 13, 2014) ..................... 8

*EVS Codec Tech., LLC v. LG Elec., Inc.*,
  Case No. 2:18-CV-00343-JRG, 2019 WL 2904747 (E.D. Tex. Jul. 5, 2019) ........ 4, 5, 6

*General Protecht Group, Inc. v. Leviton Mfg. Co.*,
  651 F.3d 1355 (Fed. Cir. 2011) .................................................................................... 4

*Haynsworth v. The Corp.*,
  121 F.3d 956 (5th Cir. 1997) ........................................................................................ 4

*In re Acer America Corp.*,
  626 F.3d 1252 (Fed. Cir. 2010) .................................................................................... 9

*In re Apple Inc.*,
  979 F.3d 1332 (Fed. Cir. Nov. 9, 2020) ..................................................................... 10

*In re Genentech*,
  566 F.3d 1338 (Fed. Cir. 2009) ........................................................................... 6, 9, 10

*In re Google Inc.*,
  No. 17-0107, 2017 WL 977038 (Fed. Cir. Feb. 23, 2017) .......................................... 7

*In re Hoffman-La Roche*,
  587 F. 3d at 1336 ........................................................................................................ 10

*In re HP Inc.*,
  No. 2018-0149, 2018 WL 4692486 (Fed. Cir. Sept. 25, 2018) ................................... 8

*In re Nintendo Co.*,
  589 F.3d 1194 (Fed. Cir. 2009) .................................................................................... 6

*In re Volkswagen of Am. Inc.*,
  545 F.3d 304 (5th Cir. 2008) ........................................................................................ 6

*Irvin v. Cleveland Construction, Inc.*,
  Case No. A-09-CA-810-SS, 2009 WL 10699385 (W.D. Tex. Dec. 10, 2009) ............ 4

*M/S Bremen v. Zapata Off-Shore Co.*,
  407 U.S. 1 (1972) ................................................................................................................. 4

*MEC Res., LLC v. Apple, Inc.*,
  269 F. Supp. 3d 218 (D. Del. 2017) ...................................................................................... 9

*Sirius Comp. Sols., Inc. v. Sparks*,
  138 F. Supp. 3d 821 (W.D. Tex. 2015) .................................................................................. 5

*Tessera Advanced Tech., Inc. v. Samsung Elec. Co.*,
  No. 2:17-CV-00671-JRG, 2018 WL 8014281 (E.D. Tex. 2018) ............................................ 6

## **Statutes**

28 U.S.C. § 1404(a) ............................................................................................................. 1, 3, 6

## **Rules**

Fed. R. Civ. P. 45(c)(1)(A) ............................................................................................................ 8

Fed. R. Civ. P. 45(c)(1)(B) ............................................................................................................ 8

**I.      INTRODUCTION**

Google and Sonos began collaborating on the functionality that Sonos now accuses of infringing U.S. Patent Nos. 9,967,615 and 10,779,033 in 2013. In connection with their collaboration, Google and Sonos executed at least six contracts, each of which contains or specifically incorporates a mandatory forum selection clause requiring that all disputes related to the agreements be litigated in California. Sonos' Complaint puts the parties' collaboration directly at issue, and Google asserts six affirmative defenses that rely in whole or in part on one of those agreements. Because there is a substantial nexus between this case and a contract containing a California forum selection clause, Google respectfully moves to transfer this case to the Northern District of California ("Northern District") pursuant to 28 U.S.C. § 1404(a).

Moreover, as evidenced by the inclusion of a California forum selection clause in the many agreements between the parties, the Northern District is a more convenient forum for this case. Both parties' relevant witnesses and sources of proof are primarily located in California. Numerous third-party witnesses, including prior artists and at least one named inventor, reside in California and can only be compelled to attend trial there. And, in contrast to the parties' deep California roots, neither Sonos nor any of Sonos' claims has any relevant connection to this District. Transfer to the Northern District, the clearly more convenient venue, is warranted.

**II.     BACKGROUND**

      **A.      The Parties Agreed To Litigate In California.**

For nearly a decade, Sonos and Google collaborated on certain technologies at issue in this case. *See* Dkt. 1 ¶ 12. In 2013, Google and Sonos executed a ███████████████ ███████████████████████████████████████████████████████████████



██████ Ex. 1 §§ 3.4-3.5.[1] ██████

Ex. 1 § 1.1; Ex. 2 § 10.2 (capitalization in original).[2]

### B. Both Parties Have A Significant Presence In The Northern District.

Google is a California-based company that has been headquartered in the Northern District since its founding in 1998. Declaration of Daniel S. Friedland ("Friedland") ¶ 2. The key witnesses with relevant knowledge regarding the accused functionality are based in the Northern District (*id*. ¶¶ 5a-5g), and they do not recall anyone from a Google Texas office working on the design and development of the accused functionality. *Id*. In the course of their collaboration, Sonos visited Google at its offices in the Northern District. Ex. 3.

Sonos is also a California-based company. Sonos was founded and continues to maintain its principal place of business in Santa Barbara, California. *See* Dkt. 1 ¶ 43. Sonos also has a significant presence in the Northern District, with an office at 550 Montgomery Street in San Francisco. Dkt. 1. Although Sonos has 13 offices worldwide, none is located in Texas. *Id.*

Sonos' witnesses are also primarily based in California. All but one of the named inventors appear to live in Santa Barbara. *See* Dkts. 1-1, 1-2, Ex. 4 ; Dkt. 1-3, 1-4, Ex. 5; Dkt. 1-5. The remaining named inventor is based in Massachusetts. *See* Dkt. 1-1, 1-2, Ex. 6.

### C. Third-Party Witnesses And Evidence Are Located In – Or Within The Subpoena Power Of – The Northern District.

---

[1] "Ex." refers to exhibits attached to the Declaration of Lindsay Cooper submitted herewith.
[2] The parties entered into at least six agreements related to the collaboration referenced by Sonos in its Complaint; every one of those agreements contains (or specifically incorporates) a mandatory California forum selection clause. See Ex. 7 ¶ 11; Ex. 2 § 10.2; Ex. 1 § 1.1; Ex. 8 ¶ 11; Ex. 9 § 7.1; Ex. 10 ¶ 11.

There are relevant third parties in the Northern District and within the Northern District's subpoena power. For example, at least one of the named inventors on the asserted patents, Joni Hoadley, no longer works at Sonos, and is thus a third party. Ex. 4. She appears to reside in Santa Barbara, California, and she is likely within the subpoena power of the Northern District but not this District. *Id*. In addition, Google has identified at least eight individuals and two entities with relevant information regarding prior art to the asserted patents:

- Ravi Rajapakse is the named inventor on U.S. Patent No. 8,239,559, which discloses a system for playing back audio among groups of devices and zones. Ex. 11. Mr. Rajapakse's work is relevant prior art for the '206 and '966 patents, which Sonos contends cover allowing a user to control audio players in a multi-zone system.

- Philip F. Kearney, III, Robert Dale Newberry, Jr., and David Heller are the named inventors on U.S. Patent No. 8,797,926, which discloses sharing peripherals, such as speakers, among groups of networked computers by using a remote controller. Ex. 12. Their work is relevant prior art for the '206 and '966 patents.

- Jan F. Jannink and Timothy E. DeGraw are named inventors on U.S. Patent Publication No. 2008/0120501 A1, which relates to remote playlist sharing. Ex. 13. This publication is relevant prior art for the '615 and '033 patents, which Sonos contends relates to remote playlists.

- Pandora is an Oakland, California-based subscription music streaming service and the assignee of U.S. Patent No. 7,720,686 B2, which relates to providing personalized playlists to users remotely. Ex. 14. This patent is also relevant prior art for the '615 and '033 patents.

- Dolby Laboratories is a San Francisco-based audio technology company and the assignee of European Patent No. 2986034B1, which relates to equalization. Ex. 15. This patent, with named inventor Alan J. Seefeldt, is prior art to the '460 patent, which Sonos contends relates to equalization.

- Jan Abildgaard Pedersen is the named inventor on U.S. Patent No. 6,731,760, which discloses the Adaptive Bass Control ("ABC") protocol. Ex. 16. It is also relevant prior art for the '460 patent.

All of these entities and witnesses are based in the Northern District. Exs. 17-28.

### III.   ARGUMENT

#### A.   The Court Should Transfer Based On The Parties' Forum Selection Clause.

A case may be transferred under 28 U.S.C. § 1404(a) if there is an applicable forum

selection clause. *Atl. Marine Constr. Co. v. U.S. Dist. Court for the W. Dist. of Tex.*, 571 U.S. 49, 52 (2013). Forum selection clauses are presumed valid and are generally enforced. *Irvin v. Cleveland Construction, Inc.*, Case No. A-09-CA-810-SS, 2009 WL 10699385, at *2 (W.D. Tex. Dec. 10, 2009) (*citing M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10, 15 (1972); *see also Haynsworth v. The Corp.*, 121 F.3d 956, 962 (5th Cir. 1997). They should be "given controlling weight in all but the most exceptional cases." *Atl. Marine*, 571 U.S. at 59-60, 63.

The Federal Circuit has held that a forum selection clause applies if the nexus between the case and the agreement at issue is "non-frivolous." *EVS Codec Tech., LLC v. LG Elec., Inc.*, Case No. 2:18-CV-00343-JRG, 2019 WL 2904747, at *2 (E.D. Tex. Jul. 5, 2019) (*citing General Protecht Group, Inc. v. Leviton Mfg. Co.,* 651 F.3d 1355, 1359 (Fed. Cir. 2011)). If the court finds such a non-frivolous nexus, the case should be transferred to the forum named in the agreement unless "extraordinary circumstances unrelated to the convenience of the parties" disfavor transfer. *Id.* (*citing Atl. Marine Constr.*, 571 U.S. at 63-64). This analysis requires the court to adjust the usual § 1404(a) analysis in at least two respects. *Id.* First, the plaintiff's choice of forum is entitled to no weight, and the plaintiff bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted. *Id.* Second, the court should not consider arguments about the parties' private interests and may consider arguments about public-interest factors only. *Id.*

The Court should transfer this case based on the mandatory forum selection clause that requires disputes relating to the 2013 CIA to be litigated in California. *See supra* § II.A. Sonos' allegations regarding the '615 and '033 patents, Sonos' copying allegations, and several of Google's affirmative defenses have more than a non-frivolous nexus to that agreement. For example, Sonos' complaint accuses Google of (i) seeking to collaborate with Sonos in order to "gain[] access to Sonos's engineers, products, and technology" (Dkt. 1 ¶ 11); (ii) leveraging Google's non-public "access" – obtained through the collaboration – to copy Sonos' technology

(*id.* ¶¶ 11-12), and (iii) infringing Sonos' patents by leveraging the non-public "knowledge it had gleaned from Sonos" during the collaboration (*id.* ¶ 14). Sonos incorporates these allegations into each of its claims (*id.* ¶¶ 80, 92, 104, 117, 130), and the allegations regarding the collaboration form the sole basis for Sonos' copying contention. *Id.* ¶¶ 11-14. Because Sonos' own allegations put the parties' collaboration at issue, Sonos has effectively conceded that there is a non-frivolous nexus between its claims and the ███████████████████████████████████████ ███████████████████████████████████████████████████████████████████ Ex. 1 §§ 3.4-3.5.

Six of Google's affirmative defenses to Sonos' '615 and '033 patent infringement claims also require interpretation and application of the CIA. For example, to resolve the estoppel defense, a court must decide whether ██████████████████████████████████████ – in addition to other Sonos conduct – led Google to reasonably infer that **Google**, not Sonos, █████ ████████████████████████████████████. *See Sirius Comp. Sols., Inc. v. Sparks*, 138 F. Supp. 3d 821, 839 (W.D. Tex. 2015). To resolve the waiver defense, a court must decide whether Sonos intentionally waived its rights to enforce the '615 and '033 patents or acted inconsistently with claiming those rights in light of Sonos' execution of the CIA along with other conduct. *Id.* at 838. And to resolve the limitation on liability defense, a court must apply █████ ███████████████████████████████████████████████████████████████████ ████████████████████████████████████ Ex. 1 § 8.1.

Because the nexus between this case and the CIA is "non-frivolous," the mandatory forum selection clause should be given "controlling weight." *Atl. Marine*, 571 U.S. at 59-60, 63 (forum selection clauses should be "given controlling weight in all but the most exceptional cases"); *EVS Codec*, 2019 WL 2904747, at *4 (enforcing mandatory forum selection clause requiring disputes "relating to" the agreement to be brought in New York where defendant asserted that a covenant

in the agreement barred plaintiff's infringement claims, and resolution of this issue would "necessarily require the Court to interpret the Agreement"); *Tessera Advanced Tech., Inc. v. Samsung Elec. Co.*, No. 2:17-CV-00671-JRG, 2018 WL 8014281, at *4 (E.D. Tex. 2018) (enforcing mandatory forum selection clause providing that disputes "relating to" the agreement must be brought in Delaware since, "[i]n order to try this case, the Court must unavoidably interpret the [agreement]").

No "extraordinary circumstances" disfavor transfer. *EVS Codec*, 2019 WL 2904747, at *2. And transfer to the Northern District is clearly warranted as the public interest factors are all either neutral or weigh in favor of transfer. *Infra* § III.B.3.

### B. The Court Should Transfer For The Convenience Of Parties And Witnesses.

In the alternative, the Court should transfer this case under Section 1404(a) "[f]or the convenience of parties and witnesses." 28 U.S.C. § 1404(a). For this inquiry a court first considers whether the case could have been brought in the transferee forum. *In re Volkswagen of Am. Inc.*, 545 F.3d 304, 312 (5th Cir. 2008). If so, courts weigh the well-known private and public factors discussed below. *Id.* at 315. A court should grant transfer when the proposed transferee forum is "'clearly more convenient' than the plaintiff's chosen venue." *In re Nintendo Co.*, 589 F.3d 1194, 1197 (Fed. Cir. 2009).

#### 1. *Sonos Could Have Brought Its Case In The Northern District.*

Sonos could have brought its case in the Northern District because Google has been headquartered there since its founding in 1998. Friedland ¶ 2.

#### 2. *The Private Interest Factors Weigh Heavily In Favor Of Transfer.*

##### (a) Convenience Of The Parties And Witnesses Favors Transfer.

"The convenience of the witnesses is probably the single most important factor in the transfer analysis." *In re Genentech*, 566 F.3d 1338, 1343 (Fed. Cir. 2009) (internal citation omitted). In this case, the parties *agreed* that California is a convenient forum at least six times in

connection with the collaboration that Sonos relies on in its Complaint. *See supra* § II.A. Indeed, numerous witnesses are based in California and no known witness is based in Texas. This factor strongly favors transfer. *In re Google Inc.*, No. 17-0107, 2017 WL 977038, at *3 (Fed. Cir. Feb. 23, 2017) (California, not Texas, was the proper venue where "Google's employees . . . responsible for projects relating to the accused products . . . work and reside in the Northern District").

***Google Witnesses.*** Google's main offices are in the Northern District, and over ▆ of the company's U.S. employees – more than ▆ people – work there. Friedland ¶ 3. The Google witnesses responsible for the development of (i) Google's Room EQ feature, which Sonos accuses of infringing the '460 patent (Dkt. 1 at 82-83), (ii) the functionality allowing casting playback of Google Play Music, YouTube Music, or YouTube to a Cast receiver, which Sonos accuses of infringing the '615 and '033 patents (*id.* at 24-39), and (iii) the functionality allowing creating and managing speaker groupings for media playback, which Sonos accuses of infringing the '206 and '966 patents (*id.* at 59-78) are based primarily in the Bay Area. Friedland ¶¶ 5a-5f.[3] The witness with knowledge of the accused products' financials is also there. *Id.* ¶ 5g. The 2013 CIA was negotiated by Google employees located in the Bay Area, and the Google employees who worked with Sonos pursuant to this agreement are based in the Bay Area. *Id.* ¶ 6a-6b.

Sonos has speculated that there are "likely" witnesses in the Western District because "Google has a significant presence in Austin" and "employs engineers [there] who are likely to be knowledgeable about the accused products and functionalities." Ex. 29 at 11. But Sonos has not identified any relevant witness in this District, described how such a witness might be knowledgeable about the accused functionalities, or deposed or called any such witness in the

---

[3] In an ITC case between Sonos and Google involving the same accused products and – in some instances – related patents, 15 of the 17 Google employees who were deposed and 23 of the 26 Google employees on the parties' trial witness lists, are in the Northern District. Declaration of James Judah ("Judah") ¶¶ 3, 6. None of the Google employees deposed or listed as trial witnesses in the ITC case is in Texas. *Id.* ¶¶ 2, 5.

parties' pending ITC case involving the same products and related patents. Judah ¶¶ 2-6. The Court therefore can – and should – reject Sonos' speculative argument. *See DataQuill, Ltd. v. Apple Inc.*, No. A–13–CA–706–SS, 2014 WL 2722201, at *5 (W.D. Tex. June 13, 2014) (factor favored transfer where the defendant's "presence in this district . . . is unrelated to this litigation"); *In re HP Inc.*, No. 2018-0149, 2018 WL 4692486, at *1-2 (Fed. Cir. Sept. 25, 2018) (a party's presence in a district does not affect this factor if that presence is not relevant to the case). Moreover, Google is not aware of any likely witnesses in this District. *See* Friedland ¶¶ 5a-5g.

**Sonos Witnesses.** Sonos is headquartered in Santa Barbara (Dkt. 1 at 1), which is closer to the Northern District than this District. Sonos also has a significant presence in the Northern District, with an office in San Francisco. Ex. 30. Sonos does not have any offices in Texas. *Id.*

Most of the relevant Sonos witnesses, including two of the three named inventors on the asserted patents who still work at Sonos, are based in Santa Barbara and thus closer to the Northern District than this District. *Supra* § II.B.[4] They may be within the subpoena power of the Northern District, but they are not within the subpoena power this District. Fed. R. Civ. P. 45(c)(1)(B). Indeed, five of the nine Sonos employees deposed in the parties' pending ITC action are in California. Judah ¶ 4. None is in Texas. *Id.* ¶¶ 2, 4.

**Third-Party Witnesses.** "'[I]t is the convenience of non-party witnesses, rather than that of party witnesses, that is . . . accorded greater weight in a transfer of venue analysis.'" *Bascom v. Maxim Integrated Prod., Inc.*, 534 F. Supp. 2d 700, 704 (W.D. Tex. 2008). One of the Santa Barbara-based named inventors on the patents-in-suit no longer works at Sonos, and is thus a third party. *Supra* § II.C. She may be compelled to testify in the Northern District but not in this District. *See* Fed. R. Civ. P. 45(c)(1)(A). Google has also identified a number of third-party prior

---

[4] The final named inventor is based in a suburb of Boston, MA. He has traveled to the Northern District to meet with Google in the past. *See* Dkt. 1-1, 1-2, Ex. 6 (Coburn Report).

art witnesses based in the Northern District.  *Supra* § II.C.  These witnesses are all within the subpoena power of the Northern District but not this Court.  *See* Fed. R. Civ. P. 45(c)(1)(A).  Google is not aware of any relevant third parties in Texas.  *See* Judah ¶¶ 2, 5.

*   *   *   *

Haling key witnesses from their homes in California to another state where no relevant witnesses reside would be a burdensome undertaking.  There are no direct flights from California to Waco.  Ex. 31.  Conversely, if this case were transferred, Google employees and third-party witnesses could readily and far more conveniently travel between the courthouse and their homes.  A Northern District venue would also be more convenient for Sonos' southern California witnesses (party and non-party):  there are multiple non-stop flights between Santa Barbara and San Francisco each day (Ex. 32), and the distance is drivable for those who prefer not to fly.

In ordinary circumstances, witnesses who have to leave home for trial "incur significant expenses" as well as "'personal costs associated with being away from work, family, and community.'"  *In re Acer America Corp.*, 626 F.3d 1252, 1255 (Fed. Cir. 2010).  Given the current global pandemic and health and safety restrictions, interstate, overnight travel poses new risk on top of what was already an inconvenience.  This factor weighs heavily in favor of transfer.

         **(b)**      **Ease Of Access To The Evidence Favors Transfer.**

"In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer." *Genentech*, 566 F.3d at 1345.  "Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location."  *Id*.  Google researches, designs, and develops the accused functionality in the Northern District, meaning any documents created in the ordinary course of business would be created by individuals located there.  Friedland ¶¶ 5a-5g, 7; *MEC Res., LLC v. Apple, Inc.*, 269 F. Supp. 3d 218, 226-27 (D. Del. 2017) ("it is reasonable to presume that much of the evidence will be found [in California]" since Apple designed the accused products there).  Relevant evidence from identified prior art witnesses is in the Northern

District. *Supra* §§ II.C. And Sonos maintains offices in the Northern District and elsewhere in California, suggesting that its documents are also in or near the Northern District. Ex. 30.

In contrast, there is no indication that any relevant evidence is located in this District.

### 3. *The Public Interest Factors Weigh In Favor Of Transfer.*

The public interest factors also weigh in favor of transfer. Most importantly, the Northern District has a strong local interest in this dispute. Both parties maintain offices in the Northern District. *Supra* § II.B. Google was founded in the Northern District and still maintains its headquarters and largest U.S. offices there. Friedland ¶¶ 2. And Google designed and developed the accused functionality there. *Id*. ¶¶ 5a-5f. The claims in this case thus "call[] into question the work and reputation of several individuals residing in or near that district and who presumably conduct business in that community." *In re Hoffman-La Roche*, 587 F. 3d at 1336. By contrast, this District has very little, if any, interest in this dispute. *In re Apple Inc.*, 979 F.3d 1332, 1345 (Fed. Cir. Nov. 9, 2020) (transfer appropriate despite Apple's "general presence in WDTX").

The remaining factors weigh slightly in favor of transfer or are neutral. Although both forums are equally familiar with patent law, the Northern District likely has greater familiarity with California law, which ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. Ex. 1. Google is not aware of any appreciable difference in time to trial between the court of Judge William H. Alsup, who would preside over this case if transferred, and this Court, and the Federal Circuit has held time to trial should be given little weight as it "appears to be the most speculative" of the transfer factors. *Genentech*, 566 F.3d at 1347; *see also In re Apple*, 979 F.3d at 1344 (noting that "a court's general ability to set a fast-paced schedule is not particularly relevant to this factor").

### IV. <u>CONCLUSION</u>

Google respectfully requests that the Court transfer this action to the Northern District.

DATED:  January 8, 2021                        QUINN  EMANUEL  URQUHART  &  SULLIVAN, LLP

By:  /s/ Charles K. Verhoeven
　　　Charles K. Verhoeven (*pro hac vice*)
　　　charlesverhoeven@quinnemanuel.com
　　　Melissa Baily (*pro hac vice*)
　　　melissabaily@quinnemanuel.com
　　　Jordan Jaffe (*pro hac vice*)
　　　jordanjaffe@quinnemanuel.com
　　　Lindsay Cooper (*pro hac vice*)
　　　lindsaycooper@quinnemanuel.com
　　　QUINN EMANUEL URQUHART & SULLIVAN LLP
　　　50 California Street, 22nd Floor
　　　San Francisco, California 94111-4788
　　　Telephone:　(415) 875 6600
　　　Facsimile:　(415) 875 6700

　　　Paige Arnette Amstutz
　　　Texas State Bar No. 00796136
　　　SCOTT, DOUGLASS & MCCONNICO, LLP
　　　303 Colorado Street, Suite 2400
　　　Austin, TX  78701
　　　Telephone:  (512) 495-6300
　　　Facsimile:  (512) 495-6399
　　　pamstutz@scottdoug.com

*Counsel for Defendant Google LLC*

**CERTIFICATE OF SERVICE**

Pursuant to the Federal Rules of Civil Procedure and Local Rule CV-5, I hereby certify that, on January 8, 2021, all counsel of record who have appeared in this case are being served with a copy of the foregoing via the Court's CM/ECF system.

>*/s/ Charles K. Verhoeven*
>Charles K. Verhoeven