**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | | |
|---|---|---|
| SONOS, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | NO. 6:20-cv-00881-ADA |
| | § | |
| GOOGLE LLC, | § | JURY TRIAL DEMANDED |
| | § | |
| Defendant. | § | **PUBLIC VERSION** |
| | § | |

**SONOS, INC.'S RESPONSE TO GOOGLE LLC'S MOTION TO TRANSFER
PURSUANT TO 28 U.S.C. § 1404(A)**

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ................................................................................................. 1

II.  BACKGROUND ................................................................................................. 1

    A.  The Sonos-Google Content Integration Agreement. ............................... 1

    B.  The Asserted Patents and Accused Products ........................................... 2

    C.  Google's Significant Presence in the Western District of Texas ........................ 3

III.  ARGUMENT ...................................................................................................... 3

    A.  The Forum Selection Clause Has No Bearing on Venue ....................................... 3

    B.  The NDCA is not clearly more convenient than the WDTX ................................ 8

        1.  The Private Interest Factors Weigh Against Transfer ................................ 8

            a.  The relative ease of access to sources of proof is at most neutral ................................................................................... 8

            b.  The availability of compulsory process does not favor transfer ...................................................................................... 9

            c.  The cost of attendance for willing witnesses does not favor transfer ...................................................................................... 11

            d.  All other practical problems that make trial of a case easy, expeditious and inexpensive do not favor transfer ..................... 13

        2.  The Public Interest Factors Weigh Against Transfer ............................... 13

            a.  Administrative difficulties flowing from court congestion does not favor transfer ................................................................. 13

            b.  The local interest in having localized interests decided weighs against transfer ................................................................. 14

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Acer Am. Corp.*,
   626 F.3d. 1252 (Fed. Cir. 2010), *as amended* (Jan. 13, 2011) ................................................. 15

*Battle ex rel. Battle v. Mem'l Hosp. at Gulfport*,
   228 F.3d 544 (5th Cir. 2000) ...................................................................................................... 10

*CloudofChange, LLC v. NCR Corp.*,
   No. 6:19:CV-00513, 2020 WL 6439178 (W.D. Tex. Mar. 17, 2020) ........................... 9, 10, 13

*Fintiv, Inc. v. Apple, Inc.*,
   No. 6:18-cv-00372-ADA, 2019 WL 4743678 (W.D. Tex. Sept. 13, 2019) ............ 8, 11, 12, 13

*Gen. Protecht Grp., Inc. v. Leviton Mfg. Co.*,
   651 F.3d 1355 (Fed. Cir. 2011) ................................................................................................. 3, 5

*In re Genentech, Inc.*,
   566 F.3d 1338 (Fed. Cir. 2009) .................................................................................................... 13

*In re Hoffman-La Roche Inc.*,
   587 F.3d 1333 (Fed. Cir. 2009) .................................................................................................... 15

*Invensas Corp. v. Samsung, Elecs. Co.*,
   No. 2:17-CV-00670-RWS-RSP, 2018 WL 3862060 (E.D. Tex. Aug. 14, 2018) ..................... 7

*Kuster v. W. Digital Tech., Inc.*,
   6-20-CV-00563-ADA, 2021 WL 466147 (W.D. Tex. Feb. 9, 2021) ................................. 12, 14

*Maxell Ltd. v. Apple Inc.*,
   No. 5:19-cv-00036-RWS, Dkt. 191 ............................................................................................... 5

*Netlist, Inc. v. SK Hynix Inc. et al.*,
   No. 6:20-cv-00194-ADA, Dkt. 87 ............................................................................................... 12

*Solas OLED Ltd. v. Apple, Inc.*,
   No. 6:19-CV-00537-ADA, 2020 WL 3440956 (W.D. Tex. Jun. 23, 2020) ........................... 14

*In re TS Tech USA Corp.*,
   551 F.3d 1315 (Fed. Cir. 2008) .................................................................................................... 13

*Uniloc 2017 LLC v. Cisco Sys., Inc.*,
   No. 2:18-CV-00505-JRG, 2019 WL 4451329 (E.D. Tex. Sept. 16, 2019) ................................ 4

*USC IP P'ship, L.P. v. Facebook, Inc.*,
    No. 6:20-CV-00555-ADA, 2021 WL 860007 (W.D. Tex. Mar. 8, 2021) ..............................15

*VideoShare, LLC v. Google LLC, et al.*,
    6:19-cv-00663-ADA (W.D. Tex. 2019) ...................................................................................3

**Other Authorities**

35 U.S.C. § 154(a)(1) ..........................................................................................................................4

Fed. R. Civ. P. 45(c)(1)(B)(ii) ...........................................................................................................9

MPEP § 301 ........................................................................................................................................4

## I.    INTRODUCTION

Google moves to transfer this case to Northern California based on a forum selection clause contained in an agreement that has no connection to this dispute.  Because the agreement contains no mention of the asserted patents or the accused products, Google's argument relies on ███ █████████████████████████████████████████████████.  But the patents asserted in this case all claim priority *before* the agreement.  Google's assertion that an ████████████ ████████████████████████████████████ of Sonos's then-existing intellectual property is frivolous.  Moreover, Google failed to demonstrate any relation ███████████████ ███████████████████ and the products accused in this case—despite being in control of the products and, thus, the evidence that would demonstrate this.  As such, there is no nexus between the agreement and this case, and the forum selection clause is inapplicable.  Google also fails to meet its burden to show that the NDCA is a clearly more convenient forum.  Google cannot identify one factor that supports transfer.  Instead, and at most, one factor is neutral while all other factors weigh against transfer.

## II.    BACKGROUND

### A.    The Sonos-Google Content Integration Agreement.

On November 14, 2013, Sonos and Google entered into a ████████████████████ ██████████████████████████████████████████████████████████████ ███████████████████. Dkt. 35 (hereinafter "Mot."), Ex. D.[1] ████████████████████ ██████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████

---

[1] "Mot., Ex. XX" refers to exhibits attached to Google's Motion to Transfer (Dkt. 35).  All other exhibits are attached to the Declaration of Mark D. Siegmund, accompanying this brief.

 *Id.*, Recitals. The result of these development efforts was defined as the "Integrated Service Offering." *Id.* The CIA contains ten sections.

*Id.* §§ 3.4, 3.5. Notably, none of the asserted patents or the accused products are mentioned in the CIA.

### B.    The Asserted Patents and Accused Products

Sonos filed the operative Second Amended Complaint on February 23, 2021, asserting infringement of five patents.[2] All five patents claim priority before the CIA (to 2007 or 2011).

Sonos's infringement contentions identify Google's Chromecast products, Google "cloud server" functionality, and the Google Cloud Platform as infringing instrumentalities. *E.g.*, Ex. 1 at Ex. A, p. 32, Ex. B, p. 7.

While Google takes issue with Sonos characterizing Google's Cloud Platform as an "accused product," (a) Google is wrong (*see* Ex. 23) and (b) even if it were not an "accused product," it would still be relevant to Sonos's infringement claims and the subject of discovery. Among other things, Sonos contends that for (i) other accused Google products, including Google Podcasts, YouTube, and the Google Home smart speaker (*see, e.g.,* Ex. 2) and (ii) other accused services, such as Google's apps and third-party apps, including Spotify (*see, e.g.,* Ex. 3; Ex. 4). They are, therefore, a proper subject of discovery and proof at trial.

---

[2] U.S. Patent Nos. 9,967,615; 10,779,033; 9,344,206; 10,469,966; and 10,848,885.

Google cannot fairly dispute this point because it has taken the same position in its affirmative case against Sonos.  In that case, Google has accused certain Sonos speakers and applications of infringing Google's patents but has insisted that *server-side* code is relevant.  *See* Ex. 5.  The same is true here: the functions of the Google Cloud Platform would be relevant to the dispute *even if* they were not accused products.

### C.    Google's Significant Presence in the Western District of Texas

Google has significant ties to the Western District of Texas.  It has a campus in Austin, where it employs >1,100 people, with the ability to grow to 5,000 people in the near future.  Ex. 6.  Google also has a repair facility in this District which repairs Google's accused phones and speakers.  The WDTX is also home to several other Google offices, party and non-party witnesses, and a manufacturer of components used in the accused products.  Google also has conceded that this District is convenient in at least 16 other cases.  *See, e.g., VideoShare, LLC v. Google LLC, et al.*, 6:19-cv-00663-ADA (W.D. Tex. 2019).  As Google's Head of Data Center Public Policy and Community Development put it, Google considers itself "incredibly fortunate to be able to call Austin home."  Ex. 6.

## III.    ARGUMENT

### A.    The Forum Selection Clause Has No Bearing on Venue

Google argues that venue is governed by a forum-selection clause contained in the CIA.  Mot. at 4-6.[3]  Google is wrong.  As the party asserting the forum selection clause, it is Google's burden to establish a "non-frivolous" nexus between this case and the agreement containing the clause.  *See Gen. Protecht Grp., Inc. v. Leviton Mfg. Co.*, 651 F.3d 1355, 1359 (Fed. Cir. 2011).

---

[3] Google says that a California forum selection clause is also contained in or incorporated into other agreements, but provides no analysis of these agreements or their relation to this case.  Mot. at 2 n.2; *see also id.* at 4-6.

Only once that burden is satisfied is Google "entitle[d] [ ] to the benefit of the forum selection clause contained in the [agreement]."  *Uniloc 2017 LLC v. Cisco Sys., Inc.*, No. 2:18-CV-00505-JRG, 2019 WL 4451329, at *2 (E.D. Tex. Sept. 16, 2019).  Google has failed to and cannot satisfy its burden, and the forum selection clause, therefore, does not apply.



The CIA grants Google ████████████████████████████████████ ████████████████████████████████████████████████████████████.  Mot., Ex. D §§ 3.4, 3.5.  The titles of the clauses on which Google relies explicitly relate to ████████████████████████████████████████████████ ██████████████████████████  *Id.* (emphases added).  Through these clauses, ████████████████████████████████████████████████ ████████████████  *Id.*  But these ██████████ clauses are distinct from the CIA provisions that define ██████████.  For example, ████████████████████████████████████ ████████████████████████████  In other words, where the parties intended to grant ████████████████████████████████, they expressly enumerated those rights.  The ██████████ granted under these sections bear ***no*** relation to the patents asserted in this case.  Google does not contend otherwise.

Ownership is not a license; the law draws a clear distinction between intellectual property ownership and a license to practice that intellectual property.  "Ownership of [a] patent does not furnish the owner with the right to make, use, offer for sale, sell, or import the claimed invention because there may be other legal considerations precluding same (*e.g.*, existence of another patent owner with a dominant patent … )."  MPEP § 301 (citing 35 U.S.C. § 154(a)(1)).  This is also common sense; if someone builds a mobile phone with a touch screen and pinch-to-zoom functionality, they may own their creation and any developed intellectual property, but they don't

automatically have a license to, *e.g.*, patents reading on pinch-to-zoom.  Indeed, it is this very

"ownership" that would render them liable for infringement of pinch-to-zoom patents.  The same

is true here.  ████████████████████████████████████████████████

████████████████████████████████████  But that  ██████████████████████

██████  to Sonos's patents, particularly the patents that claim priority ***before*** the CIA.  In short,

Google's  ██████████████████████████████████  does not equate to a  ██████  to

Sonos's preexisting intellectual property.  For this reason, the CIA and its  ██████████  clauses ***have***

***no bearing*** on whether Google infringes Sonos's asserted patents and the agreement has no nexus

to this lawsuit.

Even if they were operative,[4] Google's purported affirmative defenses do not establish a

non-frivolous nexus between this case and the CIA.  "In the context of defenses to infringement

claims, non-frivolous means that '[t]he outcome of that dispute will determine whether the

patentee can sustain its suit for infringement.'" *Maxell Ltd. v. Apple Inc.*, No. 5:19-cv-00036-RWS,

Dkt. 191, at 5 (quoting *Gen. Protecht Grp.*, 651 F.3d at 1359).  Google identifies three affirmative

defenses in its motion: estoppel, waiver, and limitation on liability.  None of these defenses has

any bearing on Sonos's infringement claims.[5]

Under its estoppel defense, Google argues that the "court must decide whether  ██████

██████████████████████████████████████  – in addition to other Sonos conduct – led

Google to reasonably infer that ***Google***, not Sonos,  ████████████████████████████████

---

[4] Google has not answered the operative complaint, and instead moved to dismiss allegations of that complaint. Dkt. 55. As such, none of Google's "affirmative defenses" are operative.

[5] While Google says that six affirmative defenses relate to the CIA, it identifies only three in its motion. Mot. at 5.  While Google mentions the CIA in its defenses of implied license and unclean hands in the answer, it fails to explain how those defenses relate to the CIA or cite a case where an implied license was found based on an agreement that (like the CIA) did not mention the patent.

██████████████████.″  Mot. at 5.  Notably, Google does not say there is any dispute over

███████████████████████████████.  Instead, Google insists that

this defense raises a dispute over ████████████████████████████████████

███████████████████  But, in its motion, Google provides no explanation for how

the accused technology relates to the CIA ███████████████████████.  Nor

could Google provide such an explanation during venue discovery.  In response to Sonos's

interrogatory directed to this point, Google merely: (1) quoted Sonos's initial infringement

contentions, ████████████████████████████; (2) quoted

Sonos's complaint, which refers only to Google's access to Sonos technology ████████

████████████████████████[6] and (3) broadly asserted—without any

analysis—that the features of the accused technology existed and have not materially changed

since Google launched Google Play Music in 2015.  Ex. 7, Google Resp. to Interrogatory No. 9.

None of these responses purport to describe how █████████████████████████ is

even analogous to the technology accused of infringement, much less how they are related.  Sonos

also asked Google to provide charts comparing the technology accused of infringement to what

Google "contend[s] to be the analogous feature or function ████████████████████

████" and to identify how ██████████████████████the CIA reads on the those

asserted claims.  Ex. 7, Interrogatory Nos. 10, 11.  Google provided no responses beyond

incorporating by reference its response to Interrogatory No. 9.  *See id.*, Google Resp. to

---

[6] Google quotes the same paragraphs of the complaint in its Motion, insisting that, through these paragraphs, Sonos "put the parties' collaboration at issue."  Mot. at 4-5 (citing Dkt. 1 ¶¶ 11-14).  But Google's burden is to establish a nexus between this case and the *CIA*, not the parties' collaboration generally.  Nowhere in Sonos's complaint is the CIA invoked.  *See* Dkt. 1; Dkt. 51.

Interrogatory Nos. 10, 11.  Google's silence in response to these requests is dispositive—there is no connection between Google's estoppel defense and the CIA.

Because Google failed to provide any showing that the ██████████████████ is even "analogous to" the accused technology, Google cannot satisfy its burden.  For example, in *Invensas Corp. v. Samsung, Elecs. Co.*, No. 2:17-CV-00670-RWS-RSP, 2018 WL 3862060, at *1 (E.D. Tex. Aug. 14, 2018), the defendant insisted that a forum selection clause contained in a license agreement required transfer.  According to the defendant, a non-frivolous nexus existed because the parties disputed which accused products were covered by the agreement. *Id.* at *3.  The court rejected this argument because the defendants "offer[ed] no evidence showing such a dispute legitimately exists" and, instead, "merely identif[ied] products they contend give rise to a dispute, without providing any specific analysis as to whether the identified products [relate to the asserted patent and trademark rights].  Nor d[id] Defendants show that all the asserted patents are licensed under the [agreement]." *Id.*  The same is true here. Google has provided no evidence that the accused technology relates to the CIA.

Google's waiver and limitation on liability defenses similarly fail to create a non-frivolous nexus to this case.  Regarding waiver, Google insists that the Court must "decide whether Sonos intentionally waived its rights to enforce the '615 and '033 patents or acted inconsistently with claiming those rights in light of Sonos' execution of the CIA along with other conduct."  Mot. at 5.  But as repeatedly explained, the CIA includes ***no mention*** of the asserted patents or the accused technology.  And Google fails to provide any reason for the Court to find that the CIA impacts enforcement of patents it does not even mention.  Similarly, Google asserts, without support, that the Court must apply the CIA's ████████████████████ to resolve Google's related defense. Mot. at 5 (citing Ex. 1 § 8.1).  As Google notes, however, ██████████████████████████

7

███████████████████████████████████████████████ *Id.* But for the
reasons discussed above, Sonos's infringement claims do not ██████████████.

In sum, Google has failed to satisfy its burden to identify a non-frivolous nexus between
the CIA and this case. The CIA's forum selection clause therefore does not apply.

**B.    The NDCA is not clearly more convenient than the WDTX**

**1.    The Private Interest Factors Weigh Against Transfer**

**a.    *The relative ease of access to sources of proof is at most neutral***

The documents and physical evidence relevant to this case are either more accessible in
this District or, at most, equally accessible in both districts. While Google insists that any relevant
documents were created in the NDCA (Mot. 9), Google conceded during venue discovery that
those documents are stored electronically and ████████████████████████
████████████████ *See* Ex. 8, Google's Resp. to Interrogatory No. 3. Because Google's
documents are equally accessible in either district, the relative ease of access is the same in both
districts. Google's argument to the contrary is "at odds with the realities of modern patent
litigation" and ignores the facts of this case. *Fintiv, Inc. v. Apple, Inc.,* No. 6:18-cv-00372-ADA,
2019 WL 4743678, at *4. (W.D. Tex. Sept. 13, 2019).

And if the Court were to consider the physical location of electronically-stored documents,
relevant documents are stored in Google's ██████ located across the country. Ex. 9,
Google's Resp. to Interrogatory No. 7. While Google does not have a ██████ in either
California or the WDTX, Google does have a ██████ in Midlothian, Texas, less than 100 miles
from this Court. *See* Ex. 10. The "relative ease of access to" the documents and information stored
within Google's ██████ are thus more convenient in the WDTX than the NDCA, which has
no Google ██████ within 100 miles.

Google is also wrong when it says that there is no relevant evidence in this District.  In addition to the **hundreds** of relevant Google witnesses located throughout the WDTX (*see infra*), multiple relevant third-party witnesses are in WDTX.  For example, as discussed below, third-party companies with a presence in this District provide components for the accused devices, **and** those components are accused of satisfying various limitations of the asserted claims.  Some third-party prior art witnesses are also located in the WDTX.  *See* Ex. 9 at 22-23 (Google identifying ▮▮▮▮▮ located in the WDTX, as relevant to its invalidity contentions).[7]  Thus, at a minimum, relevant documents possessed by these entities will be more easily accessed in the WDTX as compared to the NDCA. In sum, this factor weighs against transfer or is (at best for Google) neutral.

      **b.**     ***The availability of compulsory process does not favor transfer***

Google's efforts to identify witnesses within the subpoena power of the NDCA (Mot. 2-3, 8) ignore a crucial fact: none of those witnesses are **unwilling** to attend trial in this District. Whether they are within the subpoena power of the NDCA is thus irrelevant.  This Court has held that "[w]hen no party has alleged or shown any witness's unwillingness, a court should not attach much weight to the compulsory process factor."  *CloudofChange, LLC v. NCR Corp.*, No. 6:19:CV-00513, 2020 WL 6439178, at *4 (W.D. Tex. Mar. 17, 2020) (citing *Duha v. Agrium, Inc.,* 448 F.3d 867, 877 (6th Cir. 2006)).  Google has failed to identify **any** witness who is unwilling to travel to this District.  Sonos, on the other hand, has provided evidence showing that the sole third-party named inventor **is** willing and able to testify at trial in the WDTX without their attendance resulting in "substantial expense." Fed. R. Civ. P. 45(c)(1)(B)(ii); Ex. 12, Dec. of Hoadley.

---

[7] Google also cites to third party evidence in its invalidity contentions, including a YouTuber located in this district.  *See* Ex. 11 (Willie D, located in San Antonio, Texas).

Google's reliance on prior-art witnesses who allegedly reside in the NDCA fails for additional reasons. This Court has explained that "prior art witnesses are generally unlikely to testify at trial, and the weight afforded their presence in this transfer analysis is minimal." *CloudofChange*, 2020 WL 6439178, at *4. And to the extent their testimony is needed, Google has identified no reason a video deposition would not be sufficient. *See Battle ex rel. Battle v. Mem'l Hosp. at Gulfport*, 228 F.3d 544, 554 (5th Cir. 2000) (videotaped depositions "allow[] jurors to gauge the witness's attitude reflected by his motions, facial expressions, demeanor and voice inflections"). Google also ignores the prior-art witnesses located in this District who would be subject to this Court's subpoena power. *See* Ex. 9; *see also* Ex. 11.[8]

Sonos has also identified relevant non-party witnesses who are located within the subpoena power of this Court. For instance, at least Intel Corp., Qualcomm Techs., Inc., Synaptics Inc., Marvell, Samsung, Broadcom, Inc., SK Hynix Inc., and Micron Tech., Inc. all have a presence in this District and are third-party suppliers of components for the accused Pixel devices and Cast-enabled media players. *See* Exs. 13-21, 37-45. Moreover, the components they produce satisfy various "processor," "computer-readable medium," and "network interface" (or "communication interface") limitations in the asserted claims. *See* Exs. 37-45. And, Sonos believes Andrew Greene, Googles *former* head of Partnerships & Alliances for Google Cloud, has relevant information concerning the integration of third-party applications, Spotify and Google Cloud. Exs. 22, 4.[9] Given the presence of these witnesses, this factor is, at best, neutral.

---

[8] The '460 Patent is no longer asserted, thus prior art witnesses Google identified for that patent are irrelevant. *See* Mot. at 3.

[9] While third party applications like Spotify (and their integration with Google's products and services) are unquestionably relevant to Sonos's infringement claims, Google has refused to provide venue discovery relating to WDTX employees or documents knowledgeable about the

**c.**    ***The cost of attendance for willing witnesses does not favor transfer***

The convenience of willing, **non-party** witnesses is the most important consideration to the transfer analysis. *See Fintiv*, 2019 WL 4743678, at *6. Numerous non-party witnesses are located in the WDTX, including the third-party component suppliers identified above. *See supra* at 10. To the extent these entities are willing, this factor weighs against transfer, and to the extent they are unwilling, their presence weighs against transfer because they are within the Court's subpoena power.

Although Google is still producing discovery on its WDTX witnesses,[10] it appears from what has been produced thus far that numerous relevant party witnesses reside in this District. Google has several facilities in Austin that appear to be relevant; indeed even a public search of employment opportunities in Austin reveals several engineering, marketing, and sales positions with Google that relate to the accused functionalities. Ex. 24. And Google admits that it has hundreds of employees "working across Android, G Suite, Google Play, and Cloud" in its facilities in the WDTX. Ex. 25; *see also* Ex. 23 (Court ruling that "the Google Cloud Platform is relevant to the 'Google Cloud Server' functionality"). In particular, Google admits that at least two employees involved with the sales of the accused products work within the subpoena range of this District (Ex. 30 at ¶ 9), and four employees whose job functions relate to work on the accused products work at Google facilities in the WDTX (Ex. 26, Google's First Suppl. Resp. to Request

---

same. The only reasonable explanation for Google's refusal to engage in this discovery is that Google knows such employees are in this District.

[10] *See* Ex. 23, Court's ruling dated June 14, 2021. Because Google has not yet produced the discovery it has been ordered to produce, Sonos may seek leave to file a sur-reply.

for Production No. 1).[11]  Google also has numerous employees in Austin, Texas whose roles relate to Google Cloud Platform.  *See* Ex. 27.  As previously explained, the Google Cloud Platform is directly implicated by Sonos's infringement contentions, and therefore is relevant to this case. *Supra* §II.B.

Sonos has also identified at least eight Google employees (and four former Google employees) located in either New York or Massachusetts that are relevant witnesses.  *See* Ex. 28; Ex. 29.  Because New York and Massachusetts are each over 1,000 miles closer to the WDTX than the NDCA, these witnesses will be less inconvenienced by travelling to the WDTX.  Thus, even though Google states that there are more employees in the NDCA, the "numerosity of [Google's] potential party witnesses located in the NDCA does not contribute to the analysis of this factor."  *Kuster v. W. Digital Tech., Inc.*, 6-20-CV-00563-ADA, 2021 WL 466147, at *7 (W.D. Tex. Feb. 9, 2021).

Finally, while Google names various employees with relevant information, this Court has explained that "given typical time limits at trial," it is unlikely that all those witnesses will testify. *Fintiv,* 2019 WL 4743678, at *6.  "Therefore, long lists of potential party and third-party witnesses do not affect the Court's analysis for this factor."  *Id.*  And even if they did, the convenience of party witnesses is "given little weight."  *Id.*  Google's arguments surrounding Sonos's potential NDCA witnesses do not move the needle given Sonos "has already taken consideration of such potential costs" when it filed this action.  *Netlist, Inc. v. SK Hynix Inc. et al.,* No. 6:20-cv-00194-ADA, ECF 87 at 13.  Sonos's third-party witnesses are also willing and able to attend trial in the WDTX and do not consider such travel inconvenient.  *See, e.g.*, Ex. 12.  The WDTX is also more

---

[11] Sonos requested Google to provide its "criteria" for determining whether an employee's job "related" to the accused devices so that Sonos could ascertain if Google's search criteria indeed covered all potential witnesses.  Google refused to do so.

convenient and likely less expensive for Tad Coburn (the inventor of the '615 and '033 Patents) because it is over 1,000 miles closer to his residence in Boston, Massachusetts than the NDCA, which is two time zones and over 2,000 miles away from Boston. *In re TS Tech USA Corp.*, 551 F.3d 1315, 1320 (Fed. Cir. 2008) (The Fifth Circuit's 100-mile rule accounts for the fact that "it generally becomes more inconvenient and costly for witnesses to attend trial the further they are away from home."). This factor thus weighs against transfer.

> **d.    *All other practical problems that make trial of a case easy,
> expeditious and inexpensive do not favor transfer***

This factor weighs against transfer. This Court is one of the few in the country to successfully conduct a patent trial with live testimony. Moreover, the counties from which the jury is selected in the WDTX are considerably less populated and thus resulting in fewer COVID-19 cases and chances of transmission than in the NDCA.

> **2.    The Public Interest Factors Weigh Against Transfer**

> **a.    *Administrative difficulties flowing from court congestion does
> not favor transfer***

This factor weighs heavily against transfer, as the NDCA is both a more congested venue and has a slower time to trial. The relevant inquiry under this factor is "[t]he speed with which a case can come to trial and be resolved[.]" *In re Genentech, Inc.,* 566 F.3d 1338, 1347 (Fed. Cir. 2009); *see also CloudofChange*, 2020 WL 6439178, at *6 ("Administrative difficulties manifest when litigation accumulates in congested centers instead of being handled at its origin.").

The WDTX is a less congested venue than the NDCA. *See* Ex. 31. The WDTX has approximately 4,000 fewer pending cases (district wide) and half as many civil cases as the NDCA. *Id.* Moreover, as this Court has repeatedly found, the WDTX has a faster average time to trial than the NDCA, which leads to a more efficient and economical resolution of the claims at issue. *See,*

13

*e.g., Fintiv*, 2019 WL 4743678, at *7 (WDTX has a faster average time to trial than the NDCA);

*Solas OLED Ltd. v. Apple, Inc.*, No. 6:19-CV-00537-ADA, 2020 WL 3440956, at *7 (W.D. Tex.

Jun. 23, 2020) (same).  The same still holds true, as the median time to trial for the WDTX is 22.4

months, while the NDCA's is 29.3 months.  *Kuster*, 2021 WL 466147, at *8.

The time to trial in this Court is even faster than the WDTX average suggests because the

Austin Division, which has one of the highest caseloads per judge in the country, significantly

skews time-to-trial metrics.  *See Solas*, 2020 WL 3440956, at *7.  Trial for this case is set to begin

June 6, 2022, which is 20.8 months from the date the complaint was filed—significantly faster

than the average of 27.25 months in the NDCA.  Moreover, this Court rarely, if ever, moves a trial

date once set by a scheduling order.  *See* Order Governing Proceedings at 5; *see also* Ex. 32.

**b.**     ***The local interest in having localized interests decided weighs against transfer***

While Google has a large presence in the NDCA, Google's presence in the WDTX is also

significant—so significant that Google calls Austin its "home."  *See* Ex. 6.  Google publicly stated

that it intends to hire more employees from the WDTX, explaining that it "see[s] Austin as

becoming a big hub of talent for us."  *Id.*  Google also sells, markets, and advertises the accused

devices in this District and employs individuals in this District who develop and sell the accused

products through active marketing and sales.  For example, Google employs a large work force

focused on Google's Cloud Platform, located in Austin, Texas.  A quick search revealed that there

are over 200 job openings for Google in Austin, Texas, with ***over*** 100 such openings related to

Google Cloud Platform.[12]  Furthermore, there are over 200 employees with job titles relating to

---

[12] *See* https://careers.google.com/jobs/results/?distance=50&hl=en&jlo=en-US&location=Austin,
%20TX,%20USA&q=.

Google Cloud Platform within this District. Ex. 27. Google also has a repair facility located in this District responsible for repairing several of the devices accused by Sonos. Ex. 33.

Moreover, Google has committed, and continues to commit, acts of indirect infringement in this District. For example, Google induces distributors, such as Best Buy, Verizon, AT&T, and Walmart—all of which have offices in the WDTX—to infringe the asserted claims by selling and offering to sell the accused devices to customers in this District. And Google's accused products incorporate components from third-party suppliers that satisfy the limitations of the asserted claims. These suppliers include Intel, Samsung, Synaptics, and Micron—companies which research, develop, and/or manufacture these components in this District (*see* Exs. 34-36). Sonos's claims thus "call[] into question the work and reputation of several individuals residing in or near that district and who presumably conduct business in that community," at least with respect to indirect infringement. *In re Hoffman-La Roche Inc.*, 587 F.3d 1333, 1336 (Fed. Cir. 2009); *see also In re Acer Am. Corp.*, 626 F.3d. 1252, 1256 (Fed. Cir. 2010), *as amended* (Jan. 13, 2011) (localized interest factor concerns the events that gave rise to the suit).

Google is thus wrong in stating that "this District has very little, if any, interest in this dispute." *See USC IP P'ship, L.P. v. Facebook, Inc.*, No. 6:20-CV-00555-ADA, 2021 WL 860007, at *4 (W.D. Tex. Mar. 8, 2021) ("A local interest is demonstrated by a relevant factual connection between the events and the venue." (citation omitted)). Google's significant presence in this District, acts of infringement in this District, and employment of individuals who develop and sell the accused products in this District establish that this factor weighs against transfer.

Dated:  June 15, 2021                        Respectfully submitted,

                                             By: /s/ Mark D. Siegmund_____
                                             Mark D. Siegmund
                                             State Bar No. 24117055
                                             mark@waltfairpllc.com
                                             Law Firm of Walt, Fair PLLC.
                                             1508 North Valley Mills Drive
                                             Waco, Texas 76710
                                             Telephone: (254) 772-6400
                                             Facsimile: (254) 772-6432

                                             George I. Lee (admitted *pro hac vice*)
                                             Illinois Bar No. 6225430
                                             Sean M. Sullivan (admitted *pro hac vice*)
                                             Illinois Bar No. 6230605
                                             Rory P. Shea (admitted *pro hac vice*)
                                             Illinois Bar No. 6290745
                                             J. Dan Smith (admitted *pro hac vice*)
                                             Illinois Bar No. 6300912
                                             LEE SULLIVAN SHEA & SMITH LLP
                                             656 W. Randolph St., Floor 5W
                                             Chicago, IL 60661
                                             Telephone:  312.754.9602
                                             Facsimile:  312.754.9603
                                             lee@ls3ip.com
                                             sullivan@ls3ip.com
                                             shea@ls3ip.com
                                             smith@ls3ip.com

                                             *Attorneys for Plaintiff Sonos, Inc.*


**<u>CERTIFICATE OF SERVICE</u>**

The undersigned hereby certifies that on June 15, 2021, all counsel of record who have

appeared in this case are being served with a copy of the foregoing via the Court's CM/ECF

system.

                                             /s/ Mark D. Siegmund_
                                               Mark D. Siegmund

16

## **<u>CERTIFICATE OF SERVICE</u>**

The undersigned hereby certifies that on June 22, 2021, all counsel of record who have

appeared in this case are being served with a copy of the foregoing via the Court's CM/ECF

system.

*/s/ Mark D. Siegmund*

Mark D. Siegmund
