# EXHIBIT 22

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | | |
|---|---|---|
| SONOS, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | NO. 6:20-cv-00881-ADA |
| | § | |
| Google LLC, | § | |
| | § | |
| Defendant. | § | |
| | § | |

**PLAINTIFF SONOS, INC.'S SECOND SUPPLEMENTAL PRELIMINARY
INFRINGEMENT CONTENTIONS AND IDENTIFICATION OF PRIORITY
DATES**

Plaintiff Sonos, Inc. ("Sonos" or "Plaintiff") accuses Defendant Google LLC ("Google" or "Defendant") of infringing U.S. Patent Nos. 9,967,615 (the "'615 Patent"), 10,779,033 (the "'033 Patent"), 9,344,206 (the "'206 Patent"), 10,469,966 (the "'966 Patent"), and 10,848,885 ("the '885 Patent") (collectively, "the Asserted Patents"). On December 11, 2020, Sonos served its Preliminary Infringement Contentions (including its identification of priority dates) for the '615, '033, '206, and '966 Patents, and on February 17, 2021, Sonos served its First Supplemental Preliminary Infringement Contentions to add contentions for the '885 Patent. Sonos now hereby further supplements its Preliminary Infringement Contentions.

Sonos bases these contentions on its current knowledge, understanding, and belief as to the facts and information available as of the date of these contentions. Sonos has not yet completed its investigation, collection of information, discovery, or analysis relating to this action, and additional discovery, including discovery from Google and third parties, may lead Sonos to further amend, revise, and/or supplement these contentions. Indeed, the accused functionalities of the accused instrumentalities are implemented, at least in part, by Google's proprietary and specialized electronics, firmware, and/or software, and the precise designs, processes, and algorithms used to perform the accused functionalities are held secret, at least in part, and are not publicly available in their entirety. As such, an analysis of Google's

1

documentation and source code may be necessary to fully and accurately describe every infringing functionality.

However, merits discovery in this action has not yet begun, and to date, Google has only produced limited material on certain accused instrumentalities while refusing to provide discovery on other accused instrumentalities.  Likewise, Sonos's inspection of Google's source code has just begun, and to date, Google has only provided source code for certain accused instrumentalities while refusing to provide source code on other accused instrumentalities.

For at least these reasons, Sonos specifically reserves the right to further amend, revise and/or supplement these contentions and/or accompanying exhibits in accordance with any Orders of record in this matter, and Federal Rule of Civil Procedure 26(e), as additional documents and information become available and as discovery and investigation proceed.

Sonos also reserves the right to supplement, modify or amend these contentions to include additional products or services made, used, sold, or offered for sale in or imported into the United States by Google.

These contentions are made without prejudice to any position Sonos may take with respect to claim construction. Sonos reserves its right to supplement these contentions and exhibits based on the Court's claim construction. Sonos further reserves the right to introduce and use such supplemental materials at trial.

The information in these contentions is not an admission regarding the scope of any claims or the proper construction of those claims or any terms contained therein. The production of documents accompanying these contentions is not an admission that such documents are admissible and Sonos does not waive any objections regarding admissibility. Sonos reserves the right to supplement its production of documents accompanying these contentions upon identification or receipt of additional documents, including documents from third parties.

## I.     PRELIMINARY INFRINGEMENT CONTENTIONS

Sonos contends that the Asserted Patents are infringed, either individually or in combination, by the following products (individually or collectively, "Accused Product(s)"):

*'615 and '033 Patents*

- Smartphone, tablet, and computer devices, including Google's own "Pixel" smartphone, tablet, and computer devices (e.g., the Pixel 3, Pixel 3 XL, Pixel 3a, Pixel 3a XL, Pixel 4, Pixel 4 XL, Pixel 4a, Pixel 4a (5G), Pixel 5 phones, the Pixel Slate tablet, and the Pixelbook and Pixelbook Go laptops) as well as third-party smartphone, tablet, or computer devices, that are installed with (i) any of Google's own Cast-enabled Android, iOS, or Chrome apps that allow a user to transfer playback of streaming media content from the user's smartphone, tablet, or computer devices to a Cast-enabled media player and then control the Cast-enabled media player's playback, including but not limited to the YouTube Music app, Google Play Music app, YouTube app, Google Podcasts app, and YouTube TV app, and/or (ii) any third-party Cast-enabled app that allows a user to transfer playback of streaming media content from the user's smartphone, tablet, or computer devices to a Cast-enabled media player and then control the Cast-enabled media player's playback, including but not limited to the Spotify app[1] (referred to herein either individually or collectively as the "accused Cast-enabled apps");

- Cast-enabled media players having a display screen and installed with Cast-enabled software (e.g., firmware and/or Cast-enabled apps) that allows a user to transfer playback of streaming media content from the Cast-enabled media player to another Cast-enabled media player and then control the other Cast-enabled media player's playback, including Google's Home Hub, Nest Hub, and Nest Hub Max media players (referred to herein as "Cast-enabled displays");

- Servers that host at least one of the accused Cast-enabled apps for download onto smartphone, tablet, and computer devices; and

- Cloud-based infrastructure hosting backend software that facilitates the aforementioned Cast functionality for transferring playback of streaming media content to a Cast-enabled media player and/or controlling the Cast-enabled media player's playback.

*'206 and '966 Patents*

- Smartphone, tablet, and computer devices, including Google's own "Pixel" smartphone, tablet, and computer devices (e.g., the Pixel 3, Pixel 3XL, Pixel 3a, Pixel 3a XL, Pixel 4, Pixel 4 XL, Pixel 4a, Pixel 4a (5G), Pixel 5 phones, the Pixel Slate tablet, and the

---

[1] *See, e.g.,* https://support.google.com/chromecastbuiltin/answer/6279384?hl=en#zippy=%2Cbefore-you-begin-casting%2Ccast-from-chromecast-enabled-apps-to-your-audio-device%2Cfind-new-content-to-cast; https://www.google.com/chromecast/built-in/apps/.

Pixelbook and Pixelbook Go laptops) as well as third-party smartphone, tablet, or computer devices, that are installed with the Google Home app; and

- Servers that host the Google Home app for download onto smartphone, tablet, and computer devices.

*'885 Patent*

- Cast-enabled media players, including Google's Chromecast, Chromecast Ultra, Chromecast Audio, Chromecast with Google TV, Home Mini, Nest Mini, Home, Home Max, Home Hub, Nest Hub, Nest Hub Max, Nest Audio, and Nest Wifi Point media players.

Sonos's preliminary infringement contentions are attached hereto as Exhibits A-E. At this stage, Sonos provides charts for the following claims of the Asserted Patents:

- '615 Patent: claims 1-3, 6-9, 11-15, 18-21, 23-26, 28-29 (Exhibit A)

- '033 Patent: claims 1-2, 4, 7-13, 15-16 (Exhibit B)

- '206 Patent: claims 1-5, 7, 10-19 (Exhibit C)

- '966 Patent: claims 1-4, 6-12, 14-20 (Exhibit D)

- '885 Patent: claims 1-3, 5-10, 12-17, and 19-20 (Exhibit E)

## A.    Direct Infringement Under 35 U.S.C § 271(a)

*'615 and '033 Patents*: As set forth in Exhibits A and B, each smartphone, tablet, and computer device installed with any one or more of the accused Cast-enabled apps (referred to herein as a "Cast-enabled computing device") as well as each Cast-enabled display infringes the asserted claims of the '615 and '033 Patents. Thus, Google has directly infringed and continues to directly infringe each asserted claim of the '615 and '033 Patents at least by offering to sell, selling, and/or importing into the United States, its "Pixel" brand of Cast-enabled computing devices as well as its Cast-enabled displays, in violation of 35 U.S.C § 271(a).

Further, on information and belief, Google has directly infringed and continues to directly infringe each asserted claim of the '615 and '033 Patents by virtue of installing one or more of the accused Cast-enabled apps onto Cast-enabled computing devices and installing Cast-enabled

software (e.g., firmware updates and/or Cast-enabled apps) onto Cast-enabled displays within the United States, which constitutes "mak[ing]" an infringing device under 35 U.S.C § 271(a).

Further yet, on information and belief, Google has directly infringed and continues to directly infringe each asserted claim of the '615 and '033 Patents by virtue of testing Cast-enabled computing devices and testing Cast-enabled displays within the United States, which constitutes "us[ing]" an infringing device under 35 U.S.C § 271(a).

Still further, on information and belief, Google operates servers in the United States that host Cast-enabled apps for download onto Cast-enabled computing devices and/or Cast-enabled software (e.g., firmware and/or Cast-enabled apps) for download onto Cast-enabled displays, and these servers infringe certain asserted claims of the '615 and '033 Patents. Thus, Google has also directly infringed and continues to directly infringe certain asserted claims of the '615 and '033 Patents by "mak[ing]" and/or "us[ing]" servers that host this software in violation of 35 U.S.C § 271(a).

*'206 and '966 Patents*: As set forth in Exhibits C and D, each computing device installed with the Google Home app infringes every asserted claim of the '206 and '966 Patents. Thus, Google has directly infringed and continues to directly infringe each asserted claim of the '206 and '966 Patents at least by offering to sell, selling, and/or importing into the United States, its "Pixel" brand of computing devices that are installed with the Google Home app.

Further, on information and belief, Google has directly infringed and continues to directly infringe each asserted claim of the '206 and '966 Patents by virtue of installing the Google Home app onto computing devices, which constitutes "mak[ing]" an infringing device under 35 U.S.C § 271(a).

Further yet, on information and belief, Google has directly infringed and continues to directly infringe each asserted claim of the '206 and '966 Patents by virtue of testing computing devices installed with the Google Home app, which constitutes "us[ing]" an infringing device under 35 U.S.C § 271(a).

Still further, on information and belief, Google operates servers in the United States that host the Google Home app for download onto smartphone, tablet, and computer devices, and these servers infringe certain asserted claims of '206 and '966 Patents. Thus, Google has also directly infringed and continues to directly infringe certain asserted claims of '206 and '966 Patents at least by "mak[ing]" and/or "us[ing]" servers that host the Google Home app in violation of 35 U.S.C § 271(a).

*'885 Patent*: As set forth in Exhibit E, each Cast-enabled media player infringes every asserted claim of the '885 Patent.  Thus, Google has directly infringed and continues to directly infringe each asserted claim of the '885 Patent at least by offering to sell, selling, and/or importing into the United States, Cast-enabled media players.

Further, on information and belief, Google has directly infringed and continues to directly infringe each asserted claim of the '885 Patent by virtue of installing software (e.g., firmware updates) onto Cast-enabled media players, which constitutes "mak[ing]" an infringing device under 35 U.S.C § 271(a).

Further yet, on information and belief, Google has directly infringed and continues to directly infringe each asserted claim of the '885 Patent by virtue of using Cast-enabled media players, which constitutes "us[ing]" an infringing device under 35 U.S.C § 271(a).

**B.  Induced Infringement Under 35 U.S.C § 271(b)**

Pursuant to 35 U.S.C. § 271(b), Google also actively, knowingly, and intentionally induced (and continues to actively, knowingly, and intentionally induce) others to make, use, offer to sell, sell, and/or import the Accused Products into the United States.  As noted in Sonos's Amended Complaint, Google had actual knowledge of the Asserted Patents prior to the filing of the Complaint.

*'615 and '033 Patents*: As set forth in Exhibits A and B, each Cast-enabled computing device as well as each Cast-enabled display infringes every asserted claim of the '615 and '033 Patents. Despite knowing of the '615 and '033 Patents, Google has actively, knowingly, and

intentionally induced (and continues to actively, knowingly, and intentionally induce) others to directly infringe the asserted claims in various ways, in violation of 35 U.S.C. § 271(b).

For example, through Google's website, advertising and promotional material, user guides, and/or the Google Play Store, Google has actively, knowingly, and intentionally encouraged and induced (and continues to actively, knowingly, and intentionally encourage and induce) others to install one or more of the accused Cast-enabled apps (including Google's own Cast-enabled apps and third-party Cast-enabled apps such as Spotify) onto computing devices, and thereby "make[]" an infringing device, which constitutes direct infringement of the asserted claims of the '615 and '033 Patents under 35 U.S.C § 271(a).

As another example, through Google's website, advertising and promotional material, user guides, and Cast-enabled apps, Google has actively, knowingly, and intentionally encouraged and induced (and continues to actively, knowingly, and intentionally encourage and induce) others to install Cast-enabled software (e.g., firmware updates and/or Cast-enabled apps) onto the Cast-enabled displays, and thereby "make[]" an infringing device, which constitutes direct infringement of the asserted claims of the '615 and '033 Patents under 35 U.S.C § 271(a).

As yet another example, through Google's website, advertising and promotional material, user guides, and/or the Google Play Store, Google has actively, knowingly, and intentionally encouraged and induced (and continues to actively, knowingly, and intentionally encourage and induce) others to "use" Cast-enabled computing devices installed with one or more of the accused Cast-enabled apps (including Google's own Cast-enabled apps and third-party Cast-enabled apps such as Spotify) and "use" Cast-enabled displays, which constitutes direct infringement of the asserted claims of the '615 and '033 Patents under 35 U.S.C § 271(a).

As a further example, Google has actively, knowingly, and intentionally encouraged and induced (and continues to actively, knowingly, and intentionally encourage and induce) distributors and retailers to "offer[] to sell" and "sell[]" Cast-enabled computing devices installed with one or more of the accused Cast-enabled apps as well as Cast-enabled displays, which

constitutes direct infringement of the asserted claims of the '615 and '033 Patents under 35 U.S.C § 271(a).

As still another example, by making, importing, offering to sell, and selling Cast-enabled media players programmed with software that facilitates the accused Cast functionality in the accused Cast-enabled apps and Cast-enabled software for transferring playback of streaming media content from a Cast-enabled computing device or Cast-enabled display to a Cast-enabled media player and then controlling the Cast-enabled media player's playback via the Cast-enabled computing device or Cast-enabled display, Google has actively, knowingly, and intentionally induced (and continues to actively, knowingly, and intentionally induce) others to "mak[e]" and "use" Cast-enabled computing devices and Cast-enabled displays, which constitutes direct infringement of the asserted claims of the '615 and '033 Patents under 35 U.S.C § 271(a).

As still a further example, for certain of the accused Cast-enabled apps (including Google's own Cast-enabled apps and third-party apps such as Spotify), the backend software that facilitates the accused Cast functionality for transferring playback of streaming media content from a Cast-enabled computing device or Cast-enabled display to a Cast-enabled media player and then controlling the Cast-enabled media player's playback via the Cast-enabled computing device or Cast-enabled display is hosted by Google on Cloud-based infrastructure that is owned and/or operated by Google (sometimes referred to as Google Cloud Platform or "GCP" for short), and by virtue of hosting this backend software, Google has actively, knowingly, and intentionally induced (and continues to actively, knowingly, and intentionally induce) others to "mak[e]" and "use" Cast-enabled computing devices and Cast-enabled displays, which constitutes direct infringement of the asserted claims of the '615 and '033 Patents under 35 U.S.C § 271(a).

As another example, through its relationship and collaboration with third parties such as Spotify that develop and release third-party Cast-enabled apps having the accused Cast functionality for transferring playback of streaming media content from a Cast-enabled computing device or Cast-enabled display to a Cast-enabled media player and then controlling

the Cast-enabled media player's playback via the Cast-enabled computing device or Cast-enabled display, Google has actively, knowingly, and intentionally induced (and continues to actively, knowingly, and intentionally induce) such third parties to "make[]" and "use[]" Cast-enabled computing devices and Cast-enabled displays, which constitutes direct infringement of the asserted claims of the '615 and '033 Patents under 35 U.S.C § 271(a).

Along with its actual knowledge of the '615 and '033 Patents, Google also knew (or should have known) that its actions would induce others to directly infringe the asserted claims of the '615 and '033 Patents. For example, Google has supplied and continues to supply its own Cast-enabled apps to users and encourages installation and use of such Cast-enabled apps while knowing that the installation and use of Google's Cast-enabled apps will infringe the asserted claims of the '615 and '033 Patents. As another example, Google has supplied and continues to supply its Cast technology for incorporation into third-party Cast-enabled apps (such as Spotify) and encourages installation and use of such third-party Cast-enabled apps while knowing that the installation and use of these third-party Cast-enabled apps will infringe the asserted claims of the '615 and '033 Patents.  As yet another example, Google has supplied and continues to supply Cast-enabled displays (and software for the Cast-enabled displays) to users and encourages installation and use of Cast-enabled software on the Cast-enabled displays while knowing that such installation and use will infringe the asserted claims of the '615 and '033 Patents. As still another example, for certain of the accused Cast-enabled apps (including Google's own Cast-enabled apps and third-party apps such as Spotify), Google has hosted and continues to host backend software that facilitates the accused Cast functionality on Cloud-based infrastructure that is owned and/or operated by Google while knowing that installation and use of such Cast-enabled apps will infringe the asserted claims of the '615 and '033 Patents.

*'206 and '966 Patents*: As set forth in Exhibits C and D, each computing device installed with the Google Home app infringes every asserted claim of the '206 and '966 Patents. Despite knowing of the '206 and '966 Patents, Google has actively, knowingly, and intentionally induced (and continues to actively, knowingly, and intentionally induce) others to directly infringe the

asserted claims by actively encouraging others to make, use, offer to sell, sell, and/or import the aforementioned devices into the United States in violation of 35 U.S.C. § 271(b).

For example, through Google's website, advertising and promotional material, user guides, and/or the Google Play Store, Google has actively, knowingly, and intentionally encouraged and induced (and continues to actively, knowingly, and intentionally encourage and induce) others to install the Google Home app onto computing devices, and thereby "make[]" an infringing device, which constitutes direct infringement of the asserted claims of the '206 and '966 Patents under 35 U.S.C § 271(a).

As another example, through Google's website, advertising and promotional material, user guides, and/or the Google Play Store, Google has actively, knowingly, and intentionally encouraged and induced (and continues to actively, knowingly, and intentionally encourage and induce) others to "use" computing devices installed with the Google Home app, which constitutes direct infringement of the asserted claims of the '206 and '966 Patents under 35 U.S.C § 271(a).

As yet another example, Google has actively, knowingly, and intentionally encouraged and (and continues to actively, knowingly, and intentionally encourage and induce) distributors and retailers to "offer[] to sell" and "sell[]" computing devices installed with the Google Home app, which constitutes direct infringement of the asserted claims of the '206 and '966 Patents under 35 U.S.C § 271(a).

Along with its actual knowledge of the '206 and '966 Patents, Google also knew (or should have known) that its actions would induce others to directly infringe the asserted claims of the '206 and '966 Patents. For example, Google has supplied and continues to supply the Google Home app to users while knowing that the download and installation of this app will infringe the asserted claims of the '206 and '966 Patents.

*'885 Patent*: As set forth in Exhibit E, each Cast-enabled media player infringes every asserted claim of the '885 Patent.  Despite knowing of the '885 Patent, Google has actively, knowingly, and intentionally induced (and continues to actively, knowingly, and intentionally

induce) others to directly infringe the asserted claims by actively encouraging others to make, use, offer to sell, sell, and/or import Cast-enabled media players into the United States in violation of 35 U.S.C. § 271(b).

For example, through Google's website, advertising and promotional material, user guides, the Google Home app (among other apps offered by Google), and/or the Google Play Store, Google has actively, knowingly, and intentionally encouraged and induced (and continues to actively, knowingly, and intentionally encourage and induce) others to install firmware updates onto Cast-enabled media players, and thereby "make[]" an infringing device, which constitutes direct infringement of the asserted claims of the '885 Patent under 35 U.S.C § 271(a).

As another example, through Google's website, advertising and promotional material, user guides, the Google Home app (among other apps offered by Google), and/or the Google Play Store, Google has actively, knowingly, and intentionally encouraged and induced (and continues to actively, knowingly, and intentionally encourage and induce) others to "use" Cast-enabled media players, which constitutes direct infringement of the asserted claims of the '885 Patent under 35 U.S.C § 271(a).

As yet another example, Google has actively, knowingly, and intentionally induced (and continues to actively, knowingly, and intentionally induce) distributors and retailers to "offer[] to sell" and "sell[]" Cast-enabled media players, which constitutes direct infringement of the asserted claims of the '885 Patent under 35 U.S.C § 271(a).

Along with its actual knowledge of the '885 Patent, Google also knew (or should have known) that its actions would induce others to directly infringe the asserted claims of the '885 Patent. For instance, Google has supplied and continues to supply Cast-enabled media players (as well as firmware updates) to users while knowing that the use of Cast-enabled media players will infringe the asserted claims of the '885 Patent.

### C.    Contributory Infringement Under 35 U.S.C § 271(c)

Pursuant to 35 U.S.C § 271(c), Google has also contributorily infringed (and continues to contributorily infringe) the asserted claims of the Asserted Patents by supplying software

components in the United Sates to be installed and/or used by users of the Accused Products –
each of which is a material component of the Accused Products that has no substantial
noninfringing use – with knowledge that the software components were especially made or
adapted for use in an Accused Product such that the installation and/or use of the software
components would result in direct infringement.  As noted in Sonos's Amended Complaint,
Google had actual knowledge of the Asserted Patents prior to the filing of the Complaint.

> *'615 and '033 Patents*: Google has contributorily infringed (and continues to
contributorily infringe) the asserted claims of the '615 and '033 Patents by virtue of the fact that
(1) in addition to importing and selling certain Cast-enabled computing devices that come pre-
installed with one or more of the accused Cast-enabled apps, Google supplies software
components for performing the accused Cast functionality as part of Google's own Cast-enabled
apps for installation onto Cast-enabled computing devices in the United States and also as part of
Google's own Cast-enabled software (e.g., firmware and/or Cast-enabled apps) for installation
onto Cast-enabled displays in the United States, and each time a user installs these software
components, the user "makes" an infringing device and thereby directly infringes the asserted
claims of the '615 and '033 Patents under 35 U.S.C. § 271(a), and (2) on information and belief,
Google additionally supplies software components for performing the accused Cast functionality
to third parties (such as Spotify) that incorporate such software code into third-party Cast-
enabled apps for installation onto Cast-enabled computing devices and/or Cast-enabled displays
in the United States, and each time a user installs these software components, the user "makes"
and infringing device.

> The software components for performing the accused Cast functionality are material
components of infringing devices that are not staple articles or commodities of commerce
suitable for substantial noninfringing use because the only possible use for these software
components is to be installed and run on infringing Cast-enabled computing devices and Cast-
enabled displays.

Along with its actual knowledge of the '615 and '033 Patents, Google knew (or should have known) that the software components for performing the accused Cast functionality were especially made or adapted for installation on infringing devices, and that installation of these software components by others resulted in (and continues to result in) direct infringement of the '615 and '033 Patents under 35 U.S.C. § 271(a) because each such installation "makes" a device that meets every element of every asserted claims of the '615 and '033 Patents.

Moreover, as a result of Google's contributory conduct, other have directly infringed the asserted claims of the '615 and '033 Patents. For example, users have installed the supplied software components for performing the accused Cast functionality (which are included in Google's own Cast-enabled apps as well as third-party apps such as Spotify) onto Cast-enabled computing devices in the United States, thereby "making" infringing devices.  As another example, users have installed the supplied software components for performing the accused Cast functionality (which are included in firmware as well as Cast-enabled apps) onto Cast-enabled displays in the United States, thereby "making" updated Cast-enabled displays that are infringing devices.  As yet another example, after installing the supplied software components for performing the accused Cast functionality onto Cast-enabled computing devices and Cast-enabled displays, users have used these infringing devices, which also constitutes direct infringement.

_'206 and '966 Patents_: Google has contributorily infringed (and continues to contributorily infringe) the asserted claims of the '206 and '966 Patents by virtue of the fact that it supplies software components for performing the accused functionality as part of the Google Home app in the United States, and each time a user installs the Google Home app onto a computing device, the user "makes" an infringing device and thereby directly infringes the asserted claims of the '206 and '966 Patents under 35 U.S.C. § 271(a). The software components included in the Google Home app are material components of infringing devices that are not staple articles or commodities of commerce suitable for substantial noninfringing use because the

only possible use for these software components is to be installed and run on infringing computing devices.

Along with its actual knowledge of the '206 and '966 Patents, Google knew (or should have known) that the software components included in the Google Home app were especially made or adapted for installation on infringing devices, and that installation of these software components by others resulted in (and continues to result in) direct infringement of the '206 and '966 Patents under 35 U.S.C. § 271(a) because each such installation "makes" a device that meets every element of every asserted claims.

Moreover, as a result of Google's contributory conduct, other have directly infringed the asserted claims of the '206 and '966 Patents. For example, users have installed the supplied software components included as part of the Google Home app onto computing devices in the United States, thereby "making" infringing computing devices. As another example, after installing the software components included as part of the Google Home app onto computing devices, users have used these infringing devices, which also constitutes direct infringement of the asserted claims.

*'885 Patent*: Google has contributorily infringed (and continues to contributorily infringe) the asserted claims of the '885 Patent by virtue of the fact that, in addition to importing and selling Cast-enabled media players that come pre-installed with firmware, Google supplies software components for performing the accused functionality as part of firmware updates for Cast-enabled media players in the United States, and each time a user installs such a firmware update, the user "makes" an infringing device and thereby directly infringes the asserted claims of the '885 Patent under 35 U.S.C. § 271(a).  The software components included in the firmware updates are material components of Cast-enabled media players that are not staple articles or commodities of commerce suitable for substantial noninfringing use because the only possible use for these software components is to be installed and run on Cast-enabled media players.

Along with its actual knowledge of the '885 Patent, Google knew (or should have known) that the software components included in the firmware updates were especially made or

adapted for installation on Cast-enabled media players, and that installation of these software components by others resulted in (and continues to result in) direct infringement of the '885 Patent under 35 U.S.C. § 271(a) because each such installation "makes" an updated player that meets every element of every asserted claims.

Moreover, as a result of Google's contributory conduct, others have directly infringed the asserted claims of the '885 Patent.  For example, users have installed the supplied software components included as part of the firmware updates onto Cast-enabled media players in the United States, thereby "making" updated Cast-enabled media players, which constitutes direct infringement.  As another example, after installing the software components included as part of the firmware updates onto Cast-enabled media players, users have used Cast-enabled media players, which also constitutes direct infringement of the asserted claims.

## II.    IDENTIFICATION OF THE PRIORITY DATE FOR EACH CLAIM OF THE ASSERTED PATENTS

Sonos sets forth that the invention date and priority date for each asserted claim below:

A.  '615 Patent (claims 1-3, 6-9, 11-15, 18-21, 23-26, 28-29)

- Invention Date: July 15, 2011

- Priority Date: December 30, 2011

B.  '033 Patent (claims 1-2, 4, 7-13, 15-16)

- Invention Date: July 15, 2011

- Priority Date: December 30, 2011

C.  '206 Patent (claims 1-5, 7, 10-19)

- Invention Date: December 21, 2005

- Priority Date: September 12, 2006

D.  '966 Patent (claims 1-4, 6-12, 14-20)

- Invention Date: December 21, 2005

- Priority Date: September 12, 2006

E.  '885 Patent (claims 1-3, 5-10, 12-17, and 19-20)

- Invention Date: December 21, 2005

- Priority Date: September 12, 2006

## III. DOCUMENT PRODUCTION

Sonos has previously produced, *inter alia*, copies of the file history for each Asserted

Patent and evidence of conception and reduction to practice. The foregoing documents are

included in the Bates range SONOS-SVG2-00000001 - SONOS-SVG2-00032285.

Dated:  <u>June 4 2021</u>                                        Respectfully submitted,

By: *<u>/s/ Rory P. Shea</u>*
        Rory P. Shea

Mark D. Siegmund
State Bar No. 24117055
Law Firm of Walt, Fair PLLC.
1508 North Valley Mills Drive
Waco, Texas 76710
Telephone: (254) 772-6400
Facsimile: (254) 772-6432
mark@waltfairpllc.com

Jeffrey L. Johnson
Texas Bar No. 24029638
ORRICK, HERRINGTON & SUTCLIFFE LLP
609 Main Street, 40th Floor
Houston, TX 77002
Telephone:  713.658.6400
Facsimile:  713.658.6401
jj@orrick.com

Clement Seth Roberts
California Bar No. 209203
ORRICK, HERRINGTON & SUTCLIFFE LLP
405 Howard St.
San Francisco, CA 94105
Telephone:  415.773.5484
Facsimile:  415.773.5759
croberts@orrick.com

Bas de Blank
California Bar No. 191487
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Blvd.
Menlo Park, CA 94205
Telephone:  650.614.7343
Facsimile:  650.614.7401
bdeblank@orrick.com

Alyssa Caridis
California Bar No. 260103
ORRICK, HERRINGTON & SUTCLIFFE LLP
777 South Figueroa St., Suite 3200
Los Angeles, CA 90017
Telephone:  213.612.2372
Facsimile:  213.612.2499
acaridis@orrick.com

Kristina D. McKenna
Massachusetts Bar No. 706245
ORRICK, HERRINGTON & SUTCLIFFE LLP
222 Berkeley St., Suite 2000
Boston, MA 02116
Telephone: 617.880.1800
Facsimile: 617.880.1801
kmckenna@orrick.com

George I. Lee
Illinois Bar No. 6225430
Sean M. Sullivan
Illinois Bar No. 6230605
Rory P. Shea
Illinois Bar No. 6290745
J. Dan Smith
Illinois Bar No. 6300912
LEE SULLIVAN SHEA & SMITH LLP
656 W. Randolph St., Floor 5W
Chicago, IL 60661
Telephone:  312.754.9602
Facsimile:  312.754.9603
lee@ls3ip.com
sullivan@ls3ip.com
shea@ls3ip.com
smith@ls3ip.com

ATTORNEYS FOR PLAINTIFF SONOS, INC

**<u>CERTIFICATE OF SERVICE</u>**

The undersigned hereby certifies that on June 4, 2021, a copy of the foregoing was served via email to all counsel of record.

By: *<u>/s/ Rory P. Shea</u>*
    Rory P. Shea