# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# WACO DIVISION

| | |
|---|---|
| SONOS, INC.,<br><br>      Plaintiff,<br><br>vs.<br><br>GOOGLE LLC,<br><br>      Defendants. | Case No. 6:20-cv-00881-ADA |

**GOOGLE LLC'S MOTION TO STRIKE SONOS'S UNTIMELY PRIORITY CLAIMS**

I.      **INTRODUCTION**

Defendant Google LLC ("Google") respectfully moves to strike Sonos's untimely-disclosed priority date claims for the asserted patents and reliance on its late-produced documents purportedly in support thereof. This Court's Order Governing Proceedings for Patent Cases 3.4 ("OGP") requires a plaintiff to identify the priority date for each patent-in-suit and produce all documents evidencing conception and reduction to practice seven days prior to the Rule 16 Case Management Conference. Here, that Rule 16 Case Management Conference was deemed to have taken place on December 18, 2020. Despite this, Sonos served second amended infringement contentions ***nearly six months*** later. In June 2021, Sonos added new contentions regarding its claimed invention dates and cited 6,000 pages of new alleged evidence of conception and reduction to practice. These untimely amendments were no small matter. They drastically changed the relevant priority dates for every one of the five asserted patents. Sonos now contends the priority date for three of the five asserted patents is almost nine months earlier than it disclosed in December 2020. For the two other patents, it contends the priority date is now approximately 5.5 months earlier.

Sonos failed to certify its amendments were based on material identified after the preliminary contentions were served, as required under the OGP. Nor could it, because its contentions are based on ***Sonos's own documents***, which it had in its possession long before this case even began. These tardy disclosures and productions are prejudicial to Google, as they were served three months after Google served its preliminary invalidity contentions. Google spent significant time and expense searching for prior art based on Sonos's originally disclosed priority dates, including identifying prior art that Sonos now contends is not prior art at all under its alleged new priority dates. Sonos should not be allowed to disregard this Court's OGP by waiting until it reviewed Google's invalidity contentions to decide to assert new, earlier priority dates based on its own documents. Sonos's untimely new contentions should be stricken.

II.     **BACKGROUND**

Per its Second Amended Complaint, Sonos alleges infringement of U.S. Patent Nos. 9,967,615 ('615 patent); 10,779,033 ('033 patent); 9,344,206 ('206 patent); 10,469,966 ('966 patent); and 10,848,885 ('885 patent). *See* Dkt. 51. The '615 and '033 patents are referred to as the

"direct play" or "cloud queue" patents, and the '206 and '966 patents are known as the "zone scene" patents. Sonos added the '885 patent, also a "zone scene" patent, in February 2021. *Id.*

On December 11, 2020, Sonos served Google with its preliminary infringement contentions. These preliminary contentions identified December 30, 2011 as the priority date for the asserted claims of the cloud queue patents and September 12, 2006 as the priority date of the asserted claims of the original zone scene patents ('206 and '966 patents). *See* Dkt. 83-5 at 13. The contentions did not identify any evidence in support of conception or reduction to practice other than the file histories of certain patents-in-suit. *See id.*

On January 8, 2021, Sonos served Google with amended infringement contentions. Ex. 1. Those amended contentions did not modify Sonos's claimed priority dates, but did add U.S. Patent No. 10,848,885, another zone scene patent. Sonos again claimed the same September 12, 2006 priority date for the '885 patent that it did for the other zone scene patents. *Id.* at 6. Like Sonos's initial contentions, the amended contentions similarly referenced only "the file history for each Asserted Patent" as the evidence supporting conception or reduction to practice. *Id.* Google wrote to Sonos regarding its contentions on February 21, 2021. Ex. 2. With respect to Sonos's priority claims, Google noted that "Sonos produced nothing other than the file histories for the patents-in-suit" and that, given Sonos's decision not to claim earlier priority dates, Google "understand[s] that Sonos has no additional evidence of conception or reduction to practice and will proceed accordingly." *Id.* at 1. Sonos failed to substantively reply to Google's letter or supplement its evidence in response, prompting Google to reiterate that given Sonos's choice to comply with the Court's OGP by producing "only the file histories for the then-asserted patents," Google "oppose[]d any untimely production of" and "Sonos's reliance on" any further documents "evidencing conception and reduction to practice." Ex. 3 at 2. On March 5, 2021, Google served Sonos with its invalidity contentions for each of the direct play and zone scene patents, relying on Sonos's originally disclosed priority dates. Ex. 4 at 5-6.

As the parties entered the claim construction phase, Google propounded various requests for production on Sonos relating to claim construction, as permitted by the OGP. Google's discovery requests were broader than those of the OGP, seeking, among other things, "[a]ll documents that

reflect, refer to, or relate to the alleged conception, alleged diligence for conception to reduction to practice, and any actual reduction or practice of the alleged inventions shown, described, and claimed in the Asserted Patents or any Related Patent, including inventor notes and any communications with Third Parties" relating to those topics. *See* Ex. 5. Even then, Sonos once again refused to produce any documents in response. *See id.* at 9. Only after Google threatened to move to compel did Sonos produce any documents. See Ex. 6.

On June 4, 2021, after claim construction exchanges were well underway, three months after Google served its invalidity contentions, and **nearly six months** after the deadline for identifying priority dates, Sonos served Google with second amended infringement contentions that added new, earlier invention dates for all of the asserted patents. *See* Dkt. 83-6. For the cloud queue patents, Sonos's priority date changed from December 30, 2011 to July 15, 2011. *Id.* at 15. For the zone scene patents, Sonos's priority date changed from September 12, 2006 to December 21, 2005.[1]

Sonos also identified 6,000 pages of documents purportedly supporting conception and reduction to practice. *Id.* However, Sonos intentionally obfuscated which of the 6,000 pages of documents are actually evidence of conception and reduction to practice. Its contentions state only that documents evidencing conception and reduction to practice are "included" within one giant Bates range, which also includes unrelated documents (such as pleadings from prior litigation). Ex. [example document]. Sonos similarly has not identified which documents are evidence of conception or reduction to practice for which asserted patents, leaving Google to guess which documents are relevant to each patent within the 6,000 pages of documents Sonos belatedly produced.

On July 9, 2021, Google sent correspondence requesting that Sonos withdraw its untimely priority dates and citations to new evidence of conception and reduction to practice. Ex. 7. Sonos refused, prompting Google to seek this Court's assistance on the matter on August 12, 2021. Ex. 8.

---

[1] Sonos labeled its new, earlier dates as "invention dates" and purportedly maintained the same "priority dates." It is not clear what, if any, distinction Sonos is drawing between these terms. *Taurus IP, LLC v. DaimlerChrysler Corp.*, 726 F.3d 1306, 1322 (Fed. Cir. 2013) (referring to "priority to invention"). Regardless, the result is that Sonos is impermissibly attempting to change the date it admits materials would become prior art—whether it refers to that as the "priority date" or the "invention date."

Pursuant to the Court's directive on August 19, 2021, Google now submits this motion to strike Sonos's untimely priority dates and evidence. Ex. 9.

## III.   ARGUMENT

### A.   Sonos's New Contentions and Cited Evidence Are Untimely Under the OGP

Sonos's late supplementation of its priority claims and untimely document production allegedly evidencing conception and reduction to practice is contrary to this Court's OGP and thus should be stricken. The OGP clearly requires that a plaintiff "serve preliminary infringement contentions," "*identify the priority date (i.e. the earliest date of invention)* for each asserted claim," "produce . . . *all documents evidencing conception and reduction to practice for each claimed invention,*" and "produce . . . a copy of the file history for each patent-in-suit" not later than seven days before the case management conference. OGP ¶ 2 (emphasis added). Accordingly, because the conference took place on December 18, 2020, Sonos was required to identify its priority dates and produce conception evidence on December 11, 2020 with its preliminary infringement contentions. *See* Dkt. 31. Sonos chose at that time to comply with the Court's OGP by identifying the filing dates of the patents-in-suit as the priority date and relying solely on the file histories as evidence of conception and reduction to practice. Indeed, Sonos doubled-down on this decision when it served its first amended set of infringement contentions a month later, adding the '885 patent, but still relying on the same priority dates and the file histories alone. *See* Dkt. 83-5 at 13; Ex. 1 at 6.

Sonos then waited *almost six months* to produce over 6,000 pages of documents that it is now seeking to rely upon for conception and reduction to practice. Ex. 6. Under the OGP, these Sonos documents should have been produced in December 2020, but were not. Their untimely production six months after the deadline and Sonos's reliance on them to try and move the priority date for every patent-in-suit is a clear-cut violation of this Court's OGP.

Indeed, Sonos has intentionally obfuscated which of the 6,000 pages of documents are evidence of conception and reduction to practice. Its contentions state only that documents evidencing conception and reduction to practice are "included" within one giant bates range, which also includes unrelated documents (such as pleadings from prior litigation). Sonos similarly has not identified which documents are evidence of conception or reduction to practice for which asserted

patents, leaving Google to guess which documents are relevant to each patent within the 6,000 pages of documents Sonos belatedly produced.

Sonos has never provided a legitimate explanation for its failure to comply with this Court's OGP. In the prior discovery statement submitted to the Court, Sonos relied on footnote 8 of the OGP to try and excuse its misconduct. But that footnote is inapposite—it allows parties to amend preliminary contentions "so long as counsel certifies that it undertook reasonable efforts to prepare its preliminary contentions" (which Sonos failed to do) and "the amendment is based on material identified *after* those preliminary contentions were served."[2] OGP at 8, fn. 8 (emphasis added). Yet all of this information has been in Sonos's possession for years—long before this case began—and Sonos obviously has had access to its own documents and inventors. Tellingly, Sonos did *not* certify its amended contentions were based on material identified *after* those preliminary contentions were served, even though that is expressly required by the OGP. *See also Harvatek Corp. v. Cree, Inc.*, No. C 14-05353 WHA, 2015 WL 4396379, at *3 (N.D. Cal. July 17, 2015) (requirement that conception or reduction to practice documents be produced early in a case "poses a minimal burden for a patent holder, who should already know the conception date of a patented invention prior to commencing litigation"). Furthermore, Sonos has already litigated related technologies before the International Trade Commission against Google. There is no reason Sonos could not have produced its own documents and contentions earlier as required by the OGP, nor did Sonos ever move the Court for relief from its Order. Indeed, Sonos's assertion that it is free to provide its actual priority claims at *any time*—even half a year after their due date—is untenable. Accepting this position would render the Court's OGP requirements entirely illusory, as a plaintiff could essentially lay behind the log with its alleged conception evidence until it suited the plaintiff to produce it.

---

[2] Sonos also points to Google's reservation of rights to supplement its invalidity contentions as evidence that Google did not suffer prejudice, but this argument is misguided. Google reserved its right to supplement with respect to any material Sonos may have legitimately identified *after* serving preliminary infringement contentions. That reservation of rights is not an excuse for Sonos to unilaterally disregard the deadlines in the OGP, nor should it cause Google to have to scramble to respond to evidence Sonos had in its possession all along but merely chose not to disclose or produce until half a year past the deadline.

### B. Google Has Been Prejudiced By Sonos's Late Disclosures and Production

Sonos's delinquent priority claims and document production severely prejudice Google. Google served its invalidity contentions based on the original priority dates that Sonos asserted. Google therefore searched for prior art that would predate those priority dates and was not obligated to or on notice that it should search for prior art with earlier dates. Sonos's change in position is highly prejudicial given that it potentially renders meaningless much of the time and expense Google spent on hundreds of attorney hours identifying prior art before Sonos's original priority dates and drafting hundreds of pages of invalidity contentions in reliance on that date.

Contrary to Sonos's assertion (Ex. 8), Sonos's late-identified priority dates would in fact render certain prior art unviable. For example, Google identified Clementine Music Player, dated December 29, 2011, as prior art to the cloud queue patents based on Sonos's original priority date of December 30, 2011 and before Sonos disclosed its new priority claim of July 16, 2011. Ex. 4 at 51, 65. Google also identified numerous guides, manuals, specifications, and publications from 2006 as prior art to the zone scene patents based on Sonos's original priority date of September 12, 2006, yet those documents would post-date Sonos's new priority claim of December 21, 2005. *Id.* at 14-16 (*e.g.,* "Sonos Digital Music System Zoneplayer ZP80 Setup Guide, January 2006," "Sonos ZonePlayer 100 Spec Sheet, 2006," "Sonos Digital Music System User Guide, January 2006," "Crestron AES Operations Guide, 2006"). It appears that Sonos waited until it had the opportunity to review Google's invalidity contentions identifying strong prior art before belatedly identifying new priority dates in an attempt to defeat that prior art. This is exactly the prejudice the deadlines provided in the OGP are designed to avoid.

Moreover, Sonos's assertion that Google's March 31, 2021 claim construction-related requests for production "establishes that Google had ***not*** relied on" Sonos's original priority dates because "Google expected Sonos to produce [such] documents in response" is incorrect. Ex. 8. Google's requests sought a broader category of documents for purposes of claim construction—not to cure Sonos's failure to identify earlier priority dates or identify conception evidence beyond the file histories of the asserted patents. *See* Ex. 5 at 8 (seeking documents "that reflect, refer to, or relate to the alleged conception, alleged diligence from conception to reduction to practice, and any

actual reduction to practice" of the inventions "shown, described, and claimed in the Asserted Patents or any Related Patent," including "inventor notes" and "communications with Third Parties" related to any alleged claimed inventions "and/or each purported inventor's individual contributions thereto"). Furthermore, when Sonos finally did produce some documents it contends allegedly evinces conception or reduction to practice, Sonos did not indicate it was doing so in response to Google's discovery requests—indeed, it appears that this was a story concocted by Sonos *ex post facto* as an excuse for its tardy disclosures and production. Regardless, Sonos should not benefit from its own failure to comply with the deadlines in the OGP.[3]

## IV. CONCLUSION

For the foregoing reasons, Google requests that the Court strike Sonos's untimely priority dates and reliance on its late-produced documents.

DATED: August 26, 2021

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By: *Charles K. Verhoeven*
Charles K. Verhoeven
charlesverhoeven@quinnemanuel.com
Melissa Baily
melissabaily@quinnemanuel.com
Jordan R. Jaffe
jordanjaffe@quinnemanuel.com
Lindsay Cooper
lindsaycooper@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111-4788
Telephone:  (415) 875-6600
Facsimile:  (415) 875-6700

Attorneys for GOOGLE LLC

---

[3] Google also engaged in the claim construction process based on Sonos's original priority claims and is further prejudiced because it was unable to identify new terms and brief them in view of Sonos's alleged evidence of conception and reduction to practice. This type of extrinsic evidence can be considered in constructing claims and terms.

## CERTIFICATE OF SERVICE

Pursuant to the Federal Rules of Civil Procedure and Local Rule CV-5, I hereby certify that, on August 26, 2021, all counsel of record who have appeared in this case are being served with a copy of the foregoing via the Court's CM/ECF system.

/s/ *Charles K. Verhoeven*
Charles K. Verhoeven