Pages 1 - 29

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable William H. Alsup, Judge

GOOGLE, LLC,                        )
                                    )
            Plaintiff,              )
                                    )
  VS.                               )    NO. C 20-06754 WHA
                                    )
SONOS, INC.,                        )
                                    )
            Defendant.              )
_____ )
SONOS, INC.,                        )
                                    )
            Plaintiff,              )
                                    )
  VS.                               )    NO. C 21-07559 WHA
                                    )
GOOGLE, LLC,                        )
                                    )
            Defendant.              )
_____ )

                          San Francisco, California
                          Thursday, January 13, 2022

           **TRANSCRIPT OF TELEPHONIC PROCEEDINGS**

**APPEARANCES**:  (via telephone)

For Plaintiff/Defendant Google:

                    QUINN, EMANUEL, URQUHART & SULLIVAN LLP
                    50 California Street - 22nd Floor
                    San Francisco, California  94111
              BY:  **CHARLES K. VERHOEVEN, ATTORNEY AT LAW**
                    **LINDSAY COOPER, ATTORNEY AT LAW**


         **(APPEARANCES CONTINUED ON THE FOLLOWING PAGE)**


REPORTED BY:  Marla F. Knox, CSR No. 14421, RPR, CRR, RMR
United States District Court - Official Reporter

1    **APPEARANCES:**  (cont'd, via telephone)

2    For Defendant/Plaintiff Sonos:

3                          MCGUIRE WOODS LLP
                          1800 Century Park East - 8th Floor
4                          Los Angeles, California  90067
               BY:  **SEAN M. SULLIVAN, ATTORNEY AT LAW**
5
                          LEE SULLIVAN SHEA & SMITH LLP
6                          656 West Randolph Street - Suite 5W
                          Chicago, Illinois  60661
7               BY:  **COLE B. RICHTER, ATTORNEY AT LAW**

8                          ORRICK, HERRINGTON & SUTCLIFFE LLP
                          405 Howard Street
9                          San Francisco, California  94105
               BY:  **CLEMENT S. ROBERTS, ATTORNEY AT LAW**

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1   Thursday - January 13, 2022                    9:35 a.m.

 2                     P R O C E E D I N G S

 3                        ---oOo---

 4        THE CLERK:  Calling civil action 20-6754, Google LLC

 5   versus Sonos, Inc. and related action 21-7559.

 6        Counsel, please state your appearances for the record

 7   beginning with Counsel for Google.

 8        MR. VERHOEVEN:  Good morning, Your Honor, Charles

 9   Verhoeven on behalf of Google.  With me is Lindsay Cooper.  And

10   we are ready to proceed.

11        MR. SULLIVAN:  Your Honor, this is Sean Sullivan on

12   behalf of Sonos.  I have got a few other colleagues on the

13   line.  I will let them introduce themselves.

14        MR. RICHTER:  Good morning, Your Honor, Cole Richter

15   from the Lee Sullivan firm in Chicago on behalf of Sonos.

16        MR. ROBERTS:  And good morning, Your Honor, this is

17   Clement Roberts from the Orrick firm, also on behalf of Sonos.

18        THE COURT:  Anyone else?

19                     (No response.)

20        THE COURT:  All right.  Good morning to everyone.

21        Let me -- this is another motion to amend, and I think you

22   also have some case management issues you want to bring up.

23        With respect to the motion to amend, is this true that

24   with respect to the additional patent that Google wants to add

25   to its declaratory judgment complaint, it's simply the same
```

1    patent that Sonos is asserting against it in the Texas case --

2    that was added to the Texas case?

3        And so in order to make the top pleadings line up, Google

4    wants to add that in.  So let me ask Sonos.  Is that correct?

5        **MR. SULLIVAN:**  Yes, Your Honor, that's correct.  That

6    is not what the dispute is on the present motion.  We are fine

7    with --

8        **COURT REPORTER:**  I'm sorry for interrupting.  Can you

9    please identify yourself?

10        **MR. SULLIVAN:**  I am sorry.  Sean Sullivan on behalf of

11    Sonos.

12        That is correct, Your Honor.  We are not disputing that

13    they can add that patent to their complaint.

14        **THE COURT:**  Well, what then is the dispute?  Tell me

15    the dispute.

16        **MR. SULLIVAN:**  Yeah, Sean Sullivan here again,

17    Your Honor.

18        The dispute is over they want to add some breach and

19    conversion claims, and we don't believe that those claims have

20    any bearing on any of the issues in this case.

21        **MR. VERHOEVEN:**  Your Honor, this is Mr. Verhoeven.

22    Would you like me to begin?

23        **THE COURT:**  All right.  So let's -- yeah, explain to

24    me why the conversion and breach of contract should be added

25    in.

1        **MR. VERHOEVEN:**  Sure, Your Honor.  Again, this is

2   Mr. Verhoeven on behalf of Google.

3        Just some background, this is basically a futility

4   argument that they made.

5        We have filed a motion to amend the complaint, and we

6   sought to add declaratory judgment claims, which aren't

7   disputed, Your Honor; and then we have also sought to add a

8   breach of contract claim and a conversion claim.

9        And that is subject to dispute, Your Honor, just to frame

10  this issue.  And the dispute is not prejudice.  It is not -- it

11  is basically futility.  They are arguing the merits.

12       And so let me turn directly to these claims, the breach of

13  contract and conversion.

14       In order for me to start, I need to give a little

15  background, Your Honor.  And -- so let me just set the stage

16  here.

17       In 2013, Your Honor, Sonos approached Google and sought to

18  work with Google to help integrate some of Google's services

19  into some of Sonos' products.

20       They sought help from Google with respect to features such

21  as the ability to host music remotely; what we call Cloud Queue

22  today.  We knew how to do that.  They didn't.

23       Google agreed to help Sonos, and they have entered into a

24  collaboration agreement; but as part of that collaboration

25  agreement, Your Honor, Google insisted -- and this is in

1  section 3.4 of the collaboration agreement -- that, quote, any

2  and all -- let me read you the quote -- 3.4, quote, ownership

3  of service provider -- that is Google -- intellectual property

4  rights.

5      "The music service, the provider developments, as defined

6  below, and any and all intellectual property rights arising

7  from or related thereto are and shall remain the sole and

8  exclusive property of service provider."  That's Google,

9  Your Honor.

10     Next sentence, "Sonos will not claim for itself or for any

11  third party any right, title, interest, or license to the music

12  service or provider developments."

13     And then it goes on to define provider developments as any

14  and all development work done by or on behalf of Google in

15  creating the integrated service offering and any code or other

16  materials owned or controlled by service provider Google and

17  included by service provider Google in the integrated service

18  offering.

19     And then it goes on.  So we -- Google agreed to work with

20  Sonos provided that it had these protections.

21     Now, the first time that Google had any notice of a breach

22  of section 3.4 was when the complaint was filed in this case,

23  Your Honor.

24     And in that complaint, Sonos accused products that were

25  the result of the development exercise in breach of this

1    provision and claimed -- and asserted their intellectual

2    property rights against products of that nature.

3        And, in fact, in their opening --

4        THE COURT:  I'm confused.  The phone cut out for a

5    split second.

6        MR. VERHOEVEN:  Sure.

7        THE COURT:  I'm sorry.  Go back to who is accusing who

8    of what.  You never told me what the accused product is and

9    whether it is Google's product or Sonos' product.

10       It sounds like you are suing Sonos.  This is very

11   confusing.  So go back about two sentences and start over.

12       MR. VERHOEVEN:  Okay.  So Sonos filed a complaint

13   against Google in the Western District of Texas alleging patent

14   infringement.

15       If you look at the complaint, Your Honor, the patent

16   infringement claim -- and this is a motion to amend -- to add

17   counterclaim for breach of contract to that claim.

18       So they asserted breach -- excuse me -- they asserted

19   patent infringement on a number of patents.  They accused

20   products that were Google products developed as part of this

21   collaboration agreement.

22       They went further than that, Your Honor.  They alleged in

23   the complaint that Google used -- this is a quote from

24   paragraph 14 -- quote, Google used the knowledge it had gleaned

25   from Sonos to build and launch its first wireless multiroom

1  audio product, Chromecast Audio; and they are accusing the

2  result of the -- results of the collaboration are the very

3  things that they are accusing of being misappropriated IP.

4      And so when they filed this, as Your Honor remembers, we

5  had a motion to transfer.  We objected to jurisdiction.

6      But we did answer -- so we couldn't file an affirmative

7  counterclaim.  And the reason for that, Your Honor, is because

8  the exclusive forum selection clause agreed to by the parties

9  in California.

10      And Your Honor had -- as of the time that any motion would

11  be relevant in the Western District of Texas, in the Northern

12  District of California -- Your Honor stayed the Northern

13  District of California case.

14      So we couldn't file a motion to amend to add new breach of

15  contract claims in the Northern District until the stay was

16  lifted, which is what we did.

17      And we did not file it in Texas because we were

18  challenging jurisdiction in Texas.  You know, we didn't want to

19  file an affirmative claim seeking relief from the Court in

20  Texas at the same time we were challenging jurisdiction.

21      So we filed our motion to amend timely after the Court

22  lifted the stay in the Northern District in the proper

23  jurisdiction.

24      And so now we have this dispute where something that is --

25  is a foundational argument placed in the original complaint by

1    Sonos, they are saying we can't talk about it.

2        They are saying we can't have a motion to amend to say, in

3    fact, there is this section 3.4 of this contract where we

4    worked together and says we own these products.  We own the IP

5    in these products.

6        And by asserting that you own it and that you are -- and

7    that you, Google, own it or -- excuse me -- you, Sonos, own it

8    and that Google has no rights to it, you are breaching section

9    3.4 of the collaboration agreement.

10       And so that's --

11           **THE COURT:**  Wait.

12           **MR. VERHOEVEN:**  Sorry, Your Honor.

13           **THE COURT:**  Wait a minute.  What did that provision

14   say again?

15           **MR. VERHOEVEN:**  Sure.  The provision is 3.4 of the

16   content integration agreement.

17       I'm looking for a docket cite to that.  But in the

18   meantime, it is 3.4 of the agreement.

19       And I will read it:  "Ownership of service provider

20   intellectual property rights."  That is the title of the

21   paragraph.  Service provider in this contract, Your Honor, is

22   Google.

23       "The music service, the provider developments, as defined

24   below, and any and all intellectual property rights arising

25   from or related to thereto are and shall remain the sole and

1    exclusive property of service provider."  That's Google.

2        Next sentence:  "Sonos will not claim for itself or for

3    any third party any right, title, interest, or licenses to the

4    music service or provider developments" -- and then it says --

5    "except for the limited license granted herein."

6        And then it goes on -- then it goes on to define provider

7    developments.  I don't know if you need to hear that.  It is

8    very broad and covers everything.

9        And so this collaboration that we are seeking to amend --

10   file an amendment to have a counterclaim for breach was part of

11   their complaint in the original complaint.

12       And they claim willfulness based on the collaboration

13   agreement throughout their complaint in Texas.

14       We have not had an opportunity to file a counterclaim

15   until the stay was lifted in the Northern District of

16   California.

17       However, Your Honor, it should be noted that in our

18   answer, we asserted affirmative defenses based on the same

19   theory, the same breach.

20       So, we have an implied license affirmative defense based

21   on this very provision of the contract, Your Honor.

22       We have equitable estoppel defense.  We have a couple

23   other affirmative defenses, all based on this same section.

24       And all we are doing with this motion to amend is adding

25   in the counterclaim that would go along with the same facts.

1          **THE COURT:**  All right.  Let me ask you a question.  I

2     have got self questions.  But if it's -- are you saying that

3     the accused -- are you saying that the patents themselves --

4     Sonos' patents arose out of that collaboration agreement such

5     that the wrong inventors were given to the PTO?

6          I don't -- I want to make sure I understand your argument.

7     Go ahead.

8          **MR. VERHOEVEN:**  Sure, Your Honor.

9          So, that's the opposition's argument.  They are saying our

10    breach of contract claim is futile, and then they go on to

11    argue the facts, not the pleadings.

12         And they say it is futile because two of the patents that

13    we are asserting that came out of that -- that correspond to

14    the products that came out of that development -- in other

15    words, the development -- the Cloud Queue development

16    undisputably, it came out of the collaboration agreement.

17         Undisputably they are claiming IP.  Undisputably they are

18    accusing us of infringement on that.  So, that part is clear.

19         In the opposition to that, our motion to amend, they say,

20    it is futile because the two patents that we, Sonos, are

21    asserting against that product, that came out of the

22    collaboration agreement, preexisted the collaboration agreement

23    in terms of the original filing date was.

24         And then they go on and say to Your Honor in writing that

25    the agreement -- this is a quote, docket 81 at 6 -- quote, is

1   explicitly limited to new intellectual property rights arising

2   from the parties' collaboration.  And it goes on.

3        That's not true.  You look at section 3.4.  It includes,

4   quote, any and all intellectual property rights arising or

5   related thereto.

6        Again, these are all factual questions, not appropriate on

7   a motion to dismiss or futility.

8        But in any event, Your Honor, these (sic) provision covers

9   our product that they are accusing regardless of what patents

10  that Sonos had in the past because they have contractually

11  given us a right and said they won't assert any rights -- any

12  intellectual property rights on these products, number one.

13       Number two, the statement about the Cloud Queue patent and

14  that it was filed before the collaboration is highly

15  misleading.

16       In fact, in 2019, after the collaboration, Sonos amended

17  that patent to add in the Cloud Queue technology that Google

18  provided for Sonos and claim it as their own.

19       And they are saying we can't even make these points

20  because we are going to lose -- trust me.  They are going to

21  lose.

22       And it's just -- it is a typical arguing the merits when

23  the pleadings satisfy the pleading standards, Your Honor.

24       If I could just briefly talk about their second basis for

25  futility to save time, Your Honor.

1          **THE COURT:**  No, not yet.

2          **MR. VERHOEVEN:**  Okay.

3          **THE COURT:**  I want to hear the response to your

4     argument.  And I'm not prejudging anything here, but I want to

5     summarize what I think Mr. Verhoeven's argument is so that the

6     responding lawyer will have in mind what bothers me and maybe

7     address it.

8          Here is what bothers me:  The two sides had an agreement

9     back in 2013, collaboration agreement, that seems to say that

10    any and all intellectual property that comes out of that

11    collaboration will belong to Google.

12         And then somehow the -- Sonos, despite that agreement, was

13    able to get patents out of the PTO that cover that very

14    technology.

15         And now the -- and is suing Google on it even though the

16    contract said it would belong to Google.

17         Now, I'm not saying there must be something wrong with

18    that argument; but if it were true, then Sonos and their

19    lawyers would be in a lot of trouble with me.

20         So you go ahead and let me hear from the Sonos lawyers.

21         **MR. SULLIVAN:**  Yes, Your Honor, this is Sean Sullivan

22    on behalf of Sonos.

23         And, yeah, it is not true what Mr. Verhoeven said.  And,

24    listen, there are a lot of things that I'd like to -- if I had

25    more time, I would disagree with Google's characterization of

1  the background of this as well as what the contract is really

2  covering.

3      I would also want to clear up the pleadings.  These are

4  not counterclaims, Your Honor.  These are actual claims that

5  Google is trying to file in its original complaint now.

6      They are trying to amend the original complaint to add

7  these as claims.  They are not affirmative counterclaims or

8  anything else like Mr. Verhoeven said.

9      You can take a look at the second amended complaint, and

10  you can see that they are counts along with their other counts.

11      So, there is a lot to deal with there.  But let me just

12  jump into the issue and address the point you raised,

13  Your Honor.

14      What happened was the '615 and the '033 patents, which is

15  what these breach and conversion claims are directed towards,

16  those have priority dates going back to December of 2011.

17      So that means that the written description for the

18  invention in those patents was filed with the Patent Office in

19  December of 2011.

20      Now, we know that the CIA was signed in 2013.  This was

21  signed for a collaboration between the parties to be able to

22  enable -- and this is said right up until the whereas clause in

23  the front of the CIA contract -- it is to enable these parties

24  to have the ability for Google's music app to directly play

25  music to Sonos' music system.  That's it.

1          We are not accusing that of infringement here, Your Honor.

2     The problem was -- is that Google didn't have any of these

3     speaker products or hadn't let other people -- other

4     competitors of Sonos use this technology until well after this

5     collaboration.

6          Their first product was launched in September of 2015, but

7     it finally added multiroom support at the end of 2015.

8          So, this was a very limited development here simply for

9     Google's Play music app to be used with Sonos' music system.

10    That's it.

11         Now, the intellectual property rights clause that

12    Mr. Verhoeven is referring to, that is talking about

13    intellectual property that is arising from the development

14    work, okay, that is being done as part of this collaboration.

15         It is not transferring all ownership of all Sonos patents

16    prior to this collaboration.  It is dealing with intellectual

17    property.  So inventions, right, inventions that are created

18    during this development work.

19         All right.  You can't invent something that has already

20    been invented.

21         The inventions in the '615 and '033 patents were described

22    and contained in the priority document filed with the Patent

23    Office in 2011.  They are already invented.

24         So clearly --

25              THE COURT:  No, wait, wait.

1        **MR. SULLIVAN:** -- they can't cover those facts.

2        **THE COURT:** Wait --

3        **MR. SULLIVAN:** Yes.

4        **THE COURT:** Wait, wait, wait. Let me ask a question.

5        **MR. SULLIVAN:** Yes, sir.

6        **THE COURT:** Were those pending claims amended after

7   the collaboration began?

8        **MR. SULLIVAN:** Yes, but the claims that were amended

9   after -- these are newer patents that were issued after the

10  collaboration.

11      But those claims have to have support, Your Honor, in the

12  2011 filing. You can't claim something that isn't in there.

13  The patent would be invalid if you did.

14       **THE COURT:** I get that. I understand that is basic

15  law.

16       **MR. SULLIVAN:** Right.

17       **THE COURT:** It happens all the time and they are

18  lurking in a specification -- lurking inventions that are not

19  actually claimed.

20      And so it could be that the collaboration, the light bulb

21  went off; say oh, my God, we can claim this; that's the ticket

22  because of -- and then maybe it would not have been claimed

23  but-for the specification. So, what do you say to that point?

24       **MR. SULLIVAN:** Yeah, Your Honor. If it was already in

25  the specification, then there wasn't a light bulb to go off

1    during the collaboration.

2        We had already written and described that invention in a

3    2011 specification before -- years before we ever talked to

4    Google.

5        So, it isn't something that could have been developed or

6    invented during that collaboration; right.

7            THE COURT:  I have to disagree -- let me disagree with

8    that.  I have seen it in too many cases --

9            MR. SULLIVAN:  Okay.

10            THE COURT:  -- where somebody says -- tries their best

11    to -- they revise their claims in order to read on somebody

12    else's product, and they originally didn't have any intent to

13    claim X, Y, Z.  But then whenever they had -- a reason comes

14    along, they say, oh, we can stretch the specification to cover

15    X, Y, Z.  And it was because they want a read on somebody

16    else's product.

17        So, it was not originally claimed; but then it winds up

18    getting through the PTO.  PTO says, okay, we accept that.

19        But -- so to me there would be a nice question if it could

20    be shown that the amendment was provoked by the collaboration.

21        Now, I don't know whether it could be or not.  That's the

22    facts.  But I can see a hole in your argument; that the

23    specification covered it; but it would not have been

24    influenced -- it is true about the specification because it is

25    locked in stone.  But the claims are not, and the claims are --

 1                **MR. SULLIVAN:**  The claims are not, Your Honor.

 2            **THE COURT:**  -- need to be asserted.

 3                **MR. SULLIVAN:**  Yes.  The claims are not, Your Honor.

 4    They are not locked in stone, you are correct.  But the date of

 5    invention for that claim is locked in stone.  It is 2011.

 6        Whether you change the claims or not after you see

 7    something or something is revealed, that's not really the

 8    issue.

 9        The issue is when did you invent that?  You invented it in

10    2011.  That's your invention date for purposes of prior art and

11    everything else like that.  You are entitled to that --

12            **THE COURT:**  Is there a Federal Circuit case on point

13    that helps us understand this problem?

14        In other words, it accepts your argument and says that an

15    agreement like this doesn't matter because the specification

16    preceded it?

17            **MR. SULLIVAN:**  I don't know if there is, but the logic

18    is black letter law, Your Honor.  I mean, you are entitled to a

19    2011 invention date for those claims if they are supported.

20    Otherwise, the patent is invalid.

21            **THE COURT:**  I'm not accepting that proposition yet --

22        **MR. SULLIVAN:**  Okay.

23            **THE COURT:**  -- because the claims can be monkeyed

24    around with.  After you know the secret sauce, then you can

25    mess around with your claims and claim something you wouldn't

1    otherwise have claimed.

2         All right.  Look, I'm going to let you take your most

3    important point; and then I will let the other side respond.

4    Go ahead.

5         **MR. SULLIVAN:**  All right.  Thank you, Your Honor.

6    Again, this is Sean Sullivan on behalf of Sonos.

7         And, you know, the important point is the timing there;

8    but I did want to address in particular the '615 patent.

9         So, at the basis of these breach and conversion claims,

10   this lynchpin, it is the same set of facts for all these

11   claims.

12        It basically says we in 2019 added a limitation that is

13   known as remote playback queue to the claims of the '033

14   patent.  That is at the heart and the foundation of all their

15   claims; that you added this remote playback queue limitation to

16   the claims of the '033 patent in 2019.

17        All right.  Well, that means that their claims cannot

18   apply to the '615 patent.  The '615 patent doesn't use that

19   limitation, remote playback queue.

20        And, in fact, the '615 patent issued in May of 2018, more

21   than a year before this 2019 amendment concerning the remote

22   playback queue in the '033 patent.

23        So, at an absolute minimum, there is just no way these

24   breach claims and conversion claims cover the '615 patent.

25        What Google has done is just lumped the two together and

said, oh, they are roughly the same subject matter.

But their claims are really -- if at all, valid or viable. I don't think they are for the reasons I said before -- but if they are viable, they are only viable to the '033 patent.  They cannot be viable right from their pleading to the '615 patent.

Now, I don't think they are viable to the '033 patent as well.  I think the question of whether or not they are an inventor, the question of whether or not, you know, these claims are supported by that original spec and were encompassed by that 2011 filing, that is going to take care of itself under patent law, Your Honor.

If these are valid and the claims of the '033 patent are supported by the 2011 spec, then, again, as I said before, the invention date for that claim is before the collaboration agreement existed.

And if they are invalid, then my point is that there is no intellectual property rights here to dispute ownership.  There is nothing to own.  It is an invalid patent.

**THE COURT:**  Well, yes, but they are pleading in the alternative -- it is just the way patent lawyers are.  They -- Mr. Verhoeven, I have got to move on.  I will give you one minute to respond on the '615.

**MR. VERHOEVEN:**  Thank you, Your Honor.

Let me be very clear, Your Honor, I don't want any mistakes in Your Honor's understanding.

1          The allegation about amendment is not with the '615;

2     right.  It is with the other one, the other patent, the '033.

3          However -- and I'm going to say very quickly a second

4     point, Your Honor -- our motion to amend doesn't specifically

5     allege specific patents.

6          It is just motion to amend for breach of contract.  We

7     need to take discovery.  We need to do the regular thing.

8          But the reason I dispute the statement about this

9     particular patent and futility is because of the language in

10    3.4.

11         Now, Counsel says that the collaboration agreement was

12    limited, and it implies that Google products, that it is not --

13    that the product that was developed was very narrow and not all

14    of these Google products.

15         Paragraph 14 of their complaint -- I will read it again --

16    "Google used the knowledge it had gleaned from Sonos to build

17    and launch its first wireless multiroom audio product,

18    Chromecast Audio."  That's paragraph 14 from their complaint.

19         So, they have alleged that Chromecast Audio came out of

20    this agreement and that we used Sonos information from this

21    collaboration to make it, and that it is violative of patents.

22         Regardless of what the patents are, Your Honor, we still

23    have a breach of contract claim under section 234 because they

24    promise that, quote, Sonos should not claim for itself or for

25    any third party any right, title, interest, or licenses in the

1    music service or provider development.

2       And that is exactly what it is doing.  That's all I have,

3    Your Honor.

4       **THE COURT:**  All right.  I'm going to take it under

5    submission, but you had a case management point that you wanted

6    to raise.  So Mr. Verhoeven, tell me what that is.

7       **MR. VERHOEVEN:**  Thank you, Your Honor.  I think we

8    have a --

9       **THE COURT:**  Yeah, we are hearing a female voice in the

10    background of somebody who failed to mute themselves; and you

11    might not want us to hear all of that.  So please mute

12    yourself.  All right.  Mr. Verhoeven, go ahead and explain the

13    case management point.

14       **MR. VERHOEVEN:**  All right, Your Honor.  So the

15    first -- there is one thing I want to speak to and that is, one

16    of the things in the case management conference is an addition

17    that was added by Sonos at 4:00 o'clock the day that the

18    statement was due, where they asked for consolidation and then

19    asked to realign the parties.

20       Of course, we didn't have any notice that they were going

21    to make that argument.  But so that Your Honor knows, we do not

22    oppose consolidation of the cases.

23       We vigorously oppose any effort to realign the parties at

24    this point in time.  As Your Honor knows, motions to realign

25    the parties are premature at this early stage.

1    We don't know what causes of action are going to be going

2    to trial.  We don't know who is going to win what on summary

3    judgment.

4        And as you have just heard, Your Honor, we have got

5    affirmative claims here that go with their claims.

6        And so, you know, at a minimum, it should be a motion that

7    gives us an opportunity to brief it.  But I really don't think

8    it is even necessary because it is premature to address

9    alignment of the parties for a jury trial at this point.

10       There is some depositions -- there is an hour cap dispute

11   that Ms. Cooper can address.  Ms. Cooper, are you there?

12       **MS. COOPER:**  Yes.  Good morning, Your Honor.

13       I just want to get your views on this because I think it

14   will inform discovery going forward over the next few months.

15       So the parties have agreed to a 100-hour limit on

16   depositions, but there is a dispute as to whether that limit

17   applies to third parties or not.

18       Our position -- Google's position is that third parties

19   should be excluded from the cap, and the reason for that is

20   because there is going to be a significant number of prior art

21   depositions in this case.

22       I can go through the list if you want, but we have at

23   least six including one of Sonos' named inventors.  So, it is

24   important that we get clarity on this so we can move forward

25   with depositions.

1          **THE COURT:**  Where did the 100 thing come from to begin

2    with?  I don't remember imposing that.

3          **MR. ROBERTS:**  Your Honor, this is Mr. Roberts --

4    Your Honor, this is Mr. Roberts.  If you'd like, the 100 hours

5    came from -- Your Honor --

6          **THE COURT:**  I would like you to explain to me your

7    view.

8          **MR. ROBERTS:**  Thank you, Your Honor.

9        I will address both issues taking them in reverse order.

10        There are two cases, one in which Google was Plaintiff in

11   front of Judge Chen and then these cases in front of

12   Your Honor.

13        In the Judge Chen case, the parties agreed to a

14   hundred-hour cap that included both third parties and all

15   parties.  And we then imported that agreement here.

16        But Google wants a hundred-hour cap when it's Plaintiff

17   including third parties.  But when it is the Defendant, it

18   wants a hundred-hour cap but then unlimited third-party

19   depositions.

20        And we know Your Honor wants -- thinks these cases are too

21   expensive.  They get too overwhelming.  There is too much

22   discovery.  Resources should be better spent on other things.

23        And we think what is good for the goose is good for the

24   gander.  If Google when it is Plaintiff wants the Defendant

25   limited to a hundred hours in the Northern District of

1    California including third parties, it should agree to that;

2    and we should have the same limits in reverse when it is

3    Defendant.

4        It shouldn't be one set of rules when it is Plaintiff and

5    a different set of rules when it is a Defendant.

6        And everybody agrees there has to be some cap; otherwise,

7    we are going to have bedlam in terms of the total number of

8    hours.

9        That's it on that issue.  Would you like me to address the

10   consolidation?

11       **THE COURT:**  Mr. Verhoeven, is it true that you are

12   trying to get more hours for you when you are the Plaintiff;

13   but you want them to be stuck when they are the Plaintiff with

14   lesser hours -- fewer hours; is that true?

15       **MR. VERHOEVEN:**  No, it's not.  And it is another

16   stretching of what actually is going on.

17       There was no request made for any additional third-party

18   depositions in that case by Sonos to us, Google.

19       So, you know, they are saying we wouldn't have agreed to

20   it or we have some double standard.  They didn't even ask for

21   it in that case, Your Honor.  So, there is no double standard.

22       The first time that there was a request for additional

23   depos to conduct third-party discovery was in this case.  It

24   was never made by Sonos in that other case.

25       So, to say that there is a double standard is highly

1  misleading.

2       **MR. ROBERTS:**  So, what I hear -- this is Mr. Roberts.

3  What I hear Mr. Verhoeven saying is that he is going to

4  stipulate in the Chen case that we get unlimited third-party

5  deposition hours if the Court here allows it.  Do I hear you

6  correctly, Mr. --

7       **THE COURT:**  What does Judge Chen have to do with my

8  case?

9       **MR. ROBERTS:**  The point is, Your Honor, again, that we

10  are attempting to negotiate in good faith limits on discovery

11  in line with this Court's very strict limits.

12       We -- instead of what the normal Federal Rule of Civil

13  Procedure is, which is a certain number of depositions, the

14  parties agreed to a number of hours.

15       And, you know, if the Court wants to impose the limits

16  under the Federal Rules, which are the number of depositions

17  that people get, that's fine too.

18       We had tried to give additional flexibility by agreeing to

19  a number of hours, but it is not the case that there is an

20  unlimited number of depositions of third parties or anybody

21  under the Federal Rules.

22       **THE COURT:**  I know.  But why does anyone even refer to

23  Judge Chen?

24       **MR. ROBERTS:**  Because, Your Honor, in that case Google

25  argued for -- and Sonos agreed -- that we would have a

1   hundred-hour limit that included both third parties and parties

2   in the case where they are patent Plaintiffs.  And we agreed to

3   that because that's what they wanted.

4         **THE COURT:**  I see.  So in that case Google is suing

5   Sonos?

6         **MR. SULLIVAN:**  Correct, Your Honor.

7         **MR. VERHOEVEN:**  Correct, Your Honor.  And they did not

8   ask for additional time for third parties in that case, period.

9         **THE COURT:**  Well, do you want additional time in that

10  case?

11        **MR. ROBERTS:**  Your Honor, we want the rules to be the

12  same in both cases.  So, honestly, I prefer a hundred hours in

13  both cases because I'd prefer the discovery to be limited.

14      But if the Court is going to grant additional hours here

15  for third parties, then, yes, we would want them there as well.

16        **THE COURT:**  Look, I have had this problem in other

17  cases although it has never been framed in terms of a hundred

18  hours.

19      But this is easy.  Use up the hundred hours first on

20  everybody.  So, in other words, for right now I'm agreeing with

21  Sonos.

22      But when you get near the end, I will grant you a little

23  bit more time if -- and here is the big if -- if the party

24  requesting more time has behaved properly with respect to

25  disclosures and with respect to discovery.

 1   If you misbehave, you don't get any more time.  So you are

 2   at risk.

 3   If I go ahead and give you the time now, then you will

 4   misbehave anyway.  So, I have learned the hard way.  I hold

 5   this -- I will be very blunt.  I hold this over your head.

 6   And if you goof up and you misbehave, you won't get any

 7   more time.

 8   So for right now I'm going to leave the 100 hours, it

 9   applies to everybody including third parties.  But I will be

10   open if you are a good citizen and you come back later and say,

11   we have used up 90 hours.  Can we have 20 more?  And it looks

12   to me like you have been a good citizen, I will give you the

13   extra time very likely and there will be other considerations.

14   I would be very open to it.  You would have to make your

15   case as to why you needed it.

16   So, that's the ruling on that.  I don't want to hear

17   anymore argument.  That is the ruling.

18       **MR. ROBERTS:**  Thank you, Your Honor.

19       **THE COURT:**  What was your issue about consolidation?

20   But wait.  I'm not going to say now who gets to go first at

21   trial.  No.  That's way premature.

22       **MR. ROBERTS:**  We will brief it later.  This is

23   Mr. Roberts.

24       **THE COURT:**  What else do I need to decide in case

25   management?

1          **MR. ROBERTS:**  Those are the only two issues as far as
2   I know, Your Honor.  At this point I think everything else you
3   can just go off the papers.
4          **THE COURT:**  All right.  I have to do -- I have got to
5   give you an order on this motion to amend.  I'm not prepared to
6   say what the answer is going to be.
7      Okay.  You-all can hang up now and I will go to the next
8   case -- the last case.
9              (Proceedings adjourned at 10:15 a.m.)
10                        ---oOo---
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

1

2

3                    <u>**CERTIFICATE OF REPORTER**</u>

4          I certify that the foregoing is a correct transcript

5    from the record of proceedings in the above-entitled matter.

6

7    DATE:    Monday, January 17, 2022

8

9

10

11    _____

12          Marla F. Knox, CSR No. 14421, RPR, CRR, RMR
        United States District Court - Official Reporter

13

14

15

16

17

18

19

20

21

22

23

24

25