CLEMENT SETH ROBERTS (STATE BAR NO. 209203)
croberts@orrick.com
ALYSSA CARIDIS (STATE BAR NO. 260103)
acaridis@orrick.com
EVAN D. BREWER (STATE BAR NO. 304411)
ebrewer@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105-2669
Tel.: (415) 773-5700; Fax: (415) 773-5759

GEORGE I. LEE (*pro hac vice*)
lee@ls3ip.com
SEAN M. SULLIVAN (*pro hac vice*)
sullivan@ls3ip.com
RORY P. SHEA (*pro hac vice*)
shea@ls3ip.com
J. DAN SMITH (*pro hac vice*)
smith@ls3ip.com
MICHAEL P. BOYEA (*pro hac vice*)
boyea@ls3ip.com
COLE B. RICHTER (*pro hac vice*)
richter@ls3ip.com
LEE SULLIVAN SHEA & SMITH LLP
656 W Randolph St., Floor 5W
Chicago, IL 60661
Tel.: (312) 754-0002; Fax: (312) 754-0003

*Attorneys for Sonos, Inc.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| SONOS, INC., | Case No. 3:21-cv-07559-WHA |
| Plaintiff, | **SONOS, INC.'S OPPOSITION TO GOOGLE LLC'S MOTION TO DISMISS SONOS'S SECOND AMENDED COMPLAINT** |
| v. | |
| GOOGLE LLC, | Date: February 24, 2022 |
| Defendant. | Time: 8:00 a.m. |
| | Place: Courtroom 12, 9th Floor |
| | Judge: Hon. William Alsup |
| | Second Amnd. Complaint Filed: 02/23/2021 |

# TABLE OF CONTENTS

**Page**

STATEMENT OF THE RELIEF REQUESTED ............................................................. 1

MEMORANDUM OF POINTS AND AUTHORITIES ............................................... 1

I.    INTRODUCTION ............................................................................................... 1

II.   FACTUAL AND PROCEDURAL BACKGROUND......................................... 1

  A.    A Brief History of Google's Infringement................................................ 1

  B.    Sonos Repeatedly Told Google That The Products Accused In This Case
        Were Making Use of the Technology Described In the Asserted Patents. ............ 2

  C.    Google Also Received Express Prior Notice For Each Challenged Patent. ........... 5

III.  LEGAL STANDARDS........................................................................................ 6

  A.    Willful Infringement. ................................................................................. 6

  B.    Indirect Infringement. ............................................................................... 7

  C.    Willful Blindness. ...................................................................................... 7

IV.   ARGUMENT ...................................................................................................... 8

  A.    Google Willfully Infringed the '855, '033 and '966 Patents. ................................ 8

        1.    Google Had Pre-Suit Knowledge of All Three Patents. ........................... 8

        2.    Sonos Is Not Required to Plead, Much Less Prove, Egregious
              Conduct. ........................................................................................ 12

        3.    Sonos Pleaded that Google Behaved Egregiously. ..................................... 14

  B.    Sonos Adequately Pleads Indirect Infringement for the '855, '033 and '966
        Patents. ........................................................................................................ 15

        1.    Google Had Pre-Suit Notice of Sonos's Indirect Infringement
              Claims. .......................................................................................... 15

        2.    Google Had Specific Intent to Induce Infringement.................................. 17

        3.    Sonos Alleged the Absence of Substantial Non-Infringing Uses. ............ 20

  C.    Dismissal with Prejudice Is Not Warranted. ...................................................... 22

V.    CONCLUSION ................................................................................................... 23

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*AllRounds, Inc. v. eShares, Inc.*,
    No. 20-CV-07083-VC, 2021 WL 5195099 (N.D. Cal. Nov. 9, 2021)....................................13

*Arctic Cat Inc. v. Bombardier Recreational Prod. Inc.*,
    876 F.3d (Fed. Cir. 2017).............................................................................................8

*Artrip v. Ball Corp.*,
    735 F. App'x 708 (Fed. Cir. 2018) ...............................................................................21

*Asia Vital Components Co. v. Asetek Danmark A/S*,
    377 F. Supp. 3d 990 (N.D. Cal. 2019) ..........................................................................7

*Avocet Sports Tech., Inc. v. Garmin Int'l, Inc.*,
    No. C 11-04049 JW, 2012 WL 1030031 (N.D. Cal. Mar. 22, 2012)....................................17

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)..............................................................................................6, 9

*In re Bill of Lading Transmission and Processing Sys. Patent Litig.*,
    681 F.3d 1323 (Fed. Cir. 2012)..................................................................................18

*CAP Co. v. McAfee, Inc.*,
    No. 14-CV-05068-JD, 2015 WL 3945875 (N.D. Cal. June 26, 2015)
    .......................................................................................................15, 17, 19, 20

*Core Optical Techs., LLC v. Juniper Networks Inc.*,
    No. 21-CV-02428-VC, 2021 WL 4618011 (N.D. Cal. Oct. 7, 2021)..............................13, 21

*Corephotonics, Ltd. v. Apple, Inc.*,
    No. 17-CV-06457-LHK, 2018 WL 4772340 (N.D. Cal. Oct. 1, 2018) .....................6, 7, 8, 12

*Eko Brands, LLC v. Adrian Rivera Maynez Enterprises, Inc.*,
    946 F.3d 1367 (Fed. Cir. 2020)..........................................................................6, 7, 12, 13

*Evolved Wireless, LLC v. Samsung Elecs. Co.*,
    No. CV 15-545-SLR-SRF, 2016 WL 1019667, at *4 (D. Del Mar. 15, 2016),
    *report and recommendation adopted*, No. 15-545-SLR-SRF, 2016 WL
    1381765 (D. Del. Apr. 6, 2016) ........................................................................9, 10, 11

*Finjan, Inc. v. Juniper Networks, Inc.*,
    No. C 17-05659 WHA, 2018 WL 905909 (N.D. Cal. Feb. 14, 2018) ..................................17

*Finjan, Inc. v. SonicWall, Inc.*,
    No. 17-CV-04467-BLF, 2018 WL 2234370 (N.D. Cal. May 16, 2018) ...............................15

*Finjan, Inc. v. Sophos, Inc.*,
    No. 14-cv-01197-WHO, 2015 WL 7075573 (N.D. Cal. Nov. 13, 2015) ...............................9

*Firstface Co. v. Apple, Inc.*,
No. 18-CV-02245-JD, 2019 WL 1102374 (N.D. Cal. Mar. 8, 2019) .................................. 6, 21

*Fluidigm Corp. v. IONpath, Inc.*,
No. C 19-05639 WHA, 2020 WL 408988 (N.D. Cal. Jan. 24, 2020)................................. 6, 17

*Fortinet, Inc. v. Forescout Techs., Inc.*,
No. 20-CV-03343-EMC, 2021 WL 2412995 (N.D. Cal. June 14, 2021) ............................... 21

*Fujitsu Ltd. v. Netgear Inc.*,
620 F.3d 1321 (Fed. Cir. 2010)............................................................................................... 7

*Gamevice, Inc. v. Nintendo Co.*,
No. 18-CV-01942-RS, 2018 WL 5310792 (N.D. Cal. Aug. 6, 2018) ..................................... 7

*Google LLC v. Princeps Interface Techs. LLC*,
No. 19-CV-06566-EMC, 2020 WL 1478352 (N.D. Cal. Mar. 26, 2020)......................... 19, 21

*Google LLC v. Sonos, Inc.*,
Case No. 3:20-cv-6754-WHA (N.D. Cal. Sept. 28, 2020)...........................................*passim*

*Halo Elecs., Inc. v. Pulse Elecs., Inc.*,
579 U.S. 93 (2016) ........................................................................................................... 7, 15

*Illumina, Inc. v. BGI Genomics Co.*,
No. 19-CV-03770-WHO, 2020 WL 571030 (N.D. Cal. Feb. 5, 2020)...........................*passim*

*Intellectual Ventures I LLC v. Toshiba Corp.*,
66 F. Supp. 3d 495 (D. Del. 2014) ........................................................................................ 11

*IOENGINE, LLC v. PayPal Holdings, Inc.*,
No. CV 18-452-WCB, 2019 WL 330515 (D. Del. Jan. 25, 2019)................................... 13, 14

*Krainski v. Nevada ex rel. Bd. of Regents of NV. Sys. of Higher Educ.*,
616 F.3d 963 (9th Cir. 2010).................................................................................................. 22

*Kyowa Hakka Bio, Co. v. Ajinomoto Co.*,
No. CV 17-313, 2018 WL 834583 (D. Del. Feb. 12, 2018) .................................................. 13

*Longhorn Vaccines & Diagnostics, LLC v. Spectrum Sols. LLC*,
No. 220-CV-00827-DBB-JCB, 2021 WL 4324508 (D. Utah Sept. 23, 2021) ...................... 13

*MasterObjects, Inc. v. Amazon.com, Inc.*,
No. C 20-08103 WHA, 2021 WL 4685306 (N.D. Cal. Oct. 7, 2021) ................... 9, 10, 11, 16

*Mitutoyo Corp. v. Cent. Purchasing, LLC*,
499 F.3d 1284 (Fed. Cir. 2007).............................................................................................. 10

*Nalco Co. v. Chem-Mod, LLC*,
883 F.3d 1337 (Fed. Cir. 2018)................................................................................... 17, 18, 21

*Nanosys, Inc. v. QD Vision, Inc.*,
No. 16-CV-01957-YGR, 2016 WL 4943006 (N.D. Cal. Sept. 16, 2016).............................. 16

*Orlando Commc'ns LLC v. LG Elecs., Inc.,*
No. 6:14-CV-1017-ORL-22KRS, 2015 WL 1246500 (M.D. Fla. Mar. 16, 2015) ........................................................................................................................ 11

*People.ai, Inc. v. SetSail Techs., Inc.,*
No. C 20-09148 WHA, 2021 WL 2333880 (N.D. Cal. June 8, 2021) .................................... 17

*Radware, Ltd. v. A10 Networks, Inc.,*
No. C-13-02021-RMW, 2013 WL 5373305 (N.D. Cal. Sept. 24, 2013) ................... 15, 17, 18

*ScaleMP, Inc. v. TidalScale, Inc.,*
No. 18-CV-04716-EDL, 2019 WL 7877939 (N.D. Cal. Mar. 6, 2019) ................................ 21

*Sealant Sys. Int'l, Inc. v. TEK Glob.,*
No. C 11-00774 PSG, 2012 WL 13662 (N.D. Cal. Jan. 4, 2012) ........................................... 6

*Shire ViroPharma Inc. v. CSL Behring LLC,*
No. CV 17-414, 2018 WL 326406 (D. Del. Jan. 8, 2018) ..................................................... 13

*Skyworks Sols., Inc. v. Kinetic Techs., Inc.,*
No. 14-CV-00010-SI, 2015 WL 881670 (N.D. Cal. Mar. 2, 2015) ...................................... 16

*Software Rsch., Inc. v. Dynatrace LLC,*
316 F. Supp. 3d 1112 (N.D. Cal. 2018) .............................................................................. 20

*Straight Path IP Grp., Inc. v. Apple Inc.,*
No. C 16-03582 WHA, 2017 WL 3967864 (N.D. Cal. Sept. 9, 2017) .................................... 7

*Symantec Corp. v. Veeam Software Corp.,*
No. C 12-00700 SI, 2012 WL 1965832 (N.D. Cal. May 31, 2012) ...................................... 18

*Takeda Pharms. U.S.A., Inc. v. W.-Ward Pharm. Corp.,*
785 F.3d 625 (Fed. Cir. 2015) ............................................................................................. 18

*Teradata US, Inc. v. SAP SE,*
No. 20-CV-06127-WHO, 2021 WL 326930 (N.D. Cal. Feb. 1, 2021) ................................ 18

*United States v. Corinthian Colleges,*
655 F.3d 984 (9th Cir. 2011) ............................................................................................... 22

*UPF Innovations, LLC v. Intrinsic ID, Inc.,*
No. 19-CV-02711-VC, 2019 WL 4729601 (N.D. Cal. Sept. 17, 2019) .............................. 18

*Vita-Mix Corp. v. Basic Holding, Inc.,*
581 F.3d 1317 (Fed. Cir. 2009) ............................................................................................. 7

**Other Authorities**

Fed. R. Civ. P. 12 ....................................................................................................... *passim*

**STATEMENT OF THE RELIEF REQUESTED**

Sonos, Inc. ("Sonos") requests that this Court deny Google LLC's ("Google") motion to dismiss Sonos's claims of willful and indirect infringement for U.S. Patent No. 10,848,885 ("the '885 Patent"); U.S. Patent No. 10,779,033 ("the '033 Patent"), and U.S. Patent No. 10,469,966 ("the '966 Patent") in Sonos's Second Amended Complaint ("MTD"). Dkt. 138.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.      INTRODUCTION**

Google's motion to dismiss is predicated on the premise that Google did not have pre-suit knowledge of the '033, '966, and '885 Patents. This is demonstrably false. Indeed, *Google relied on a copy of Sonos's draft complaint to file a claim for declaratory judgment before Sonos filed its complaint.* Through that complaint, Google told this Court that it had not only *read* Sonos' draft complaint before it was filed (and therefore knew about the asserted patents), but had actively evaluated the assertions in that complaint and come to the conclusion that Google did not infringe. But if the pre-suit information Sonos provided to Google was sufficient for Google to evaluate Sonos' claims for infringement and file a lawsuit claiming that Google did *not* infringe then Google—by definition—had pre-suit knowledge of the patents.

Moreover, even if Google could somehow show that it lacked *prefiling* knowledge, the law in this district is clear that claims for post-filing willfulness and indirect infringement can be predicated on the notice given by an initial complaint. The Court should, therefore, deny Google's motion to dismiss the claims for willfulness and indirect infringement in the operative Second Amended Complaint.

**II.     FACTUAL AND PROCEDURAL BACKGROUND**

**A.      A Brief History of Google's Infringement.**

Since its founding in 2002, Sonos has invested heavily in research and development. *See* Dkt. 51 (Second Amended Complaint, or "SAC") ¶¶ 1, 4-5. As a result, Sonos has created many new technologies and its products have achieved widespread critical recognition for their innovations. *Id.* ¶¶ 5-6, 9. Almost a decade after Sonos entered the smart-speaker market Google sought to work with Sonos and, in 2011, the parties began to integrate the Google Play Music

service into the Sonos ecosystem. *Id.* ¶¶ 11-12. Through these efforts, Google gained access to Sonos's engineers, products, and proprietary technology. *Id.* ¶ 11. In 2015, Google began copying Sonos's technology. *Id.* ¶¶ 14, 16, 27-29.

**B.    Sonos Repeatedly Told Google That The Products Accused In This Case Were Making Use of the Technology Described In the Asserted Patents.**

Since 2016, Sonos has repeatedly warned Google about its infringement of various Sonos patents and patent families. *Id.* ¶¶ 17, 19. Although this correspondence did not specifically identify the '033, '966, and '885 Patents, it did repeatedly tell Google (a) that the same features (and the Google products that existed at the time) at issue in this case were infringing multiple *parents* of those patents and (b) that Sonos was continuing to prosecute patents in these families that Google would infringe. *See, e.g.*, *Google LLC v. Sonos, Inc.*, Case No. 3:20-cv-6754-WHA, (N.D. Cal. Sept. 28, 2020) (hereinafter, "DJ Dkt."), Dkt. 81-1 (Declaration of Cole B. Richter in Support of Sonos's Opposition to Google's Motion for Leave to File a Second Amended Complaint) at Ex. I, ECF pp. 45-46 of 84; Declaration of Evan D. Brewer ("Brewer Decl."), Ex. B, at PDF p. 27; Ex. D, at PDF p. 49.

For example, on October 13, 2016, Sonos sent Google a presentation identifying 22 Sonos patents and, for each of them, products and features that Sonos accused of infringement.[1] Brewer Decl., Ex. A; SAC ¶ 20; Dkt. 129 at 2. Among the Sonos patents called out in this letter was Pat. No. 8,483,853 (the "'853 patent"). Brewer Decl., Ex. A, at PDF p. 21. The '966 and '885 Patents had not issued at the time of this letter, but are continuations from the '853 patent and share a common specification. The claims of all three patents are directed to the grouping of players in media system zones, or, as indicated in the title of the '966 and '885 "zone scene management." The October 13, 2016 letter accused Google of infringing through the same features that are accused in this complaint. *Id*. at PDF pp. 9-10.

Two weeks later, on October 26, 2016, Sonos sent Google a presentation with information on additional patents, and telling Google both that Sonos was continuing to prosecute patents in the asserted families, and that Google would be infringing many of those patents as soon as they

---

[1] While Google has not moved to dismiss the '615 or '966 Patents, *see* MTD at 1, Sonos includes facts related to those patents here to provide context.

SONOS'S OPP. TO GOOGLE'S MOT. TO DISMISS
SONOS'S SECOND AMENDED COMPLAINT
3:21-cv-07559-WHA

1   issued. *See* DJ Dkt. 81-1, Ex. I (email from Chris Butts of Sonos to John LaBarre of Google,

2   attaching a document titled "Google Deck 2016.10.25," sent on October 26, 2016). This

3   presentation also identified Pat. No. 9,344,206 (the "'206 patent"), a direct ancestor to the '966

4   and '885 patents as a patent that Google was infringing. And the presentation told Google that

5   Sonos was continuing prosecution of its portfolio in the relevant technological areas and that the

6   accused products would infringe when those patents issued. *Id.*, Ex. I, at ECF pp. 45-46 of 84.

7        On January 31, 2018, Sonos sent Google a PowerPoint presentation identifying 12 more

8   Sonos patents as well as the Google products and features that infringed each of them. Brewer

9   Decl., Ex. B; *see also* Dkt. 129 at 2. Among the Sonos patents called out in this presentation was

10   Pat. No. 8,843,228 (the "'228 patent"). Brewer Decl., Ex. B, at PDF pp. 33-36. The '966 and '885

11   patents (which had not yet issued) are continuations from the '228 patent, and therefore share a

12   specification with it. In this presentation, Sonos highlighted claim 1 of the '228 patent, a method

13   for "zone scene management" that is similar to the asserted claims of the '966 and '885 in this

14   case. *Id.* Sonos accused Google of infringing the '228 patent by making and selling products and

15   features that are currently accused of infringing the '996 and '885 patents. The presentation also

16   (again) warned Google that its infringement would expand as Sonos continued to prosecute the

17   patent families had identified in the presentation. *Id.*, Ex. B, at PDF pp. 27-29.

18        On July 12, 2018, Sonos sent Google a letter identifying 58 Sonos patents and the

19   products and services that infringed each of them. DJ Dkt. 81-1, Ex. C (excerpt of an email from

20   Mark Triplett of Sonos to John LaBarre and Matthew Gubiotti of Google, attaching a document

21   titled "Sonos IP License Model Presented 2018.07.12," sent on July 12, 2018); *see also* Dkt. 129

22   at 2. In the July 12, 2018 letter, Sonos provided additional information about Google's

23   infringement of the '206 patent (discussed above), including the fact that the Google Home Max,

24   Google Home, Google Mini and Google Cast (all of which are accused of infringing the '966 and

25   '885 in this case) were infringing. DJ Dkt. 81-1, Ex. C, at ECF p. 17 of 84.

26        On February 22, 2019, Sonos sent Google a letter and 100 ***claim charts*** detailing how

27   Google infringed 92 Sonos patents and the pending claims of 8 patent applications. DJ Dkt. 81-1,

28   Ex. E (letter from Mark Triplett at Sonos to Matthew Gubiotti, Bradley Riel, and Tim Kowalski

of Google sent on February 22, 2019); Dkt. 129 at 2; SAC ¶ 22; *see also* Brewer Decl., Ex. C

(9,654,821 patent claim chart). Included in that correspondence were claim charts directed to the

'228 and '206 patents (discussed previously), as well as Pat Nos. 9,654,821 (the "'821 patent")

and 9,883,234 (the "'234 patent"). *See* Brewer Decl., Ex. C. The currently asserted '033 patent

(which had not issued at that time) is a continuation in a chain that contains both the '234 and

'821 patents, and therefore shares the same specification. The claims of the '234 and '821 patents

are both directed to direct control technology for transferring and controlling media playback

between devices, like the asserted claims of the '033 patent. And, in its February 2019 claim

charts, Sonos asserted those predecessor patents against features and products that are accused of

infringing the '033 in this case. *See id.*, Ex. C, at PDF p. 39; *see also* SAC ¶¶ 17-24.

On June 13, 2019, Sonos sent Google a PowerPoint presentation discussing 6 Sonos

patents in the context of a licensing proposal. These discussions once again focused on the '228

patent which, as previously discussed, is an ancestor of the '966 and '885 Patents. Brewer Decl.,

Ex. D; Dkt. 129 at 2. This presentation again told Google that it was infringing the '228 patent

through the sale of the products accused of infringing the '966 and '885 patents in this case.

Brewer Decl., Ex. D, at PDF pp. 49-50.

On January 6, 2020, Sonos sent Google a pre-filing copy of an International Trade

Commission Complaint,[2] a U.S. District Court complaint, and claim charts, which detailed

Google's infringement of 5 Sonos patents (most of which had previously been shown to Google

in the correspondence described above). Dkt. 129 at 2-3; SAC ¶ 26. Those patents were not,

however, family members of the patents that Google challenges in this motion.

Taken together, it is undisputed that in the years leading up to this dispute, Sonos

repeatedly told Google that the very features that are at issue in this case were making use of the

technology disclosed in the parents of the three patents that Google challenges in this motion. The

correspondence also told Google that Sonos was continuing to prosecute additional patents in the

---

[2] On January 7, 2020, Sonos sought injunctive relief from the United States International Trade Commission based on Google's infringement of five different patents from the patents at issue in the present matter. *See Certain Audio Players and Controllers, Components Thereof, and Products Containing* Same; Inv. No. 337-TA-1191 (2020).

currently asserted families. As discussed below, these facts are highly relevant to Sonos'
allegation of willful blindness.

### C.     Google Also Received Express Prior Notice For Each Challenged Patent.

Although the parties engaged in extensive discussions, they could not reach an agreement
on a resolution, and Google refused to stop its infringement. So Sonos prepared a detailed 87-
page complaint with 44 exhibits alleging that Google directly and indirectly infringes the '966
and '033 Patents, along with three other patents which are not at issue in this motion. Dkt. 1.

In that draft complaint, Sonos laid out the history that had brought the parties to this point
(*id.* ¶¶ 10-29), provided exemplary claim charts for each asserted patent (*id.* ¶¶ 81-82, 93-94, 105-
06, 118-19, 131-32), explained how Google indirectly infringes each patent, (*id.* ¶¶ 84-85, 96-97,
108-09, 121-22, 134-35), and alleged that Google's infringement was and continued to be willful
(*id.* ¶¶ 14, 26-27, 36-37, 41, 86-87, 89, 98-99, 101, 110-11, 114, 123-24, 127, 136-37, 139).

On September 28, 2020, Sonos provided Google with a pre-filing copy of the complaint
and informed Google that it would soon file it in the Western District of Texas. *Id.* ¶ 36; Dkt. 136
(Joint Case Management Statement) at 1. However, shortly before Sonos filed its complaint,
Google filed its own complaint in this District seeking declaratory judgment of non-infringement
of the same five patents. DJ Dkt. 1. The Court eventually stayed Google's case, explaining that
"Google's choice of forum carrie[d] no weight, nor d[id] the fact that it managed to file first"
because "the manifest purpose of Google's suit was to beat the clock and defeat the patent
owner's choice of venue." DJ Dkt. 36 at 3.

While this case was stayed, Sonos continued to litigate its claims in the Western District
of Texas. On January 8, 2021, Sonos provided Google with a draft amended complaint that
described how Google's products infringed the '885 Patent. SAC ¶ 130. More than a month later,
on February 17, 2021, Sonos filed an amended complaint, adding claims for infringement of the
'885 Patent. Dkt. 49.

On February 23, 2021, Sonos filed a Second Amended Complaint, dropping its claims of
infringement relative to one patent that is not at issue in this motion. Dkt. 50. On March 9, 2021,
Google moved to dismiss Sonos's claims of willful and indirect infringement for the '033, '966,

1    and '885 Patents pursuant to Federal Rule of Civil Procedure 12(b)(6) or 12(c). Dkt. 55.

2    However, before the Western District of Texas ruled on that motion, the case was transferred to

3    this Court. Dkt. 117.

4        On January 10, 2022, Google again moved pursuant to Rule 12(b)(6)[3] to dismiss Sonos's

5    claims of willful and indirect infringement for the '033, '966, and '885 patents. *See* MTD.

6    **III.    LEGAL STANDARDS**

7        As the Court knows, a motion to dismiss under Rule 12(b)(6) may only be granted if, after

8    accepting the well-pleaded allegations as true and viewing them in the light most favorable to the

9    plaintiff, the court concludes that these allegations cannot raise "enough facts to state a claim

10   [for] relief that is plausible on its face." *Corephotonics, Ltd. v. Apple, Inc.*, No. 17-CV-06457-

11   LHK, 2018 WL 4772340, at *5 (N.D. Cal. Oct. 1, 2018) (quoting *Bell Atl. Corp. v. Twombly*, 550

12   U.S. 544, 570 (2007)).

13       **A.    Willful Infringement.**

14       "The intensely factual issues inherent in a claim of willfulness counsel against early

15   dismissal at the pleading stage." *Firstface Co. v. Apple, Inc.*, No. 18-CV-02245-JD, 2019 WL

16   1102374, at *2 (N.D. Cal. Mar. 8, 2019). This is because "[t]here is no precise rule or formula for

17   awarding damages for willfulness in a patent infringement suit." *See Fluidigm Corp. v. IONpath,*

18   *Inc.*, No. C 19-05639 WHA, 2020 WL 408988, at *4 (N.D. Cal. Jan. 24, 2020).

19       The Federal Circuit has also made it clear that the question of whether a defendant's

20   infringement is willful is a separate question from the question of whether the Court should award

21   enhanced damages once willfulness has been shown. *Eko Brands, LLC v. Adrian Rivera Maynez*

22   *Enterprises, Inc.*, 946 F.3d 1367, 1378 (Fed. Cir. 2020) ("The question of enhanced damages is

23   addressed by the court once an affirmative finding of willfulness has been made. It is at this

24   _____

25   [3] A Rule 12(b)(6) motion must be made before the responsive pleading.  *See* Fed. R. Civ. P.
     12(b).  Because Google answered Sonos's allegations under the '033 and '966 Patents two

26   months before moving to dismiss, *see* Dkt. 32, Google's motion is untimely and improper with
     respect to those two patents.  The Court may, however, exercise its discretion to consider

27   Google's untimely motion as a motion for judgment on the pleadings.  *See Sealant Sys. Int'l, Inc.*
     *v. TEK Glob.*, No. C 11-00774 PSG, 2012 WL 13662, at *3 (N.D. Cal. Jan. 4, 2012).

28

SONOS'S OPP. TO GOOGLE'S MOT. TO DISMISS
SONOS'S SECOND AMENDED COMPLAINT
3:21-cv-07559-WHA

second stage at which the considerations of egregious behavior and punishment are relevant.")
(internal citation omitted).

Although Google's motion tries to conflate the two questions, the question of whether misconduct has been willful does not properly involve an evaluation of whether the alleged misconduct is "egregious." *See id.* at 1378 ("Under *Halo*, the concept of 'willfulness' requires a jury to find no more than deliberate or intentional infringement.") (citing *Halo Elecs., Inc. v. Pulse Elecs., Inc*., 579 U.S. 93, 105 (2016)). Thus, Sonos need not plead facts showing egregious misconduct in order to state a claim for willful infringement.

## B.     Indirect Infringement.

To state a claim of induced infringement, Sonos must plead facts giving rise to a reasonable inference that Google "knew of the patent, knowingly induced the infringing acts, and possessed a specific intent to encourage another's infringement of the patent." *Gamevice, Inc. v. Nintendo Co.*, No. 18-CV-01942-RS, 2018 WL 5310792, at *4 (N.D. Cal. Aug. 6, 2018) (quoting *Vita-Mix Corp. v. Basic Holding, Inc*., 581 F.3d 1317, 1328 (Fed. Cir. 2009)).

Similarly, to plead contributory infringement, Sonos must plead facts giving rise to a reasonable inference: "(1) that there is direct infringement, (2) that the accused infringer had knowledge of the patent, (3) that the component has no substantial non-infringing uses, and (4) that the component is a material part of the invention." *Asia Vital Components Co. v. Asetek Danmark A/S*, 377 F. Supp. 3d 990, 1019 (N.D. Cal. 2019) (quoting *Fujitsu Ltd. v. Netgear Inc*., 620 F.3d 1321, 1326 (Fed. Cir. 2010)).

## C.     Willful Blindness.

The knowledge necessary to support either willful infringement or indirect infringement can also be met by a showing (or, at the motion to dismiss stage, well-plead allegation) of willful blindness. *Corephotonics*, 2018 WL 4772340, at *9 ("Post-*Halo*, courts have recognized that allegations of willful blindness can satisfy the knowledge requirement for willful infringement."); *see also Straight Path IP Grp., Inc. v. Apple Inc.*, No. C 16-03582 WHA, 2017 WL 3967864, at *4 (N.D. Cal. Sept. 9, 2017) (denying motion for judgment on the pleadings on an enhanced damages claim predicated on plaintiff's willful blindness allegation).

1   **IV.    ARGUMENT**

2       **A.    Google Willfully Infringed the '855, '033 and '966 Patents.**

3           Google argues that Sonos's willful infringement claims should be dismissed because

4   Sonos "has not pled pre-suit knowledge" and Sonos purportedly did not "set forth any allegations

5   plausibly leading to an inference" of egregious behavior. MTD at 4. The Court should reject both

6   arguments.

7               **1.    Google Had Pre-Suit Knowledge of All Three Patents.**

8           To state a claim for willful infringement, Sonos must allege that Google knew of Sonos's

9   patents and then acted or continued to act even though it knew it was infringing Sonos's patents

10  or that the risk of infringement was obvious. *See Corephotonics*, 2018 WL 4772340, at *7 (citing

11  *Arctic Cat Inc. v. Bombardier Recreational Prod. Inc.*, 876 F.3d, 1350, 1371 (Fed. Cir. 2017)).

12  That is exactly what Sonos did. *See* SAC ¶ 35 ("Sonos provided a pre-filing copy of both the

13  original complaint and this Amended Complaint to Google, thereby providing clear pre-suit

14  notice of infringement of the patents-in-suit. Google . . . did not [stop infringing] in response");

15  *see also id.* ¶¶ 92, 96 (alleging pre-suit knowledge for the '033 Patent; *id.* ¶¶ 117, 121 (alleging

16  pre-suit knowledge for the '996 Patent); and *id.* ¶¶ 130, 134 (alleging pre-suit knowledge for the

17  '885 Patent).

18          Although Google argues that Sonos failed to plead pre-suit knowledge, *see* MTD at 4-6,

19  Google's motion *itself* shows otherwise. For example, Google's motion cites (and does not

20  challenge) the SAC's allegation that: "On January 8, 2021, Sonos provided Google with a draft of

21  this Amended Complaint prior to its filing. That draft identified the '885 Patent and described

22  how Google's products infringed." MTD at 5 (citing SAC ¶¶ 130, 133). Google's own motion

23  thus acknowledges that Google received a copy of the '885 Patent and had knowledge of Sonos's

24  specific allegations of infringement more than a month before Sonos first filed any complaint

25  asserting that patent.

26          For the '033 and '966 Patents, Google's motion likewise acknowledged that Google

27  received a draft of the original complaint prior to filing, and that the draft both identified the '033

28  and '966 Patents and specifically described *how* Google's products infringed them. *See* MTD at 6

1    (citing SAC ¶¶ 92, 95, 117, 120).

2            According to Google, the knowledge it actually gained though the delivery of draft

3    complaints doesn't count because that knowledge was obtained through receipt of pre-filing

4    copies of the complaint delivered: (a) during a meet and confer, for the '885 Patent; and (b) the

5    day before the original complaint was filed, for the '033 and '966 Patents. MTD at 5, 6. Google's

6    arguments are wrong.

7            *First*, to defeat a motion to dismiss for supposed lack of knowledge, Sonos "need only

8    'make out the barest factual assertion of knowledge' of the patent[s]." *Illumina, Inc. v. BGI*

9    *Genomics Co*., No. 19-CV-03770-WHO, 2020 WL 571030, at *6 (N.D. Cal. Feb. 5, 2020)

10   (quoting *Finjan, Inc. v. Sophos, Inc*., No. 14-cv-01197-WHO, 2015 WL 7075573, at *3 (N.D.

11   Cal. Nov. 13, 2015)). In other words, the question at this stage is simply whether Sonos has

12   provided enough factual content to make it facially plausible that Google had pre-suit knowledge.

13   *MasterObjects, Inc. v. Amazon.com, Inc.,* No. C 20-08103 WHA, 2021 WL 4685306, at *1 (N.D.

14   Cal. Oct. 7, 2021) (quoting *Bell*, 550 U.S. at 570). Sonos has plainly satisfied that burden because

15   Sonos alleged—and Google has conceded—that Google both knew of the '885, '033, and '966

16   Patents *and how Google was alleged to infringe them* prior to Sonos's filing of both the original

17   and operative complaints. *See, e.g*., SAC ¶¶ 92-93, 117-18, 130-31. There is nothing in the law

18   that says that knowledge "doesn't count" if it was obtained in a meet and confer[4] or close to when

19   the complaint was filed.

20           *Second*, while Google takes issue with the timing of Sonos's allegations of pre-suit

21   knowledge of the '033 and '966 Patents, Google clearly had enough time to review and respond

22   to that notice, given that it filed its own complaint for declaratory judgment *before* Sonos filed.

23   *See* DJ Dkt. 1; *see also Evolved Wireless*, *LLC v. Samsung Elecs. Co.,* No. CV 15-545-SLR-SRF,

24   2016 WL 1019667, at *4 (D. Del Mar. 15, 2016), *report and recommendation adopted*, No. 15-

25   545-SLR-SRF, 2016 WL 1381765 (D. Del. Apr. 6, 2016) (finding notice timeline sufficient

---

26   [4] Google's position (which is largely unexplained) on this point seems strange.  Presumably, the
27   Court would want to *encourage* plaintiffs to meet and confer with defendants in advance of filing
     claims for infringement – not punish a plaintiff for having done so by requiring it to, e.g. jump
28   through some separate and additional hoop in order to give the defendant "knowledge" of the
     patents that were the subject of the discussion.

1  where defendant "had enough time to file some form of response to the letter"). By bringing its

2  DJ action on September 28, 2020, Google represented to the Court that it had sufficient

3  knowledge of Sonos's patents to conduct reasonable due diligence and conclude that it did not

4  infringe. *See* DJ Dkt. 28 at 20-21 ("Immediately after receiving Sonos's proposed complaint,

5  Google investigated the allegations and determined that it had a legitimate Rule 11 basis to

6  believe that it does not infringe."). But in its MTD, Google effectively says just the opposite—

7  that it did *not* have substantive knowledge of these patents before Sonos filed on September 29.

8  MTD at 6. These positions are irreconcilable.

9         The Federal Circuit has also rejected Google's argument. For example, in *Mitutoyo Corp.*

10  *v. Cent. Purchasing, LLC*, 499 F.3d 1284, 1290 (Fed. Cir. 2007) the Federal Circuit found that a

11  declaratory judgment suit filed by the defendant challenging the validity of a patent established

12  that the defendant had knowledge of that patent and was thus "sufficient to meet the requirements

13  of Rule 8(a)(2) for pleading a willful infringement claim and avoid dismissal under Rule

14  12(b)(6)." That logic applies even more forcefully here, where Google did not simply challenge

15  the asserted patents' validity—but instead challenged Google's *infringement*. Given Google's

16  pre-filing allegation that it did not infringe, it is (quite simply) impossible for Google to now

17  claim that it did not know what and how it was being accused of infringement *before* Sonos filed

18  its original complaint.

19         *Third*, Google's argument ignores the fact that the claims it seeks to dismiss are in the

20  Second Amended Complaint, not in an original complaint. Google received notice of the '033 and

21  '966 Patents five months before the operative complaint was filed. SAC ¶¶ 35, 92, 117. And

22  Google *admits* that it was given a copy of Sonos' infringement allegations relative to the '885

23  Patent five weeks before Sonos *first* filed claims relating to that patent. MTD at 5; SAC ¶ 130;

24  Dkt. 49. Thus, even if the Court had reservations about the short duration between the time that

25  Sonos provided a draft of the original complaint and the time it filed that complaint, the Court

26  should still reject *this motion* – because it is undisputed that Google had knowledge of all the

27  challenged patents and claims well before Sonos filed the operative complaint. *See, e.g.*,

28  *MasterObjects*, 2021 WL 4685306, at *6 (finding that amended complaint properly states a claim

for post-suit willful infringement where original complaint gave notice); *Illumina*, 2020 WL

571030, at *7 ("CGI may assert post-suit knowledge to support its claims of induced infringement

. . . [based] upon service of the Counter-Complaint in this action.").

*Fourth*, the cases that Google cites are distinguishable. For example, in *Evolved Wireless*,

pre-suit knowledge was alleged based on a letter that "include[d] a list of eighty-five U.S. and

foreign patents and applications, stating that 'the use of one or more patent claims in the portfolio

is required to practice or otherwise comply with LTE standards or technical specifications.'"

*Evolved Wireless*, 2016 WL 1019667, at *3. The court specifically found that the notice letter did

"not specifically identify the patents-in-suit … from the list of eighty-five patents and patent

applications." *Id.* Similarly, in *Intellectual Ventures*, pre-suit knowledge was broadly pleaded

based on "general allegation[s]" about discussions, a presentation, and a letter, with no factual

allegations of what those discussions, presentation, or letter included. *Intellectual Ventures I LLC

v. Toshiba Corp.*, 66 F. Supp. 3d 495, 500 (D. Del. 2014). And in *Orlando Communications*, the

notice letters merely "advise[d] each of the recipients that they should contact the sender as soon

as possible to discuss obtaining a license to the [asserted] patents." *Orlando Commc'ns LLC v.

LG Elecs., Inc.*, No. 6:14-CV-1017-ORL-22KRS, 2015 WL 1246500, at *12 (M.D. Fla. Mar. 16,

2015) (internal quotation marks omitted).

None of those cases are comparable. In this case, the ***specific*** advance notice Sonos

provided through its the September 28, 2020 draft complaint and the January 8, 2021 draft

amended complaint is far more detailed than the kind of notice found inadequate in the cases

cited above. Sonos did not simply suggest Google take a license, or obliquely reference dozens of

patents. Instead, Sonos specifically accused Google of infringement, and gave Google a copy of

the exact allegations Sonos intended to make against it – allegations which identified each

challenged patent, the asserted claims, and the infringing products and gave Google ***copies*** of

Sonos's preliminary infringement contentions. *See* SAC ¶¶ 35, 93-95, 118-20, 131-33.

*Finally*, and in the alternative, Google was willfully blind to the existence of the asserted

patents well before Sonos filed suit, as well as to Google's infringement of them. As noted above,

the operative Complaint explains that Google approached Sonos under the guise of cooperation,

SONOS'S OPP. TO GOOGLE'S MOT. TO DISMISS
SONOS'S SECOND AMENDED COMPLAINT
3:21-cv-07559-WHA

received extensive technical information, and then set out to copy Sonos' features. *See* §II.A.

*supra*. Thereafter, Sonos engaged in extensive discussions with Google concerning the families of

the three challenged patents and Sonos repeatedly put Google on notice of multiple family

members of each of them in the years leading up to this action. *See* §II.B. *supra*. In that

correspondence, Sonos also repeatedly informed Google that it was continuing to prosecute and

obtain patents in the same families and that Google's products would also read on these later

patents. *Id*.

The detail with which Sonos identified and explained the nature of Google's infringement,

and the fact that Sonos put Google on notice of multiple direct family members of the three

patents challenged in this motion, when taken together with the history of the parties'

cooperation, and Sonos' express warnings that Google would infringe forthcoming patents,

should have demonstrated to Google that operating in this sector without a license to Sonos's

portfolio created an objectively high risk of infringement. Taken together, these facts give rise to

the plausible inference that Google either knew of the asserted patents well before the filing of

this suit or was willfully blind to their existence and of Google's infringement. *See, e.g*.,

*Corephotonics*, 2018 WL 4772340, at *9 ("Based on Apple's prior knowledge of Corephotonics'

technology and its conduct during negotiations with Corephotonics, it is plausible to infer [that]

Apple knew of at least a high risk that it was infringing Corephotonics' valid and enforceable

patents.") (internal quotation marks and citation omitted).

**2.      Sonos Is Not Required to Plead, Much Less Prove, Egregious Conduct.**

Google argues that Sonos's willful infringement claims fail because Sonos "fails to raise a

plausible inference of egregious behavior." MTD at 7. Google is wrong on both the law and the

facts. As the Federal Circuit recently clarified, to state a willful infringement claim Sonos needs

only plead that Google deliberately or intentionally infringed. *See Eko Brands*, 946 F.3d at 1378

("the concept of 'willfulness' requires a jury to find no more than deliberate or intentional

infringement" while "considerations of egregious behavior" should be "addressed by the court

once an affirmative finding of willfulness has been made."). Following *Eko,* courts in this district

have held that a patentee does not need to plead facts showing egregious misconduct to state a

1   claim for willful infringement. *See Core Optical Techs., LLC v. Juniper Networks Inc*., No. 21-

2   CV-02428-VC, 2021 WL 4618011, at *3 (N.D. Cal. Oct. 7, 2021) ("As for egregiousness, a

3   patentee need only plead that the defendant engaged in 'deliberate or intentional infringement.'")

4   (quoting *Eko*, 946 F.3d at 1378); *see also AllRounds, Inc. v. eShares, Inc*., No. 20-CV-07083-VC,

5   2021 WL 5195099, at *1 (N.D. Cal. Nov. 9, 2021) (denying a motion to dismiss and holding that

6   a claim for willful infringement requires only knowledge of the patent and deliberate or

7   intentional infringement).

8       In the SAC, Sonos pleaded that Google deliberately infringed the '855, '033 and '966

9   Patents. *See* SAC ¶¶ 98, 124, 136. Because Sonos "has asserted that [Google] deliberately

10  infringed the [] patents, its complaint pleads willful infringement; the ultimate question whether

11  the alleged conduct is sufficiently egregious to warrant enhanced damages is for the Court to

12  decide at summary judgment or after trial." *Core Optical*, 2021 WL 4618011, at *3 (holding that

13  plaintiff was not required to plead egregiousness at pleading stage).

14      Other courts have held that "broader allegations of willfulness without a specific showing

15  of egregiousness are sufficient to withstand a motion to dismiss." *Kyowa Hakka Bio, Co. v.

16  Ajinomoto Co*., No. CV 17-313, 2018 WL 834583, at *13 (D. Del. Feb. 12, 2018) (citing cases).

17  Therefore, "where a complaint permits an inference that the defendant was on notice of the

18  potential infringement and still continued its infringement, the plaintiff has pled a plausible claim

19  of willful infringement." *Id*.

20      By insisting otherwise, Google "seems to conflate the standards for pleading willful

21  infringement with the standards for proving willful infringement. … At the pleading stage, it is

22  not necessary to show that the case is egregious." *Shire ViroPharma Inc. v. CSL Behring LLC*,

23  No. CV 17-414, 2018 WL 326406, at *3 (D. Del. Jan. 8, 2018); *see also Longhorn Vaccines &

24  Diagnostics, LLC v. Spectrum Sols. LLC*, No. 220-CV-00827-DBB-JCB, 2021 WL 4324508, at

25  *13 (D. Utah Sept. 23, 2021) ("[T]to establish that the infringement was willful, evidence of

26  egregious conduct, beyond deliberateness, is not required . . ."); *IOENGINE, LLC v. PayPal

27  Holdings, Inc*., No. CV 18-452-WCB, 2019 WL 330515, at *7 (D. Del. Jan. 25, 2019) ("there is

28  no requirement that the plaintiff plead additional facts, beyond knowledge of the patent or

SONOS'S OPP. TO GOOGLE'S MOT. TO DISMISS
SONOS'S SECOND AMENDED COMPLAINT
3:21-cv-07559-WHA

patents, in order for a claim of willful infringement to survive a motion to dismiss.").

### 3.    Sonos Pleaded that Google Behaved Egregiously.

The SAC contains numerous factual allegations allowing the Court to reasonably infer that Google has acted egregiously. For example, Sonos has pleaded, *inter alia*, that: (1) Google and Sonos initially worked together to integrate Google's products into the Sonos ecosystem (SAC ¶ 12); (2) only eighteen months after Sonos and Google successfully integrated Google Play Music into the Sonos ecosystem, "Google began willfully infringing Sonos's patents" using knowledge it gained from Sonos (*id.* ¶ 14); (3) since that time, Google has launched multiple features that it copied from Sonos (*id.* ¶¶ 13, 15-16, 21, 39) and has continued doing so despite repeated notices of infringement from Sonos (*id.* ¶¶ 17-29); (4) Sonos has put Google on notice of various patents since 2016—including the '206 Patent, which is the grandparent from which the '855 and '966 Patents continue (*id.* ¶¶ 17-21), and the '615 Patent, which shares a specification with the '033 Patent (*id.* ¶ 22); (5) Sonos provided Google with pre-filing copies of the original and amended complaints, "thereby providing clear pre-suit notice of infringement of the patents-in-suit" (*id.* ¶ 35); (6) despite receiving pre-filing copies of the complaint, Google "has never given any indication that it is willing to stop infringing" (*id.*) and, on information and belief, Google is "unwilling to stop infringing because its infringement of Sonos's patented inventions has paved the way for Google to generate billions of dollars in revenue" (*id.* ¶ 36; *see also id.* ¶¶ 37-39); (7) Google's infringement is part of a "calculated strategy to vacuum up invaluable consumer data from users and, thus, further entrench the Google platform among its users and fuel its dominant advertising and search platforms" (*id.* ¶ 40); and (8) Google and Sonos are engaged in additional litigation in the ITC and NDCA relating to Google's infringement of similar Sonos technology (*id.* ¶¶ 10, 26-27).

To be clear, this is no "garden-variety" patent case. MTD at 1. Sonos pleaded that Google began intentionally infringing Sonos's patents within eighteen months of their partnership commencing and has continued non-stop since. *See* SAC ¶¶ 14-29. The International Trade Commission recently agreed, finding that the same accused products here infringe five different Sonos patents. *See* Final Determination Notice, *Certain Audio Players and Controllers,*

*Components Thereof, and Products Containing Same*; Inv. No. 337-TA-1191 (Jan. 6, 2022).

Indeed, only *after* that order came down, did Google start taking steps to strip the infringing

features from its products.[5] At the same time, as this Court found, Google filed a thoroughly

inadequate complaint to try to jump in front of Sonos and has had its lead counsel tell this Court

that ***all*** of Sonos' claims are "trivial"—an assertion that strongly suggests Google's conduct is

intentional and motivated by a view that Sonos' intellectual property lacks value. DJ Dkt. 73, Oct.

7, 2021 Hearing Tr., at 9:15-18, 11:15-18.

  It's hard to look at the allegations in the SAC and Google's pattern of conduct and assert

that there is no way Sonos could succeed in showing that Google's misconduct has gone beyond

what is found "'in a typical infringement case' and thus was egregious." *Finjan, Inc. v.

SonicWall, Inc.*, No. 17-CV-04467-BLF, 2018 WL 2234370, at *3 (N.D. Cal. May 16, 2018)

(quoting *Halo*, 579 U.S. at 104). Thus, even if Sonos were required to show egregious conduct to

plead willfulness (it is not), the Court should deny Google's motion.

### B. Sonos Adequately Pleads Indirect Infringement for the '855, '033 and '966 Patents.

  In the second half of its brief, Google argues that Sonos's indirect infringement claims for

the '855, '033 and '966 Patents should be dismissed because they purportedly "do not sufficiently

allege pre-suit notice, specific intent, and substantial non-infringing uses." MTD at 9. As

discussed below, these arguments lack merit.

#### 1. Google Had Pre-Suit Notice of Sonos's Indirect Infringement Claims.

  Google's first argument on indirect infringement rehashes its argument that Google did

not have pre-suit knowledge of the patents. MTD at 9. In particular, Google cites *CAP* and

*Radware* for the proposition that "a plaintiff's failure to allege pre-suit knowledge warrants

dismissal of indirect infringement claims to the extent that they are premised on pre-suit

conduct." *See* MTD at 10. But Google misses the point: neither the broader proposition nor the

cases Google cites are relevant because Sonos *did* allege pre-suit knowledge, both directly and

---

[5] *See* Ron Amadeo, "Google Loses Sonos Patent Case, Starts Stripping Functionality from
Speakers," *available at* https://arstechnica.com/gadgets/2022/01/google-loses-sonos-patent-case-
starts-stripping-functionality-from-speakers/

1   through willful blindness.[6]

2         In particular, Sonos specifically pleaded both that Google had pre-suit knowledge of the

3   '855, '033 and '966 Patents, and that this knowledge supported a claim for indirect infringement.

4   *See* SAC ¶¶ 93-94 (explaining how Google's pre-suit knowledge of the '033 Patent resulted in

5   indirect infringement), 118-19 (explaining how Google's pre-suit knowledge of the '966 patent

6   resulted in indirect infringement), 131-32 (explaining how Google's pre-suit knowledge of the

7   '885 Patent resulted in indirect infringement).

8         Google then argues that pre-suit knowledge is necessary to sustain a claim for post-suit

9   indirect infringement. MTD at 10-12. As an initial matter, this argument is futile—Sonos alleged

10  that Google had pre-suit knowledge, so *even if* Google were correct that pre-suit knowledge was

11  needed to support post-suit indirect infringement, its argument would fail. But Google is also

12  wrong on the merits. "Courts in the Northern District of California have held that knowledge of a

13  patent based on the filing of a complaint is sufficient to meet the knowledge requirement for an

14  induced infringement claim." *Skyworks Sols., Inc. v. Kinetic Techs., Inc*., No. 14-CV-00010-SI,

15  2015 WL 881670, at *8 (N.D. Cal. Mar. 2, 2015); *see also MasterObjects*, 2021 WL 4685306, at

16  *6 (finding that the "second amended complaint adequately alleges post-suit knowledge of the

17  patents-in-suit and knowledge of infringement."); *Nanosys, Inc. v. QD Vision, Inc*., No. 16-CV-

18  01957-YGR, 2016 WL 4943006, at *5 (N.D. Cal. Sept. 16, 2016) ("[P]ost-suit knowledge is

19  sufficient to sustain a finding that defendant had the requisite knowledge to support claims for

20  induced infringement."); *Illumina*, 2020 WL 571030, at *7 ("CGI may assert post-suit knowledge

21  to support its claims of induced infringement . . . Since CGI alleges that Illumina had knowledge

22  upon service of the Counter-Complaint in this action on September 30, 2019, it has adequately

23  alleged post-suit knowledge.").

24        Google cites inapposite and non-binding decisions in service of its contrary assertion. *See*

25

26  [6] In a footnote, Google asserts that Sonos has "failed to plead facts raising a plausible inference that Google was willfully blind to the '855, '033 and '966 patents." MTD at 9. Because Sonos

27  pleaded that Google had actual pre-suit knowledge of all three patents, *see* SAC ¶¶ 92-95, 117-120, and 130-134, Sonos does not need to allege facts showing that Google was willfully blind.

28  Even so, Sonos included ample factual allegations to support an inference of willful blindness. *See* § IV.A.1 *supra.*

SONOS'S OPP. TO GOOGLE'S MOT. TO DISMISS
SONOS'S SECOND AMENDED COMPLAINT
3:21-cv-07559-WHA

1   MTD 10-11. In particular, the Northern District cases that Google cites are either irrelevant or

2   support Sonos. *Id.* CAP explicitly rejected the idea that pre-suit notice should be required for

3   post-suit indirect infringement claims: "[t]he Court sees no reason to adopt a rule requiring an

4   allegation of pre-suit knowledge for all infringement claims. A complaint is a perfectly adequate

5   notice to defendants for indirect infringement claims for post-filing conduct." *CAP Co. v. McAfee,*

6   *Inc.*, No. 14-CV-05068-JD, 2015 WL 3945875, at *5 (N.D. Cal. June 26, 2015). *Radware* noted

7   that "knowledge based on the filing of suit is sufficient to state a claim for indirect infringement."

8   *Radware*, *Ltd. v. A10 Networks, Inc.*, No. C-13-02021-RMW, 2013 WL 5373305, at *2 (N.D.

9   Cal. Sept. 24, 2013). And none of the other Northern District cases Google cites addressed the

10  issue. *See Avocet Sports Tech., Inc. v. Garmin Int'l, Inc.*, No. C 11-04049 JW, 2012 WL 1030031,

11  at *4 (N.D. Cal. Mar. 22, 2012); *Finjan, Inc. v. Juniper Networks, Inc.*, No. C 17-05659 WHA,

12  2018 WL 905909, at *5 (N.D. Cal. Feb. 14, 2018); *People.ai, Inc. v. SetSail Techs., Inc.*, No. C

13  20-09148 WHA, 2021 WL 2333880, at *6 (N.D. Cal. June 8, 2021); and *Fluidigm*, 2020 WL

14  408988, at *3.

15      In sum: Sonos pleaded that Google had pre-suit knowledge of its indirect infringement

16  claims, and pre-suit knowledge is not necessary to sustain a claim of post-suit indirect

17  infringement. Sonos's indirect infringement claims are, therefore, adequately pleaded.

18            **2.**      **Google Had Specific Intent to Induce Infringement.**

19      Although it did not include the argument in its *précis,* Google's motion to dismiss argues

20  that Sonos failed to plead that Google had specific intent to induce infringement for the '855,

21  '033 and '966 Patents.[7] "For an allegation of induced infringement to survive a motion to dismiss,

22  a complaint must plead facts plausibly showing that the accused infringer 'specifically intended

23  [another party] to infringe [the patent] and knew that the [other party]'s acts constituted

24  infringement.'" *Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337, 1355 (Fed. Cir. 2018) (quoting *In*

_____

25  [7] Pursuant to the Court's Case Management Order in the lead case, Google was required to file a

26  *précis* seeking permission to file a Rule 12 motion to dismiss Sonos's claims of willful and
    indirect infringement.  *See* DJ Dkt. 67.  In its *précis*, Google argued that Sonos's indirect

27  infringement claims should be dismissed because "Sonos's SAC fails to sufficiently plead pre-
    suit knowledge of the '885, '033, and '966 Patents."  *See* Dkt. 125 at 3.  Google did not make any

28  arguments regarding specific intent.  *Id.*  The Court should therefore decline to consider this
    argument and consider it waived.

SONOS'S OPP. TO GOOGLE'S MOT. TO DISMISS
SONOS'S SECOND AMENDED COMPLAINT
3:21-cv-07559-WHA

1   *re Bill of Lading Transmission and Processing Sys. Patent Litig.*, 681 F.3d 1323, 1339 (Fed. Cir.

2   2012)).

3          The Federal Circuit has found specific intent where a party provides "evidence of active

4   steps taken to encourage direct infringement," which can in turn be found in "advertising an

5   infringing use or instructing how to engage in an infringing use"—so long as there is "intent to

6   *encourage* infringement." *Takeda Pharms. U.S.A., Inc. v. W.-Ward Pharm. Corp*., 785 F.3d 625,

7   630-31 (Fed. Cir. 2015) (internal quotations omitted) (emphasis in original). Courts in this district

8   have also found that specific intent can be inferred from advertising or promotion of infringing

9   products and features. *See Symantec Corp. v. Veeam Software Corp*., No. C 12-00700 SI, 2012

10   WL 1965832, at *4 (N.D. Cal. May 31, 2012) ("Specific intent can reasonably be inferred in this

11   case from the allegations regarding defendant's marketing materials and offers to sell the

12   infringing products."); *Teradata US, Inc. v. SAP SE*, No. 20-CV-06127-WHO, 2021 WL 326930,

13   at *7 (N.D. Cal. Feb. 1, 2021) (finding specific intent where defendant encouraged its customers

14   to run SAP Hana "through advertisements, marketing, and product support efforts"); *Radware*,

15   2013 WL 5373305, at *6 (inferring specific intent where plaintiff alleged that party "engages in

16   promotional, advertising and instructional activities directed at its customers and potential

17   customers"); *cf. UPF Innovations, LLC v. Intrinsic ID, Inc*., No. 19-CV-02711-VC, 2019 WL

18   4729601, at *2 (N.D. Cal. Sept. 17, 2019) ("The complaint alleges that Intrinsic ID sold the

19   accused products to third parties and produced 'advertising, documentation, and training

20   materials' specifically encouraging [an infringing use]").

21          Sonos pleaded that Google intentionally advertised infringing Google products and

22   encouraged its customers to "engage in activity that constitutes direct infringement" of the '855,

23   '033 and '966 Patents. SAC ¶¶ 93, 118, 131. In other words, Sonos alleged exactly the kind of

24   conduct which *Takeda* characterized as exhibiting the requisite specific intent to impose liability

25   for inducement. *Takeda*, 785 F.3d at 631 (The relevant conduct must "encourage, recommend, or

26   promote infringement."). For the '033 Patent, for instance, in addition to "promoting, advertising,

27   and instructing customers and potential customers about the Google Wireless Audio System . . .

28   and encouraging such customers and potential customers to engage in activity that constitutes

1   direct infringement," SAC ¶ 93, Sonos pleaded that "Google has supplied and continues to supply

2   the YouTube Music, Google Play Music, and YouTube apps to customers while knowing that

3   installation and/or use of one or more of these apps will infringe one or more claims of the '033

4   Patent, and that Google's customers then directly infringe one or more claims of the '033 Patent

5   by installing and/or using one or more of these apps in accordance with Google's product

6   literature. *Id.* Sonos pleaded similar allegations for the '855 and '966 Patents. *See id.* ¶¶ 118, 131.

7   Further, Sonos provided both examples of the relevant marketing materials as exhibits to the

8   complaint and exemplary infringement claim charts illustrating how the accused products infringe

9   all three patents. *See id.*, Exs. 22-27 (for the '033 Patent); Exs. 22-23 (for the '855 and '966

10   Patents).

11        Google complains that Sonos's allegations were insufficient because Sonos did not

12   "provide any specific allegations mapping the advertisement or promotion to the performance of

13   the claimed steps of the patent." MTD at 13. But Sonos is not required to do so. As noted above,

14   courts in this district routinely find that allegations that a defendant provided its customers with

15   marketing materials that encourage infringing use state a claim for induced infringement. *See*

16   *supra; see also Illumina*, 2020 WL 571030, at *6 (collecting authorities holding that providing

17   marketing materials that encourage infringing use is adequate). Google's authorities are

18   unavailing—*CAP* specifically noted that "the patentee need not cite statements from the accused

19   infringer specifically instructing the direct infringer 'to perform all of the steps of the patented

20   method'; it is enough to cite examples where the accused infringer advertised benefits that can be

21   achieved only through use of the asserted patent." *CAP Co.*, 2015 WL 3945875, at *5 (internal

22   quotation omitted); *see also Google LLC v. Princeps Interface Techs. LLC*, No. 19-CV-06566-

23   EMC, 2020 WL 1478352, at *4 (N.D. Cal. Mar. 26, 2020) (quoting that portion of *CAP* with

24   approval)). Sonos pleaded—and provided marketing materials—showing just that. *See* SAC, Exs.

25   22-27 (for the '033 Patent); Exs. 22-23 (for the '855 and '966 Patents).

26        As a result, this Court should find that Sonos adequately pleaded that Google had specific

27

28

SONOS'S OPP. TO GOOGLE'S MOT. TO DISMISS
SONOS'S SECOND AMENDED COMPLAINT
3:21-cv-07559-WHA

1   intent to induce infringement.[8]

2   **3.   Sonos Alleged the Absence of Substantial Non-Infringing Uses.**

3   Finally, although it also did not include the argument in its *précis* or otherwise seek

4   advanced permission to file a motion seeking to dismiss Sonos' claims of contributory

5   infringement, Google argues that Sonos failed to plead that the accused products have no

6   substantial non-infringing uses.[9] MTD at 14. "A plaintiff 'need not prove that the accused

7   products have no substantial non-infringing uses at the pleading stage; rather it must allege some

8   facts that take its statements from mere lawyerly fiat to a plausible conclusion—for example, by

9   alleging one or more infringing uses of the accused products and alleging that the products have

10  no other uses.'" *Software Rsch., Inc. v. Dynatrace LLC*, 316 F. Supp. 3d 1112, 1136 (N.D. Cal.

11  2018) (quoting *CAP Co.*, 2015 WL 3945875, at *6). This is exactly what Sonos did.

12  For each of the '885, '033, and '966 Patents, Sonos identified at least one infringing use of

13  the accused products and alleged that the products have no other use. *See* SAC ¶¶ 94 ('033

14  Patent), 119 ('966 Patent), 132 ('885 Patent). Sonos specifically pleaded that Google especially

15  made or adapted the product for an infringing use. *Id.* For the '033 Patent, for example, Sonos

16  alleged that "at a minimum, Google offers for sale, sells, and/or imports the YouTube Music,

17  Google Play Music, and YouTube apps for installation on devices (e.g., smartphones, tablets, and

18  computers) that meet one or more claims of the '033 Patent . . . Further, Google especially made

19  and/or adapted these apps for installation and use on devices that meet the one or more claims of

20  the '033 Patent, and these apps are not a staple article of commerce suitable for substantial

21  noninfringing use." *Id.* ¶ 94. Sonos made similar factual allegations for the '966 and '885 Patents.

22  *Id.* ¶¶ 119 ('966 patent), 132 ('885 patent).[10]

23

24  [8] Should the Court hold otherwise, Sonos respectfully seeks leave to amend to provide additional factual support.

25  [9] In the *précis*, Google argued only that Sonos's indirect infringement claims should be dismissed because "Sonos's SAC fails to sufficiently plead pre-suit knowledge of the '885, '033, and '966

26  Patents." *See* Dkt. 125 at 3. Google did not make any arguments as to whether Sonos sufficiently

27  pleaded that the accused products have no substantial non-infringing uses. *Id.* The Court should therefore decline to consider this argument.

28  [10] Should the Court hold otherwise, Sonos respectfully seeks leave to amend to provide additional factual support.

Both the Federal Circuit and courts in this district have refused to dismiss similarly pleaded contributory infringement claims. In *Nalco*, for instance, the Federal Circuit found that describing the "especially made or adapted" infringing use of the accused product and pleading that there were no substantial noninfringing uses was sufficient to state a claim for contributory infringement. *Nalco*, 883 F.3d at 1357. In *Firstface*, the allegation that accused products were "not staple articles of commerce suitable for substantial non-infringing uses" but were instead "specifically programmed and/or configured to implement" the asserted patents adequately pleaded a claim for contributory infringement. *Firstface*, 2019 WL 1102374, at *2. In *Fortinet*, the allegation that "each accused product 'includes software components ... which are programmed to be used to infringe the [patented] methods'" sufficed to state a claim. *Fortinet, Inc. v. Forescout Techs., Inc*., No. 20-CV-03343-EMC, 2021 WL 2412995, at *18 (N.D. Cal. June 14, 2021). *See also ScaleMP, Inc. v. TidalScale, Inc.,* No. 18-CV-04716-EDL, 2019 WL 7877939, at *4 (N.D. Cal. Mar. 6, 2019) (rejecting argument that allegations of contributory infringement are "naked assertions" that are insufficient to state a claim); *Core Optical*, 2021 WL 4618011, at *4 (N.D. Cal. Oct. 7, 2021) (refusing to dismiss contributory infringement claim where plaintiff pleaded that devices were "especially adapted" for infringement).

The cases that Google cites to support the purported lack of substantial non-infringing uses are all distinguishable. First, *Artrip* (a non-precedential opinion) found that the plaintiff did not plead substantial non-infringing use, but (unlike Sonos) the plaintiff did not plead that the product had been especially made and/or adapted for an infringing use. *Artrip v. Ball Corp.,* 735 F. App'x 708, 713 (Fed. Cir. 2018). *Princeps* and the other cases cited by Google are distinguishable because Sonos provided significant "factual underpinnings" to support its allegations of contributory infringement—Sonos provided a detailed exemplary claim chart for each of the three patents showing that the accused products are material components for use in practicing the asserted patents and that the products are especially made or adapted for use in infringing the asserted patents. *See* SAC ¶¶ 94 ('033 Patent), 119 ('966 Patent), 132 ('885 Patent). In sum, these are no mere "conclusory allegations." MTD at 14. Instead, the Complaint contains specific and detailed allegations saying *how* the patents are infringed, saying expressly that that

SONOS'S OPP. TO GOOGLE'S MOT. TO DISMISS
SONOS'S SECOND AMENDED COMPLAINT
3:21-cv-07559-WHA

1   functionality is specifically adapted for infringement, and alleging that there are no other uses for

2   the specific software that provides the accused functions which don't infringe. That is all that is

3   required.

4          **C.     Dismissal with Prejudice Is Not Warranted.**

5          Google wrongly contends that Sonos's willfulness and indirect infringement claims

6   should be dismissed with prejudice because "further amendments would be futile." MTD at 15.

7   "Under futility analysis, '[d]ismissal without leave to amend is improper unless it is clear, upon

8   de novo review, that the complaint could not be saved by any amendment.'" *United States v.*

9   *Corinthian Colleges*, 655 F.3d 984, 995 (9th Cir. 2011) (quoting *Krainski v. Nevada ex rel. Bd. of*

10  *Regents of NV. Sys. of Higher Educ.*, 616 F.3d 963, 972 (9th Cir. 2010) (internal citation and

11  quotation marks omitted)).

12         As we have explained, Google is wrong—Sonos amply alleged "sufficient facts

13  demonstrating pre-suit notice" in both the Western District of Texas briefing and in the present

14  brief. MTD at 16. Were the Court to find that Sonos has not sufficiently alleged facts to support

15  its willful or indirect infringement claims, however, Sonos respectfully seeks leave to amend so

16  that it can provide the Court with additional factual support. Sonos's infringement contentions,

17  for example, set out its infringement claims with greater detail than what is provided in the

18  complaint—detail which could be used to further support Sonos' allegations. Similarly, as

19  explained herein, there are further facts concerning Google's willful (and willfully blind)

20  infringement that Sonos can amend to allege in greater detail should the Court find it necessary.

21  Dismissal with prejudice is therefore improper. *Corinthian*, 655 F.3d at 995. This is especially

22  true because Google has notice of Sonos's claims so Google would not be harmed by allowing

23  amendment.

24         Finally, Google takes a deeply misguided parting shot at Sonos. Google argues that

25  "Sonos failed to allege sufficient facts demonstrating pre-suit notice of the '855 '033, and '966

26  patents despite receiving two opportunities to amend." MTD at 16. Google's oblique

27  mischaracterization of the factual record in this case warrants correction—no court (either in the

28  Western District of Texas or in the Northern District of California) has dismissed Sonos's willful

                                    22

1   or indirect infringement claims for being improperly pleaded. On February 17, 2021, Sonos filed

2   its First Amended Complaint, adding a claim for infringement of the '885 Patent. Dkt. 49. And on

3   February 23, 2021, Sonos filed a Second Amended Complaint, dropping its claims related to the

4   '460 Patent. Dkt. 50. Neither of Sonos's amendments related to the issue of pre-suit notice, and

5   Google misconstrues the record when it suggests otherwise.

6   **V.      CONCLUSION**

7          For the reasons stated herein, Sonos respectfully asks the Court to deny Google's motion to

8   dismiss Sonos's claims of willful and indirect infringement for the '885, '033, and '966 patents.

9

10  Dated: January 24, 2022                    By: */s/ Clement Seth Roberts*

11                                             CLEMENT SETH ROBERTS
                                               ALYSSA CARIDIS
12                                             EVAN D. BREWER

13                                             ORRICK, HERRINGTON & SUTCLIFFE LLP

14                                             GEORGE I. LEE
                                               SEAN M. SULLIVAN
15                                             RORY P. SHEA
                                               J. DAN SMITH
16                                             MICHAEL BOYEA
                                               COLE B. RICHTER

17                                             LEE SULLIVAN SHEA & SMITH LLP

18

19                                             *Attorneys for Sonos, Inc.*

20

21

22

23

24

25

26

27

28