Pages 1 - 23

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable William H. Alsup, Judge

```
SONOS, INC.,                    )
                                )
          Plaintiff,            )
                                )
   VS.                          )   NO. C 21-07559 WHA
                                )
GOOGLE LLC,                     )
                                )
          Defendant.            )
_____)
                                )
GOOGLE LLC,                     )
                                )
          Plaintiff,            )
                                )
   VS.                          )   NO. C 20-06754 WHA
                                )
SONOS, INC.,                    )
                                )
          Defendant.            )
_____)
```

San Francisco, California
Thursday, February 24, 2022

**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES**:

For Plaintiff:

     ORRICK, HERRINGTON & SUTCLIFFE
     1000 Marsh Road
     Menlo Park, California 94025
    BY:  **BLAS DE BLANK, ATTORNEY AT LAW**


**(APPEARANCES CONTINUED ON FOLLOWING PAGE)**


REPORTED BY:  Ana Dub, RDR, RMR, CRR, CCRR, CRG, CCG
     CSR No. 7445, Official United States Reporter

1  **APPEARANCES**:  (CONTINUED)

2  For Defendant:

3                      QUINN, EMANUEL, URQUHART & SULLIVAN LLP
                       50 California Street, 22nd Floor
                       San Francisco, California 94111
4              BY:  **CHARLES K. VERHOEVEN, ATTORNEY AT LAW**

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

| | |
|---|---|
| 1 | **Thursday - February 24, 2022**                                    **8:39 a.m.** |

2                        P R O C E E D I N G S

3                             ---o0o---

4        **THE COURT:**  Okay.  Let's go to Sonos v. Google.

5        **THE CLERK:**  Calling Civil Action 21-7559,

6   Sonos Incorporated versus Google LLC and related cases.

7        Counsel, please state your -- please approach the podium

8   and state your appearances for the record, beginning with

9   counsel for plaintiff.

10       **MR. VERHOEVEN:**  Good morning, Your Honor.

11       **MR. de BLANK:**  Good morning, Your Honor.  Bas de Blank for

12   plaintiff Sonos.

13       **MR. VERHOEVEN:**  Okay.  I thought we were the plaintiff,

14   Your Honor.

15       But this is Charles Verhoeven for Google.

16       **THE COURT:**  Thank you.  Good morning.

17       All right.  This is a motion by --

18       **MR. VERHOEVEN:**  By Google --

19       **THE COURT:**  -- by you --

20       **MR. VERHOEVEN:**  -- to dismiss --

21       **THE COURT:**  -- to dismiss their second amended complaint

22   on willfulness.

23       **MR. VERHOEVEN:**  Yes, Your Honor.

24       **THE COURT:**  All right.

25       **MR. VERHOEVEN:**  And indirect infringement.

1      **THE COURT:** All right. Please go ahead.

2      **MR. VERHOEVEN:** Thank you, Your Honor.

3      This is a relatively simple motion. We have moved on

4  three of the patents that have been asserted. It's undisputed

5  in the papers.

6      Let me identify those three patents for the record.

7  The '033, the '966, and the '885 patents are the ones we're

8  moving on.

9      It's undisputed that prior to the draft complaint that was

10 sent to us ten hours before the suit was filed, that Google had

11 not received notice of any of those three patents. It's

12 undisputed. And based on that undisputed fact, Your Honor,

13 they cannot have a claim for willfulness.

14      Now, they've made some arguments about this that I think

15 I'll address briefly. One is, they point -- they say: No, no.

16 We gave you notice because we sent you a bunch of patents, and

17 some of those patents relate to the patents that we're suing

18 you on.

19      And, Your Honor, the law is very clear. You have to

20 identify the specific patent in order to provide notice. It's

21 not sufficient, Your Honor, to identify a patent that was a

22 parent of the patent or a patent that was a continuation of the

23 patent. You have to identify the specific patent in order to

24 provide notice.

25      That's the whole point of willfulness is you have prior

1   notice so that you can alter your behavior, but you don't, and

2   you willfully infringe.  That's the whole point of it.

3       So sending a notice of 50 patents that don't include the

4   patent you intend to sue on is the opposite of notice.  It's

5   misleading.

6       And that's what happened in this case, Your Honor.  There

7   has been no notice.  And it's undisputed.

8       So that's why I say it's a simple motion.  Under the law,

9   failure to provide notice prior to the suit means you can't

10  allege willfulness.

11      **THE COURT:**  Well, let me give you a fact hypothetical.

12  Let's say that -- put aside the pleadings for a moment.  Let's

13  say somebody just brings an ordinary patent infringement case

14  and discovery proceeds.  And during the course of discovery,

15  the defendant accused infringers, files are looked at, and

16  inside one of the files is a memo dated a year before suit in

17  which the alleged infringer says, "You know, this '813 patent,

18  I think we infringe this, and here's why, and maybe we should

19  change our design a little bit.  It'd be easy to design

20  around."  But they don't do it, and so that's in the files.

21      **MR. VERHOEVEN:**  Okay.

22      **THE COURT:**  Now, that would be clear-cut willful

23  infringement, or at least a jury could so find; and yet, it's

24  not pled.  So what would we do in a situation like that?

25      **MR. VERHOEVEN:**  A motion to amend based on newly

1    discovered facts that indicate that there was notice, prior to

2    the filing of the complaint, of the patent, just like you

3    would --

4        **THE COURT:**  When you say "notice," you mean knowledge.

5        **MR. VERHOEVEN:**  Knowledge.

6        **THE COURT:**  Knowledge.

7        **MR. VERHOEVEN:**  Thank you.

8        **THE COURT:**  All right.

9        **MR. VERHOEVEN:**  Knowledge of the patent and intent.

10       But that was not -- that was something discovered through

11   discovery, and the appropriate mechanism is a motion to amend.

12   Just like -- every single case alleges willfulness.  In this

13   case, frankly, I now know the reason the plaintiffs sent us the

14   complaint ten hours before filing is so they can now say we had

15   pre-suit notice.  I thought they were being nice.

16       **THE COURT:**  Okay.  Maybe that's true.  But, wait.

17       Now, if I grant your motion, will that then affect -- how

18   will they ever get into your files to find out -- you would be

19   saying:  Oh, Judge, you threw out the willfulness claim;

20   therefore, they don't get to take that discovery.

21       So don't they get to take discovery into willfulness?

22       **MR. VERHOEVEN:**  Not if they don't have a Rule 11 basis to

23   allege it, Your Honor.

24       **THE COURT:**  Then how are they ever going to find that

25   memo?

1    **MR. VERHOEVEN:**  How are they -- I mean, the way that this

2    works under Rule 11 is, you can't file a complaint to create a

3    claim.  If there's no willfulness evidence before you file the

4    complaint, you have no Rule 11 basis to allege willfulness.

5    And if you later discover facts that indicate that there's

6    willfulness, you file a motion.  You address the Court with it.

7        **THE COURT:**  What I'm worried about is that you would use

8    your victory on the pleadings to stonewall discovery so that

9    they can't ever find the information that would show

10   willfulness in your own files.

11       **MR. de BLANK:**  Your Honor, they don't have -- you can't

12   shoot first and aim later.  That's not the way the court system

13   works.  At least it shouldn't work that way.

14       And what we have here is a complaint that was filed, and

15   it's undisputed that three of the patents had no more than ten

16   hours' notice before the complaint was filed.

17       And the willfulness -- one of the problems in our patent

18   system, Your Honor, is everybody alleges willfulness and every

19   defendant alleges inequitable conduct.  And 90 percent of the

20   time, they go away by trial.  And it's just abuse of the system

21   when there's no factual predicate on which it's based.

22       **THE COURT:**  Well, you yourself filed, before they filed, a

23   declaratory relief in which you specifically alleged that you

24   did not infringe.  So you must have had time to do your Rule 11

25   homework.

1      **MR. VERHOEVEN:**  Yes.

2      **THE COURT:**  You had to do a complete analysis --

3      **MR. VERHOEVEN:**  Yes.

4      **THE COURT:**  -- to be able to say:  We know the claims; we

5  know what our product is; we've analyzed the situation.

6      So you've admitted everything there except infringement.

7  But you've admitted knowledge of the patent, pre-suit knowledge

8  of the patent, and pre-suit adequate time to do your homework

9  to see if you infringe.  No?

10      **MR. VERHOEVEN:**  Your Honor --

11      **THE COURT:**  See?

12      **MR. VERHOEVEN:**  -- just because we're able --

13      **THE COURT:**  No.  Okay.  I want you to -- I think that's a

14  tough problem for you.

15      Go ahead.

16      **MR. VERHOEVEN:**  Okay.  Let me just address it this way.

17  It's a red herring.

18      The issue is, does ten hours' notice provide sufficient

19  notice -- from a draft complaint, provide sufficient notice

20  under the law for a claim of willfulness?

21      And Your Honor's own decisions, as well as many other

22  decisions of this court, say no.  You can't create a cause of

23  action by sending someone a complaint, Your Honor.

24      And that's the only basis they have, is to say, "We sent

25  them a complaint ten hours beforehand."

1        Think about the purpose of willfulness, Your Honor.   The

2   whole purpose of a notice requirement is to encourage the

3   parties not to have litigation, not to have infringement, to

4   avoid knowingly infringing each other.   So you give notice and

5   you try to work it out ahead of time.

6        Now, ten hours before a complaint is filed is specious

7   along those lines.   It's not a notice to try -- and think about

8   it.   Can Google change its products in ten hours, Your Honor?

9   Can Google meet and confer in ten hours to avoid willfulness?

10  Of course not.

11       This whole "I'm filing ten hours before the complaint so,

12  therefore, technically, it's pre-suit" is a meaningless

13  argument that ignores the purpose of the notice requirement.

14  And frankly, if it's allowed, then everybody's going to be

15  sending complaints ten hours before they file them and then say

16  they have notice.

17       I mean, the draft complaint itself that they sent us to

18  create the notice already said we had notice, Your Honor.

19  So --

20       **THE COURT:**  All right.   Okay.   Time is short here.   Hold

21  that thought.

22       **MR. VERHOEVEN:**  Okay.

23       **THE COURT:**  Just stick with the points Mr. Verhoeven has

24  made about why didn't you send a letter, what was the notice,

25  and aren't you just arguing that the notice was sent less than

1    24 hours ahead of time.

2        **MR. de BLANK:**  Thank you, Your Honor.  Just a couple of

3    points to respond to that.

4        First, the notice was sent a day in advance; and that was

5    clearly --

6        **THE COURT:**  Did you really expect that they would change

7    their product in 24 hours?

8        **MR. de BLANK:**  We hoped that they would reach out to us.

9    And if they had, instead of filing -- rushing off to file a DJ

10   action, picked up the phone and said, "Hey, we got your

11   complaint.  We now take this seriously.  Let's have a

12   meaningful discussion and let's all hold off," we would have

13   had that discussion.

14       **THE COURT:**  No.  You said in your own letter, you were

15   about to file the very next day.

16       **MR. de BLANK:**  And that was because our concern was that

17   if we gave them more time, they would do exactly what they did,

18   which is race off to file a DJ action.

19       But if they had picked up the phone and if they had said,

20   "We got your complaint.  We would like to discuss it," we would

21   have --

22       **THE COURT:**  Why didn't you --

23       **MR. de BLANK:**  -- had that discussion.

24       **THE COURT:**  -- send a letter about three months ahead of

25   time, saying, "Here's how you infringe"?

1    **MR. de BLANK:**  Your Honor, if we had given them

2    three months' notice, then they would have done exactly what

3    they did in --

4        **THE COURT:**  What's wrong with that?  Are you saying that

5    we're somehow a bogus court here in the Northern District?

6        **MR. de BLANK:**  Not at all, Your Honor.

7        **THE COURT:**  Well, then why are you saying that you get to

8    choose -- you get to go to Waco, Texas -- "Waco, Texas" -- but

9    they can't come to the Northern District, where they live and

10   work and where your firm is, by the way?

11       **MR. de BLANK:**  Yes.

12       **THE COURT:**  So there's something about our court that you

13   don't like.

14       **MR. de BLANK:**  No, Your Honor, not at all.

15       **THE COURT:**  Yes, it is.  What is it about our court that

16   Sonos does not like?

17       **MR. de BLANK:**  No, that is not -- that is not at all the

18   case, Your Honor.

19       Sonos made the choice to file suit in Texas because it had

20   jurisdiction and venue over the dispute in Texas.  There was --

21       **THE COURT:**  Not just Texas.  Waco, Texas.

22       **MR. de BLANK:**  Yes, in Waco Texas, Your Honor, because

23   there was jurisdiction and venue in that case -- in that forum.

24       **THE COURT:**  Well, there was jurisdiction here.

25       **MR. de BLANK:**  That's true, Your Honor.  There's jur- --

1          **THE COURT:**  You could have filed here.

2          **MR. de BLANK:**  We could have, Your Honor.  There is

3    jurisdiction in a great number of places.

4          **THE COURT:**  Uh-huh.

5          **MR. de BLANK:**  And you're right.  Sonos made the --

6          **THE COURT:**  You still could have given notice and you

7    didn't.  And it's an important function to give notice so that

8    these cases don't -- so that it's not a game like you're

9    playing here.

10         A game:  Waco versus San Francisco.  Then it goes up to

11   the Federal Circuit.  It wastes so much time.  These patent

12   lawyers, you're just wasting the Court's resources with these

13   kind of fights, and it could have been resolved possibly with a

14   notice letter.

15         All right.  Okay.  That's my main point.  But that's his

16   main point, and I see a lot of merit in that point.  So I'm

17   going to shut up and let you respond.  Go ahead.

18         **MR. de BLANK:**  Thank you, Your Honor.  So a couple points

19   to respond to the amount of notice.

20         First, we're talking about the second amended complaint.

21   That complaint was filed February 23rd, 2021.  By the time that

22   second complaint -- amended complaint was filed which has the

23   willfulness allegation Google is seeking to dismiss, Google had

24   had notice of the '033 and '966 patents for over five --

25   sorry -- for almost five months and had notice of the '855

1   patent for over six weeks.

2        During that time, Google has continued to engage in the

3   specific conduct that was identified in the complaint and

4   alleged to be infringing.  Google had --

5        **THE COURT:**  Is this in the pleading?

6        **MR. de BLANK:**  Yes, Your Honor.  In the second amended

7   complaint, we include the claim charts identifying the

8   infringement.

9        **THE COURT:**  You're saying for one of these patents, that

10  they had six weeks' notice?

11       **MR. de BLANK:**  So there was an original complaint that was

12  filed on September 28th, 2020.  The day before that complaint

13  is when -- the notice that Google's attorney is referring to.

14       Since then, there's been a first amended complaint and now

15  a second amended complaint.

16       The second amended complaint is the operative pleading.

17  That's the complaint that they're seeking to dismiss the

18  willfulness allegations from.

19       That second amended complaint was filed February 23rd.

20  And at the time that we filed the second amended complaint,

21  they had had almost five months' notice for the '033 and '966,

22  and over six weeks' notice for the '855, and continued to

23  engage in the infringing activity.  That is notice.  And that

24  is, the continuing conduct is the allegation -- the basis for

25  the allegation of willfulness.  But --

1    **THE COURT:**  Help me on this.  That's a good point.

2    So you're saying that, okay, even if you can't bootstrap

3    the original complaint to be notice, the original complaint did

4    give notice; and then, when the second amended complaint is

5    filed many months later, they've been on notice for -- how

6    many months?  Five?

7    **MR. de BLANK:**  Almost five months for the '033 and '966,

8    and over six weeks for the '855.

9    **THE COURT:**  All right.  So what does the law say on that

10   point?  Does it, quote, relate back to the original date?  Or

11   is it just taken that "Okay, you've been on notice for

12   five months that you're infringing; this is willful"?  Is that

13   good enough?  Is there a case on this point?

14   **MR. de BLANK:**  Well, Mr. Verhoeven was the one who

15   suggested that if we had developed evidence of willfulness, we

16   would file an amended complaint alleging willfulness.

17   We have filed an amended complaint alleging willfulness,

18   and the evidence of that willful conduct is set forth in the

19   amended complaint.  That's the motion -- the complaint they're

20   seeking to discuss.

21   **THE COURT:**  I know, but --

22   **MR. VERHOEVEN:**  May I address that, Your Honor?

23   **THE COURT:**  No, not yet.

24   I'm asking you a question.  What is the best case you have

25   on whether that scenario works for alleging willful -- is this

1   in the face of -- there's some cases out there that say you

2   can't bootstrap your way into willfulness by alleging it in the

3   complaint.  A complaint can't create rights.  It asserts

4   rights, but it can't create rights.

5       So you must have some authority that goes against that.

6   What do you say?

7       **MR. de BLANK:**  Yes, Your Honor.  We are not saying that

8   the complaint creates the rights.

9       What we're saying is we gave them advance knowledge even

10  before the first complaint.

11      They're saying that that was not sufficient time with

12  respect to the first complaint.

13      And what I'm saying is, it was -- we think it was.  We

14  think the case law is clear that they had actual notice of the

15  conduct that was in advance of the complaint that was filed.

16  We think that is more than sufficient.

17      But even if it weren't, it certainly is sufficient to

18  support the willfulness allegations in the second amended

19  complaint which was filed months later.

20      **THE COURT:**  That's your argument.  Give me a decision by

21  the Federal Circuit or some court that I would be willing to

22  follow that says that the notice itself can come from the

23  courtesy copy 24 hours ahead and then plus the five months.

24      **MR. de BLANK:**  Sure.  So certainly, Your Honor, in the

25  context of notice for indirect infringement -- which I believe

1    is the same type of notice as is required for willfulness --

2    knowledge of the actual activity leading to the claim, there is

3    the decision in *Skyworks*, which we cited in our brief.

4         THE COURT:  Sky what?

5         MR. de BLANK:  *Skyworks*.

6         THE COURT:  All right.  Tell me what happened there.

7         MR. de BLANK:  Yes.  Let me get the cite.

8         So in that case, there was a first complaint filed in

9    Massachusetts.  That complaint was dismissed for lack of

10   jurisdiction in Massachusetts, and three days later, it was

11   refiled in the Northern District.

12        And the Northern District Court concluded that the --

13   sorry.  Let me get the quote for you.

14        (As read):

15            "The knowledge required may be satisfied by

16        showing actual knowledge or willfull blindness."

17   And then the Court continued, quote (as read):

18            "Courts in the Northern District of California

19        have held that knowledge of a patent based on the

20        filing of a complaint is sufficient to meet the

21        knowledge requirement for an induced infringement

22        claim.  Accordingly, Skyworks has shown Kinetic USA's

23        actual knowledge of the patents-in-suit from the

24        filing of the complaint in the Massachusetts

25        litigation."

1      And that's *Skyworks Solutions Incorporated*

2 *v. Kinetic Technologies Incorporated*, Northern District, in

3 March 2015.

4      **THE COURT:**  Okay.

5      **MR. VERHOEVEN:**  May I address --

6      **THE COURT:**  Hold that thought.

7      What do you say to that decision?

8      **MR. VERHOEVEN:**  First off, Your Honor, what they're

9 saying -- it's not like they filed an amendment that added

10 pleadings -- added additional statements about this.  They're

11 saying our notice is because they sued us five months ago.  And

12 they simply filed an amended complaint.

13      This is the same tactical stuff as filing -- giving

14 someone a copy ten hours ahead of time.  They're manufacturing

15 a willfulness claim based on their own complaint, and that is

16 not allowed, Your Honor.

17      Pre-suit -- the cases that find that -- for example, the

18 *MasterObjects* case is a case you ruled on, Your Honor.  That's

19 one case where you found -- you denied a motion like this

20 because the defendant -- there was evidence the defendant had

21 cited to the exact patent five times in his patent prosecution

22 histories and that it had knowledge of it prior to that time.

23 So you allowed it.

24      The other two times you looked at this issue, there was no

25 such evidence, and you granted the motions to dismiss,

1    Your Honor.

2    **THE COURT:**  You're not answering the *Skyworks* --

3    **MR. VERHOEVEN:**  Okay.  *Skyworks* goes to a different issue.

4    Okay?  So *Skyworks* goes to the issue of post-complaint conduct.

5    And so let me just separate this out really clearly,

6    Your Honor.  There's no dispute, I don't think, among the

7    parties that if there's no pre-suit notice, you can't allege

8    willfulness or indirect infringement pre-suit.

9    There's a split of authority, Your Honor, that has not

10    been resolved by the Federal Circuit as to whether you can

11    allege post-suit indirect infringement.

12    And Your Honor's got three opinions that I found, none of

13    which address a split of authority.

14    So I recommend to the Court to look at -- there's two

15    cases, Your Honor, where judges have carefully looked at this

16    issue of the post-suit conduct.  And if I can just have one

17    second to get them.

18    The *ZapFraud v. Barracuda* case -- no, I think I have the

19    wrong one.  Just one second, Your Honor.

20    Yeah.  *ZapFraud v. Barracuda*, this is a case before

21    Judge Connolly in Delaware.  The cite is 528 F.Supp.3d 247.

22    And Judge Connolly carefully goes through all of the cases and

23    the split of authority.  This is a decision in 2021.  And he

24    analyzes the split, looks at the cases on both sides, and

25    concludes (as read):

1          ". . . that the complaint itself cannot be the

2      source of the knowledge required to sustain claims of

3      induced infringement . . . ," post-complaint.

4      And there's another case, another recent decision by

5  Judge Gary Klausner in the Central District of California,

6  *Ravgen v. Quest*.  And I can only give you the Westlaw cite

7  because it's January 18th, 2022.  The Westlaw cite -- or it's

8  2:21-cv-09011.  And I can provide the Court with a copy later,

9  if the Court wants a copy of that.

10      But there also, Judge Klausner analyzed the split and

11  comes out the same way.  You can't use -- you can't

12  manufacture -- I'm so sorry, Your Honor.  I've got to stop

13  waving my hands.  You can't manufacture a claim through your

14  pleadings.  You just can't do it.

15      If you -- if you're saying -- you can't say -- you can't

16  sue somebody and say, because you sued them, they have willful

17  knowledge.  You have to have more than that.  You can't sue

18  somebody and have no pre-suit knowledge and say they're

19  intentionally inducing people because I sued them.

20      That is not consistent with -- well, at least in light of

21  these two judges' opinions, that's not consistent with the law.

22  Why?  They looked at the fact that willfulness is a punitive

23  doctrine.  And if you could just -- and it should be used

24  sparingly.  And if you can simply amend your complaint and

25  allege willfulness, everybody's going to allege willfulness.

1    It's going to open the floodgates.

2        Number two, they found that a complaint cannot create a

3    cause of action.  And post- -- if you don't have any other

4    facts besides the complaint, you can't allege post-suit

5    indirect infringement or willfulness.

6        Under FRCP 8 and 11, the plaintiff must have a good faith

7    basis for alleging infringement at the time of filing, not

8    based on post-suit conduct.

9        And it's impossible for someone to file a complaint,

10    there's no notice, and have the defendant have any other source

11    of the cause of action except the complaint itself.

12        **THE COURT:**  All right.  I need to bring it to a close.

13        **MR. VERHOEVEN:**  Okay, Your Honor.

14        **THE COURT:**  I understand your point.  I want to give this

15    side --

16        **MR. VERHOEVEN:**  I just want to say one thing we didn't

17    address.  It's in the papers.

18        There's another requirement for willfulness, which is you

19    have to plead egregiousness.  And they said you don't.  But if

20    Your Honor looks at the case law, you'll see there's one judge

21    in this district who found you don't.  Every other case that I

22    found says that you do.

23        **THE COURT:**  Says you do what?

24        **MR. VERHOEVEN:**  You do have to plead egregious conduct.

25    And there's no pleading of that sort in their complaint for

1    willfulness.

2         **THE COURT:** All right.  You get the last word.  Go ahead.

3         **MR. de BLANK:**  Thank you, Your Honor.

4         Google keeps saying that the complaint itself cannot be

5    the basis of notice.  And that's not the facts that we have

6    here.  Everyone agrees that there was at least a day before the

7    complaint was filed where there was actual notice; and before

8    the second amended complaint, there's a much longer period of

9    time.  We have pled that.  We have pled that notice.

10        We have pled that in the second amended complaint, that

11   they've continued their behavior and they're still doing the

12   infringing actions.

13        Now, what Google has never responded to was Your Honor's

14   hypothetical at the beginning about how we would get that memo

15   showing that they had the actual knowledge and intentionally

16   infringed the patent.  And that goes to the other basis of

17   willfulness, which is that they -- the allegation in the

18   complaint that they were willfully blind, and that can also be

19   a basis of notice.

20        So we have pleaded the facts sufficient for the Court to

21   conclude that Google was willfully blind to these patents

22   because of the protracted negotiations between the parties, the

23   fact that we identified patents in the same families, that we

24   accused the same products of infringing, that we told Google

25   that we were continuing to prosecute patents in those families,

```
1    and that these patents then issued in those families.
2         Now, once we gave them the notice --
3         THE COURT:  But, listen, I'm going to say one thing for
4    absolutely sure.
5         Putting somebody on notice of a family is not enough.
6         MR. de BLANK:  I'm not --
7         THE COURT:  The law should never go that far.  That is
8    crazy.  You've got to say:  Here's the patent, and here's the
9    claim that you infringe.
10        MR. de BLANK:  I understand, Your Honor.  And I'm not
11   saying that putting them on notice of the families is itself
12   sufficient for willfulness.
13        What I'm saying, though, is that once we sent them the
14   copy of the complaint, they had, in less than a day, according
15   to themselves, fully analyzed the patents, concluded that they
16   did not infringe, also, I believe, concluded that the patents
17   were invalid, and filed a DJ action for that.
18        And there's one of two possibilities that could allow
19   that.  One is that Google was already aware of those patents.
20   The memo Your Honor suggested exists, that there is something
21   where Google was monitoring those patent families because of
22   the notice that Sonos provided and Google had actual knowledge.
23        The other option is that Google ignored the suggestions by
24   Sonos that it monitor these families, that they infringe
25   patents in these families, and chose not to look for those
```

1  patents.  And that would be willful blindness.

2      And in either case, that could be a basis to extend even

3  further the date of knowledge and the date of beginning of

4  willful infringement.  But at a minimum, the date of the

5  willful infringement began when we gave them notice of the

6  patents and notice of the infringement allegations prior to

7  filing suit.

8      **THE COURT:**  All right.  Under submission.

9      **MR. de BLANK:**  Thank you.

10     **MR. VERHOEVEN:**  Thank you, Your Honor.

11         (Proceedings adjourned at 9:07 a.m.)

12                    ---o0o---

## CERTIFICATE OF REPORTER

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.


DATE:  Monday, February 28, 2022


_____

Ana Dub, CSR No. 7445, RDR, RMR, CRR, CCRR, CRG, CCG
Official United States Reporter