UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SONOS, INC.,

    Plaintiff,

v.

GOOGLE LLC,

    Defendant.

No. C 21-07559 WHA

**ORDER RE MOTION TO DISMISS AND CERTIFICATION UNDER 28 U.S.C. § 1292(b)**

### INTRODUCTION

In this patent infringement action, alleged infringer moves to dismiss patent owner's enhanced damages and indirect infringement claims. To the following extent, the motion is **GRANTED**.

### STATEMENT

This action is yet another pitched battle in the world-wide war between alleged infringer Google LLC and patent owner Sonos, Inc. regarding speaker technology. With our parties already embroiled in litigation in this district, the ITC, Canada, France, Germany, and Holland, Sonos's counsel sent Google an email alerting that Sonos would be filing an eighty-seven-page patent infringement complaint the next day against the search giant, this time in the District Court for the Western District of Texas, Waco Division. Within twelve hours, Google filed its own thirteen-page complaint for declaratory relief in our district. Early the next day, Sonos

filed its Texas action as promised. *Sonos, Inc. v. Google LLC*, No. C 20-00881 ADA (W.D. Tex. filed Sept. 29, 2020) (Judge Alan D. Albright).

An order stayed Google's declaratory judgment action to allow Judge Albright to rule on Google's motion to transfer the action in Texas to our district (No. C 20-06754 WHA, "DJ Dkt." No. 36). He denied it. The Court of Appeals for the Federal Circuit, however, directed that the case come here. Both cases are now before me. This motion arises in Sonos's action, the one formerly in Texas.

Sonos's second amended complaint alleges that Google infringes five of its patents, U.S. Patent Nos. 9,344,206; 9,967,615; 10,469,966; 10,779,033; and 10,848,885. The parties recently stipulated to dismissal of the '206 patent from our action (Dkt. No. 151; DJ Dkt. No. 132). As part of its patent infringement claims, Sonos alleges direct and indirect infringement and seeks enhanced damages for alleged willful infringement.

Google now moves to dismiss Sonos's second amended complaint for failing to adequately plead willful infringement and indirect infringement as to the '966, '033, and '885 patents. It does not contest the adequacy of the allegations regarding the '615 patent. This order follows full briefing and oral argument.

**ANALYSIS**

To survive a motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face," where facial plausibility turns on providing enough "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Courts accept well-pled factual allegations in the complaint as true and "construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

1. **ENHANCED DAMAGES.**

The parties disagree over the proper pleading standard for enhanced damages based on willful infringement. Google asserts a patent owner must allege knowledge of the specific patent, knowledge of infringement, and egregious behavior. Sonos asserts allegations of

egregiousness are not required. This is a recurring issue in patent litigation, so this order will set forth a comprehensive treatment of the problem and then turn to its application in the instant case.

Section 284 of the Patent Act states that, in cases of infringement, "the court may increase the damages up to three times the amount found or assessed." In its most recent decision on Section 284, the Supreme Court held that while "there is no precise rule or formula" for meting out enhanced damages, it is "generally reserved for egregious cases of culpable behavior" that has "been variously described in our cases as willful, wanton, malicious, bad-faith, deliberate, consciously wrongful, flagrant, or — indeed — characteristic of a pirate." *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 579 U.S. 93, 103–04 (2016) (cleaned up). In other words, enhanced damages constitute a "punishment [that] should generally be reserved for egregious cases typified by willful misconduct." *Id.* at 106.

The Supreme Court thus recognized the close interrelation between enhanced damages and willfulness. Indeed, patent plaintiffs will usually couch their requests for enhanced damages as claims for willful infringement, and defendants will then often seek to dismiss those claims at the outset. Some district courts in response have treated willful infringement as a distinct claim that can be subject to a motion to dismiss. *See Boston Sci. Corp. v. Nevro Corp.*, 415 F. Supp. 3d 482, 493 (D. Del. 2019) (Judge Colm F. Connolly); *Novitaz, Inc. v. inMarket Media, LLC*, 2017 WL 2311407, at *5 (N.D. Cal. May 26, 2017) (Judge Edward J. Davila).

Since *Halo*, the Court of Appeals for the Federal Circuit has explained that egregiousness is for the district judge to decide *after* the verdict:

> As the plain language of 35 U.S.C. § 284 makes clear, the issue of punishment by enhancement is for the court and not the jury. Under *Halo*, the concept of "willfulness" requires a jury to find no more than deliberate or intentional infringement. The question of enhanced damages is addressed by the court once an affirmative finding of willfulness has been made. It is at this second stage at which the considerations of egregious behavior and punishment are relevant. Questions of whether an accused patent infringer's conduct was "egregious behavior" or "worthy of punishment" are therefore not appropriate for jury consideration.

3

1  *Eko Brands, LLC v. Adrian Rivera Maynez Enters., Inc.*, 946 F.3d 1367, 1378 (Fed. Cir. 2020)
2  (citations and parentheticals omitted). So, the jury decides whether infringement was willful,
3  and, if it was, then the district judge determines whether it was egregious enough to warrant
4  enhanced damages, and, if so, how much (up to three times the actuals). Willfulness is thus a
5  necessary but not necessarily sufficient predicate, for a finding of egregious misconduct and
6  enhanced damages. *See also SRI Int'l, Inc. v. Cisco Sys., Inc.*, 930 F.3d 1295, 1310 (Fed. Cir.
7  2019).

8  To establish willful patent infringement, the patent owner must prove knowledge of the
9  patent and knowledge of infringement. *First*, "[k]nowledge of the patent alleged to be
10 willfully infringed continues to be a prerequisite to enhanced damages." *WBIP, LLC v. Kohler
11 Co.*, 829 F.3d 1317, 1341 (Fed. Cir. 2016). Mere knowledge of a "patent family" or the
12 plaintiff's "patent portfolio" is not enough. *Second*, the Court of Appeals for the Federal
13 Circuit has stated: "To establish willfulness, the patentee must show the accused infringer had
14 a specific intent to infringe at the time of the challenged conduct." *Bayer Healthcare LLC v.
15 Baxalta Inc.*, 989 F.3d 964, 987–88 (Fed. Cir. 2021); *see also Eko Brands*, 946 F.3d at 1378
16 ("deliberate or intentional infringement").

17 But what must be *pled* at the outset? No post-*Halo* appellate authority addresses any
18 pleading requirements for enhanced damages, or for that matter, willful infringement. With
19 respect to willfulness, this order agrees that specific intent to infringe be pled with plausibility.
20 This means that knowledge of the patent and knowledge of infringement must be pled with
21 plausibility.

22 An important practical aspect of our patent system is encouraging the practice of pre-suit
23 notice through a cease-and-desist letter that calls out the patent claims, the accused product,
24 and the way it infringes the claims. This practice is encouraged in order to give the alleged
25 infringer a meaningful opportunity to cease infringement or to get a license, all before any
26 lawsuit commences.

27 *Eko Brands* reiterated that the jury must decide the question of willfulness. In general,
28 issues go to the jury only if properly framed by the pleadings. "[T]he factual allegations that

4

are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). This means that willfulness should be plausibly pled in the complaint. *See Revolution Eyewear, Inc. v. Aspex Eyewear, Inc.*, 563 F.3d 1358, 1372–74 (Fed. Cir. 2009); *see also MasterObjects, Inc. v. Amazon.com, Inc.*, 2021 WL 4685306, at *2 (N.D. Cal. Oct. 7, 2021); *BillJCo, LLC v. Apple Inc.*, 2022 WL 299733, at *2 (W.D. Tex. Feb. 1, 2022) (Judge Alan D. Albright); *Välinge Innovation AB v. Halstead New England Corp.*, 2018 WL 2411218, at *3–9 (May 29, 2018) (Judge Christopher J. Burke), *recommendation and report adopted by* 2018 WL 11013901 (D. Del. Nov. 6, 2018) (Judge Leonard P. Stark). In other words, allegations of an infringer's knowledge of the patent and of infringement must raise a plausible inference that the defendant had the specific intent to infringe. Allegations of mere direct infringement are insufficient.

Cease-and-desist letters can efficiently lead to a resolution and save vast resources. Of course, reasonable time must be allowed for the alleged infringer to evaluate the letter and to react. The shorter the timespan allowed before suit, the less it can be said the patent owner had a "good faith basis for alleging willful infringement." *In re Seagate Tech., LLC*, 497 F.3d 1360, 1374 (Fed. Cir. 2007), *abrogated on other grounds by Halo*, 579 U.S. 93; *cf. Gustafson, Inc. v. Intersystems Indus. Prods., Inc.*, 897 F.2d 508, 511 (Fed. Cir. 1990).

It is true that Rule 9(b) states that knowledge may be alleged generally and without the specificity required for fraud. But it still must be alleged with plausibility. Given the vast number of issued patents, it is not plausible that every manufacturer, in the absence of a notice letter, would be aware of each and every patent that might claim some feature of its products. Willful infringement is the exception, not the rule. Said another way, knowledge of the patent and knowledge of infringement are necessary, but not sufficient, for a jury to find willfulness. *Bayer*, 989 F.3d at 987–88. So a mere allegation of "knowledge" remains conclusory and insufficient.

5

1    Yes, sending such a cease-and-desist letter will possibly invite a declaratory relief suit
2    and possibly spoil the patent owner's choice of venue. Venue tactics, however, should not
3    stand in the way of the right pleading standard.
4    This order recognizes there can be circumstances where willful infringement is properly
5    alleged despite the absence of a notice letter. For example, the alleged infringer may have
6    learned of the patent in a previous lawsuit. Or, the alleged infringer may have had a prior
7    license, but the license ran out. *See Arctic Cat Inc. v. Bombardier Recreational Prods., Inc.*,
8    876 F.3d 1350, 1371 (Fed. Cir. 2017). But such circumstances showing knowledge should be
9    alleged.
10   Must the further circumstances beyond willfulness that might warrant enhanced damages
11   also be pled? District courts have split on whether a patent owner must adequately plead
12   egregiousness as part of its willful infringement "claim" since it serves a proxy of sorts for
13   enhanced damages.[1]
14   This order holds that, once willfulness is adequately pled, the complaint need *not* go
15   further and specify the further aggravating circumstances warranting enhanced damages. *Eko*
16   *Brands* emphasized that the issue of whether to award enhanced damages arises after
17   infringement is *proven*. With the benefit of a full record the district judge is then able to
18   determine the extent to which the infringement was egregious. It would be a rare case where
19   the infringer disclosed the full extent of its egregious behavior in advance of litigation, such
20   that the conduct could be fully described in the complaint. In fact, in the run of cases, the most
21   damning information will lurk only in the files of the accused infringer and will only be
22   discovered after litigation is underway. The full extent of egregious behavior is therefore

---

[1] *Compare Fortinet, Inc. v. Forescout Techs., Inc.*, 543 F. Supp. 3d 814, 840 (N.D. Cal. 2021) (Judge Edward M. Chen) (must allege egregious behavior); *Finjan, Inc. v. Cisco Sys. Inc.*, 2017 WL 2462423, at *5 (N.D. Cal. 2017) (Judge Beth Labson Freeman) (same), *with Core Optical Techs., LLC v. Juniper Networks Inc.*, —— F. Supp. 3d ——, 2021 WL 4618011, at *3 (N.D. Cal. Oct. 7, 2021) (Judge Vince Chhabria) (egregiousness not required); *Longhorn Vaccines & Diagnostics, LLC v. Spectrum Sols. LLC*, —— F. Supp. 3d ——, 2021 WL 4324508, at *13–14 (D. Utah Sept. 23, 2021) (Judge David B. Barlow) (same); *Välinge*, 2018 WL 2411218, at *3–9 (same).

unknown at the pleading stage. It would be unreasonable to expect patent plaintiffs to be in a position to plead the full extent of egregious misconduct, especially since willfulness alone will not necessarily be enough. "[T]here are certain types of cases that will be almost impossible to bring, as all of the information necessary to state a plausible claim is owned or known by the defendants and not accessible to the plaintiffs until the discovery phase." 5 Charles A. Wright & Arthur R. Miller, Fed. Prac. & Proc. § 1216 (4th ed. 2021). A patent plaintiff can, however, plead the material elements of willful infringement, simply by sending a cease-and-desist letter that explains why the accused product infringes and giving the infringer a fair chance to cease or to obtain a license.[2]

Under what circumstances can the complaint itself serve as notice of infringement? Since *Halo*'s abrogation of *Seagate*, patentees have had more flexibility in asserting willful infringement claims for post-complaint conduct. *See Mentor Graphics Corp. v. EVE-USA, Inc.*, 851 F.3d 1275, 1295–96 (Fed. Cir. 2017); *WCM Indus., Inc. v. IPS Corp.*, 721 Fed. App'x 959, 970 (Fed. Cir. 2018). Google asserts that a patent infringement complaint can never supply the knowledge required for willfulness, contending further that pleadings may assert rights but cannot create rights (Reply Br. 5–6, citing *ZapFraud, Inc. v. Barracuda Networks, Inc.*, 528 F. Supp. 3d 247 (D. Del. 2021) (Judge Colm F. Connolly)). Put differently, if there was no viable willfulness claim prior to suit then, Google asserts, the service of a patent infringement complaint cannot bootstrap its way to willfulness.

The argument the other way is that a well-pled, detailed complaint laying out a clear case of infringement could supply the knowledge (post-complaint) required for willfulness once a defendant has had a reasonable period of time to evaluate the complaint's contentions. The traditional rule has been that damages run up to the commencement of the action unless a

---

[2] *See Evolved Wireless, LLC v. Samsung Elecs. Co., Ltd.*, 2016 WL 1019667, at *4 (Mar. 15, 2016) (Judge Sherry R. Fallon), *report and recommendation adopte*d 2016 WL 1381765 (D. Del. Apr. 6, 2016) (Judge Sue L. Robinson); *Monolithic Pwr. Sys., Inc. v. Silergy Corp.*, 127 F. Supp. 3d 1071, 1074 n.1 (N.D. Cal. 2015) (Judge Vince Chhabria); *Orlando Comms. LLC v. LG Elecs., Inc.*, 2015 WL 1246500, at *11–12 (M.D. Fla. Mar. 16, 2015) (Judge Anne C. Conway) (indirect infringement); *Intellectual Ventures I LLC v. Toshiba Corp.*, 66 F. Supp. 3d 495, 500 (D. Del. 2014) (Judge Sue. L. Robinson).

supplemental complaint for additional damages is allowed. The more modern practice, in view of the delay in getting cases to trial, has been to allow parties to update their damages studies to a date closer to trial. One might further argue that a well-pled, detailed original complaint laying out a clear case of infringement from the outset could support a willfulness verdict with regard to a time period *reasonably* after commencement of the action and before trial. *Cf. WCM*, 721 Fed. App'x at 970. Some judges agree or substantially agree; others substantially disagree.[3]

The main argument the other way is that allowing the complaint to serve as notice would circumvent the worthwhile practice to send a cease-and-desist letter before suit. Recognizing the efficacy of cease-and-desist letters, this order joins those district courts that do not generally allow the complaint to serve as notice.

A different calculus, however, applies when the controversy is initiated by the accused infringer by way of a declaratory relief action. In that circumstance, before suit, the accused infringer has presumably already studied the patents versus the accused products and, indeed, has sufficiently studied them to assert under Rule 11 that the accused product does not infringe the specified patents — regardless of whether a cease-and-desist letter or other notice has been sent. *See Mitutoyo Corp. v. Central Purchasing, LLC*, 499 F.3d 1284, 1290–91 (Fed. Cir. 2007). What is more, any declaratory relief complaint must, as a way to demonstrate the need for the requested relief, acknowledge the ongoing sale of the accused product. In such a circumstance, the patent owner, by way of a counterclaim, should be allowed to plead the infringer's conceded knowledge of the patents and that the infringer has had sufficient time to analyze the accused product vis-à-vis those patents (along with other specifics needed to show willfulness). In addition, in light of the continuing need for declaratory relief, the counterclaim should be allowed to allege that the infringement is ongoing, *i.e.*, post-counterclaim

---

[3] *Compare IOENGINE, LLC v. PayPal Hldgs., Inc.*, 2019 WL 330515, at *7–8 (D. Del. Jan. 25, 2019) (Judge William C. Bryson); *Apple Inc. v. Samsung Elecs. Co., Ltd.*, 258 F. Supp. 3d 1013, 1025–27 (N.D. Cal. 2017) (Judge Lucy H. Koh); *with Wrinkl, Inc. v. Facebook, Inc.*, 2021 WL 4477022, at *7 (D. Del. Sept. 30, 2021) (Judge Richard G. Andrews); *ZapFraud*, 528 F. Supp. 3d at 251–52; *CAP Co., Ltd. v. McAfee, Inc.*, 2015 WL 3945875, at *3 (N.D. Cal. June 26, 2015) (Judge James Donato).

willfulness. Infringers should not be allowed to immunize themselves from ongoing willfulness by forcing patent owners into litigation. If this holding discourages declaratory relief actions, it will do so no more than deserved.

I will now apply these ground rules to the instant case, again reminding the reader that this arises in Sonos's action, the one that came from Texas. The specifics of the instant pleading, say:

> Sonos provided a pre-filing copy of both the original complaint and this Amended Complaint to Google, thereby providing clear pre-suit notice of infringement of the patents-in-suit. Google, however, has never given any indication that it is willing to stop infringing, and did not do so in response to receiving a draft of either the original complaint or this Amended Complaint

(Sec. Amd. Compl. ¶ 35). It is well known in this case that Sonos gave notice of infringement less than twenty-four hours before commencing this action in Texas. That was not enough time to provide an alleged infringer a meaningful opportunity to cease infringing or negotiate a license. It was not even enough time for counsel for the accused infringer to parse through the complaint (here a massive, eight-seven-page pleading concerning multiple patents). Sonos has the burden to plausibly plead adequate notice was given to assess the allegations of infringement in the complaint. Consequently, Sonos has not plausibly alleged Google had the requisite knowledge.

The operative complaint references various correspondence Sonos sent to Google in October 2016, February 2019, and January 2020 regarding Sonos's patents (Sec. Amd. Compl. ¶¶ 20, 22, 26). But for all of that documentation, Sonos acknowledges "this correspondence did not specifically identify the '033, '966, and '855 Patents" (Opp. 2). Nor has Sonos adequately alleged that, due to its correspondence and their current multi-jurisdictional patent dispute, Google should have known about the pertinent patents and of infringement. Sonos's allegations on that issue are merely rote recitations of the claim: "Google's infringement of the '033 Patent is also willful because Google (a) had actual knowledge of the '033 Patent and Sonos's infringement contentions no later than September 28, 2020 (*see* ¶¶ 19-29 above), (b) engaged in the aforementioned activity despite an objectively high likelihood that Google's

9

actions constituted infringement of the '033 Patent, and (c) this objectively-defined risk was either known or so obvious that it should have been known to Google." (Sec. Amd. Compl. ¶ 95). The allegations for the other patents mirror this allegation. All are insufficient.

The special twist in this controversy, however, is that Google commenced its own declaratory relief claim first. Applying our ground rules set forth above, Sonos should be allowed to counterclaim along the lines set forth above. That is, Sonos should be allowed to plead the infringer's knowledge of the patents and that the infringer has had sufficient time to analyze the accused product vis-à-vis those patents (along with other specifics needed to show willfulness). Accordingly, Sonos will be allowed to make the willfulness allegations either by way of a counterclaim in the declaratory relief action or by way of amendment in the Texas action now that it has come to this district.

This order makes clear, however, that even under the strictest of pleading standards, and even if all its willfulness claims were struck, Sonos would be entitled to pursue in discovery issues concerning Google's pre-suit knowledge of the specific patents-in-suit and of infringement. In the event that evidence in discovery showed that Google had been aware (prior to suit) of the specific patents and of their infringement, Sonos would then be allowed to move for leave to amend to reassert its willful infringement allegations. This supplemental observation seems necessary because this entire motion was evidently made to set up the argument that discovery into willfulness would be off limits.

In short, although not required to plead egregiousness, Sonos has failed to adequately allege willful infringement, the predicate for enhanced damages. It will be allowed to amend to try again.

2. **INDIRECT INFRINGEMENT.**

The foregoing ground rules concerning the adequate pleading of willful infringement and enhanced damages apply with parallel force to the parallel issues for indirect infringement.

Like willful infringement, both forms of indirect infringement — induced and contributory infringement — require knowledge of the patent and knowledge of infringement. In addition, to state a claim for induced infringement under Section 271(b) of the Patent Act,

10

1   the patent owner must also sufficiently allege the accused infringer's specific intent to
2   encourage another's infringement of the patent. For contributory infringement under Section
3   271(c), the patentee must further adequately allege that the accused product is not a staple
4   article or commodity of commerce suitable for a substantial noninfringing use. *See Bio-Rad*
5   *Labs., Inc. v. ITC*, 998 F.3d 1320, 1335 (Fed. Cir. 2021).

6    The district court split on whether a pleading can serve as the basis for knowledge of a
7   patent as well as infringement extends to indirect infringement as well. On the one hand,
8   district courts have held: "A complaint is a perfectly adequate notice to defendants for indirect
9   infringement claims for post-filing conduct." *CAP*, 2015 WL 3945875, at *5. Other district
10  courts have reasoned: "The purpose of a complaint is to obtain relief from an existing claim
11  and not to create a claim." *ZapFraud*, 528 F. Supp. 3d at 251–52. Falling in between, some
12  district court judges that have not permitted knowledge arising from a pleading to suffice for a
13  willful infringement claim have gone the other way for indirect infringement: "[I]f the plaintiff
14  were not permitted to amend a complaint [to allege knowledge since the filing of the original
15  complaint], it would be the equivalent of saying that the plaintiff's failure to give notice of the
16  patents outside of litigation operated as a bar to bringing a suit for indirect infringement."
17  *Wrinkl*, 2021 WL 4477022, at *7.

18  Everything discussed above for willfulness applies here. This means that without a
19  notice letter or circumstances like the examples described previously, the complaint will
20  generally not be adequate to serve as notice for either willful or indirect infringement.

21  Turning to the operative pleading here, Sonos proceeds on the theory that provision of a
22  massive, pre-filing copy of the complaint one day prior to filing it in Texas was adequate to
23  provide knowledge. Sonos has failed to sufficiently allege knowledge of the patent and
24  knowledge of infringement.

25  Additionally, for contributory infringement, Google asserts that Sonos does not
26  adequately plead the requisite lack of substantial noninfringing uses. "For purposes of
27  contributory infringement, the inquiry [on substantial noninfringing use] focuses on whether
28  the accused products can be used for purposes *other than* infringement." *In re Bill of Lading*

11

*Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1338 (Fed. Cir. 2012) (emphasis in original).   Sonos's allegations of substantial noninfringing uses assert:

> For instance, at a minimum, Google offers for sale, sells, and/or imports the YouTube Music, Google Play Music, and YouTube apps for installation on devices (*e.g.*, smartphones, tablets, and computers) that meet one or more claims of the '033 Patent. . . . Further, Google especially made and/or adapted these apps for installation and use on devices that meet the one or more claims of the '033 Patent, and these apps are not a staple article of commerce suitable for substantial noninfringing use

(Sec. Amd. Compl. ¶ 94).  The allegations for the other two patents are similar (*id.* ¶¶ 119, 132).  Sonos's allegations that the accused products (*e.g.*, the YouTube app) cannot be used for purposes other than infringement is conclusory.  There are no factual underpinnings of Sonos's allegations on this point.  The operative pleading, in fact, describes Google as adding infringing "features" to its products like the YouTube app (*id.* ¶ 16).

Google cannot escape liability merely be embedding Sonos's patents into a larger app with some additional, separable features.  *See Ricoh Co., Ltd. v. Quanta Computer Inc.*, 550 F.3d 1325, 1337 (Fed. Cir. 2008).  To that end, when determining whether there are substantial noninfringing uses, the district court must consider "whether the infringing component is 'separate and distinct' from other functions of the composite product."  *Koninklijke Philips N.V. v. Zoll Med. Corp.*, 656 Fed. App'x 504, 524 (Fed. Cir. 2016) (citing *Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1330 (Fed. Cir. 2010)) (internal quotation marks omitted).  The Court of Appeals for the Federal Circuit has "been fairly liberal" on this point.  *Ibid.*

Sonos's problem is that its allegations speak to the apps generally, and not any specific component part.  Sonos cites *Firstface Co., Ltd. v. Apple, Inc.*, 2019 WL 1102374, at *1–2 (N.D. Cal. Mar. 8, 2019) (Judge James Donato).  *Firstface* is instructive.  There, the patent owner alleged that the home button and fingerprint features on iPhones and iPads were not staple articles of commerce suitable for substantial noninfringing uses.  Unlike here, the patent owner in *FirstFace* focused on the component features.  It did not assert that the iPhone itself or the iOS operating system itself had no substantial noninfringing uses.  Without more, Sonos

12

1   has failed to properly allege there are no substantial noninfringing uses for the accused

2   products. Its contributory infringement claim consequently fails.

## CONCLUSION

Google's motion is **GRANTED** as to Sonos's willful infringement and indirect infringement claims, which are **DISMISSED WITHOUT PREJUDICE**.

Sonos may move for leave to amend its complaint. Any such motion must include as an exhibit a redlined version of the proposed amendment that clearly identifies all changes from the amended complaint. This order highlighted certain deficiencies in the amended complaint, but it will not necessarily be enough to add sentences parroting each missing item identified herein. If Sonos moves for leave to file another amended complaint, it should be sure to plead its best case and take into account all criticisms made by Google, including those not reached by this order.

## CERTIFICATION UNDER 28 U.S.C. § 1292(b)

Recognizing that reasonable minds may differ as to the ground rules set forth above for pleading willfulness and indirect infringement (on the knowledge point, not on the issue of substantial noninfringing uses), and recognizing the vast amount of resources being consumed in the district courts over such pleading issues, this order now certifies those issues for interlocutory appeal under 28 U.S.C. § 1292(b). This order finds that these are controlling questions of law as to which there is substantial ground for difference of opinion and that their resolution by the court of appeals will materially advance the litigation.

**IT IS SO ORDERED.**

Dated: March 16, 2022.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE