# EXHIBIT 8

CLEMENT SETH ROBERTS (STATE BAR NO. 209203)
croberts@orrick.com
BAS DE BLANK (STATE BAR NO. 191487)
basdeblank@orrick.com
ALYSSA CARIDIS (STATE BAR NO. 260103)
acaridis@orrick.com
EVAN D. BREWER (STATE BAR NO. 304411)
ebrewer@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105-2669
Telephone:    +1 415 773 5700
Facsimile:    +1 415 773 5759

SEAN M. SULLIVAN (admitted *pro hac vice*)
sullivan@ls3ip.com
COLE RICHTER (admitted *pro hac vice*)
richter@ls3ip.com
LEE SULLIVAN SHEA & SMITH LLP
656 W Randolph St., Floor 5W
Chicago, IL 60661
Telephone:    +1 312 754 0002
Facsimile:    +1 312 754 0003

*Attorneys for Plaintiff Sonos, Inc.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SONOS, INC., | Case No. 3:21-cv-07559-WHA |
|        *Plaintiff*, | **SONOS, INC.'S THIRD AMENDED COMPLAINT** |
|   *v.* | **DEMAND FOR JURY TRIAL** |
| GOOGLE LLC, | Judge: Honorable William Alsup |
|        *Defendant*. | |

## COMPLAINT

Plaintiff Sonos, Inc. ("Sonos" or "Plaintiff") hereby asserts claims for infringement of United States Patent Nos. 9,967,615; 10,779,033; ~~9,344,206;~~ 10,469,966; and 10,848,885 (the "patents-in-suit~~";~~" or "asserted patents"); attached hereto as Exhibits ~~1-4 and 45~~A-D, respectively) against Defendant Google LLC ("Google" or "Defendant"), and alleges as follows:

## INTRODUCTION

1.  Sonos is an American success story. It was founded in 2002 in Santa Barbara, California by a handful of engineers and entrepreneurs with a vision to invent the world's first wireless, whole-home audio system. At the time, popular audio systems were dependent on a centralized receiver hard-wired to each individual passive speaker throughout a home. Further, most homes with Internet access had dial-up connections, the iPhone was still five years away, and there were no streaming music services. The technological barriers confronting Sonos were enormous.

2.  To deliver on its vision, the Sonos team completely reimagined the in-home music system as a decentralized network of smart playback devices, and it developed a platform that could seamlessly and wirelessly distribute audio room by room or throughout the home at the user's discretion. Sonos created a "choose what to play, where to play it, and how loud" wireless audio system that could not only perform without lag (*e.g.*~~,~~, buffering~~,~~ or network interruptions~~),~~) but that was also so simple and intuitive that customers would make it part of their daily lives.

3.  Commercial success did not come easy for Sonos as its vision was in many ways ahead of its time. But year by year, consumers – and the entire industry – came to appreciate that wireless multi-room audio devices and systems could not only work, but could become an essential part of the listening experience. Success required staying true to Sonos's disruptive vision, continuing to innovate while adjacent industries caught up and customers became more and more enamored with the idea of Sonos as they had the chance to encounter and use its products. Once Sonos had taken all the risks and placed enormous bets on research and development, the "first followers" began to copy Sonos's innovations.

4.      To this day, Sonos remains focused on innovations that further enhance the listening experience.  Sonos invests heavily in research and development and, as a result, frequently invents new systems with new technologies, enhanced functionality, improved sound quality, and an enriched user experience.

5.      As a result, Sonos has become one of the world's leading providers of innovative audio products.  In recognition of its wide-ranging innovations, the U.S. Patent & Trademark Office has granted or allowed Sonos more than 940 U.S. patents, including the patents-in-suit, with hundreds more patents in other countries.  The innovations captured by these patents cover many important aspects of wireless multi-room audio devices/systems, including, for example, how to manage and control groups of playback devices, how to facilitate seamless control and transfer of audio playback among devices, and how to output amazing sound quality.

6.      The industry has recognized the importance of Sonos's patents.  For example, Sonos earned a spot on the IPO list of "Top 300 Organizations Granted U.S. Patents" and the IEEE recognized Sonos as having one of "[t]he technology world's most valuable patent portfolios."  *See* Exs. 6 E and 7F.

7.      Sonos launched its first commercial products in 2005 and has since released a wide variety of critically acclaimed, patented, wireless multi-room audio products, including, for example, the Play:1, Play:3, Play:5 (Gen 1 and Gen 2), One (Gen 1 and Gen 2), One SL, Move, Playbar, Playbase, Beam, Sub, Connect, Port, Connect:Amp, Amp, Five, and Arc.  *See, e.g.*, Ex. 8G.  Sonos's products can be set up and controlled by the Sonos app.  *Id.*

8.      Sonos's efforts have made it incredibly popular with its customers.  Sonos estimates that in fiscal year 2019, Sonos's customers listened to 7.7 billion hours of audio content using its products.  And, as of September, 2019, almost two thirds of Sonos households had purchased and installed more than one Sonos product.

9.      Sonos's record of innovation has made it the undisputed leader in what has come to be called the "multiroom audio" field.  *See, e.g.*, Ex. 9 H (2018 Digital Trends: "Sonos is the king of multiroom audio…."); Ex. 10 I (2019 What Hi-Fi: "[N]o multi-room offering is as complete or as pleasurable to live with as Sonos.").

10.     Sonos has already sued Google for infringing patents on its first group of inventions involving the set-up, control, playback, and synchronization of wireless playback devices.  This case involves a second group of inventions which, as described more extensively below, tackle the novel technological challenges of how to transfer playback of a stream of music fromprovided by a cloud-based service. from one device to another and how to create, manage, and invoke "zone scenes" to configure how multiple playback devices work together, and how to dynamically adjust the equalization of a playback device based on the environment in which the playback device is operating.

**GOOGLE BEGINS INFRINGING**

11.     Almost a decade after Sonos created the smart-speaker market, Google entered the space.  Initially, Google sought to work with Sonos and, through those efforts, gained access to Sonos's engineers, products, and technology.  All too quickly, however, Google shifted focus and began to develop and sell products that copied Sonos's technology and infringed Sonos's patents.

12.     Part of what makes Sonos so successful is that, through its application, Sonos is compatible with many different third-party music streaming services.  When Google publicly launched its own streaming music service – Google Play Music – in late 2011, Sonos worked with Google to integrate the Google Play Music service into the Sonos ecosystem.  As a result, Google Play Music launched on the Sonos platform in 2014.  *See, e.g.*, Ex. 11 J.

13.     This should have benefited everyone: Sonos's customers gained access to another streaming service and Google Play Music users gained access to Sonos's devices.  But as the press recognized at the time, Sonos's integration work with Google was especially "deep" and therefore gave Google a wide aperture through which to view Sonos's proprietary technology.  *Id.* (2014 Wired: "This is the first time this sort of deep integration has happened between a third party music service and Sonos.").  The copying soon followed.

14.     Just eighteen months later, in 2015, Google began willfully infringing Sonos's patents.  On information and belief, Google used the knowledge it had gleaned from Sonos to build and launch its first wireless multi-room audio product – Chromecast Audio.

15.     Google's Chromecast Audio began what has turned into Google's relentless effort to copy Sonos and use Sonos's patented technology.  For example, although Google's original Chromecast Audio did not yet include Sonos's patented multi-room audio functionality, even when it was launched Google was working to add that Sonos-patented feature.  *See* Ex. ~~12~~ K (2015 The Guardian: "Google is also working on multi-room audio streaming using the Chromecast Audio, but it will not support the popular feature out of the box.").  And, when Google added the infringing feature, the press immediately noted how this "major feature update" made Google's product even more "like the ones made by Sonos:"

> Google's recently-launched Chromecast Audio adapter is getting a major feature update this week: Consumers will now be able to group multiple Chromecast audio adapters to stream their favorite music simultaneously in more than one room, similar to the multi-room support available for internet-connected loudspeakers like the ones made by Sonos.

Ex. ~~13~~ L (2015 *Variety* article entitled "Google's Chromecast Audio Adapter Gets Multi-Room Support Similar to Sonos"); *see also* Ex. ~~14~~ M (2015 Pocket-Lint) ("You control your Sonos experience with one app.  Well, thanks to a new software rollout, Chromecast Audio can pretty much do the same thing.").

16.     This has become a consistent pattern.  Time and again, Google has added features to its products that first appeared in Sonos's products and which make use of Sonos's patented technology.

## GOOGLE'S INFRINGEMENT ACCELERATES DESPITE CONTINUED NOTICE OF INFRINGEMENT

17.     Since 2015, Google's misappropriation of Sonos's patented technology has proliferated.  Google has expanded its wireless multi-room audio system to more than a dozen infringing products, including the Google Home Mini, Google Home, Google Home Max, and Pixel phones, tablets, and laptops.  And Google has persisted in infringing even though Sonos has warned Google of its infringement on at least ~~fourt~~en separate occasions dating back to 2016.

18.     For example, in 2016 (a year after Google launched the Chromecast Audio wireless adapter), Google released the Google Home multi-room audio player (which was

1    controlled by Google's rebranded multi-room controller app – the Google Home app).  Unlike the

2    Chromecast Audio, the Google Home added an internal speaker driver making it an "all-in-one"

3    audio player akin to Sonos's prior Play:1, Play:3, and Play:5 products.

4         19.    Sonos raised the issue of infringement as to these products with Google as early as

5    August 2016.  Sonos hoped that Google would respect Sonos's intellectual property and the

6    extensive work Sonos had put into inventing and developing its products.  But Google did no

7    such thing.

8         20.    ~~In October~~On September 2, 2016, Sonos ~~put~~sent John LaBarre and Allen Lo at

9    Google ~~on notice of infringement of 28~~a document identifying 24 issued Sonos patents and 4

10   allowed Sonos patent applications, including ~~asserted United States~~ones that share a respective

11   common specification with the '615 Patent ~~No. 9,344,206.~~, the '966 Patent, the '033 Patent, and

12   the '885 Patent.  Ex. BY.

13        21.    On October 13, 2016, Sonos sent John LaBarre, Allen Lo, and Louis Sorell at

14   Google~~, however,~~ a document identifying 22 issued Sonos patents and 6 allowed Sonos patent

15   applications (including ones that share a respective common specification with the '615 Patent,

16   the '966 Patent, the '033 Patent, and the '885 Patent) and identifying relevant Google products for

17   each.  Ex. BZ.

18        22.    On October 26, 2016, Sonos sent John LaBarre at Google a PowerPoint

19   presentation identifying 29 issued Sonos patents and 3 allowed Sonos patent applications

20   (including ones that share a respective common specification with the '615 Patent, the '966

21   Patent, the '033 Patent, and the '885 Patent).  Ex. CA.

22        23.    On January 31, 2018, Sonos sent Matthew Gubiotti at Google a PowerPoint

23   presentation identifying 16 issued Sonos patents and 1 allowed Sonos patent application

24   (including ones that share a common specification with the '966 Patent and the '885 Patent), and

25   identifying relevant Google products for each, including products accused in this case.  Ex. CB.

26        24.    On July 12, 2018, Sonos sent John LaBarre and Matthew Gubiotti at Google a

27   document identifying 58 issued Sonos patents (including ones that share a respective common

28

specification with the '615 Patent, the '966 Patent, the '033 Patent, and the '885 Patent) and identifying relevant Google products for each, including products accused in this case.  Ex. CC.

25.    On February 22, 2019, Sonos sent Matthew Gubiotti, Bradley Riel, and Tim Kowalski at Google a letter enclosing a link to an electronic repository containing 100 claim charts detailing Google's infringement of 92 issued Sonos patents and 8 allowed Sonos patent applications (including the '615 Patent and others that share a respective common specification with the '615 Patent, the '966 Patent, the '033 Patent, and the '885 Patent).  Ex. CD.

26.    On June 13, 2019, Sonos sent Bradley Riel and Tim Kowalski at Google a PowerPoint presentation reiterating the 100 claim charts detailing Google's infringement of 92 issued Sonos patents and 8 allowed Sonos patent applications sent on February 22, 2019 and identifying 6 issued Sonos patents (including one that shares a common specification with the '966 Patent and the '885 Patent) and identifying relevant Google products for each.  Ex. CE.

27.    On January 6, 2020, Sonos sent Bradley Riel and Tim Kowalski at Google a pre-filing copy of an International Trade Commission Complaint, a U.S. District Court complaint, and claim charts detailing Google's infringement of 5 issued Sonos patents via products that are also accused in this case.

28.    On September 28, 2021, Sonos sent Bradley Riel and Tim Kowalski at Google a pre-filing copy of Sonos's complaint detailing Google's infringement of, *inter alia*, the '615, '033, and '966 Patents.

29.    On January 8, 2021, Sonos's counsel sent Google's counsel a copy of an amended complaint and supplemental infringement contentions detailing Google's infringement of the '885 Patent.

30.    These instances establish that Google was, over at least a five-year period, put on repeated notice of Sonos's patents and the breadth of Sonos's patent portfolio concerning specifically the products accused in this case.  At a minimum, this knowledge and repeated and persistent disclosure establishes that Google was, for some time periods, at least willfully blind to the fact that the asserted patents existed and, for other time periods, had actual knowledge of the existence of the asserted patents.  Further, this knowledge and repeated and persistent disclosure

establishes that Google, for some time periods, had at least failed to investigate whether it infringed the asserted patents despite the existence of a high risk of infringement and, for other time periods, had actual knowledge of a credible and specific allegation of infringement of the asserted patents.  In this way, Google was or at least should have been aware of each of the asserted patents starting from at least their respective dates of issuance and of its infringement thereof.

20.31.  Despite this consistent and repeated notice, Google did not stop infringing. Instead, it doubled down and introduced new infringing products, making use of even more patented technology from Sonos.

21.32.  For example, in 2017, eight years after Sonos introduced its first all-in-one audio player – the Play:5 – Google released its first all-in-one audio players – the Google Home Max and the Google Home Mini.  Google's Home Max in particular was seen as a "Sonos Clone" and a "not-so-subtle copy of the [Sonos] Play:5 speaker….".…"  Ex. 15 N.  As explained by Gizmodo, "[i]t's also hard not to see the [Google Home Max] device as something of a jab at Sonos."  *Id.*; *see also*, *e.g.*, Ex. 16 O (2017 Android Central: "You can't help but look at Google Home Max… and come to the conclusion that Google is sticking its nose where Sonos has been for years.").

22.33.  Then again, in February 2019, Sonos put Google on notice of infringement of 100 Sonos patents, including asserted United States Patent No. 9,967,615.

23.34.  Nothing Sonos did, however, deterred Google from expanding its infringement. Google's infringing product line now includes at least the Chromecast, Chromecast Ultra, Chromecast Audio, Chromecast with Google TV, Home Mini, Nest Mini, Home, Home Max, Home Hub, Nest Hub, Nest Hub Max, Nest Audio, and Nest Wifi Point (individually or collectively, "Google Audio Player(s)" or "Cast-enabled media player(s)")"), all of which can be controlled by, for example, the YouTube Music app, the Google Play Music app, the YouTube app, and the Google Home app (individually or collectively, "Google App(s)").  *See, e.g.*, Exs. 17-27.  P-Z.

24.35.  In addition to providing the Google Apps for controlling the Google Audio Players, Google also offers various infringing hardware controllers that are pre-installed with the

Google Play Music app, YouTube app, and/or YouTube Music app (and capable of downloading and executing the Google Apps that are not pre-installed). These infringing hardware controllers include, for example, Google's "Pixel" phones, tablets, and laptops (*e.g.*, the Pixel 3, Pixel 3 XL, Pixel 3a, Pixel 3a XL, Pixel 4, Pixel 4 XL, and Pixel 4a phones, the Pixel Slate tablet, and the Pixelbook and Pixelbook Go laptops) (individually or collectively, "Google Pixel Device(s)"). *See, e.g.*, Exs. ~~28-32~~ AA-AE.

25.36. Herein, "Google Wireless Audio System" refers to one or more Google Audio Players, one or more Google Pixel Devices, and/or one or more Google Apps.

26.37. In order to hold Google accountable for its willful infringement of Sonos's patents, Sonos filed a complaint in January 2020 asking the United States International Trade Commission ("ITC") to institute an investigation into Google's unlawful importation into and sale in the United States of infringing products. The ITC instituted an investigation, In re Certain Audio Players and Controllers, Components Thereof, and Products Containing Same, Inv. No. 337-TA-1191, to determine whether Google's audio players and controllers infringe five Sonos patents directed to fundamental features such as playing music on multiple speakers in synchrony, playing music in stereo over two or more players, a controller that can easily setup a player on a wireless network, and playback-control features such as controlling both the volume of individual speakers and a group of speakers.

27.38. While the ITC Investigation has been pending, Google has continued to increase its infringement. For example, press reports indicate that Google is introducing new products and changes that mean Google is "one step closer to replacing your Sonos system." Ex. ~~33~~ AF; *see also* Ex. ~~44~~ AP ("The new functionality appears to be the most direct challenge to the likes of Sonos, which has enjoyed enormous success by creating a series of connected speakers and soundbars that can play music simultaneously – or individually."). The press has similarly noted that Google's new speaker "could be a new rival for the likes of the Sonos One, the best smart speaker you can buy in 2020." Ex. ~~34~~ AG; *see also* Ex. ~~44~~ AP ("Just like Sonos, you can also change the volume on each speaker individually from the main interface."). And press reports indicate that Google has expanded its use of Sonos's stereo pair technology into the new smart-

1    speakers even though Google is currently being sued for infringing a Sonos patent on this

2    technology.  Exs. ~~35, 44~~ AH, AP.

3         ~~28.~~39.   Google itself has also highlighted the importance of its use of Sonos's technology.

4    For example, ~~Google'~~Google's Chris Chan publicly stated that "[c]ontrolling the audio

5    throughout my home, no matter who's listening, has been incredibly helpful" and that "[t]oday,

6    we're expanding that control. You can already manually group Nest devices in order to play the

7    same music on various speakers at the same time, and now we're launching multi-room control so

8    you can dynamically group multiple cast-enabled Nest devices (speakers, Smart Displays,

9    Chromecasts) in real-time to fill multiple rooms with music." Ex. ~~35~~ AH; *see also* Ex. ~~44~~ AP.

10   Again, Google has expanded its use of this technology while it is being sued for infringing

11   Sonos's patents on this precise technology.

12        ~~29.~~40.   Google's aggressive and deliberate expansion of its use of Sonos's patented

13   technology has led observers to conclude that "[n]o market is safe from [the] search engine

14   monster" and that Google was specifically "offering new products to compete with Sonos in the

15   music streaming market."  *See* Ex. ~~36~~ AI.

16                    **GOOGLE'S CONTINUED INFRINGEMENT FORCES THIS SUIT**

17        ~~30.~~41.   In the face of Google's unrelenting infringement, Sonos has no choice but to bring

18   this suit.  In this action, Sonos asserts patents that are not at issue in the ITC or the related district

19   court action. ~~Sonos is also accusing Google's Wireless Audio System of infringing different~~

20   ~~patented features than are at issue in either of those actions.~~

21        ~~31.~~42.   Sonos's ITC suit addressed Google's infringement of Sonos patents covering

22   fundamental aspects of wireless, whole-home audio systems.  While groundbreaking, those

23   patents represent only some of Sonos's ongoing innovation from its inception to today.  Through

24   its foresight, substantial investment, and relentless pursuit of excellence, Sonos built on its

25   previous success and invented a number of key features ~~consumer~~consumers have grown to

26   expect and demand in streaming music listening.

27        ~~32.~~43.   For example, as explained more fully below, Sonos's U.S. Patent Nos. 9,967,615

28   and 10,779,033 (the "'615 Patent" and the "'033 Patent," respectively) cover key aspects of

                                        9                  SONOS'S THIRD AMENDED COMPLAINT

1  Sonos's inventive approach for streaming music from a cloud-based service to a media playback

2  system, including technology for transferring playback responsibility for a cloud-based stream of

3  media content from a user's device, such as a smart phone, to a media playback system that is

4  then configured to retrieve and play back the cloud-based media content.

5         33.44.  Sonos was well ahead of the field when it began to develop these inventions in

6  2011.  At that time, Sonos's audio system, including its smart-phone app controller, was in a

7  category all its own.  Moreover, streaming content from cloud-based media services for playback

8  by computers – let alone other types of networked devices like smart phones and smart speakers –

9  was in its infancy.  Nonetheless, at a time years before Google released its first Chromecast

10  product, Sonos envisioned a novel experience of continuous and intuitive control of a user's

11  entire streaming listening experience, across multiple networked devices, including smart phones

12  and/or smart speakers.  That vision gave rise to the innovation of technology for enabling

13  seamless transition of playback responsibility for cloud-based media content between different

14  networked devices, such as a smart phone and a smart speaker.  This paradigm is now

15  fundamental across the entire streaming industry as user expectations of continuous listening

16  experiences have continued to converge with Sonos's vision.

17         34.45.  Similarly, Sonos's U.S. Patent Nos. 9,344,206, 10,469,966, and 10,848,885 (the

18  "'206 Patent," the "'966 Patent,'" and "the '885 Patent," respectively) cover some of Sonos's

19  inventions related to creating, managing, and invoking "zone scenes" to configure how multiple

20  players work together.  With these patents, Sonos once again anticipated what consumers would

21  want and invented a new feature for its system.  Using the inventions of the '206,'966, and '885

22  Patents, playback devices can be grouped together for synchronous playback in an easy and

23  intuitive manner using "zone scenes."  Advantageously, such a "zone scene" can be accessed and

24  invoked by multiple devices and in various ways (*e.g.*, by voice) even when the particular

25  controller that created the "zone scene" is not on the network.

26         35.46.  Sonos provided a pre-filing copy of both the original complaint and thisSonos's

27  First Amended Complaint to Google, thereby providing clear pre-suit notice of infringement of

28  the patents-in-suit.  Google, however, has never given any indication that it is willing to stop

1    infringing, and did not do so in response to receiving a draft of either the original complaint or

2    ~~this~~the First Amended Complaint.

3    36.47.  On information and belief, Google is unwilling to stop infringing because its

4    infringement of Sonos's patented inventions has paved the way for Google to generate billions of

5    dollars in revenue.  A December 2018 market report by Royal Bank of Canada ("RBC"), for

6    example, concluded that Google sold over 40 million Google Home devices in the U.S. and that

7    Google generated $3.4 billion in Google Home revenue in 2018 alone.  Ex. ~~37~~ AJ at pp. 1, 4, 14-

8    15.  RBC also found that, as of August 2017, Google had sold more than 55 million Chromecast

9    devices and that Google generated almost $1 billion in Chromecast revenue in 2018.  *Id.* at ~~pp.~~

10   4,16, 18.  Further, RBC estimated that, in 2018, Google generated $3.4 billion in Pixel device

11   revenue.  *Id.* at ~~pp.~~ 4, 8.

12   37.48.  By 2021, RBC estimates that Google will be annually selling over 100 million

13   Google Home devices in the U.S. and generating over $8 billion in Google Home revenue.  *Id.* at

14   ~~pp.~~ 4, 14-15.  In addition, by 2021, RBC estimates that Google will annually generate $2.4 billion

15   in Chromecast revenue and nearly $7 billion in Pixel device revenue.  *Id.* at ~~pp.~~ 4, 8, 18.

16   38.49.  The revenue obtained from the sale of Google's hardware devices vastly

17   understates the value to Google of infringing Sonos's patents.  On information and belief, Google

18   is intentionally selling the infringing products at a discount and/or as a "loss leader" with the

19   expectation that this will allow Google to generate even more revenue in the future – *e.g.*, by

20   powering Google's continued dominance of the market for search advertising.  In particular,

21   Google's infringement of Sonos's patented inventions has helped and/or will help Google

22   generate significant revenue from the use of Google's hardware devices including advertising,

23   data collection, and search via the Google Wireless Audio Systems.  As the *New York Post*

24   explained, "Amazon and Google both discounted their home speakers so deeply over the holidays

25   that they likely lost a few dollars per unit … hoping to lock in customers and profit from later

26   sales of goods and data about buying habits."  Ex. ~~38~~ AK.  Similarly, *News Without Borders*

27   explained that companies like Google are using their "smart speaker" devices as "'loss leader[s]'

28   to support advertising or e-commerce."  Ex. ~~39.~~ AL.

39.50.  On information and belief, Google's copying of Sonos's patented inventions has also helped and/or will help Google generate significant revenue from driving its users to make purchases such as streaming music subscriptions and retail purchases via the Google Wireless Audio Systems.  For example, an NPR "smart speaker" survey found that 28% of survey respondents agreed that "[g]etting [a] Smart Speaker led [them] to pay for a music service subscription," and Google offersoffered at the time two such subscriptions – Google Play Music and YouTube Music.  Ex. 40 AM at p. 20.  Likewise, the NPR survey also found that 26% of respondents use their smart speakers "regularly" to "add [items] to shopping list."  *Id.* at p. 14; *see also*, *e.g.*, Ex. 39 AL (stating that companies like Google are using their "smart speaker" devices as "'loss leader[s]' to support… e-commerce.").

40.51.  On information and belief, Google is willfully infringing Sonos's patents as part of Google's calculated strategy to vacuum up invaluable consumer data from users and, thus, further entrench the Google platform among its users and fuel its dominant advertising and search platforms.

41.52.  Google's infringement – and its strategy to sell its infringing products at a loss to develop alternative revenue streams – has caused significant damage to Sonos.  For example, the Google Home Mini predatorily implemented Sonos's valuable patented technology into an all-in-one wireless multi-room product that Google sells at a highly subsidized price point or even gives away for free.  Ex. 41 AN ("At $49, Google Home Mini works on its own or you can have a few around the house, giving you the power of Google anywhere in your home."); Ex. 39 AL ("Google partnered with Spotify to offer Home Minis as a free promotion for Spotify Premium customers.  Spotify's premium userbase is nearly 90 million, so if even a fraction of users take the free offer, a massive influx of Google smart speakers will enter the market.").

**ADDITIONAL FACTS ESTABLISH THAT GOOGLE'S INFRINGEMENT HAS BEEN AND CONTINUES TO BE WILLFUL**

53.     In addition to the facts above, additional facts establish that Google had actual knowledge of the asserted patents and knowledge of its infringement thereof prior to the filing of this amended complaint.  To the extent required, Google had this prior knowledge with sufficient

1    time to assess the asserted patents and the accused products and decide whether to continue its

2    allegedly infringing activity or whether to cease.

3        54.    As mentioned above, on September 28, 2021, Sonos sent Bradley Riel and Tim

4    Kowalski at Google a pre-filing copy of a draft Sonos complaint detailing Google's infringement

5    of, *inter alia*, the '615, '033, and '966 Patents.  And on January 8, 2021, Sonos's counsel sent

6    Google's counsel a copy of an amended complaint and supplemental infringement contentions

7    detailing Google's infringement of the '885 Patent.

8        55.    Also on September 28, 2020, prior to Sonos's commencement of the instant action

9    on September 29, 2020, Google initiated a declaratory judgment ("DJ") action in this Judicial

10   District asking the Court for an affirmative ruling that, by way of Google's making, using, selling,

11   offering for sale, and/or importation of the accused products, Google does not infringe at least

12   the '615, '033, and '966 Patents.  On February 4, 2022, Google amended this DJ action to include

13   a request for the same relief as to the '885 Patent.

14       56.    Google has represented to the Court and to Sonos that it had a Rule 11 basis to file

15   its DJ action.

16       57.    Federal Rule of Civil Procedure 11(b)(3) states:

17       By presenting to the court a pleading, written motion, or other
         paper—whether by signing, filing, submitting, or later advocating
18       it—an attorney or unrepresented party certifies that to the best of the
         person's knowledge, information, and belief, formed after an inquiry
19       reasonable under the circumstances . . . the factual contentions have
         evidentiary support or, if specifically so identified, will likely have
20       evidentiary support after a reasonable opportunity for further
         investigation or discovery.
21

22       58.    Thus, by presenting to the Court and signing Google's DJ pleading on September

23   28, 2020, Google's counsel represented that the factual contentions contained therein had

24   evidentiary support and were based on knowledge, information, and belief, formed after an

25   inquiry reasonable under the circumstances.

26       59.    In order to have conducted a sufficient investigation into whether or not the

27   accused products practiced the asserted patents for purposes of seeking affirmative declaratory

28   relief from this Court, Google and its counsel must have (i) conferred with Google engineers

concerning the operation of the accused products, (ii) reviewed the specifications, claims, and file histories of the asserted patents, and (iii) compared the operation of the accused products to the claims of the asserted patents and allegedly concluded that, for one or more reasons, the accused products did not, according to Google, practice one or more elements of the asserted claims.

60.    In order to have conducted this investigation and to have formed a reasonable belief as to Google's alleged non-infringement of the asserted patents in time for its filing on September 28, 2020, Google was conducting its investigation days, weeks, or months prior to September 28, 2020.  Accordingly, Google had pre-suit knowledge of the asserted patents and pre-suit knowledge of its infringement thereof well before September 28, 2020.  This pre-suit knowledge was the result of Google's own investigation that it conducted to support its DJ action.

61.    In the alternative, and to the extent that Google first learned of the '966 and '033 Patents on September 28, 2020 when Sonos provided a pre-filing draft Complaint to Google, and to the extent Google first learned of the '885 Patent on January 8, 2021 when Sonos provided a draft pre-filing amended Complaint and supplemental infringement contentions to Google, the time between learning of the asserted patents and filing its DJ action was nevertheless a sufficient time for Google to have conducted its investigation and thus learned of the asserted patents and its alleged infringement thereof.  Despite the difference between receiving Sonos's notice and filing its DJ action being mere hours (which illustrates the implausibility of Sonos's letter being the initial notice to Google), Google nevertheless took action right away to (i) confer with Google engineers concerning the operation of the accused products, (ii) review the specifications, claims, and file histories of the asserted patents, and (iii) compare the operation of the accused products to the claims of the asserted patents and allegedly conclude that, for one or more reasons, the accused products, according to Google, did not practice one or more elements of the asserted claims.  *See* Dkt. 27-3 at 3 ("[U]pon receiving Sonos's letter, Google investigated Sonos' allegations, determined that it had a Rule 11 basis for non-infringement, and filed the instant declaratory judgment action.").  Accordingly, Google had pre-suit knowledge of the asserted patents and pre-suit knowledge of its infringement thereof before Sonos initiated this suit on September 29, 2020.  This pre-suit knowledge was the result of both Sonos's pre-suit draft

1  Complaint detailing Google's infringement of the '966, '615, and '033 Patents, as well as

2  Google's own investigation that it conducted to support its DJ action.

3      62.    Moreover, because Google had sufficient time to prepare and file its DJ action,

4  Google also had time to take steps to begin avoiding infringement.  However, on information and

5  belief, Google took no such steps between the time that it learned of its infringement and filed its

6  DJ action.

7      63.    In either case, as a result of Google's own investigation to support the factual

8  allegations it levied in its DJ action, Google learned of the asserted patents and learned of its

9  alleged infringement thereof.  This investigation gave Google sufficient time to assess the

10  asserted patents, assess the accused products, and determine whether it would cease its allegedly

11  infringing activity.  Rather than cease its infringing activity, switch to an alternate design, or

12  request to Sonos that Google ought to be given more time to do the above, Google chose to

13  continue to make, use, sell, offer for sale, and import the accused products and thus, to continue

14  its allegedly infringing activity, despite its knowledge of the asserted patents and its knowledge of

15  its alleged infringement thereof.

16      64.    Finally, Google's infringement since the initial filing of this action on September

17  29, 2020 has been willful.  Sonos's initial complaint set forth detailed infringement allegations

18  demonstrating how each of the accused products meets each and every element of the asserted

19  claims.  Over the course of the case, Sonos's infringement allegations have only further

20  crystalized, as evidenced by the various infringement contentions that Sonos served Google with

21  on December 11, 2020, February 17, 2021, June 4, 2021, July 14, 2021, September 10, 2021,

22  October 21, 2021, January 20, 2022, February 7, 2022, March 2, 2022, and March 18, 2022.

23  These infringement contentions include citations to Google's own documents demonstrating that

24  the products practice the claim elements.  They also include pin-cites to Google's source code

25  illustrating where and how the infringing functionality takes place, as well as narrative

26  descriptions of how the accused products engage in infringing functionality.  When Google

27  advanced multiple different and conflicting constructions of certain claim terms, Sonos revised its

28  infringement contentions to illustrate how Google still infringed even under Google's incorrect

interpretations of these claim terms.  Despite this, Google has not changed the design or operation of the accused products since these products were accused of practicing the asserted claims.  On information and belief, Google has not undertaken any effort to investigate or even attempt in good faith to change the functionality of the accused products to a design that would arguably not infringe.

65.    Nor has Google at any point to-date presented an articulable non-infringement or invalidity position.  Sonos has asked for Google's non-infringement positions via interrogatory.  On September 7, 2021, Google answered only with a bald assertion that Sonos has not established infringement and, for each asserted independent claim, a conclusory statement that Google does not practice each and every claim element.  Similarly, although a good faith belief in invalidity should not act as a defense to a claim of willful infringement, Google's invalidity contentions served pursuant to the local patent rules of this Court contain no explanation of its alleged invalidity positions.  For instance, as Sonos has already pointed out to Google, Google's prior art charts are merely block quotes of large portions of its cited references with no explanation whatsoever as to how or why the quoted portions meet the elements of the asserted claims, especially under Google's own constructions of various claim elements.  Google has declined to address these deficiencies even after Sonos pointed them out to Google.  Accordingly, Google's infringement of the asserted patents has been and remains willful since at least the day this suit began (and every day thereafter) because Google has no reasonable non-infringement or invalidity defense.

## THE PARTIES

42.66.  Plaintiff Sonos, Inc. is a Delaware corporation with its principal place of business at 614 Chapala Street, Santa Barbara, California 93101.  Sonos is the owner of the patents-in-suit.  Sonos holds all substantial rights, title, and interest in and to the Asserted Patentspatents-in-suit.

43.67.  Defendant Google LLC is a Delaware limited liability corporation with its principal place of business at 1600 Amphitheatre Parkway, Mountain View, CA 94043.  Google maintains a physical address in this district at 500 West 2nd Street, Austin, Texas, 78701.  Google may be served with process through its registered agent, the Corporation Service Company, at

1  211 East 7th Street, Suite 620, Austin Texas 78701.  Google is registered to do business in the

2  State of Texas and has been since at least November 17, 2006. 94043.

3      44.68.  Google LLC is one of the largest technology companies in the world and conducts

4  product development, engineering, sales, and online retail, search, and advertising operations in

5  this District.

6      45.69.  Google LLC directly and/or indirectly develops, designs, manufactures,

7  distributes, markets, offers to sell, sells, and/or imports the infringing Google Wireless Audio

8  System at issue in this litigation in/into the United States, including in the Western District of

9  Texasthis judicial district, and otherwise purposefully directs infringing activities to this District

10  in connection with its Google Wireless Audio System.

11                          **JURISDICTION AND VENUE**

12      46.70.  This action for patent infringement arises under the Patent Laws of the United

13  States, 35 U.S.C. § 1 et. seq.  This Court has original jurisdiction under 28 U.S.C. §§ 1331 and

14  1338.

15      47.71.  This Court has personal jurisdiction over Google because, pursuant to Fed. R. Civ.

16  P. 11(b)(3), Google has: (1) availed itself of the rights and benefits of the laws of the State of

17  TexasCalifornia, (2) transacted, conducted, and/or solicited business and engaged in a persistent

18  course of conduct in the State of TexasCalifornia (and in this District), (3) derived substantial

19  revenue from the sales and/or use of products, such as the infringing Google Wireless Audio

20  System, in the State of TexasCalifornia (and in this District), (4) purposefully directed activities

21  (directly and/or through intermediaries), such as shipping, distributing, offering for sale, selling,

22  and/or advertising its infringing Google Wireless Audio System, at residents of the State of

23  TexasCalifornia (and residents in this District), (5) delivered its infringing Google Wireless

24  Audio System into the stream of commerce with the expectation that the Google Wireless Audio

25  System will be used and/or purchased by consumers, and (6) committed acts of patent

26  infringement in the State of TexasCalifornia (and in this District).

27

28

                          17                    SONOS'S THIRD AMENDED COMPLAINT

1    48.72.  This Court also has personal jurisdiction over Google because it is registered to do

2    business in the State of ~~Texas~~California and has one or more regular and established places of

3    business in ~~the Western District of Texas~~this judicial district.

4    49.73.  Venue is proper in this District under the provisions of 28 U.S.C. § 1400(b)

5    because, as noted above, Google has committed acts of infringement in this district and has one or

6    more regular and established places of business in this district. ~~Google has also repeatedly~~

7    ~~admitted that venue is proper in this District for various patent cases.  *See e.g., Solas OLED Ltd.*~~

8    ~~*v. Google, Inc.* (WDTX Case No. 6-19-cv-00515) and *VideoShare, LLC v. Google LLC et al*~~

9    ~~(WDTX Case No. 6-19-cv-00663).~~

10    **THE PATENTS-IN-SUIT**

11    **U.S. Patent No. 9,967,615**

12    50.74.  Sonos is the owner of U.S. Patent No. 9,967,615 (the "'615 Patent"), entitled

13    "Networked Music Playback," which was duly and legally issued by the United States Patent and

14    Trademark Office ("USPTO") on May 8, 2018.  A copy of the '615 Patent, is attached hereto as

15    Exhibit ~~1.~~ A.

16    51.75.  The '615 Patent relates generally to technology for facilitating transfer of playback

17    responsibility from a user's device to a media playback system.

18    52.76.  The '615 Patent recognized that "[t]echnological advancements have increased the

19    accessibility of music content, as well as other types of media…."  '615 Patent at 1:19-20.  This

20    allowed users to access audio and video content over the Internet.  *Id.* at 1:21-26.

21    53.77.  But, the '615 Patent identified a particular problem and provided an

22    unconventional technological solution.  Specifically, the patent recognized that "[w]ired or

23    wireless networks can be used to connect one or more multimedia playback devices for a home or

24    other location playback network (*e.g.*, a home music system)."  '615 Patent at 1:66-2:2.  This

25    means that "[m]usic and/or other multimedia content can be shared among devices and/or groups

26    of devices (also referred to herein as zones) associated with a playback network."  *Id.* at 2:6-9.

27    The '615 Patent is directed to a method, tangible media, and controller that "facilitate streaming

28    or otherwise providing music from a music-playing application (*e.g.*, browser-based application,

1    native music player, other multimedia application, and so on) to a multimedia content playback

2    (*e.g.*, Sonos™) system." *Id.* at 2:10-14.

3    ~~54.~~78.  The '615 Patent provides an unconventional technological solution to this

4    problem.  For example, the '615 Patent describes an "Example Controller" that "can be used to

5    facilitate the control of multi-media applications…." '615 Patent at 9:8-14.  "In particular, the

6    controller 500 is configured to facilitate a selection of a plurality of audio sources available on the

7    network and enable control of one or more zone players … through a wireless network interface

8    508." *Id.* at 9:14-18.  Further, the '615 Patent describes embodiments that "enable a user to

9    stream music from a music-playing application (*e.g.*, browser-based application, native music

10   player, other multimedia application and so on) to a local multimedia content playback (*e.g.*,

11   Sonos™) system." '615 Patent at 12:8-12.  More specifically, the '615 Patent teaches that while

12   "a user listens to a third party music application (*e.g.*, ~~Pandora™ Rhapsody™,~~

13   ~~Spotify™,~~Pandora™ Rhapsody™, Spotify™, and so on)" on a user device, such as the user's

14   "smart phone," the user can "select[] an option to continue playing [the current] channel on her

15   household music playback system (*e.g.*, Sonos™)," which will cause the user's "playback

16   system" to "pick[] up from the same spot on the selected channel that was on her phone and

17   output[] that content (*e.g.*, that song) on speakers and/or other playback devices connected to the

18   household playback system." *Id.* at 12:44-53; *see also id.* at 13:1-53.

19   ~~55.~~79.  The '615 Patent goes on to teach specific technology for facilitating this transfer of

20   playback responsibility from the user's device to the user's playback system.  For instance,

21   the '615 Patent teaches that one aspect of this technology involves causing data for retrieving

22   network-based media content (such as a uniform resource locator (URI)) to be passed to a

23   playback device in the playback system so that the playback device can "run on its own to fetch

24   the content" from a networked audio source, such as a "cloud" server that is accessible over the

25   Internet.  *Id.* at 12:53-63; *see also id.* at 12:63-67 (describing that "[a] third party application can

26   open or utilize an application programming interface (API) to pass music to the household

27   playback system without tight coupling to that household playback system"); 15:47-16:19

28   (describing a "throw it over the wall" approach in which "a third party application provides a

1    multimedia playback device (*e.g.*, a Sonos™ zone player (ZP)) with enough information about

2    content (*e.g.*, an audio track) so that . . . the local playback system (*e.g.*, SonosNet™) can directly

3    access a source of the content and . . . play the content directly off the network (*e.g.*, the Internet)

4    or cloud," where the "connection between the third-party application and the local playback

5    device (*e.g.*, Sonos ZonePlayer™) can be direct over a local area network (LAN)" or "remote

6    through a proxy server in the cloud"); 16:53-17:4 (describing various embodiments for "queue

7    management" associated with the transfer of playback from a control device to a playback

8    system, including an embodiment where a "shared queue is provided between the local playback

9    system and the third party application to keep the local system and the application

10   synchronized").  Further, the '615 Patent teaches that another aspect of this technology involves

11   transitioning the user's device into a mode in which it functions to control the playback of the

12   media content by the user's playback system after the transfer.  *Id.* at 16:20-42, 17:5-20.  In this

13   way, the technology taught by the '615 Patent provides for intuitive and seamless transfer of

14   playback responsibility from a user's device to a media playback system.

15       56.80.  In line with these teachings, the '615 Patent claims devices, computer-readable

16   media, and methods for facilitating transfer of playback responsibility from a user's device to a

17   media playback system.

18       57.81.  For example, claim 13 of the '615 Patent recites a non-transitory computer

19   readable storage medium including instructions for execution by a processor that, when executed,

20   cause a control device to perform various functions that facilitate transfer of playback

21   responsibility from the device to a media playback system.  *See* '615 Patent, claim 13.  When the

22   instructions are executed, the control device is initially operable to (i) cause a graphical interface

23   to display a control interface including one or more transport controls to control playback by the

24   control device, (ii) identify playback devices connected to a local area network, (iii) cause the

25   graphical interface to display a selectable option for transferring playback from the control

26   device, and (iv) detect a set of inputs to transfer playback from the control device to a particular

27   playback device.  *Id.*  Additionally, the instructions configure the control device so that, after

28   detecting the set of inputs to transfer playback from the control device to the particular playback

1   device, the control device is operable to cause playback to be transferred from the control device

2   to the particular playback device by (a) causing one or more first cloud servers to add multimedia

3   content to a local playback queue on the particular playback device, wherein adding the

4   multimedia content to the local playback queue comprises the one or more first cloud servers

5   adding, to the local playback queue, one or more resource locators corresponding to respective

6   locations of the multimedia content at one or more second cloud servers of a streaming content

7   service, (b) causing playback at the control device to be stopped, and (c) modifying the one or

8   more transport controls of the control interface to control playback by the playback device.  *Id.*

9   Additionally yet, the instructions configure the control device so that the control device is

10   operable to cause the particular playback device to play back the multimedia content, which

11   involves the particular playback device retrieving the multimedia content from one or more

12   second cloud servers of a streaming content service and playing back the retrieved multimedia

13   content.  *Id.*

14                   **U.S. Patent No. 10,779,033**

15       ~~58.~~82.  Sonos is the owner of U.S. Patent No. 10,779,033 (the "'033 Patent"), entitled

16   "Systems And Methods For Networked Music Playback," which was duly and legally issued by

17   the United States Patent and Trademark Office ("USPTO") on September 15, 2020.  A copy of

18   the '966 Patent, is attached hereto as Exhibit ~~2.~~ B.

19       ~~59.~~83.  The '033 Patent is related to the '615 Patent in that they are both continuations of

20   application No. 13/341,237, filed on December 30, 2011, now U.S. Patent No. 9,654,821.  Thus,

21   the '033 and '615 Patents share essentially the same specification.  Sonos incorporates by

22   reference and re-alleges paragraphs 52-58 of this Amended Complaint as if fully set forth herein.

23       ~~60.~~84.  Like the '615 Patent, the '033 Patent claims devices, computer-readable media,

24   and methods for facilitating transfer of playback responsibility from a user's device to a media

25   playback system, which provide an unconventional solution to the technological problem

26   described in the '615 Patent.

27       ~~61.~~85.  For example, claim 1 of the '033 Patent recites a computing device with specific

28   hardware configurations, including a non-transitory computer-readable medium that stores

1  program instruction that can be executed by the device's processor(s).  *See* '033 Patent, claim 1.

2  When the instructions are executed, the computing device can initially operate in a first mode in

3  which it is configured for playback of a remote playback queue provided by a cloud-based

4  computing system associated with a cloud-based media service.  *Id.*  In that mode, the computing

5  device is operable to (i) display a representation of one or more playback devices in a media

6  playback system that are communicatively coupled to the computing device over a data network

7  and available to accept playback responsibility for the remote playback queue, and (ii) while

8  displaying the representation of the one or more playback devices, receive user input indicating a

9  selection of at least one given playback device from the one or more playback devices.  *Id.*

10  Additionally, the instructions configure the computing device so that, based on receiving the user

11  input, the computing device is operable to transmit an instruction for the at least one given

12  playback device to take over responsibility for playback of the remote playback queue from the

13  computing device, wherein the instruction configures the at least one given playback device to

14  (i) communicate with the cloud-based computing system in order to obtain data identifying a next

15  one or more media items that are in the remote playback queue, (ii) use the obtained data to

16  retrieve at least one media item in the remote playback queue from the cloud-based media

17  service; and (iii) play back the retrieved at least one media item.  *Id.*  Additionally yet, the

18  instructions configure the computing device so that the computing device is operable to detect an

19  indication that playback responsibility for the remote playback queue has been successfully

20  transferred from the computing device to the at least one given playback device, and then after

21  detecting the indication, transition from (a) the first mode in which the computing device is

22  configured for playback of the remote playback queue to (b) a second mode in which the

23  computing device is configured to control the at least one given playback device's playback of the

24  remote playback queue and the computing device is no longer configured for playback of the

25  remote playback queue.  *Id.*

26  **U.S. Patent No. ~~9,344,206~~ 10,469,966**

27  ~~62.~~86.  Sonos is the owner of U.S. Patent No. ~~9,344,206~~ 10,469,966 (the "~~'206~~ '966

28  Patent"), entitled "~~Method And Apparatus For Updating~~ Zone ~~Configurations In A Multi-Zone~~

1  ~~System~~Scene Management,” which was duly and legally issued by the United States Patent and

2  Trademark Office (“USPTO”) on ~~May 17, 2016.~~November 5, 2019.  A copy of the ~~’206~~’966

3  Patent, is attached hereto as Exhibit ~~3.~~ C.

4       ~~63.~~87.  The ~~’206~~’966 Patent relates generally to consumer electronics and human-

5  computer interaction and, more specifically, to controlling or manipulating a plurality of

6  multimedia players in a multi-zone system.  *See, e.g.*, ~~’206~~’966 Patent at 1:~~25-29~~30-34.

7       ~~64.~~88.  The ~~’206~~’966 Patent recognized that users demand not only quality audio

8  reproduction but also a system that allows multiple players to access music from different

9  sources.  ~~’206~~’966 Patent at 1:~~30-40~~35-45.  Before the ~~’206~~’966 Patent, a conventional multi-

10  zone audio system might include a number of audio sources, but each audio source had to be

11  connected to its own amplifier and a set of speakers and was typically installed in one place.  *Id.*

12  at 1:~~40-44~~46-50.  This had inherent limitations.  “In order to play an audio source at one location,

13  the audio source must be provided locally or from a centralized location.  When the audio source

14  is provided locally, the multi-zone audio system functions as a collection of many stereo systems,

15  making source sharing difficult.  When the audio source is provided centrally, the centralized

16  location may include a juke box, many compact discs, an AM or FM radio, tapes, or others.  To

17  send an audio source to an audio player demanding such source, a cross-bar type of device is used

18  to prevent the audio source from going to other audio players that may be playing other audio

19  sources.”  *Id.* at 1:~~44-44~~50-61.

20       ~~65.~~89.  Moreover, as the ~~’206~~’966 Patent recognized, “[i]n order to achieve playing

21  different audio sources in different audio players, the traditional multi-zone audio system is

22  generally either hard-wired or controlled by a pre-configured and pre-programmed

23  controller.”  ~~’206~~’966 Patent at 1:~~56-59~~62-65.  Such a system created problems.  “While the pre-

24  programmed configuration may be satisfactory in one situation, it may not be suitable for another

25  situation.  For example, a person would like to listen to broadcast news from his/her favorite radio

26  station in a bedroom, a bathroom and a den while preparing to go to work in the morning.  The

27  same person may wish to listen in the den and the living room to music from a compact disc in

28  the evening.  In order to satisfy such requirements, two groups of audio players must be

1    established.  In the morning, the audio players in the bedroom, the bathroom and the den need to

2    be grouped for the broadcast news.  In the evening, the audio players in the den and the living

3    room are grouped for the music.  Over the weekend, the audio players in the den, the living room,

4    and a kitchen are grouped for party music.  Because the morning group, the evening group and

5    the weekend group contain the den, it can be difficult for the traditional system to accommodate

6    the requirement of dynamically managing the ad hoc creation and deletion of groups." *Id.* at

7    1:~~59~~65-2:~~10~~17.

8        ~~66.~~90.  Thus, the '~~206~~'966 Patent recognized "a need for dynamic control of the audio

9    players as a group" and a system in which "the audio players may be readily grouped." '~~206~~'966

10   Patent at 2:11-13.  The invention of the '~~206~~'966 Patent would, thus, overcome the problems "in

11   a traditional multi-zone audio system [where] the audio players have to be adjusted one at a time,

12   resulting in an inconvenient and non-homogenous audio environment." *Id.* at 2:~~13-16~~18-20.

13       ~~67.~~91.  The '~~206~~'966 Patent provided an unconventional solution to this technological

14   problem.  "In general, the present invention pertains to controlling a plurality of multimedia

15   players, or simply players, in groups." '~~206~~'966 Patent at 2:~~28-29~~36-37.  One specific aspect of

16   the grouping technology that is taught by the '~~206~~'966 Patent involves a controller with a user

17   interface that permits a user to configure and save a "zone scene," which may comprise a

18   "predefined" grouping of zone players that can later be "activated" (or "invoked") in order to

19   group the zone players in the "zone scene" together for synchronous playback.  *Id.* at 2:~~30-53,~~

20   ~~2:60~~38-61, 3:~~41~~-12, 8:~~19-10:45~~42-11:11.  The '~~206~~'966 Patent explains that this "zone scene"

21   technology for grouping zone players together for synchronous playback provides improvements

22   over the existing technology for grouping zone players together for synchronous playback, which

23   involved defining the group membership at the time that the group was to be invoked –

24   particularly in situations where a larger number of zone players are to be grouped together for

25   synchronous playback.  *Id.* at 8:~~19-55~~42-9:15.  For instance, the benefits highlighted by

26   the '~~206~~'966 Patent include (i) allowing a group of zone players to be "predefined" as part of a

27   "zone scene" so that the group's membership need not be defined at the time that the group is to

28   be invoked, (ii) allowing a predefined group to be invoked without requiring the zone players in

1  the group to be separated from other groups beforehand, and (iii) allowing zone players to exist as

2  part of multiple different predefined groups that can be invoked in order to dynamically group the

3  zone players for synchronous playback. *Id.* at 8:~~19 10:45~~42-11:11.

4      1.    ~~In line with these teachings, the '206 Patent claims devices, computer readable~~

5  ~~media, and methods for managing and using "zone scenes" to facilitate grouping of zone players.~~

6  ~~For example, claim 1 of the '206 Patent recites a "multimedia controller including a processor"~~

7  ~~that is configured to (i) receive, via a network interface, a zone configuration from a first~~

8  ~~independent playback device of a plurality of independent playback devices, wherein the zone~~

9  ~~configuration is configured via the controller and maintained at the first independent playback~~

10 ~~device, and wherein the zone configuration characterizes one or more zone scenes, each zone scene~~

11 ~~identifying a group configuration associated with two or more of the plurality of independent~~

12 ~~playback devices, and (ii) cause a selectable indication of the received zone configuration to be~~

13 ~~displayed, wherein the displayed selectable indication is selectable to cause one or more of the~~

14 ~~zone scenes to be invoked by two or more of the plurality of independent playback devices.~~ *See*

15 ~~'206 Patent, claim 1.~~

16      **~~U.S. Patent No. 10,469,966~~**

17      2.    ~~Sonos is the owner of U.S. Patent No. 10,469,966 (the "'966 Patent"), entitled~~

18 ~~"Zone Scene Management," which was duly and legally issued by the United States Patent and~~

19 ~~Trademark Office ("USPTO") on November 5, 2019. A copy of the '966 Patent, is attached hereto~~

20 ~~as Exhibit 4.~~

21      3.    ~~The '966 Patent is related to the '206 Patent in that they are both continuations of~~

22 ~~application No. 13/896,829, filed on May 17, 2013, now U.S. Patent No. 8,843,228. Thus, the~~

23 ~~'966 and '206 Patents share essentially the same specification. Sonos incorporates by reference~~

24 ~~and re-alleges paragraphs 64-69 of this Amended Complaint as if fully set forth herein.~~

25      ~~68.~~92.  ~~The '906~~In line with these teachings, the '966 Patent claims devices, computer-

26 readable media, and methods for managing and using "zone scenes" to facilitate grouping of zone

27 players, which provides an unconventional solution to the technological problems related to

28 grouping zone players that are described in the ~~'906~~'966 Patent.

69.93.  For example, claim 1 of the '966 Patent describes a computing device with a processor that can execute instructions stored in the computing device's non-transitory, computer-readable medium.  Those instructions, when executed, cause the computing device to be operable to (i) receive a first request to create a first zone scene comprising a first predetermined grouping of zone players that are to be configured for synchronous playback when the first zone scene is invoked, and (ii) based on the first request, cause creation of the first zone scene, cause an indication of the first zone scene to be transmitted to a first zone player in the first zone scene, and cause storage of the first zone scene.  *See, e.g.*, '966 Patent, claim 1.  Additionally, the instructions, when executed, cause the computing device to be operable to (i) receive a second request to create a second zone scene comprising the first zone player and at least one other zone player that is not in the first zone scene, and (ii) based on the second request, cause creation of the second zone scene, cause an indication of the second zone scene to be transmitted to the first zone player, and cause storage of the second zone scene.  *Id.*  Additionally yet, the instructions, when executed, cause the computing device to be operable to (i) display representations of the first and second zone scenes, (ii) while displaying the representations, receive a third request to invoke the first zone scene, and (iii) based on the third request, cause the first zone player to transition from operating in a standalone mode to operating in accordance with the first predefined grouping of zone players so that the first zone player is configured to coordinate with at least the second zone player to output media in synchrony with output of media by at least the second zone player.  *Id.*

**U.S. Patent No. 10,848,885**

70.94.  Sonos is the owner of U.S. Patent No. 10,848,885 (the "'885 Patent"), entitled "Zone Scene Management," which was duly and legally issued by the United States Patent and Trademark Office ("USPTO") on November 24, 2020.  A copy of the '885 Patent, is attached hereto as Exhibit 45. D.

71.95.  The '885 Patent is related to the '206 and '966 PatentsPatent in that they are allboth continuations of application No. 13/896,829, filed on May 17, 2013, now U.S. Patent No. 8,843,228.  Thus, the '885, and '966 and '206 Patents share essentially the same

1    specification.  Sonos incorporates by reference and re-alleges paragraphs ~~64-73~~87-91 of this

2    Amended Complaint as if fully set forth herein.

3    ~~72.~~96.  The '885 Patent claims devices, computer-readable media, and methods for

4    managing and operating in accordance with different "zone scenes," which provides an

5    unconventional solution to the technological problems related to grouping zone players that are

6    described in the '885 Patent.

7    ~~73.~~97.  For example, claim 1 of the '885 Patent describes a first zone player with one or

8    more processors that can execute instructions stored in the first zone player's non-transitory,

9    computer-readable medium.  Those instructions, when executed, cause the first zone player to be

10   operable to, while operating in a standalone mode, (i) receive a first indication that the first zone

11   player has been added to a first zone scene comprising a first predetermined grouping of zone

12   players that are to be configured for synchronous playback when the first zone scene is invoked,

13   and (ii) receive a second indication that the first zone player has been added to a second zone

14   scene comprising the first zone player and at least one other zone player that is not in the first

15   zone scene that are to be configured for synchronous playback when the second zone scene is

16   invoked.  *Id.*  Additionally, the instructions, when executed, cause the first zone player to

17   continue to operate in a standalone mode until one of the first and second zone scenes has been

18   selected for invocation.  *Id.*  Additionally yet, the instructions, when executed, cause the first zone

19   player to be operable to, (i) after one of the first or second zone scenes has been selected for

20   invocation, receive an instruction to operate in accordance with the given first or second zone

21   scene comprising a predefined grouping of zone player and (ii) based on the instruction, transition

22   from operating in a standalone mode to operating in accordance with the predefined grouping of

23   zone players so that the first zone player is configured to output media in synchrony with output

24   of media by at least one other zone player in the predefined grouping.  *Id.*

25   **~~COUNT~~CLAIM I: INFRINGEMENT OF U.S. PATENT NO. 9,967,615**

26   ~~74.~~98.  Sonos incorporates by reference and re-alleges paragraphs 1-~~839~~87 of this

27   Amended Complaint as if fully set forth herein.

28

75.99.  Google and/or users of the Google Wireless Audio System have directly infringed (either literally or under the doctrine of equivalents) and continue to directly infringe one or more of the claims of the '615 Patent, in violation of 35 U.S.C. § 271(a), by making, using, offering for sale, and/or selling the Google Wireless Audio System within the United States and/or importing the Google Wireless Audio System into the United States without authority or license.

4.    As just one non-limiting example, set forth below is an exemplary infringement claim chart for claim 13 of the '615 Patent in connection with the Google Wireless Audio System. This claim chart is based on publicly available information.  Sonos reserves the right to modify this claim chart, including, for example, on the basis of information about the Google Wireless Audio System that it obtains during discovery.

100.    On September In the course of this litigation, Sonos has served Google with infringement contentions detailing Google's infringement of the '615 Patent.  *See* Ex. CH; Ex. CI. In particular, as set forth in Sonos's infringement contentions for the '615 Patent, each of Google's YouTube, YouTube Music, YouTube TV, YouTube Kids, and Google Play Music software apps (referred to in paragraphs 99-133 as "Cast-enabled apps") includes a "Cast" feature, is installed on a computing device, and when so installed, programs and/or otherwise configures a computing device such that each limitation of at least one of the asserted claims of the '615 Patent is satisfied.  Indeed, any use of the Cast feature results in the performance of each function recited in at least one asserted claim of the '615 Patent.  As also set forth in Sonos's infringement contentions for the '615 Patent, each of Google's Cast-enabled displays (e.g., Nest/Home Hub and Nest Hub Max products) is also installed with software that includes the "Cast" feature, which further includes a "Stream Transfer" sub-feature, such that the Cast-enabled display is programmed and/or otherwise configured to satisfy each limitation of at least one of the asserted claims of the '615 Patent.  For the avoidance of doubt, Sonos incorporates herein by reference under Rule 10(c) these infringement contentions for all purposes.

76.101.    In addition to providing Google with a claim chart detailing Google's infringement of the '615 Patent on February 22, 2019, on September 28, 2020, Sonos provided

28    SONOS'S THIRD AMENDED COMPLAINT

1    Google with a draft of the original complaint prior to its filing.  That draft identified the '615

2    Patent and described how Google's products infringed.  Thus, Google had actual knowledge of

3    Sonos's allegation that Google infringed claims of the '615 Patent prior to Sonos filing this

4    action.

5    77.102.    Additionally and/or alternatively, Google has indirectly infringed and

6    continues to indirectly infringe one or more of the claims of the '615 Patent, in violation of 35

7    U.S.C. § 271(b), by actively inducing users of the Google Wireless Audio System to directly

8    infringe the one or more claims of the '615 Patent.  In particular, (a) Google had actual

9    knowledge of the '615 Patent or was willfully blind to its existence prior to, and no later than,

10   February 2019 and had actual knowledge or was willfully blind to Sonos's infringement

11   allegations at least as early as September 28, 2020 when Sonos provided Google a copy of the

12   complaint (*see* ¶¶ 19-29, above), (b) Google intentionally causes, urges, or encourages users of

13   the Google Wireless Audio System to directly infringe one or more claims of the '615 Patent by

14   promoting, advertising, and instructing customers and potential customers about the Google

15   Wireless Audio System (including uses thereof) and encouraging such customers and potential

16   customers to engage in activity that constitutes direct infringement (*see* Exs. 22-27; *see also*

17   citations above in the exemplary infringement claim chart for claim 13 W-Z;), (c) Google has

18   continued to intentionally cause, urge, or encourage users of the Google Wireless Audio System

19   in such a manner both since becoming aware of the '615 Patent), (c) Google  and since Sonos told

20   Google that such conduct was inducing infringement on September 28, 2020, (d) Google knows

21   (or should know) and has known (or should have known) that its actions will induce users of the

22   Google Wireless Audio System to directly infringe one or more claims the '615 Patent, and (d)

23   e) users of the Google Wireless Audio System directly infringe one or more claims of the '615

24   Patent.  For instance, at a minimum, Google has supplied and continues to supply the YouTube

25   Music, Google Play Music, and YouTube apps to customers while knowing that installation

26   and/or use of one or more of these apps will infringe one or more claims of the '615 Patent, and

27   that Google's customers then directly infringe one or more claims of the '615 Patent by installing

28

1  ~~and/or using one or more of the these apps in accordance with Google's product literature. *See,~~
2  ~~e.g., id.~~

3      103.    For instance, at a minimum, Google has supplied and continues to supply (i) the
4  YouTube, YouTube Music, YouTube TV, YouTube Kids, and Google Play Music software apps
5  and (ii) software (e.g., firmware and/or Cast-enabled apps) for installation onto Cast-enabled
6  displays to customers while knowing that installation and/or use of one or more of these software
7  packages will infringe one or more claims of the '615 Patent and that Google's customers then
8  directly infringe one or more claims of the '615 Patent by installing and/or using one or more of
9  these software packages in accordance with Google's product literature. *See, e.g., id.*  In other
10 words, Google specifically intends to induce its customers to infringe the '615 Patent by
11 intentionally encouraging and instructing its customers to install such software packages onto
12 their computing devices.  Example evidence of such conduct includes:



21 Ex. Y.



1    Ex. Z.



6    Ex. CM.

21    Ex. CS.

28    Ex. CN.

31

Ex. CO.

104.    Moreover, example evidence of Google encouraging and instructing its customers to use the accused Cast feature included in the Cast-enabled apps in an infringing manner includes:



Ex. CP.

105.    Further yet, example evidence of Google encouraging and instructing its customers to use the Stream Transfer feature in an infringing manner includes:



Sᴏɴᴏs's Tʜɪʀᴅ Aᴍᴇɴᴅᴇᴅ Cᴏᴍᴘʟᴀɪɴᴛ

1    Ex. CQ.

2        106.    Google has continued to engage in the conduct described above by way of

3    example since it became aware of the '615 Patent and since Sonos informed Google in Sonos's

4    December 21, 2020 infringement contentions (and each subsequent instance of amended

5    infringement contentions) that such conduct was inducing others to directly infringe the '615

6    Patent.  Google chose not to cease its conduct despite this.  Thus, Google has engaged in this

7    conduct with the specific intent to infringe the '615 Patent because this conduct was expressly

8    intended to encourage users to download and install the YouTube, YouTube Music, YouTube

9    TV, YouTube Kids, and Google Play Music software apps and software (e.g., firmware and/or

10   Cast-enabled apps) for installation onto Cast-enabled displays, as well as use computing devices

11   installed with such software – the very actions that result in direct infringement of the '615

12   Patent.

13       107.    Sonos has identified additional evidence of Google's inducing conduct in its

14   infringement contentions and interrogatory responses, which Sonos incorporates herein by

15   reference under Rule 10(c) for all purposes.  *See* Exs. CH, CW.

16       78.108.        Additionally and/or alternatively, Google has indirectly infringed and

17   continues to indirectly infringe one or more of the claims of the '615 Patent, in violation of 35

18   U.S.C. § 271(c), by offering to sell or selling within the United States, and/or importing into the

19   United States, components in connection with the Google Wireless Audio System that contribute

20   to the direct infringement of the '615 Patent by users of the Google Wireless Audio System.  In

21   particular, (a) Google had actual knowledge of the '615 Patent or was willfully blind to its

22   existence prior to, and no later than, February 2019 and had actual knowledge or was willfully

23   blind to Sonos's infringement allegations at least as early as September 28, 2020 when Sonos

24   provided Google a copy of the complaint (*see* ¶¶ 19-29 17-30, 53-65, above), (b) Google offers

25   for sale, sells, and/or imports, in connection with the Google Wireless Audio System, one or more

26   material components of the invention of the '615 Patent that are not staple articles of commerce

27   suitable for substantial noninfringingnon-infringing use, (c) Google knows (or should know) that

28   such component(s) were especially made or especially adapted for use in an infringement of

the '615 Patent, and (d) users of devices that comprise such material component(s) directly

infringe one or more claims of the '615 Patent.  For instance, at a minimum, Google offers for

sale, sells, and/or imports (i) the YouTube, YouTube Music, YouTube TV, YouTube Kids, and

Google Play Music, and YouTube software apps for installation on devices (*e.g.*, smartphones,

tablets, and computers) and (ii) software (e.g., firmware and/or Cast-enabled apps) for installation

onto Cast-enabled displays that meet one or more claims of the '615 Patent.  *See, e.g.*, Exs. 22-27.

These apps are W-Z, CN, CS.  Each of these pieces of software is a material component of the

devices that meet the one or more claims of the '615 Patent.  Further, Google especially made

and/or adapted these appsthis software for installation and use on devices that meet the one or

more claims of the '615 Patent, and each of these apps arepieces of software is not a staple article

of commerce suitable for substantial noninfringingnon-infringing use.  Google's customers then

directly infringe the one or more claims of the '615 Patent by installing and/or using these

appsthis software on the customers' devices.

109.    More specifically, Google supplies software components, such as the YouTube,

YouTube Music, YouTube TV, YouTube Kids, and Google Play Music software apps, that

include the accused Cast feature as part of Google's own Cast-enabled apps for installation onto

computing devices in the United States and as part of Google's own Cast-enabled software (e.g.,

firmware and/or Cast-enabled apps) for installation onto Cast-enabled displays in the United

States, and each time a user installs these software components, the user "makes" an infringing

device and thereby directly infringes the asserted claims of the '615 Patent under 35 U.S.C. §

271(a).

110.    These software components are material components of infringing devices, such as

computing devices provisioned with one or more Cast-enabled apps, and are not staple articles or

commodities of commerce suitable for substantial non-infringing use because the only possible

use for these software components is to be installed and run on infringing Cast-enabled

computing devices and/or Cast-enabled displays.  In other words, there is no other reasonable,

suitable, or even conceivable use for these software components other than to be downloaded to

and installed on computing devices, such as mobile phones or tablet computers.  Because the

asserted claims are directed to capability and not actual use or performance, actual execution of software functionality is not required.  Infringement occurs as soon as the software component is downloaded to and/or installed on the computing device.  Thus, the fact that the computing device may be capable of carrying out non-infringing functionality (in addition to being capable of carrying out the claimed functionality) does not negate infringement and is not a non-infringing use because infringement has already occurred as a result of the download and/or installation of the software component onto the computing device.

111.    Along with its actual knowledge of the '615 Patent, Google knew (or should have known) that the software components were especially made or adapted for installation on infringing devices and that installation of these software components by others resulted in (and continues to result in) direct infringement of the '615 Patent under 35 U.S.C. § 271(a) because each such installation "makes" a device that meets every element of claims 13-15, 18-21, 23-26, 28-29 of the '615 Patent.

112.    Additionally and/or alternatively, as discussed before, Google supplies software component features, including the accused Cast feature as part of Google's own Cast-enabled apps for installation onto computing devices and the accused Cast and Stream Transfer features as part of Google's own Cast-enabled software for installation onto Cast-enabled displays, in the United States via software downloads.  These software component features are material components of infringing devices and are not staple articles or commodities of commerce suitable for substantial non-infringing use because the only possible use for these software component features is to be operated on infringing Cast-enabled computing devices and/or Cast-enabled displays.  For example, at a minimum, the use of the accused Cast feature results in the performance of each function recited in at least one asserted claim of the '615 Patent.  Along with its actual knowledge of the '615 Patent, Google knew (or should have known) that the software component features were especially made or adapted to perform specific functions that are a material part of the inventions of the '615 Patent and that use of these software component features by others resulted in (and continues to result in) direct infringement of the '615 Patent under 35 U.S.C. § 271(a).

113.    Moreover, as a result of Google's contributory conduct, others have directly infringed the asserted claims of the '615 Patent. For example, users have installed the supplied software components for operating the accused Cast feature (which are included in Google's own Cast-enabled apps) onto Cast-enabled computing devices in the United States, thereby "making" infringing devices.  As another example, users have installed the supplied software components for operating the accused Cast feature (which are included in firmware, as well as Cast-enabled apps) onto Cast-enabled displays in the United States, thereby "making" updated Cast-enabled displays that are infringing devices.  As yet another example, after installing the supplied software components onto Cast-enabled computing devices and Cast-enabled displays, users have used these infringing devices, including the use of the accused Cast and Stream Transfer features, which also constitutes direct infringement.

114.    Pursuant to 35 U.S.C. § 271(f)(1), Google has also infringed by supplying in or from the United States software and/or firmware components, which constitute substantial portions of the components of Sonos's patented inventions, and actively, knowingly, and intentionally induced (and continues to actively, knowingly, and intentionally induce) others outside of the United States to combine these software and/or firmware components in a manner that, if such combination would have occurred in the United States (as it does pursuant to the theories set forth above), infringes the asserted claims of the '615 Patent.  And these combinations by those outside of the United States do in fact occur.  Accordingly, by supplying such software and/or firmware components from the United States, Google is liable for infringement under 35 U.S.C. § 271(f)(1).

115.    Despite knowing of the '615 Patent, Google supplies software components for performing the accused functionality as part of Google's own Cast-enabled apps (as well as the other apps identified in Sonos's infringement contentions served in this case, *see* Exs. CH, CI) for installation onto computing devices and also as part of Google's own cast-enabled software for installation onto Cast-enabled displays.  These software and/or firmware components are at least substantial portions of the components of the patented inventions of the '615 Patent.  Google supplies these software and/or firmware components from the United States to various entities

outside the United States. Google then induces those entities to combine the supplied components in a manner that would, if combined within the United States, constitute infringement. Google has actively, knowingly, and intentionally induced (and continues to actively, knowingly, and intentionally induce) these entities to make such combinations outside the United States in various ways, in violation of 35 U.S.C. § 271(f)(1).

116. For example, through Google's website, advertising and promotional material, user guides, and/or the Google Play Store, Google has actively, knowingly, and intentionally encouraged and induced (and continues to actively, knowingly, and intentionally encourage and induce) others outside the United States to install one or more of the Cast-enabled apps (including YouTube Music, Google Play Music, and YouTube apps, as well as the other apps set forth in Sonos's infringement contentions, Exs. CH, CI) onto computing devices outside of the United States. If this combination were done within the United States, that act would constitute "mak[ing]" an infringing device, which constitutes direct infringement of claims 13-15, 18-21, 23-26, 28-29 of the '615 Patent under 35 U.S.C. § 271(a). *See, e.g.,* Ex. CM (https://support.google.com/youtubemusic/answer/6313540?co=GENIE.Platform%3DDesktop&co=1, indicating that the YouTube Music app is available in dozens of countries other than the United States).

117. As another example, through Google's website, advertising and promotional material, user guides, and Cast-enabled apps, Google has actively, knowingly, and intentionally encouraged and induced (and continues to actively, knowingly, and intentionally encourage and induce) others outside the United States to install software (e.g., firmware updates and/or Cast-enabled apps) onto Cast-enabled displays outside of the United States. If this combination were done within the United States, that act would constitute "mak[ing]" an infringing device, which constitutes direct infringement of claims 13-15, 18-21, 23-26, 28-29 of the '615 Patent under 35 U.S.C. § 271(a).

118. As another example, through Google's relationship with third-party manufacturers, third-party distributers, or via an otherwise affiliated entity that acts in a manufacturer or distributor role, Google actively, knowingly, and intentionally encourages and induces or

instructs such parties to install one or more of Cast-enabled apps (including YouTube Music, Google Play Music, and YouTube apps) onto computing devices outside of the United States.  If this combination were done within the United States, that act would constitute "mak[ing]" an infringing device, which constitutes direct infringement of claims 13-15, 18-21, 23-26, 28-29 of the '615 Patent under 35 U.S.C. § 271(a).

119.    On information and belief, Google engages in the same conduct set out above (with respect to Google's infringement under § 271(b)) in foreign countries and with the intent to encourage users in foreign countries to download and install Cast-enabled apps onto computing devices.

120.    As another example, through Google's relationship with third-party manufacturers, third-party distributers, or via an otherwise affiliated entity that acts in a manufacturer or distributor role, Google actively, knowingly, and intentionally encourages and induces or instructs such parties to install software (e.g., firmware updates and/or apps) onto Cast-enabled displays outside of the United States.  If this combination were done within the United States, that act would constitute "mak[ing]" an infringing device, which constitutes direct infringement of claims 13-15, 18-21, 23-26, 28-29 of the '615 Patent under 35 U.S.C. § 271(a).

121.    As still another example, through Google's relationship with entities (including affiliated entities) that operate servers outside of the United States that host Cast-enabled apps (including YouTube Music, Google Play Music, and YouTube apps, as well as the other apps set forth in Sonos's infringement contentions, Exs. CH, CI) for download onto computing devices and/or software (e.g., firmware and/or apps) for download onto Cast-enabled displays, Google actively, knowingly, and intentionally encourages and induces or instructs these entities to load, store, or otherwise provide the apps and/or software onto these servers.  For instance, Google operates data centers and download servers in countless foreign countries and regions.

1
2
3
4
5
6
7
8
9
10



11  *See* Ex. CR (https://cloud.google.com/about/locations#regions).  In at least these foreign countries

12  and regions, users are able to download Cast-enabled apps onto computing devices.  To facilitate

13  this, Google has intentionally encouraged and induced or instructed other entities (including

14  Google's affiliated entities) to upload software packages constituting the Cast-enabled apps onto

15  download servers that are located in foreign countries.  If this combination were done within the

16  United States, that act would constitute direct infringement of certain asserted claims of the '615

17  Patent (e.g., claims 13-15, 18-21, and 23-24 of the '615 Patent) by "mak[ing]" and/or "us[ing]"

18  servers that host such software in violation of 35 U.S.C. § 271(a).  *See also* Ex. CH (Sonos's

19  infringement contentions).

20          122.    Pursuant to 35 U.S.C. § 271(f)(2), Google has also infringed by supplying

21  software components in or from the United Sates to be combined, installed, loaded, and/or used

22  by others outside of the United States, where these software components are components of the

23  patented inventions that have no substantial non-infringing use and are not staple articles or

24  commodities of commerce – with knowledge that these software components were especially

25  made or adapted for use and an intent that these software components would be combined,

26  installed, loaded, and/or used outside the United States such that, if such combination,

27  installation, load, and/or use occurred within the United States (as it does pursuant to the theories

28  set forth above), it would infringe the asserted claims of the '615 Patent.  And these combinations

1   by those outside of the United States do in fact occur.  Accordingly, by supplying such software

2   components in or from the United States, Google is liable for infringement under 35 U.S.C. §

3   271(f)(2).

4         123.    Despite knowing of the '615 Patent, Google supplies software components for

5   performing the accused Cast functionality as part of Google's Cast-enabled apps (e.g., the

6   YouTube Music, Google Play Music, and YouTube apps) for installation onto computing devices

7   outside the United States and also as part of Google's own software (e.g., firmware and/or Cast-

8   enabled apps) for installation onto Cast-enabled displays outside the United States.  Google

9   intends that others outside the United States, including users, install these software components

10  onto computing devices and Cast-enabled displays and knows that such installation does in fact

11  occur and that such installation, if occurring in the United States, would constitute "mak[ing]" an

12  infringing device thereby directly infringing claims 13-15, 18-21, 23-26, 28-29 of the '615 Patent

13  under 35 U.S.C. § 271(a).

14        124.    As another example, Google supplies software components for performing the

15  accused Cast functionality to third-party manufacturers, third-party distributers, or to an otherwise

16  affiliated entity that acts in a manufacturer or distributor role, who then, outside of the United

17  States installs these software components onto computing devices outside of the United States.

18  Google intends that these parties install these software components onto computing devices

19  outside of the United States.  If this combination were done within the United States, that act

20  would constitute "mak[ing]" an infringing device, which constitutes direct infringement of claims

21  13-15, 18-21, 23-26, 28-29 of the '615 Patent under 35 U.S.C. § 271(a).

22        125.    As another example, Google supplies software components for performing the

23  accused Cast functionality to entities (including affiliated entities) that operate servers outside of

24  the United States that host Cast-enabled apps for download onto Cast-enabled computing devices

25  and/or Cast-enabled software (e.g., firmware and/or Cast-enabled apps) for download onto Cast-

26  enabled displays.  Google intends that these entities load, store, or otherwise provide the Cast-

27  enabled apps and/or Cast-enabled software onto these servers.  If this combination were done

28  within the United States, that act would constitute direct infringement of certain asserted claims

1    of the '615 Patent (e.g., claims 13-15, 18-21, and 23-24 of the '615 Patent) by "mak[ing]" and/or

2    "us[ing]" servers that host such software in violation of 35 U.S.C. § 271(a).

3        126.   Google knows the foregoing software components for performing the accused Cast

4    functionality are material components of infringing devices and the patented inventions that are

5    not staple articles or commodities of commerce suitable for substantial non-infringing use

6    because the only possible use for these software components is to be loaded, installed, and/or run

7    on infringing computing devices and Cast-enabled displays. *See also* Ex. CH (Sonos's

8    infringement contentions).

9        ~~79.~~127.    Google's infringement of the '615 Patent is also willful because Google

10    (a) had actual knowledge of the '615 Patent and Sonos's infringement contentions concerning

11    the '615 Patent no later than February 2019, as well as additional and ~~actual~~further notice of

12    Sonos's infringement contentions no later than September 28, 2020 ~~(see ¶¶ 19-29 above)~~,

13    (b) engaged in the aforementioned activity despite an objectively high likelihood that Google's

14    actions constituted infringement of the '615 Patent, and (c) this objectively-defined risk was

15    either known or so obvious that it should have been known to Google. *See, e.g.,* ¶¶ 17-30, 53-65,

16    above.

17        128.   Given the five-year period over which Sonos put Google on consistent and

18    repeated notice of Sonos's patents and the breadth of Sonos's patent portfolio concerning

19    specifically the products accused in this case, detailed above, this knowledge establishes that

20    Google was, for some time periods, at least willfully blind to the fact that the '615 Patent existed

21    and, for other time periods, had actual knowledge of the '615 Patent.  Further, this knowledge and

22    repeated and persistent disclosure establishes that Google, for some time periods, had at least

23    failed to investigate whether it infringed the '615 Patent despite the existence of a high risk of

24    infringement and, for other time periods, had actual knowledge of a credible and specific

25    allegation of infringement of the '615 Patent.

26        ~~80.~~129.    Additional allegations regarding Google's pre-suit knowledge of the '615

27    Patent and willful infringement will likely have evidentiary support after a reasonable opportunity

28    for discovery.

1    81.130.        Sonos is entitled to recover from Google all damages that Sonos has

2    sustained as a result of Google's infringement of the '615 Patent, including, without limitation, a

3    reasonable royalty and lost profits.  Sonos is in compliance with any applicable marking and/or

4    notice provisions of 35 U.S.C. § 287 with respect to the '615 Patent.

5    82.131.        Google's infringement of the '615 Patent was and continues to be willful

6    and deliberate, entitling Sonos to enhanced damages.

7    83.132.        Google's infringement of the '615 Patent is exceptional and entitles Sonos

8    to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

9    84.133.        Google's infringement of the '615 Patent has caused irreparable harm

10   (including the loss of market share) to Sonos and will continue to do so unless enjoined by this

11   Court.

12   **COUNTCLAIM II: INFRINGEMENT OF U.S. PATENT NO. 10,779,033**

13   85.134.        Sonos incorporates by reference and re-alleges paragraphs 1-83133 of this

14   Amended Complaint as if fully set forth herein.

15   86.135.        Google and/or users of the Google Wireless Audio System have directly

16   infringed (either literally or under the doctrine of equivalents) and continue to directly infringe

17   one or more of the claims of the '033 Patent, in violation of 35 U.S.C. § 271(a), by making, using,

18   offering for sale, and/or selling the Google Wireless Audio System within the United States

19   and/or importing the Google Wireless Audio System into the United States without authority or

20   license.

21   5.        As just one non-limiting example, set forth below is an exemplary infringement

22   claim chart for claim 1 of the '033 Patent in connection with the Google Wireless Audio System.

23   This claim chart is based on publicly available information.  Sonos reserves the right to modify

24   this claim chart, including, for example, on the basis of information about the Google Wireless

25   Audio System that it obtains during discovery.

26

27   136.    In the course of this litigation, Sonos has served Google with infringement

28   contentions detailing Google's infringement of the '033 Patent.  *See* Ex. CH; Ex. CJ.  In

1  particular, as set forth in Sonos's infringement contentions for the '033 Patent, each of Google's

2  YouTube, YouTube Music, YouTube TV, and YouTube Kids software apps (referred to in

3  paragraphs 136-167 as "Cast-enabled apps") includes a "Cast" feature, is installed on a

4  computing device, and when so installed, programs and/or otherwise configures a computing

5  device such that each limitation of at least one of the asserted claims of the '033 Patent is

6  satisfied.  As also set forth in Sonos's infringement contentions for the '033 Patent, each of

7  Google's Cast-enabled displays is also installed with software that includes the "Cast" feature,

8  which further includes a "Stream Transfer" sub-feature, such that the Cast-enabled display is

9  programmed and/or otherwise configured to satisfy each limitation of at least one of the asserted

10  claims of the '033 Patent.  For the avoidance of doubt, Sonos incorporates herein by reference

11  under Rule 10(c) these infringement contentions for all purposes.

12  87.137.    On September 28, 2020, Sonos provided Google with a draft of the original

13  complaint prior to its filing.  That draft identified the '033 Patent and described how Google's

14  products infringed.  Thus, Google had actual knowledge of Sonos's allegation that Google

15  infringed claims of the '033 Patent prior to Sonos filing this action.

16  88.138.    Additionally and/or alternatively, Google has indirectly infringed and

17  continues to indirectly infringe one or more of the claims of the '033 Patent, in violation of 35

18  U.S.C. § 271(b), by actively inducing users of the Google Wireless Audio System to directly

19  infringe the one or more claims of the '033 Patent.  In particular, (a) Google had actual

20  knowledge of the '033 Patent and Sonos's infringement contentions, or was willfully blind to

21  their existence, no later than September 28, 2020 when Sonos provided Google with a copy of the

22  complaint (*see* ¶¶ 19-29 17-30, 53-65, above), (b) Google intentionally causes, urges, or

23  encourages users of the Google Wireless Audio System to directly infringe one or more claims of

24  the '033 Patent by promoting, advertising, and instructing customers and potential customers

25  about the Google Wireless Audio System (including uses thereof) and encouraging such

26  customers and potential customers to engage in activity that constitutes direct infringement (*see*

27  Exs. 22-27; *see also* citations above in the exemplary infringement claim chart for claim 1 of

28  the '033 Patent), (c) Google knows (or should know W-Z), (c) Google has continued to

1  intentionally cause, urge, or encourage users of the Google Wireless Audio System in such a

2  manner both since becoming aware of the '033 Patent and since Sonos told Google that such

3  conduct was inducing infringement on September 28, 2020, (d) Google knows (or should know)

4  and has known (or should have known) that its actions will induce users of the Google Wireless

5  Audio System to directly infringe one or more claims the '033 Patent, and (d) e) users of the

6  Google Wireless Audio System directly infringe one or more claims of the '033 Patent.

7        89.139.        For instance, at a minimum, Google has supplied and continues to supply

8  (i) the YouTube, YouTube Music, Google Play MusicYouTube TV, and YouTube appsKids

9  software apps and (ii) software (e.g., firmware and/or Cast-enabled apps) for installation onto

10  Cast-enabled displays to customers while knowing that installation and/or use of one or more of

11  these appspieces of software will infringe one or more claims of the '033 Patent, and that

12  Google's customers then directly infringe one or more claims of the '033 Patent by installing

13  and/or using one or more of these appspieces of software in accordance with Google's product

14  literature. *See, e.g.*, *id.*  In other words, Google specifically intends to induce its customers to

15  infringe the '033 Patent by intentionally encouraging and instructing its customers to install such

16  software/pieces of software onto their computing devices.

17        140.    Example evidence of Google intentionally encouraging and instructing its

18  customers to infringe the '033 Patent can be found at paragraphs 103-1057.

19        141.    Google has continued to engage in the conduct described above by way of

20  example since it became aware of the '033 Patent and since Sonos informed Google in Sonos's

21  December 21, 2020 infringement contentions (and each subsequent instance of amended

22  infringement contentions) that such conduct was inducing others to directly infringe the '033

23  Patent.  Google chose not to cease its conduct despite this.  Thus, Google has engaged in this

24  conduct with the specific intent to infringe the '033 Patent because this conduct was expressly

25  intended to encourage users to download and install the YouTube, YouTube Music, YouTube

26  TV, and YouTube Kids software apps and software (e.g., firmware and/or Cast-enabled apps) for

27  installation onto Cast-enabled displays, as well as use computing devices installed with such

28  software – the very actions that result in direct infringement of the '033 Patent.

90.142.          Additionally and/or alternatively, Google has indirectly infringed and continues to indirectly infringe one or more of the claims of the '033 Patent, in violation of 35 U.S.C. § 271(c), by offering to sell or selling within the United States, and/or importing into the United States, components in connection with the Google Wireless Audio System that contribute to the direct infringement of the '033 Patent by users of the Google Wireless Audio System.  In particular, (a) Google had actual knowledge of the '033 Patent and Sonos's infringement contentions, or was willfully blind to their existence, no later than September 28, 2020 when Sonos provided Google with a copy of the complaint (*see* ¶¶ 19-29 17-30, 53-65, above), (b) Google offers for sale, sells, and/or imports, in connection with the Google Wireless Audio System, one or more material components of the invention of the '033 Patent that are not staple articles of commerce suitable for substantial noninfringingnon-infringing use, (c) Google knows (or should know) that such component(s) were especially made or especially adapted for use in an infringement of the '033 Patent, and (d) users of devices that comprise such material component(s) directly infringe one or more claims of the '033 Patent.  For instance, at a minimum, Google offers for sale, sells, and/or imports (i) the YouTube, YouTube Music, Google Play MusicYouTube TV, and YouTube Kids software apps for installation on devices (*e.g.*, smartphones, tablets, and computers) and (ii) software (e.g., firmware and/or Cast-enabled apps) for installation onto Cast-enabled displays that meet one or more claims of the '033 Patent.  *See, e.g.*, Exs. 22-27.  These apps are W-Z.  Each of these pieces of software is a material component of the devices that meet the one or more claims of the '033 Patent.  Further, Google especially made and/or adapted these appsthis software for installation and use on devices that meet the one or more claims of the '033 Patent, and each of these apps arepieces of software is not a staple article of commerce suitable for substantial noninfringingnon-infringing use.  Google's customers then directly infringe the one or more claims of the '033 Patent by installing and/or using these appsthis software on the customers' devices.

143.    More specifically, Google supplies software components, such as the YouTube, YouTube Music, YouTube TV, and YouTube Kids software apps, that include the accused Cast feature as part of Google's own Cast-enabled apps for installation onto computing devices in the

1    United States and as part of Google's own Cast-enabled software (e.g., firmware and/or Cast-

2    enabled apps) for installation onto Cast-enabled displays in the United States, and each time a

3    user installs these software components, the user "makes" an infringing device and thereby

4    directly infringes the asserted claims of the '033 Patent under 35 U.S.C. § 271(a).

5         144.    These software components are material components of infringing devices, such as

6    computing devices provisioned with one or more Cast-enabled apps, and are not staple articles or

7    commodities of commerce suitable for substantial non-infringing use because the only possible

8    use for these software components is to be installed and run on infringing Cast-enabled

9    computing devices and Cast-enabled displays.  In other words, there is no other reasonable,

10   suitable, or even conceivable use for these software components other than to be downloaded to

11   and installed on computing devices, such as mobile phones or tablet computers.  Because the

12   asserted claims are directed to capability and not actual use or performance, actual execution of

13   software functionality is not required.  Infringement occurs as soon as the software component is

14   downloaded to and/or installed on the computing device.  Thus, the fact that the computing device

15   may be capable of carrying out non-infringing functionality (in addition to being capable of

16   carrying out the claimed functionality) does not negate infringement and is not a non-infringing

17   use because infringement has already occurred as a result of the download and/or installation of

18   the software component onto the computing device.

19        145.    Along with its actual knowledge of the '033 Patent, Google knew (or should have

20   known) that the software components were especially made or adapted for installation on

21   infringing devices and that installation of these software components by others resulted in (and

22   continues to result in) direct infringement of the '033 Patent under 35 U.S.C. § 271(a) because

23   each such installation "makes" a device that meets every element of claims 1-2, 4, 7-13 of

24   the '033 Patent.

25        146.    Additionally and/or alternatively, as discussed before, Google supplies software

26   component features, including the accused Cast feature as part of Google's own Cast-enabled

27   apps for installation onto computing devices and the accused Cast and Stream Transfer features as

28   part of Google's own Cast-enabled software for installation onto Cast-enabled displays, in the

United States via software downloads.  These software component features are material components of infringing devices and are not staple articles or commodities of commerce suitable for substantial non-infringing use because the only possible use for these software component features is to be operated on infringing Cast-enabled computing devices and/or Cast-enabled displays.  Along with its actual knowledge of the '033 Patent, Google knew (or should have known) that the software component features were especially made or adapted to perform specific functions that are a material part of the inventions of the '033 Patent and that use of these software component features by others involved (and continues to involve) a direct infringement of the '033 Patent under 35 U.S.C. § 271(a).

147.    Moreover, as a result of Google's contributory conduct, others have directly infringed the asserted claims of the '033 Patent.  For example, users have installed the supplied software components for operating the accused Cast feature (which are included in Google's own Cast-enabled apps) onto Cast-enabled computing devices in the United States, thereby "making" infringing devices.  As another example, users have installed the supplied software components for operating the accused Cast feature (which are included in firmware, as well as Cast-enabled apps) onto Cast-enabled displays in the United States, thereby "making" updated Cast-enabled displays that are infringing devices.  As yet another example, after installing the supplied software components onto Cast-enabled computing devices and Cast-enabled displays, users have used these infringing devices, including the use of the accused Cast and Stream Transfer features, which also constitutes direct infringement.

148.    Pursuant to 35 U.S.C. § 271(f)(1), Google has also infringed by supplying in or from the United States software and/or firmware components, which constitute substantial portions of the components of Sonos's patented inventions, and actively, knowingly, and intentionally induced (and continues to actively, knowingly, and intentionally induce) others outside of the United States to combine these software and/or firmware components in a manner that, if such combination would have occurred in the United States (as it does pursuant to the theories set forth above), infringes the asserted claims of the '033 Patent.  And these combinations by those outside of the United States do in fact occur.  Accordingly, by supplying

1  such software and/or firmware components from the United States, Google is liable for

2  infringement under 35 U.S.C. § 271(f)(1).

3      149.    Despite knowing of the '033 Patent, Google supplies software components for

4  performing the accused functionality as part of Google's own YouTube, YouTube Music,

5  YouTube TV, and YouTube Kids apps (as well as the other apps identified in Google's

6  infringement contentions served in this case, *see* Exs. CH, CJ) for installation onto computing

7  devices and also as part of Google's own cast-enabled software for installation onto Cast-enabled

8  displays.  These software and/or firmware components are at least substantial portions of the

9  components of the patented inventions of the '033 Patent.  Google supplies these software and/or

10  firmware components from the United States to various entities outside the United States.  Google

11  then induces those entities to combine the supplied components in a manner that would, if

12  combined within the United States, constitute infringement.  Google has actively, knowingly, and

13  intentionally induced (and continues to actively, knowingly, and intentionally induce) these

14  entities to make such combinations outside the United States in various ways, in violation of 35

15  U.S.C. § 271(f)(1).

16      150.    For example, through Google's website, advertising and promotional material,

17  user guides, and/or the Google Play Store, Google has actively, knowingly, and intentionally

18  encouraged and induced (and continues to actively, knowingly, and intentionally encourage and

19  induce) others outside the United States to install one or more of the Cast-enabled apps (including

20  YouTube, YouTube Music, YouTube TV, and YouTube Kids apps) onto computing devices

21  outside of the United States.  If this combination were done within the United States, that act

22  would constitute "mak[ing]" an infringing device, which constitutes direct infringement of claims

23  1-2, 4, 7-13 of the '033 Patent under 35 U.S.C. § 271(a).  *See, e.g.,* Ex. CM

24  (https://support.google.com/youtubemusic/answer/6313540?co=GENIE.Platform%3DDesktop&o

25  co=1, indicating that the YouTube Music app is available in dozens of countries other than the

26  United States).

27      151.    As another example, through Google's website, advertising and promotional

28  material, user guides, and Cast-enabled apps, Google has actively, knowingly, and intentionally

1    encouraged and induced (and continues to actively, knowingly, and intentionally encourage and

2    induce) others outside the United States to install software (e.g., firmware updates and/or Cast-

3    enabled apps) onto Cast-enabled displays outside of the United States.  If this combination were

4    done within the United States, that act would constitute "mak[ing]" an infringing device, which

5    constitutes direct infringement of claims 1-2, 4, 7-13 of the '033 Patent under 35 U.S.C. § 271(a).

6          152.    As another example, through Google's relationship with third-party manufacturers,

7    third-party distributors, or via an otherwise affiliated entity that acts in a manufacturer or

8    distributor role, Google actively, knowingly, and intentionally encourages and induces or

9    instructs such parties to install one or more of the accused apps (including YouTube, YouTube

10   Music, YouTube TV, and YouTube Kids apps, as well as the other apps set forth in Sonos's

11   infringement contentions, Exs. CH, CJ) onto computing devices outside of the United States.  If

12   this combination were done within the United States, that act would constitute "mak[ing]" an

13   infringing device, which constitutes direct infringement of claims 1-2, 4, 7-13 of the '033 Patent

14   under 35 U.S.C. § 271(a).

15         153.    On information and belief, Google engages in the same conduct set out above

16   (with respect to Google's infringement under § 271(b)) in foreign countries and with the intent to

17   encourage users in foreign countries to download and install the accused apps onto computing

18   devices.

19         154.    As another example, through Google's relationship with third-party manufacturers,

20   third-party distributors, or via an otherwise affiliated entity that acts in a manufacturer or

21   distributor role, Google actively, knowingly, and intentionally encourages and induces or

22   instructs such parties to install software (e.g., firmware updates and/or apps) onto the Cast-

23   enabled displays outside of the United States.  If this combination were done within the United

24   States, that act would constitute "mak[ing]" an infringing device, which constitutes direct

25   infringement of claims 1-2, 4, 7-13 of the '033 Patent under 35 U.S.C. § 271(a).

26         155.    As still another example, through Google's relationship with entities (including

27   affiliated entities) that operate servers outside of the United States that host Cast-enabled apps

28   (e.g., Google's own YouTube, YouTube Music, YouTube TV, and YouTube Kids apps) for

download onto computing devices and/or software (e.g., firmware and/or apps) for download onto Cast-enabled displays, Google actively, knowingly, and intentionally encourages and induces or instructs these entities to load, store, or otherwise provide the apps and/or software onto these servers. For instance, Google operates data centers and download servers in countless foreign countries and regions.



Meet our network

*See* Ex. CR (https://cloud.google.com/about/locations#regions). In at least these foreign countries and regions, users are able to download the Cast-enabled apps onto computing devices. To facilitate this, Google has intentionally encouraged and induced or instructed other entities (including Google's affiliated entities) to upload software packages constituting the Cast-enabled apps onto download servers that are located in foreign countries. If this combination were done within the United States, that act would constitute direct infringement of certain asserted claims of the '033 Patent (e.g., claims 12-13 of the '033 Patent) by "mak[ing]" and/or "us[ing]" servers that host such software in violation of 35 U.S.C. § 271(a). *See also* Ex. CH (Sonos's infringement contentions).

156. Pursuant to 35 U.S.C. § 271(f)(2), Google has also infringed by supplying software components in or from the United Sates to be combined, installed, loaded, and/or used by others outside of the United States, where these software components are components of the patented inventions that have no substantial non-infringing use and are not staple articles or

1    commodities of commerce – with knowledge that these software components were especially

2    made or adapted for use and an intent that these software components would be combined,

3    installed, loaded, and/or used outside the United States such that, if such combination,

4    installation, load, and/or use occurred within the United States (as it does pursuant to the theories

5    set forth above), it would infringe the asserted claims of the '033 Patent.  And these combinations

6    by those outside of the United States do in fact occur.  Accordingly, by supplying such software

7    components in or from the United States, Google is liable for infringement under 35 U.S.C. §

8    271(f)(2).

9           157.    Despite knowing of the '033 Patent, Google supplies software components for

10   performing the accused Cast functionality as part of Google's Cast-enabled apps (including

11   YouTube, YouTube Music, YouTube TV, and YouTube Kids apps, as well as the other apps set

12   forth in Sonos's infringement contentions, Exs. CH, CJ) for installation onto computing devices

13   outside the United States and also as part of Google's own software (e.g., firmware and/or Cast-

14   enabled apps) for installation onto Cast-enabled displays outside the United States.  Google

15   intends that others outside the United States, including users, install these software components

16   onto computing devices and Cast-enabled displays and knows that such installation does in fact

17   occur and that such installation, if occurring in the United States, would constitute "mak[ing]" an

18   infringing device thereby directly infringing claims 1-2, 4, 7-13 of the '033 Patent under 35

19   U.S.C. § 271(a).

20          158.    As another example, Google supplies software components for performing the

21   accused Cast functionality to third-party manufacturers, third-party distributers, or to an otherwise

22   affiliated entity that acts in a manufacturer or distributor role, who then, outside of the United

23   States installs these software components onto computing devices outside of the United States.

24   Google intends that these parties install these software components onto computing devices

25   outside of the United States.  If this combination were done within the United States, that act

26   would constitute "mak[ing]" an infringing device, which constitutes direct infringement of claims

27   1-2, 4, 7-13 of the '033 Patent under 35 U.S.C. § 271(a).

28

159. As another example, Google supplies software components for performing the accused Cast functionality to entities (including affiliated entities) that operate servers outside of the United States that host apps for download onto computing devices and/or Cast-enabled software (e.g., firmware and/or apps) for download onto Cast-enabled displays. Google intends that these entities load, store, or otherwise provide the apps and/or accused software onto these servers. If this combination were done within the United States, that act would constitute direct infringement of certain asserted claims of the '033 Patent (e.g., claims 12-13 of the '033 Patent) by "mak[ing]" and/or "us[ing]" servers that host such software in violation of 35 U.S.C. § 271(a).

160. Google knows the foregoing software components for performing the accused Cast functionality are material components of infringing devices and the patented inventions that are not staple articles or commodities of commerce suitable for substantial non-infringing use because the only possible use for these software components is to be loaded, installed, and/or run on infringing Cast-enabled computing devices and Cast-enabled displays.

91.161. Google's infringement of the '033 Patent is also willful because Google (a) had actual knowledge of the '033 Patent and Sonos's infringement contentions no later than September 28, 2020 (see ¶¶ 19-29 above), (b) engaged in the aforementioned activity despite an objectively high likelihood that Google's actions constituted infringement of the '033 Patent, and (c) this objectively-defined risk was either known or so obvious that it should have been known to Google. See, e.g., ¶¶ 17-30, 53-65, above.

162. Given the five-year period over which Sonos put Google on consistent and repeated notice of Sonos's patents and the breadth of Sonos's patent portfolio concerning specifically the products accused in this case, detailed above, this knowledge establishes that Google was, for some time periods, at least willfully blind to the fact that the '033 Patent existed and, for other time periods, had actual knowledge of the '033 Patent. Further, this knowledge and repeated and persistent disclosure establishes that Google, for some time periods, had at least failed to investigate whether it infringed the '033 Patent despite the existence of a high risk of infringement and, for other time periods, had actual knowledge of a credible and specific allegation of infringement of the '033 Patent.

92.163.          Additional allegations regarding Google's pre-suit knowledge of the '033 Patent and willful infringement will likely have evidentiary support after a reasonable opportunity for discovery.

93.164.          Sonos is entitled to recover from Google all damages that Sonos has sustained as a result of Google's infringement of the '033 Patent, including, without limitation, a reasonable royalty and lost profits. Sonos is in compliance with any applicable marking and/or notice provisions of 35 U.S.C. § 287 with respect to the '033 Patent.

94.165.          Google's infringement of the '033 Patent was and continues to be willful and deliberate, entitling Sonos to enhanced damages.

95.166.          Google's infringement of the '033 Patent is exceptional and entitles Sonos to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

96.167.          Google's infringement of the '033 Patent has caused irreparable harm (including the loss of market share) to Sonos and will continue to do so unless enjoined by this Court.

**COUNTCLAIM III: INFRINGEMENT OF U.S. PATENT NO. 10,469,966 9,344,206**

97.168.          Sonos incorporates by reference and re-alleges paragraphs 1-831687 of this Amended Complaint as if fully set forth herein.

98.169.          Google and/or users of the Google Wireless Audio System have directly infringed (either literally or under the doctrine of equivalents) and continue to directly infringe one or more of the claims of the '206'966 Patent, in violation of 35 U.S.C. § 271(a), by making, using, offering for sale, and/or selling the Google Wireless Audio System within the United States and/or importing the Google Wireless Audio System into the United States without authority or license.

6.          As just one non-limiting example, set forth below is an exemplary infringement claim chart for claim 1 of the '206 Patent in connection with the Google Wireless Audio System. This claim chart is based on publicly available information. Sonos reserves the right to modify this claim chart, including, for example, on the basis of information about the Google Wireless Audio System that it obtains during discovery.

1    170.    In the course of this litigation, Sonos has served Google with infringement

2    contentions detailing Google's infringement of the '966 Patent.  *See* Ex. CH; Ex. CK.  In

3    particular, as set forth in Sonos's infringement contentions for the '966 Patent, Google's Google

4    Home app includes a "speaker group" feature, is installed on a computing device, and when so

5    installed, programs and/or otherwise configures a computing device such that each limitation of at

6    least one of the asserted claims of the '966 Patent is satisfied.  For the avoidance of doubt, Sonos

7    incorporates herein by reference under Rule 10(c) these infringement contentions for all purposes.

8    ~~99.~~171.    On September 28, 2020, Sonos provided Google with a draft of the original

9    complaint prior to its filing.  That draft identified the ~~'206~~'966 Patent and described how

10   Google's products infringed.  Thus, Google had actual knowledge of Sonos's allegation that

11   Google infringed claims of the ~~'206~~'966 Patent prior to Sonos filing this action.

12   ~~7.    Additionally and/or alternatively, Google has indirectly infringed and continues to~~

13   ~~indirectly infringe one or more of the claims of the '206 Patent, in violation of 35 U.S.C. § 271(b),~~

14   ~~by actively inducing users of the Google Wireless Audio System to directly infringe the one or~~

15   ~~more claims of the '206 Patent.  In particular, (a) Google had actual knowledge of the '206 Patent~~

16   ~~or was willfully blind to its existence prior to, and no later than, October 2016 and had actual~~

17   ~~knowledge or was willfully blind to Sonos's infringement allegations at least as early as September~~

18   ~~28, 2020 when Sonos provided Google a copy of the complaint(*see* ¶¶ 19-29 above), (b) Google~~

19   ~~intentionally causes, urges, or encourages users of the Google Wireless Audio System to directly~~

20   ~~infringe one or more claims of the '206 Patent by promoting, advertising, and instructing~~

21   ~~customers and potential customers about the Google Wireless Audio System (including uses~~

22   ~~thereof) and encouraging such customers and potential customers to engage in activity that~~

23   ~~constitutes direct infringement (*see* Exs. 22-23; *see also* citations above in the exemplary~~

24   ~~infringement claim chart for claim 1 of the '206 Patent), (c) Google knows (or should know) that~~

25   ~~its actions will induce users of the Google Wireless Audio System to directly infringe one or more~~

26   ~~claims the '206 Patent, and (d) users of the Google Wireless Audio System directly infringe one~~

27   ~~or more claims of the '206 Patent.  For instance, at a minimum, Google has supplied and continues~~

28   ~~to supply the Google Home app to customers while knowing that installation and/or use of this~~

1   app will infringe one or more claims of the '206 Patent, and that Google's customers then directly

2   infringe one or more claims of the '206 Patent by installing and/or using this app in accordance

3   with Google's product literature.  *See*, e.g., *id.*

4           8.      Additionally and/or alternatively, Google has indirectly infringed and continues to

5   indirectly infringe one or more of the claims of the '206 Patent, in violation of 35 U.S.C. § 271(c),

6   by offering to sell or selling within the United States, and/or importing into the United States,

7   components in connection with the Google Wireless Audio System that contribute to the direct

8   infringement of the '206 Patent by users of the Google Wireless Audio System.  In particular, (a)

9   Google had actual knowledge of the '206 Patent or was willfully blind to its existence prior to, and

10  no later than, October 2016 and had actual knowledge or was willfully blind to Sonos's

11  infringement allegations at least as early as September 28, 2020 when Sonos provided Google a

12  copy of the complaint (*see* ¶¶ 19-29 above), (b) Google offers for sale, sells, and/or imports, in

13  connection with the Google Wireless Audio System, one or more material components of the

14  invention of the '206 Patent that are not staple articles of commerce suitable for substantial

15  noninfringing use, (c) Google knows (or should know) that such component(s) were especially

16  made or especially adapted for use in an infringement of the '206 Patent, and (d) users of devices

17  that comprise such material component(s) directly infringe one or more claims of the '206 Patent.

18  For instance, at a minimum, Google offers for sale, sells, and/or imports the Google Home app for

19  installation on devices (*e.g.*, smartphones, tablets, and computers) that meet one or more claims of

20  the '206 Patent.  *See, e.g.*, Exs. 22-23.  This app is a material component of the devices that meet

21  the one or more claims of the '206 Patent.  Further, Google especially made and/or adapted this

22  app for installation and use on devices that meet the one or more claims of the '206 Patent, and

23  this app is not a staple article of commerce suitable for substantial noninfringing use.  Google's

24  customers then directly infringe the one or more claims of the '206 Patent by installing and/or

25  using the Google Home app on the customers' devices.

26          9.      Google's infringement of the '206 Patent is also willful because Google (a) had

27  actual knowledge of the '206 Patent no later than October 2016 and actual knowledge of Sonos's

28  infringement contentions no later than September 28, 2020 (*see* ¶¶ 19-29 above), (b) engaged in

1    the aforementioned activity despite an objectively high likelihood that Google's actions constituted

2    infringement of the '206 Patent, and (c) this objectively defined risk was either known or so

3    obvious that it should have been known to Google.

4           10.    Additional allegations regarding Google's pre-suit knowledge of the '206 Patent

5    and willful infringement will likely have evidentiary support after a reasonable opportunity for

6    discovery.

7           11.    Sonos is in compliance with any applicable marking and/or notice provisions of 35

8    U.S.C. § 287 with respect to the '206 Patent.

9           12.    Sonos is entitled to recover from Google all damages that Sonos has sustained as a

10   result of Google's infringement of the '206 Patent, including, without limitation, a reasonable

11   royalty and lost profits.

12          13.    Google's infringement of the '206 Patent was and continues to be willful and

13   deliberate, entitling Sonos to enhanced damages.

14          14.    Google's infringement of the '206 Patent is exceptional and entitles Sonos to

15   attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

16          15.    Google's infringement of the '206 Patent has caused irreparable harm (including

17   the loss of market share) to Sonos and will continue to do so unless enjoined by this Court.

18   **COUNT IV: INFRINGEMENT OF U.S. PATENT NO. 10,469,966**

19          16.    Sonos incorporates by reference and re-alleges paragraphs 1-83 of this Amended

20   Complaint as if fully set forth herein.

21          17.    Google and/or users of the Google Wireless Audio System have directly infringed

22   (either literally or under the doctrine of equivalents) and continue to directly infringe one or more

23   of the claims of the '966 Patent, in violation of 35 U.S.C. § 271(a), by making, using, offering for

24   sale, and/or selling the Google Wireless Audio System within the United States and/or importing

25   the Google Wireless Audio System into the United States without authority or license.

26          18.    As just one non-limiting example, set forth below is an exemplary infringement

27   claim chart for claim 1 of the '966 Patent in connection with the Google Wireless Audio System.

28   This claim chart is based on publicly available information.  Sonos reserves the right to modify

1  this claim chart, including, for example, on the basis of information about the Google Wireless

2  Audio System that it obtains during discovery.

3      19.     On September 28, 2020, Sonos provided Google with a draft of the original

4  complaint prior to its filing.  That draft identified the '966 Patent and described how Google's

5  products infringed.  Thus, Google had actual knowledge of Sonos's allegation that Google

6  infringed claims of the '966 Patent prior to Sonos filing this action.

7      100.172.     Additionally and/or alternatively, Google has indirectly infringed and

8  continues to indirectly infringe one or more of the claims of the '966 Patent, in violation of 35

9  U.S.C. § 271(b), by actively inducing users of the Google Wireless Audio System to directly

10  infringe the one or more claims of the '966 Patent.  In particular, (a) Google had actual

11  knowledge of the '966 Patent and Sonos's infringement contentions, or was willfully blind to

12  their existence, no later than September 28, 2020 when Sonos provided Google with a copy of the

13  complaint (*see* ¶¶ 19-29 17-30, 53-65, above), (b) Google intentionally causes, urges, or

14  encourages users of the Google Wireless Audio System to directly infringe one or more claims of

15  the '966 Patent by promoting, advertising, and instructing customers and potential customers

16  about the Google Wireless Audio System (including uses thereof) and encouraging such

17  customers and potential customers to engage in activity that constitutes direct infringement (*see*

18  Exs. 22-23; *see also* citations above in the exemplary infringement claim chart for claim 1 of

19  the '966 Patent), (c) Google knows (or should know U-V), (c) Google has continued to

20  intentionally cause, urge, or encourage users of the Google Wireless Audio System in such a

21  manner both since becoming aware of the '966 Patent and since Sonos told Google that such

22  conduct was inducing infringement on September 28, 2020, (d) Google knows (or should know)

23  and has known (or should have known) that its actions will induce users of the Google Wireless

24  Audio System to directly infringe one or more claims the '966 Patent, and (d) e) users of the

25  Google Wireless Audio System directly infringe one or more claims of the '966 Patent.

26      101.173.     For instance, at a minimum, Google has supplied and continues to supply

27  the Google Home app to customers while knowing that installation and/or use of this app will

28

1   infringe one or more claims of the '966 Patent, and that Google's customers then directly infringe

2   one or more claims of the '966 Patent by installing and/or using this app in accordance with

3   Google's product literature.  *See, e.g., id.**See, e.g., id.*  In other words, Google specifically intends

4   to induce its customers to infringe the '966 Patent by intentionally encouraging and instructing its

5   customers to install such software/pieces of software onto their computing devices. Example

6   evidence of such conduct includes:

7

8

9

10

11

12

13



14  Ex. U.

15

16

17

18

19

20

21



22  Ex. V.

23

24

25

26

27

28

1

2

3

4

5

6

7



8

9

Ex. CT.

10          174.    Moreover, example evidence of Google encouraging and instructing its customers

11   to use the accused speaker-group feature included in the Google Home app in an infringing

12   manner includes:

13

14

15

16

17

18

19



20

21

22

23

24

25

26

27

28

59

1

2



3

4

5

6

7

8

9

10

11 Ex. P.

12      175.    Google has continued to engage in the conduct described above by way of

13 example since it became aware of the '966 Patent and since Sonos informed Google in Sonos's

14 December 21, 2020 infringement contentions (and each subsequent instance of amended

15 infringement contentions) that such conduct was inducing others to directly infringe the '966

16 Patent.  Google chose not to cease its conduct despite this.  Thus, Google has engaged in this

17 conduct with the specific intent to infringe the '966 Patent because this conduct was expressly

18 intended to encourage users to download and install the Google Home app onto computing

19 devices, as well as use computing devices installed with the Google Home app – the very actions

20 that result in direct infringement of the '966 Patent.

21      176.    Sonos has identified additional evidence of Google's inducing conduct in its

22 infringement contentions and interrogatory responses, which Sonos incorporates herein by

23 reference under Rule 10(c) for all purposes.  *See* Exs. CH, CW.

24 102.177.        Additionally and/or alternatively, Google has indirectly infringed and

25 continues to indirectly infringe one or more of the claims of the '966 Patent, in violation of 35

26 U.S.C. § 271(c), by offering to sell or selling within the United States, and/or importing into the

27 United States, components in connection with the Google Wireless Audio System that contribute

28 to the direct infringement of the '966 Patent by users of the Google Wireless Audio System.  In

particular, (a) Google had actual knowledge of the '966 Patent and Sonos's infringement

contentions, or was willfully blind to their existence, no later than September 28, 2020 when

Sonos provided Google with a copy of the complaint (*see* ¶¶ 19-29 above 17-30, 53-65, sabove),

(b) Google offers for sale, sells, and/or imports, in connection with the Google Wireless Audio

System, one or more material components of the invention of the '966 Patent that are not staple

articles of commerce suitable for substantial noninfringingnon-infringing use, (c) Google knows

(or should know) that such component(s) were especially made or especially adapted for use in an

infringement of the '966 Patent, and (d) users of devices that comprise such material

component(s) directly infringe one or more claims of the '966 Patent.

103.178.     For instance, at a minimum, Google offers for sale, sells, and/or imports

the Google Home app for installation on devices (*e.g.*, smartphones, tablets, and computers) that

meet one or more claims of the '966 Patent. *See, e.g.*, Exs. 22-23 U-V.  This app is a material

component of the devices that meet the one or more claims of the '966 Patent.  Further, Google

especially made and/or adapted this app for installation and use on devices that meet the one or

more claims of the '966 Patent, and this app is not a staple article of commerce suitable for

substantial noninfringingnon-infringing use.  Google's customers then directly infringe the one or

more claims of the '966 Patent by installing and/or using the Google Home app on the customers'

devices.

179.     More specifically Google supplies a software component, the Google Home app,

that includes the accused speaker-group feature as part of the Google Home app in the United

States, and each time a user installs the Google Home app onto a computing device, the user

"makes" an infringing device and thereby directly infringes the asserted claims of the '966 Patent

under 35 U.S.C. § 271(a).  The software component is a material component of infringing devices

and is not a staple article or commodity of commerce suitable for substantial non-infringing use

because the only possible use for these software components is to be installed and run on

infringing computing devices.  In other words, there is no other reasonable, suitable, or even

conceivable use for these software components other than to be downloaded to and installed on

computing devices, such as mobile phones or tablet computers.  Because the asserted claims are

directed to capability and not actual use or performance, actual execution of software functionality is not required.  Infringement occurs as soon as the software component is downloaded to and/or installed on the computing device.  Thus, the fact that the computing device may be capable of carrying out non-infringing functionality (in addition to being capable of carrying out the claimed functionality) does not negate infringement and is not a non-infringing use because infringement has already occurred as a result of the download and/or installation of the software component onto the computing device.

180.    Along with its actual knowledge of the '966 Patent, Google knew (or should have known) that the software component was especially made or adapted for installation on infringing devices and that installation of this software component by others resulted in (and continues to result in) direct infringement of the '966 Patent under 35 U.S.C. § 271(a) because each such installation "makes" a device that meets every element of claims 1-4, 6-12, 14-16 of the '966 Patent.

181.    Additionally and/or alternatively, as discussed before, Google supplies a software component feature (i.e., the accused speaker-group feature as part of the Google Home app for installation onto computing devices) in the United States via software downloads. This software component feature is a material component of infringing devices and is not a staple article or commodity of commerce suitable for substantial non-infringing use because the only possible use for this software component feature is to be operated on infringing Cast-enabled computing devices.  Along with its actual knowledge of the '966 Patent, Google knew (or should have known) that the software component feature was especially made or adapted to perform specific functions that are a material part of the inventions of the '966 Patent and that use of this software component feature by others involved (and continues to involve) a direct infringement of the '966 Patent under 35 U.S.C. § 271(a).

182.    Moreover, as a result of Google's contributory conduct, others have directly infringed the asserted claims of the '966 Patent.  For example, users have installed the supplied software components included as part of the Google Home app onto computing devices in the United States, thereby "making" infringing computing devices.  As another example, after

1    installing the supplied software components included as part of the Google Home app onto

2    computing devices, users have used these infringing devices, including the use of the accused

3    speaker-group feature, which also constitutes direct infringement of the asserted claims.

4         183.    Pursuant to 35 U.S.C. § 271(f)(1), Google has also infringed by supplying in or

5    from the United States software and/or firmware components, which constitute substantial

6    portions of the components of Sonos's patented inventions, and actively, knowingly, and

7    intentionally induced (and continues to actively, knowingly, and intentionally induce) others

8    outside of the United States to combine these software and/or firmware components in a manner

9    that, if such combination would have occurred in the United States (as it does pursuant to the

10   theories set forth above), infringes the asserted claims of the '966 Patent.  And these

11   combinations by those outside of the United States do in fact occur.  Accordingly, by supplying

12   such software and/or firmware components from the United States, Google is liable for

13   infringement under 35 U.S.C. § 271(f)(1).

14        184.    Despite knowing of the '966 Patent, Google supplies the Google Home app from

15   the United States to various entities outside the United States.  Google then induces those entities

16   to combine the Google Home app in a manner that would, if combined within the United States,

17   constitute infringement.  Google has actively, knowingly, and intentionally induced (and

18   continues to actively, knowingly, and intentionally induce) these entities to make such

19   combinations outside the United States in various ways, in violation of 35 U.S.C. § 271(b).

20        185.    For example, through Google's website, advertising and promotional material,

21   user guides, and/or the Google Play Store, and via audible or visual instructions emitted from or

22   displayed on the Cast-enabled media players and Cast-enabled displays, Google has actively,

23   knowingly, and intentionally encouraged and induced (and continues to actively, knowingly, and

24   intentionally encourage and induce) others outside the United States to install the Google Home

25   app onto computing devices outside the United States.  If this combination were done within the

26   United States, that act would constitute "mak[ing]" an infringing device, which constitutes direct

27   infringement of claims 1-4, 6-12, 14-16 of the '966 Patent under 35 U.S.C. § 271(a).  *See, e.g.,*

28   Ex. CU (https://support.google.com/store/answer/2462844?hl=en, indicating the countries in

1  which Google's media players can be purchased and operated and thus, the countries in which

2  Google encourages its users to download and install the Google Home app).

3      186.    As another example, through Google's relationship with entities (including

4  affiliated entities) that operate servers outside of the United States that host the Google Home app

5  for download onto smartphone, tablet, and computer devices, Google actively, knowingly, and

6  intentionally encourages and induces or instructs these entities to load, store, or otherwise provide

7  the Google Home app onto these servers.   For instance, Google operates data centers and

8  download servers in countless foreign countries and regions.

9



10

11

12

13

14

15

16

17

18  *See* Ex. CR (https://cloud.google.com/about/locations#regions).  In at least these foreign countries

19  and regions, users are able to download the Google Home app onto computing devices.  To

20  facilitate this, Google has intentionally encouraged and induced or instructed other entities

21  (including Google's affiliated entities) to upload software packages constituting the Google Home

22  app onto download servers that are located in foreign countries.  If this combination were done

23  within the United States, that act would constitute direct infringement of certain asserted claims

24  of the '966 Patent (e.g., claims 9-12 and 14-16) by "mak[ing]" and/or "us[ing]" servers that host

25  such software in violation of 35 U.S.C. § 271(a).

26      187.    On information and belief, Google engages in the same conduct set out above

27  (with respect to Google's infringement under § 271(b)) in foreign countries and with the intent to

28

encourage users in foreign countries to download and install the Google Home app onto computing devices.

188.    Pursuant to 35 U.S.C. § 271(f)(2), Google has also infringed by supplying software components in or from the United Sates to be combined, installed, loaded, and/or used by others outside of the United States, where these software components are components of the patented inventions that have no substantial non-infringing use and are not staple articles or commodities of commerce – with knowledge that these software components were especially made or adapted for use and an intent that these software components would be combined, installed, loaded, and/or used outside the United States such that, if such combination, installation, load, and/or use occurred within the United States (as it does pursuant to the theories set forth above), it would infringe the asserted claims of the Asserted Patents.  And these combinations by those outside of the United States do in fact occur.  Accordingly, by supplying such software components in or from the United States, Google is liable for infringement under 35 U.S.C. § 271(f)(2).

189.    Despite knowing of the '966 Patent, Google supplies software components for performing the accused functionality as part of the Google Home app in or from the United States to various entities outside the United States.  Google knows and intends for those entities to combine the software components in a manner that would, if combined within the United States, constitute infringement because each combination or installation of the Google Home app onto a computing device would constitute "mak[ing]" an infringing device and thus directly infringe claims 1-4, 6-12, 14-16 of the '966 Patent under 35 U.S.C. § 271(a).

190.    Google knows that the software components included in the Google Home app are material components of infringing devices that are not staple articles or commodities of commerce suitable for substantial non-infringing use because the only possible use for these software components is to be installed and run on infringing computing devices.

191.    Along with its actual knowledge of the '966 Patent, Google knew (or should have known) that the software components included in the Google Home app were especially made or adapted for installation on infringing devices, and that installation of these software components

by others outside of the United States would, if done within the United States, constitute (and continues to result in) direct infringement of the '966 Patent under 35 U.S.C. § 271(a) because each such installation "makes" a device that meets every element of every asserted claims.

192.    Moreover, as a result of Google providing software components of the Google Home app, others have outside of the United States combined the Google Home app in a manner that, if done within the United States, would constitute direct infringement of the asserted claims of the '966 Patent.  For example, others outside the United States have installed the Google Home app onto computing devices outside the United States.  If this combination were done within the United States, that act would constitute "mak[ing]" an infringing device, which constitutes direct infringement of claims 1-4, 6-12, 14-16 of the '966 Patent under 35 U.S.C. § 271(a).

193.    As another example, Google supplies software components of the Google Home app to entities (including affiliated entities) that operate servers outside of the United States that host the Google Home app for download onto smartphone, tablet, and computer devices.  Google intends that these entities load, store, or otherwise provide the Google Home app onto these servers.  If this combination were done within the United States, that act would constitute direct infringement of certain asserted claims of the '966 Patent (e.g., claims 9-12 and 14-16) by "mak[ing]" and/or "us[ing]" servers that host such software in violation of 35 U.S.C. § 271(a). *See also* Ex. CH (Sonos's infringement contentions).

104.194.    Google's infringement of the '966 Patent is also willful because Google (a) had actual knowledge of the '966 Patent and actual knowledge of Sonos's infringement contentions no later than September 28, 2020 (*see ¶¶ 19-29 above*),. (b) engaged in the aforementioned activity despite an objectively high likelihood that Google's actions constituted infringement of the '966 Patent, and (c) this objectively-defined risk was either known or so obvious that it should have been known to Google.  *See, e.g., ¶¶ 17-30, 53-65, above.*

195.    Given the five-year period over which Sonos put Google on consistent and repeated notice of Sonos's patents and the breadth of Sonos's patent portfolio concerning specifically the products accused in this case, detailed above, this knowledge establishes that Google was, for some time periods, at least willfully blind to the fact that the '966 Patent existed

1    and, for other time periods, had actual knowledge of the '966 Patent. Further, this knowledge and

2    repeated and persistent disclosure establishes that Google, for some time periods, had at least

3    failed to investigate whether it infringed the '966 Patent despite the existence of a high risk of

4    infringement and, for other time periods, had actual knowledge of a credible and specific

5    allegation of infringement of the '966 Patent.

6         105.196.     Additional allegations regarding Google's pre-suit knowledge of the '966

7    Patent and willful infringement will likely have evidentiary support after a reasonable opportunity

8    for discovery.

9         106.197.     Sonos is in compliance with any applicable marking and/or notice

10    provisions of 35 U.S.C. § 287 with respect to the '966 Patent.

11         107.198.     Sonos is entitled to recover from Google all damages that Sonos has

12    sustained as a result of Google's infringement of the '966 Patent, including, without limitation, a

13    reasonable royalty and lost profits.

14         108.199.     Google's infringement of the '966 Patent was and continues to be willful

15    and deliberate, entitling Sonos to enhanced damages.

16         109.200.     Google's infringement of the '966 Patent is exceptional and entitles Sonos

17    to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

18         110.201.     Google's infringement of the '966 Patent has caused irreparable harm

19    (including the loss of market share) to Sonos and will continue to do so unless enjoined by this

20    Court.

21         **COUNT VCLAIM IV: INFRINGEMENT OF U.S. PATENT NO. 10,848,885**

22         111.202.     Sonos incorporates by reference and re-alleges paragraphs 1-83201 of this

23    Amended Complaint as if fully set forth herein.

24         112.203.     Google and/or users of the Google Wireless Audio System have directly

25    infringed (either literally or under the doctrine of equivalents) and continue to directly infringe

26    one or more of the claims of the '885 Patent, in violation of 35 U.S.C. § 271(a), by making, using,

27    offering for sale, and/or selling the Google Wireless Audio System within the United States

28

1  and/or importing the Google Wireless Audio System into the United States without authority or
2  license.
3  ~~20.    As just one non-limiting example, set forth below is an exemplary infringement~~
4  ~~claim chart for claim 1 of the '885 Patent in connection with the Google Wireless Audio System.~~
5  ~~This claim chart is based on publicly available information.  Sonos reserves the right to modify~~
6  ~~this claim chart, including, for example, on the basis of information about the Google Wireless~~
7  ~~Audio System that it obtains during discovery.~~
8
9  204.    In the course of this litigation, Sonos has served Google with infringement
10  contentions detailing Google's infringement of the '885 Patent.  *See* Ex. CH; Ex. CL.  In
11  particular, as set forth in Sonos's infringement contentions for the '885 Patent, Google's Cast-
12  enabled media players are provisioned with software enabling a "speaker group" feature such that
13  each limitation of at least one of the asserted claims of the '885 Patent is satisfied.  For the
14  avoidance of doubt, Sonos incorporates herein by reference under Rule 10(c) these infringement
15  contentions for all purposes.
16  ~~113.~~205.    On January 8, 2021, Sonos provided Google with a draft of ~~this~~Sonos's
17  First Amended Complaint prior to its filing.  That draft identified the '885 Patent and described
18  how Google's products infringed.  Thus, Google had actual knowledge of Sonos's allegation that
19  Google infringed claims of the '885 Patent prior to Sonos filing the amended complaint in this
20  action.
21  ~~114.~~206.    Additionally and/or alternatively, Google has indirectly infringed and
22  continues to indirectly infringe one or more of the claims of the '885 Patent, in violation of 35
23  U.S.C. § 271(b), by actively inducing users of the Google Wireless Audio System to directly
24  infringe the one or more claims of the '885 Patent.  In particular, (a) Google had actual
25  knowledge of the '885 Patent and Sonos's infringement contentions, or was willfully blind to
26  their existence, no later than January 8, 2021 when Sonos provided Google with a copy of the
27  First Amended Complaint, (b) Google intentionally causes, urges, or encourages users of the
28  Google Wireless Audio System to directly infringe one or more claims of the '885 Patent by

promoting, advertising, and instructing customers and potential customers about the Google

Wireless Audio System (including uses thereof) and encouraging such customers and potential

customers to engage in activity that constitutes direct infringement (*see* Exs. ~~22-23; *see also*~~

~~citations above in the exemplary infringement claim chart for claim 1 of the '885 Patent), (c)~~

~~Google knows (or should know~~ U-V), (c) Google has continued to intentionally cause, urge, or

encourage users of the Google Wireless Audio System in such a manner both since becoming

aware of the '885 Patent and since Sonos told Google that this conduct was inducing infringement

on February 17, 2021, (d) Google knows (or should know) and has known (or should have

known) that its actions will induce users of the Google Wireless Audio System to directly infringe

one or more claims the '885 Patent, and (~~d)~~ e) users of the Google Wireless Audio System

directly infringe one or more claims of the '885 Patent. ~~For instance, at a minimum, Google has~~

~~supplied and continues to supply the Chromecast-enabled media players to customers while~~

~~knowing that use of these products will infringe one or more claims of the '885 Patent and that~~

~~Google's customers then directly infringe one or more claims of the '885 Patent by using the~~

~~Chromecast-enabled media players in accordance with Google's product literature. *See, e.g., id.*~~

207.    For example, at a minimum, Google has supplied and continues to supply the

Cast-enabled media players to customers while knowing that use of these products will infringe

one or more claims of the '885 Patent and that Google's customers then directly infringe one or

more claims of the '885 Patent by using the Cast-enabled media players in accordance with

Google's product literature. *See, e.g., id.* In other words, Google specifically intends to induce

its customers to infringe the '885 Patent by intentionally encouraging and instructing its customers

to use the Cast-enabled media players, including the use of the accused speaker-group feature,

which constitutes direct infringement. Example evidence of such conduct can be found at

paragraph 174.

208.    As another example, at a minimum, Google has supplied and continues to supply

software (e.g., firmware updates) for installation onto Cast-enabled media players to customers

while knowing that installation of this software will infringe one or more claims of the '885

Patent and that Google's customers then directly infringe one or more claims of the '885 Patent

by installing the software.  In other words, Google specifically intends to induce its customers to infringe the '885 Patent by intentionally encouraging and instructing its customers to install such software onto their Cast-enabled media players.  When users install such software, including firmware updates, these users make an infringing device pursuant to § 271(a) and thus commit direct infringement of the '855 Patent.  Example evidence of such conduct includes:



Locate firmware version & settings

Firmware is the software installed on Google Nest or Home speaker or display. When a firmware update is available, your device will automatically download the update via an Over-the-Air (OTA) update.

Your speaker or display must be set up and connected to the internet to receive the firmware update.

Ex. CN.



Updates to Google Nest or Home speakers and displays

To enjoy the latest and greatest features available on Google Nest or Home speaker or display, your device may need to be updated to the most recent software version. This is done automatically as part of setup so there's nothing you need to do to get the update.

Ex. CO.

209.    As yet another example, at a minimum, Google has supplied and continues to supply the Cast-enabled media players to distributors (e.g., Best Buy, Walmart, etc.) that then sell or offer to sell the Cast-enabled media players while knowing that selling and offering to sell the Cast-enabled media players infringes one or more claims of the '885 Patent and that Google's distributors then directly infringe one or more claims of the '885 Patent by selling and offering to sell the Cast-enabled media players .  In other words, Google specifically intends to induce its distributors to infringe the '885 Patent by intentionally encouraging and instructing its distributors to sell or offer to sell Cast-enabled media players.  Example evidence of such conduct includes:

SONOS'S THIRD AMENDED COMPLAINT



Ex. CV.

210.    Google has continued to engage in the conduct described above by way of example since it became aware of the '885 Patent and since Sonos informed Google in Sonos's February 17, 2021 infringement contentions (and each subsequent instance of amended infringement contentions) that such conduct was inducing others to directly infringe the '885 Patent.  Google chose not to cease its conduct despite this.  Thus, Google has engaged in this conduct with the specific intent to infringe the '885 Patent because this conduct was expressly intended to encourage users to use the Cast-enabled media players, users to install firmware updates onto Cast-enabled media players thus constituting making an infringing device, and distributors to sell and offer to sell Cast-enabled media players – the very actions that result in direct infringement of the '885 Patent.

115.211.      Additionally and/or alternatively, Google has indirectly infringed and continues to indirectly infringe one or more of the claims of the '885 Patent, in violation of 35 U.S.C. § 271(c), by offering to sell or selling within the United States, and/or importing into the United States, components in connection with the Google Wireless Audio System that contribute to the direct infringement of the '885 Patent by users of the Google Wireless Audio System.  In

1   particular, (a) Google had actual knowledge of the '885 Patent and Sonos's infringement

2   contentions, or was willfully blind to their existence, no later than January 8, 2021 when Sonos

3   provided Google with a copy of the First Amended Complaint, (b) Google offers for sale, sells,

4   and/or imports, in connection with the Google Wireless Audio System, one or more material

5   components of the invention of the '885 Patent that are not staple articles of commerce suitable

6   for substantial ~~noninfringing~~non-infringing use, (c) Google knows (or should know) that such

7   component(s) were especially made or especially adapted for use in an infringement of the '885

8   Patent, and (d) users of devices that comprise such material component(s) directly infringe one or

9   more claims of the '885 Patent.  For instance, at a minimum, Google offers for sale, sells, and/or

10   imports software updates for the Chromecast-enabled media players that meet one or more claims

11   of the '885 Patent.  *See, e.g.*, Ex. ~~43~~ AO.  These software updates are material components of the

12   Chromecast-enabled media players that meet the one or more claims of the '885 Patent.  Further,

13   Google especially made and/or adapted these software updates for installation and use on the

14   Chromecast-enabled media players that meet the one or more claims of the '885 Patent, and these

15   software updates are not staple articles of commerce suitable for substantial ~~noninfringing~~non-

16   infringing use.  Google's customers then directly infringe the one or more claims of the '885

17   Patent by installing and using software updates on the Chromecast-enabled media players.

18   212.   More specifically, Google supplies software components, such as firmware

19   updates, that include the accused speaker-group feature as part of software updates for Cast-

20   enabled media players in the United States, and each time a user installs such a firmware update,

21   the user "makes" an infringing device and thereby directly infringes claims 1-3, 5-10, 12-14 of

22   the '885 Patent under 35 U.S.C. § 271(a).  The software components included in the firmware

23   updates are material components of Cast-enabled media players that are not staple articles or

24   commodities of commerce suitable for substantial non-infringing use because the only possible

25   use for these software components is to be installed and run on infringing Cast-enabled media

26   players.  In other words, there is no other reasonable, suitable, or even conceivable use for these

27   software components other than to be downloaded to and installed on Cast-enabled media

28   players.  Because the asserted claims are directed to capability and not actual use or performance,

actual execution of software functionality is not required.  Infringement occurs as soon as the

software component is downloaded to and/or installed on the Cast-enabled media player.  Thus,

the fact that the Cast-enabled media player may be capable of carrying out non-infringing

functionality (in addition to being capable of carrying out the claimed functionality) does not

negate infringement and is not a non-infringing use because infringement has already occurred as

a result of the download and/or installation of the software component onto the Cast-enabled

media player.

213.    Along with its actual knowledge of the '885 Patent, Google knew (or should have

known) that the software components included in the firmware updates were especially made or

adapted for installation on infringing Cast-enabled media players and that installation of these

software components by others resulted in (and continues to result in) direct infringement of

the '885 Patent under 35 U.S.C. § 271(a) because each such installation "makes" an updated

Cast-enabled media player that meets every element claims 1-3, 5-10, 12-14 of the '885 Patent.

214.    Additionally and/or alternatively, as discussed before, Google supplies a software

component feature (i.e., the accused speaker-group feature as part of the Cast-enabled media

player's firmware) in the United States via software downloads.  This software component feature

is a material component of infringing devices and is not a staple article or commodity of

commerce suitable for substantial non-infringing use because the only possible use for this

software component feature is to be operated on infringing Cast-enabled media players.  Along

with its actual knowledge of the '885 Patent, Google knew (or should have known) that the

software component feature was especially made or adapted to perform specific functions that are

a material part of the inventions of the '885 Patent and that use of this software component

feature by others involved (and continues to involve) a direct infringement of the '885 Patent

under 35 U.S.C. § 271(a).

215.    Moreover, as a result of Google's contributory conduct, others have directly

infringed the asserted claims of the '885 Patent.  For example, users have installed the supplied

software components included as part of the firmware updates onto Cast-enabled media players in

the United States, thereby "making" updated Cast-enabled media players, which constitutes direct

1   infringement.  As another example, after installing the software components included as part of

2   the firmware updates onto Cast-enabled media players, users have used Cast-enabled media

3   players, including the use of the accused speaker-group feature, which also constitutes direct

4   infringement of the asserted claims.

5   216.   Pursuant to 35 U.S.C. § 271(f)(1), Google has also infringed by supplying in or

6   from the United States software and/or firmware components, which constitute substantial

7   portions of the components of Sonos's patented inventions, and actively, knowingly, and

8   intentionally induced (and continues to actively, knowingly, and intentionally induce) others

9   outside of the United States to combine these software and/or firmware components in a manner

10  that, if such combination would have occurred in the United States (as it does pursuant to the

11  theories set forth above), infringes the asserted claims of the '885 Patent.  And these

12  combinations by those outside of the United States do in fact occur.  Accordingly, by supplying

13  such software and/or firmware components from the United States, Google is liable for

14  infringement under 35 U.S.C. § 271(f)(1).

15  217.   Despite knowing of the '885 Patent, Google supplies from the United States

16  software components for performing the accused functionality as part of firmware updates for

17  accused media players.  Google then through Google's website, advertising and promotional

18  material, user guides, the Google Home app (among other apps offered by Google), and/or the

19  Google Play Store, Google has actively, knowingly, and intentionally encouraged and induced

20  (and continues to actively, knowingly, and intentionally encourage and induce) others outside the

21  United States to install firmware updates onto accused media players outside the United States.  If

22  this combination were done within the United States, that act would constitute "mak[ing]" or

23  "us[ing]" an infringing device, which constitutes direct infringement of the asserted claims of the

24  '885 Patent under 35 U.S.C. § 271(a).  *See, e.g.,* Ex. CU

25  (https://support.google.com/store/answer/2462844?hl=en, indicating the countries in which

26  Google's media players can be purchased and operated and thus, the countries in which Google

27  encourages its users to install firmware updates to the media players).

28

218.    As another example, through Google's relationship with third-party manufacturers, third-party distributers, or via an otherwise affiliated entity that acts in a manufacturer or distributor role, Google actively, knowingly, and intentionally encourages and induces or instructs such parties to, outside of the United States, install or load firmware onto Cast-enabled media players.  If this combination were done within the United States, that act would constitute "mak[ing]" an infringing device, which constitutes direct infringement of claims 1-3, 5-10, 12-14 of the '885 Patent under 35 U.S.C. § 271(a).

219.    On information and belief, Google engages in the same conduct set out above (with respect to Google's infringement under § 271(b)) in foreign countries and with the intent to encourage users in foreign countries to download and install firmware updates onto Cast-enabled media players in those countries.

220.    Pursuant to 35 U.S.C. § 271(f)(2), Google has also infringed by supplying software components in or from the United Sates to be combined, installed, loaded, and/or used by others outside of the United States, where these software components are components of the patented inventions that have no substantial non-infringing use and are not staple articles or commodities of commerce – with knowledge that these software components were especially made or adapted for use and an intent that these software components would be combined, installed, loaded, and/or used outside the United States such that, if such combination, installation, load, and/or use occurred within the United States (as it does pursuant to the theories set forth above), it would infringe the asserted claims of the '885 Patent.  And these combinations by those outside of the United States do in fact occur.  Accordingly, by supplying such software components in or from the United States, Google is liable for infringement under 35 U.S.C. § 271(f)(2).

221.    Despite knowing of the '885 Patent, Google supplies in or from the United States software components for performing the accused functionality as part of firmware updates for accused media players, and users install such a firmware update outside of the United States in a manner that, if done within the United States, would constitute "mak[ing]" an infringing device and thereby directly infringe claims 1-3, 5-10, 12-14 of the '885 Patent under 35 U.S.C. § 271(a).

The software components included in the firmware updates are material components of the patented invention that are not staple articles or commodities of commerce suitable for substantial non-infringing use because the only possible use for these software components is to be installed and run on accused media players, which constitute infringing devices.

222.    Along with its actual knowledge of the '885 Patent, Google knew (or should have known) that the software components included in the firmware updates were especially made or adapted for installation on accused media players, and that installation of these software components by others outside the United States would, if done within the United States, have resulted in (and continues to result in) direct infringement of the '885 Patent under 35 U.S.C. § 271(a) because each such installation "makes" an updated player that meets every element of every asserted claims.

223.    Moreover, as a result of Google providing such firmware updates others have outside of the United States combined the firmware updates in a manner that, if done within the United States, would constitute direct infringement of claims 1-3, 5-10, 12-14 of the '885 Patent. For example, users have, outside of the United States, installed the supplied software components included as part of the firmware updates onto accused media players outside the United States, which if done within the United States would constitute "making" updated Cast-enabled media players, which constitutes direct infringement.

224.    As another example, Google provides firmware to manufacturers, third-party distributers, or an otherwise affiliated entity that acts in a manufacturer or distributor role, who then, outside of the United States installs or loads such firmware onto accused media players.  If this combination were done within the United States, that act would constitute "mak[ing]" an infringing device, which constitutes direct infringement of claims 1-3, 5-10, 12-14 of the '885 Patent under 35 U.S.C. § 271(a). *See also* Ex. CH (Sonos's infringement contentions).

225.    Sonos has identified additional evidence of Google's inducing conduct in its infringement contentions and interrogatory responses, which Sonos incorporates herein by reference under Rule 10(c) for all purposes.  See Exs. CH, CW.

116.226.    Google's infringement of the '885 Patent is also willful because Google (a) had actual knowledge of the '885 Patent and actual knowledge of Sonos's infringement contentions no later January 8, 2021 when Sonos provided Google with a copy of the Amended Complaint, (b) engaged in the aforementioned activity despite an objectively high likelihood that Google's actions constituted infringement of the '885 Patent, and (c) this objectively-defined risk was either known or so obvious that it should have been known to Google. *See, e.g.,* ¶¶ 17-30, 53-65, above.

227.    Given the five-year period over which Sonos put Google on consistent and repeated notice of Sonos's patents and the breadth of Sonos's patent portfolio concerning specifically the products accused in this case, detailed above, this knowledge establishes that Google was, for some time periods, at least willfully blind to the fact that the '885 Patent existed and, for other time periods, had actual knowledge of the '885 Patent. Further, this knowledge and repeated and persistent disclosure establishes that Google, for some time periods, had at least failed to investigate whether it infringed the '885 Patent despite the existence of a high risk of infringement and, for other time periods, had actual knowledge of a credible and specific allegation of infringement of the '885 Patent.

117.228.    Additional allegations regarding Google's pre-suit knowledge of the '885 Patent and willful infringement will likely have evidentiary support after a reasonable opportunity for discovery.

118.229.    Sonos is entitled to recover from Google all damages that Sonos has sustained as a result of Google's infringement of the '885 Patent, including, without limitation, a reasonable royalty and lost profits.

230.    Sonos is in compliance with any applicable marking and/or notice provisions of 35 U.S.C. § 287 with respect to the '885 Patent.

119.231.    Google's infringement of the '885 Patent was and continues to be willful and deliberate, entitling Sonos to enhanced damages.

120.232.    Google's infringement of the '885 Patent is exceptional and entitles Sonos to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

121.233.     Google's infringement of the '885 Patent has caused irreparable harm (including the loss of market share) to Sonos and will continue to do so unless enjoined by this Court.

## **PRAYER FOR RELIEF**

WHEREFORE, Sonos respectfully requests:

A.     That Judgment be entered that Google has infringed at least one or more claims of the patents-in-suit, directly and/or indirectly, literally and/or under the doctrine of equivalents, and that such infringement is willful;

B.     An injunction enjoining Google, its officers, agents, servants, employees and attorneys, and other persons in active concert or participation with Google, and its parents, subsidiaries, divisions, successors and assigns, from further infringement of the patents-in-suit.

C.     An award of damages sufficient to compensate Sonos for Google's infringement under 35 U.S.C. § 284, including an enhancement of damages on account of Google's willful infringement;

D.     That the case be found exceptional under 35 U.S.C. § 285 and that Sonos be awarded its reasonable attorneys' fees;

E.     Costs and expenses in this action;

F.     An award of prejudgment and post-judgment interest; and

G.     Such other and further relief as the Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Sonos respectfully demands a trial by jury on all issues triable by jury.

1   Dated: March 30, 2022

2

ORRICK, HERRINGTON & SUTCLIFFE LLP
and
LEE SULLIVAN SHEA & SMITH LLP

3

By: */s/ Cole B. Richter*
    Cole B. Richter (admitted *pro hac*)

4

5

*Attorneys for Plaintiff Sonos, Inc.*

6   ~~Dated:~~    ~~Respectfully submitted,~~

7

~~*/s/ Alyssa Caridis*~~

8

~~Jeffrey L. Johnson~~
~~Texas Bar No. 24029638~~

9

~~ORRICK, HERRINGTON & SUTCLIFFE LLP~~

10

~~609 Main Street, 40th Floor~~
~~Houston, TX 77002~~

11

~~Telephone: 713.658.6400~~
~~Facsimile: 713.658.6401~~

12

13

~~Clement Seth Roberts (*pro hac vice*)~~
~~California Bar No. 209203~~

14

~~ORRICK, HERRINGTON & SUTCLIFFE LLP~~

15

~~405 Howard St.~~
~~San Francisco, CA 94105~~

16

~~Telephone: 415.773.5484~~
~~Facsimile: 415.773.5759~~

17

18

~~Bas de Blank (*pro hac vice*)~~
~~California Bar No. 191487~~

19

~~ORRICK, HERRINGTON & SUTCLIFFE LLP~~

20

~~1000 Marsh Blvd.~~
~~Menlo Park, CA 94205~~

21

~~Telephone: 650.614.7343~~
~~Facsimile: 650.614.7401~~

22

23

~~Alyssa Caridis (*pro hac vice*)~~
~~California Bar No. 260103~~

24

~~ORRICK, HERRINGTON & SUTCLIFFE LLP~~

25

~~777 South Figueroa St., Suite 3200~~
~~Los Angeles, CA 90017~~

26

~~Telephone: 213.612.2372~~
~~Facsimile: 213.612.2499~~

27

~~acaridis@orrick.com~~

28

~~George I. Lee (*pro hac vice*)~~

Illinois Bar No. 6225430
Sean M. Sullivan (*pro hac vice*)
Illinois Bar No. 6230605
Rory P. Shea (*pro hac vice*)
Illinois Bar No. 6290745
J. Dan Smith (*pro hac vice*)
Illinois Bar No. 6300912
LEE SULLIVAN SHEA & SMITH LLP
656 W. Randolph St., Floor 5W
Chicago, IL 60661
Telephone:  312.754.9602
Facsimile:  312.754.9603

Mark D. Siegmund
THE LAW FIRM OF WALT FAIR, PLLC
1508 North Valley Mills Drive
Waco, Texas 76710
Telephone: (254) 772-6400
Facsimile: (254)772-6432

ATTORNEYS FOR PLAINTIFF SONOS, INC.

# EXHIBIT CM

154 - System requirements & availability - Android - YouTube Music He...   moz-extension://0648b267-c4e5-4d22-8b6b-bef93dec7476/fsCaptured.html

Case 3:21-cv-07559-WHA    Document 159-9    Filed 03/30/22    Page 84 of 149



# System requirements & availability

## Available locations

The YouTube Music app is currently available in the following locations.

| | |
|---|---|
| American Samoa | Lebanon |
| Argentina | Liechtenstein |
| Aruba | Lithuania |
| Australia | Luxembourg |
| Austria | Malaysia |
| Bahrain | Malta |
| Belarus | Mexico |
| Belgium | Netherlands |
| Bermuda | New Zealand |
| Bolivia | Nicaragua |
| Bosnia & Herzegovina | Nigeria |
| Brazil | North Macedonia |
| Bulgaria | Northern Mariana Islands |
| Canada | Norway |
| Cayman Islands | Oman |
| Chile | Panama |
| Colombia | Papua New Guinea |
| Costa Rica | Paraguay |
| Croatia | Peru |
| Cyprus | Philippines |
| Czech Republic | Poland |
| Denmark | Portugal |
| Dominican Republic | Puerto Rico |
| Ecuador | Qatar |
| Egypt | Romania |
| El Salvador | Russia - temporarily unavailable |
| Estonia | Saudi Arabia |
| Finland | Serbia |
| France | Singapore |
| French Guyana | Slovakia |
| French Polynesia | Slovenia |
| Germany | South Africa |
| Greece | South Korea |
| Guadeloupe | Spain |
| Guam | Sweden |
| Guatemala | Switzerland |
| Honduras | Taiwan |
| Hong Kong | Thailand |
| Hungary | Turkey |
| Iceland | Turks and Caicos Islands |
| India | U.S. Virgin Islands |
| Indonesia | Ukraine |
| Ireland | United Arab Emirates |
| Israel | United Kingdom |
| Italy | United States |
| Japan | Uruguay |
| Kuwait | Venezuela |
| Latvia | |

## System requirements

You can use YouTube Music on your mobile device and computer.

---

YouTube Music Help

Describe your issue

Sign in

Help Center    Community    YouTube Music

### Help

Get started with YouTube Music

Customize your music

Explore YouTube Music Premium benefits

Download music to listen to offline

Play music in the background

Choose between song and video mode

View, delete, or pause watch history

Shuffle or repeat songs

System requirements & availability

Create or edit a playlist

Share Music

Download music to an SD card

Troubleshooting YouTube Music

Use YouTube Music with other apps and services

Change or turn off music video previews

Enjoy your top songs with 2021 Recap

154 - System requirements & availability - Android - YouTube Music He...   moz-extension://0648b267-c4e5-4d22-8b6b-bef93dec7476/fsCaptured.html

Case 3:21-cv-07559-WHA    Document 159-9    Filed 03/30/22    Page 85 of 149

Computer    **Android**    iPhone & iPad

**Android phones:** Android phones and tablets running version 4.4 or above.

Give feedback about this article

Was this helpful?    Yes    No

©2022 Google · Privacy Policy · Terms of Service    English ▾

# EXHIBIT CN



SONOS-SVG2-00062706

# EXHIBIT CO



SONOS-SVG2-00062711

# EXHIBIT CP





We are experiencing longer than normal wait times for support. We appreciate your patience and understanding during this time.

# Play media from Chromecast-enabled apps to your Google Nest or Google Home speaker or display

Android | iPhone & iPad

Playing music on Google Nest or Google Home device is a simple way to enjoy your favorite audio apps optimized for your speaker. You can even use your mobile device or tablet as a remote and control everything from playback to volume.

## Step 1. Cast from Chromecast-enabled apps to speaker or display

1. Make sure your mobile device or tablet is connected to the same Wi-Fi network or linked to the same account as your speaker or display.
2. Open a Chromecast-enabled app.
3. Tap the Cast button .
4. Tap the speaker or display you'd like to cast to.
5. When you're connected, the Cast button will turn from light to dark gray, letting you know you're connected.
6. You can now cast audio and video to your speaker or display from your device.
7. To stop casting, tap the Cast button at the top of your device. Tap **Stop Casting** in the box that appears.

**Note**: Some music providers, like Spotify, require a subscription to play music from its Chromecast-enabled app. Also, YouTube content is only supported from the YouTube Music app (not the YouTube app) and you must have a YouTube Premium account. YouTube Music is only available in the U.S. and Australia.

## Step 2. Control Chromecast-enabled apps using voice commands

The following commands should work with almost all Chromecast-enabled apps.

| To do this... | Say "Ok Google" or "Hey Google", then... |
|---|---|
| Pause | "Pause", "Pause the music", "Pause music" |
| Resume | "Resume", "Continue playing" |
| Stop | "Stop", "Stop the music", "Stop music" |
| What's playing | "What's playing?", "What song is playing?", "What artist is playing?" |
| Control volume | "Set volume to 5", "Set volume to 40%" |

Check out the advanced voice commands for Chromecast-enabled apps like Spotify and more.

## Other ways to control your music

You can also control music by touching the top surface of device or by using the Google Home app.

From the Google Nest or Google Home device

### Speakers

Google Home

| To do this: | Touch Google Home like this: | Image |
|---|---|---|
| Play, pause, or stop alarm or timer | Tap once on the top of the device. |  |
| Turn up the volume | Swipe clockwise on the top of the device. |  |

Listen to media

Photo frame on your Google Nest display
Listen to music on speakers and displays
Link your music services and set your default service
Voice Match and media on Google Nest or Home devices
Listen to podcasts
Listen to radio
Listen to news
Listen to audiobooks on Google Nest and Google Home speakers and displays
Control restricted content
**Play media from Chromecast-enabled apps to your Google Nest or Google Home speaker or display**
Play content from Chrome browser to speakers or displays
Play Android Audio on Google Nest or Home devices
Bluetooth on speakers and displays
Relax with your Google Nest or Home speaker or display
Make story time more magical with Google Nest and Google Home speakers and displays
Google Nest display with YouTube built-in
Watch YouTube TV on your Google Nest Display
Move media from one cast device to another
Link your radio services
Watch Sling TV on your Google Nest display

| | Note: This only adjusts the volume of media. You can adjust alarms and timers volume anytime in the Google Home app. | |
|---|---|---|
| Turn down the volume | Swipe counterclockwise on the top of the device.<br><br>Note: This only adjusts the volume of media and your Google Assistant. At volume level 0, all media will be muted but your Google Assistant will still speak at a minimum level. It doesn't adjust the volume of alarms and timers. | |
| Start your request 🔲 | Press and hold down on the top of the device. | |
| Mic on or off | Press the microphone mute button on the back of the device.<br><br>Note: If you mute the microphone, it prevents Google Home from listening or responding. To interact with Google Home, the microphone must be on. | |
| Factory reset the device | Press and hold the factory reset button located on the back of Google Home. | |
| Turn off power | Unplug power cable from Google Home. | |

## Google Nest Mini (2nd gen)

Note: The Google Nest Mini (2nd gen) has a wall mount screw slot on the back. If your device doesn't have a wall mount screw slot, it is a Google Home Mini (1st gen).

| To do this: | Touch Google Nest Mini like this: | Image |
|---|---|---|
| Play, pause, or stop **media or end a current phone call** | Tap the **center** of the Nest Mini. | |
| Stop a ringing **alarm or timer** | Tap the **center** of the Nest Mini. | |
| Turn up the volume | Tap the **right side** of the Nest Mini.<br><br>10 total taps will be maximum volume.<br><br>Note: This only adjusts the volume of media and your Google Assistant. At volume level 0, all media will be muted but your Google Assistant will still speak at a minimum level. It doesn't adjust the volume of alarms and timers.<br><br>To reverse controls, open the Home app 🏠 > tap your device > Settings ⚙ > **Reverse device controls.** | |
| Turn down the volume | Tap on the **left side** of the Nest Mini.<br><br>10 total taps will mute all audio except your Google Assistant.<br><br>Note: This only adjusts the volume of media and your Google Assistant. At volume level 0, all media will be muted but your Google Assistant will still speak at a minimum level. It doesn't adjust the volume of alarms and timers.<br><br>To reverse controls, open the Home app 🏠 > tap your device > Settings ⚙ > **Reverse device controls.** | |
| Turn mic on or off | Toggle the mic on or off switch found next to the power cord. The switch will display orange when the microphone is turned off.<br><br>Note: If you turn off the microphone, it prevents Nest Mini from listening or responding. To interact by voice with Nest Mini, the microphone must be on. | |
| Factory reset the device | Turn the mic off, then press and hold the lights in the center of the Nest Mini.<br><br>Hold for about 15 seconds. | |
| Turn off power | Unplug the power cable from Nest Mini. | |
| Start your request 🔲 | Note: You can't press and hold the top of the Nest Mini to start a request with your Assistant. | |



Instead, say "Hey Google" to start your request.

**Google Home Mini (1st gen)**

| To do this: | Touch Google Home Mini like this: | Image |
|---|---|---|
| Play, pause, or stop **media** or **end a current phone call** | Press and hold **either side** of Home Mini. | |
| Stop a ringing **alarm or timer** | Press and hold **either side** of Home Mini. | |
| Turn up the volume | Tap on **right side** of Home Mini.<br>To reach maximum volume, tap to volume level 10.<br>**Note:** This only adjusts the volume of media and your Google Assistant. At volume level 0, all media will be muted but your Google Assistant will still speak at a minimum level. It doesn't adjust the volume of alarms and timers. | |
| Turn down the volume | Press and hold **left side** of Home Mini.<br>10 total taps will mute all audio except your Google Assistant.<br>**Note:** This only adjusts the volume of media and your Google Assistant. At volume level 0, all media will be muted but your Google Assistant will still speak at a minimum level. It doesn't adjust the volume of alarms and timers. | |
| Turn mic on or off | Toggle the mic on or off switch found next to the power cord. The switch will display orange when the microphone is turned off.<br>**Note:** If you turn off the microphone, it prevents Home Mini from listening or responding. To interact with Home Mini, the microphone must be on. | |
| Factory reset the device | Press and hold the factory reset button located below the power cord on the bottom of Home Mini. Find the circle etched into the base.<br>Hold for about 12 seconds. | |
| Turn off power | Unplug the power cable from Home Mini. | |
| Start your request | **Note:** You can't press and hold the top of Home Mini to start a request with your Assistant.<br>Instead, say "Hey Google" to start your request. | |

**Google Home Max**

| To do this: | Touch Google Home Max like this: | Image |
|---|---|---|
| Play, pause, or stop **media**<br>Stop a **ringing alarm or timer**<br>**End a call** | Horizontal placement: Tap the line located on the top of Max.<br>Vertical placement: Tap the line located on the right side of Max. | |
| Turn **up** the volume | Horizontal placement: Swipe from left to right along the line located on the top of Max.<br>Vertical placement: Swipe up along the line located on the right side of Max. | |
| Turn **down** the volume | Horizontal placement: Swipe from right to left along the line located on the top of Max.<br>Vertical placement: Swipe down along the line located on the right side of Max. | |



| Turn mic on or off | Toggle the mic on or off switch located on the back of Max. The switch will display orange when the microphone is turned off. You can't use your voice or the Google Home app to turn on or off the mic.<br><br>**Note:** Turning off the microphone:<br><br>• prevents Google Home from listening or responding. To interact with Google Home, the microphone must be on.<br>• turns off Room EQ. | |
| Factory reset the device | Press and hold the factory reset button located above the power cord on the back of Max. Find the small grey button.<br><br>Hold for about 12 seconds. | |
| Turn off power | Unplug the power cable from Max. | |

### Google Nest Audio

| To do this: | Touch Google Nest Audio like this: | Image |
|---|---|---|
| Play, pause, or stop **media or end a current phone call** | Tap the **center** of the Nest Audio. | |
| Stop a ringing **alarm or timer** | Tap the **center** of the Nest Audio. | |
| Turn up the volume | Tap the **right side** of the Nest Audio.<br><br>20 total taps will be maximum volume.<br><br>**Note:** This only adjusts the volume of media and your Google Assistant. At volume level 0, all media will be muted but your Google Assistant will still speak at a minimum level. It doesn't adjust the volume of alarms and timers. | |
| Turn down the volume | Tap on the **left side** of the Nest Audio.<br><br>20 total taps will mute all audio except your Google Assistant.<br><br>**Note:** This only adjusts the volume of media and your Google Assistant. At volume level 0, all media will be muted but your Google Assistant will still speak at a minimum level. It doesn't adjust the volume of alarms and timers. | |
| Turn mic on or off | Toggle the mic on or off switch found next to the power cord. The switch will display orange when the microphone is turned off.<br><br>**Note:** If you turn off the microphone, it prevents Nest Audio from listening or responding. To interact by voice with Nest Audio, the microphone must be on. | |
| Factory reset the device | Turn the mic off, then press and hold the lights in the center of the Nest Audio.<br><br>Hold for about 15 seconds. | |
| Turn off power | Unplug the power cable from Nest Audio. | |
| Start your request 🔘 | **Note:** You can't press and hold the top of the Nest Audio to start a request with your Assistant.<br><br>Instead, say "Hey Google" to start your request. | |

### Google Nest Wifi point

| To do this: | Touch Nest Wifi point like this: | Image |
|---|---|---|

| | | |
|---|---|---|
| Play, pause, or stop **media** or **end a current phone call** | Tap the center of the Nest Wifi point. | |
| Stop a **ringing alarm or timer** | Tap the center of the Nest Wifi point. | |
| Turn **up** the volume | Tap on the right side of the Nest Wifi point.<br><br>10 total taps will be maximum volume.<br><br>**Note**: This only adjusts the volume of media and your Google Assistant. At volume level 0, all media will be muted but your Google Assistant will still speak at a minimum level. It doesn't adjust the volume of alarms and timers | |
| Turn **down** the volume | Tap on the left side of the Nest Wifi point.<br><br>10 total taps will mute all audio except your Google Assistant.<br><br>**Note**: This only adjusts the volume of media and your Google Assistant. At volume level 0, all media will be muted but your Google Assistant will still speak at a minimum level. It doesn't adjust the volume of alarms and timers. | |
| Turn mic on or off | Toggle the mic on or off switch found next to the power cord. The switch will display orange when the microphone is turned off.<br><br>**Note**: If you turn off the microphone, it prevents Nest Wifi point from listening or responding. To interact by voice with your Nest Wifi point, the microphone must be on. | |
| Turn off power | Unplug the power cable from Nest Wifi point. | |
| Start your request 🎤 | **Note**: You can't press and hold the top of a Nest Wifi point to start a request with your Assistant.<br><br>Instead, say "Hey Google" to start your request. | |



## Displays

🔲 **Google Nest Hub**                                                    ⌃

| To do this: | Touch Google Nest Hub like this: | Image |
|---|---|---|
| Turn **up** the volume | Press the upper volume button on the back of Google Nest Hub. | |
| Turn **down** the volume | Press the lower volume button on the back of Google Nest Hub. | |

Additional controls for managing the volume of multiple devices are available on your display. Learn more about multi-room controls.

 **Google Nest Hub Max**                             ⌃

| To do this: | Touch Nest Hub Max like this: | Image |
|---|---|---|
| Turn **up** the volume | Press the upper volume button on the back of Nest Hub Max. | |

GOOG-SONOSWDTX-00005635



| Turn **down** the volume | Press the lower volume button on the back of Nest Hub Max. | |

Additional controls for managing the volume of multiple devices are available on your display. Learn more about multi-room controls.

**From the Google Home app** ⌃

1. Make sure your mobile device or tablet is connected to the same Wi-Fi network or linked to the same account as your speaker or display.
2. On your mobile device, open the Google Home app 🏠.
3. Tap the device that's playing media. On the top of the screen, you will get the following information for the current music session:
   - Equalizer settings
   - Device settings
   - Help & feedback

### Turn up the volume

Swipe clockwise on the volume slider. You can swipe all the way to 100%.

### Turn down the volume

Swipe counterclockwise on the volume slider. You can swipe all the way to 0%. This will mute all music but will not turn off the mic.

### Related Links

Play audio on speakers and TVs from Google Nest or Home devices
Play video on TVs using Google Nest or Home devices
Listen to radio
Listen to podcasts
Control restricted content on Google Nest or Home devices

📖 Give feedback about this article

Was this helpful?   [ Yes ]   [ No ]



## Need more help?

Try these next steps:

| 🧑 **Ask the Help Community** Get answers from community experts | 🎧 **Contact us** Tell us more and we'll help you get there |

©2020 Google · Privacy Policy · Terms of Service       English ▾

GOOG-SONOSWDTX-00005636

# EXHIBIT CQ



Chromecast Help

Help Center    Community

Chromecast ⧉

Main Page    Chromecast    Chromecast Audio

Listen to media  ❯  **Move media from one cast device to another**

Need help? Contact the Chromecast Support Team ⧉ for assistance.

### Listen to media

Photo frame on your Google Nest display

Listen to music on speakers and displays

Link your music services and set your default service

Voice Match and media on Google Nest or Home devices

Listen to podcasts

Listen to radio

Listen to news

Listen to audiobooks on Google Nest and Google Home speakers and displays

Control restricted content

Play media from Chromecast-enabled apps to your Google Nest or Google Home speaker or display

Play content from Chrome browser to speakers or displays

Play Android Audio on Google Nest or Home devices

Bluetooth on speakers and displays

Relax with your Google Nest or Home speaker or display

Make story time more magical with Google Nest and Google Home speakers and displays

Google Nest display with YouTube built-in

Watch YouTube TV on your Google Nest Display

**Move media from one cast device to another**

Link your radio services

Watch Sling TV on your Google Nest display

GOOG-SONOSWDTX-0005824

## Move media from one cast device to another

Move music, podcasts, radio, and YouTube videos currently streaming from your Google Nest, Google Home, or Chromecast device to another Nest speaker, speaker group, display, or Chromecast-connected device.

**Devices you can transfer media to and from**

- Google Home, Google Nest Mini (2nd gen), Google Home Mini (1st gen), Google Home Max, Google Nest Audio
- Google Nest Hub or Google Nest Hub Max
- Chromecast with Google TV, Chromecast (2nd or 3rd gen), Chromecast Ultra, or Chromecast Audio
- Speaker groups

**Supported media**

- Any audio (except news and media playing via Bluetooth)
- YouTube for videos

## With the Google Assistant

Here are some ways to talk with your Google Assistant on your speaker or display when moving media from one device to another.

**Note:** This feature is currently only available in English.

| To do this: | Say "Ok Google" or "Hey Google," then: |
|---|---|
| Transfer media to another device | "Transfer to <device name>"<br>"Move the music to <device name>"<br>"Cast to <device name>" |

## From your Nest display



**Google Nest Hub** ︿

1. On your Nest Hub's Home screen, tap the active media card to bring up the media player.
2. At the bottom left corner of the screen, tap Devices 🖵 to find the list of available devices and speaker groups.
3. Select the device(s) you want to move your media to.
4. Deselect the device(s) you want to move your media from.

**Google Nest Hub Max** ︿

1. On your Nest Hub Max's Home screen, tap the active media card to bring up the media player.
2. At the bottom left corner of the screen, tap Devices 🖵 to find the list of available devices and speaker groups.
3. Select the device(s) you want to move your media to.
4. Deselect the device(s) you want to move your media from.

**Android**   iPhone & iPad

## From the Google Home app

1. Make sure your mobile device or tablet is connected to the same Wi-Fi or linked to the same account as your Chromecast, or speaker or display.
2. Open the Google Home app 🏠.
3. Tap Media ▮▮ . A controller for what's currently playing should appear. If there are multiple things playing in the home, scroll to the controller you want.
4. Select the device(s) you want to move your media to. If you have more than 3 devices in your home, tap **More devices** ⌄ to display all of your devices.
5. Uncheck the device(s) you want to move your media from.

 Give feedback about this article

Was this helpful?   [ Yes ]   [ No ]

---

## Need more help?

Sign in for additional support options to quickly solve your issue

[ Sign in ]

GOOG-SONOSWDTX-00005825

©2020 Google · Privacy Policy · Terms of Service     English     ▾

GOOG-SONOSWDTX-00005826

# EXHIBIT CR

# Cloud locations

Google Cloud has added a new region: Santiago. Our private, software-defined network provides fast and reliable connections to users around the world.

Contact sales (/contact)    Free trial (https://console.cloud.google.com/freetrial)

 **29**
REGIONS

 **88**
ZONES

 **146** (/VPC/DOCS/EDGE-LOCATIONS)
NETWORK EDGE LOCATIONS

AVAILABLE IN
 **200+**
COUNTRIES AND TERRITORIES

COMING SOON! Google Cloud will continue expanding into the following regions: Doha (Qatar), Paris (France), Milan (Italy), Madrid (Spain), Turin (Italy), Columbus (US), Berlin (Germany), Dammam (Kingdom of Saudi Arabia), Dallas (Texas), and Tel Aviv (Israel).

# Meet our network

REGIONS
(#REGIONS)    NETWORK (#NETWORK)



Current region with 3 zones
Future region with 3 zones

*Exception: region has 4 zones.

# Products available by location

Deploy resources in specific zones, regions and multi-regions.

AMERICAS
(#AMERICAS)    EUROPE (#EUROPE)    ASIA PACIFIC (#ASIA-PACIFIC)    MULTI-REGION (#MULTI-REGION)



| Products | Oregon (us-west1)<br><br>Low carbon (/sustainability/region-carbon) | Los Angeles (us-west2) | Salt (us |
|---|---|---|---|
| COMPUTE | | | |
| Compute Engine (https://cloud.google.com/compute) [5] (#regions-notes) | | | |
| App Engine (https://cloud.google.com/appengine) | | | |
| Google Kubernetes Engine (https://cloud.google.com/kubernetes-engine) | | | |

At a minimum, all regions will offer the following products at launch: Compute Engine, Google Kubernetes Engine, Cloud Storage, Persistent Disk, CloudSQL, Virtual Private Cloud, Key Management System, Cloud Identity and Secret manager. This minimum product group will continue to evolve based on customer demand. Typically, within three months of a new region launch, additional products are made available based on customer demand.

The above product availability is updated on a monthly basis. To request additional products for a specific location or to discuss product availability, please contact us (/contact).

1. Service is offered with a global location option in addition to region locations denoted.

2. Service is offered with multi-region location options in addition to region locations denoted. Check multi-region tab for details.

3. Service is offered with varying functionality by region.

4. Service is the next generation of Datastore. Available in either Datastore mode or Native mode.

5. Service provides a data location commitment in the Service Specific Terms for available regions/multi-regions.

# Global products

The following products are available with no dependence on location.

**NETWORKING**

Cloud Load Balancing  (/load-balancing)

Cloud CDN (/cdn)

Cloud Interconnect (/network-connectivity/docs/interconnect)

Cloud DNS (/dns)

Cloud Armor (/armor)

Network Intelligence Center (/network-intelligence-center)

Traffic Director  (/traffic-director)

**DATA ANALYTICS**

Data Studio (https://datastudio.google.com)

Datalab (/datalab)

**MANAGEMENT TOOLS**

Cloud Recommendations API (/recommendations)

Cloud Deployment Manager (/deployment-manager)

Cloud Endpoints (/endpoints)

Cloud Shell (/shell)

Cloud Billing API (/billing/docs)
Resource Manager (/resource-manager)

**OPERATIONS**

Cloud Monitoring (/monitoring) [1] (#global-products-notes)

Cloud Trace (/trace)

Cloud Profiler (/profiler/docs)

Cloud Debugger (/debugger/docs)

Error Reporting (/error-reporting)

**DEVELOPERS TOOLS**

Cloud Source Repositories (/source-repositories)

Cloud Build (/build)

**SECURITY**

Cloud Data Loss Prevention (/dlp)

Security Command Center (/security-command-center)

Identity and Access Management (/iam)

**MEDIA AND GAMING**

Game Servers (/game-servers)

---

1. Please review the Cloud Monitoring (/monitoring/docs/region-support) documentation for regional scenarios.

# We help keep your data safe and secure

GCP meets rigorous privacy and compliance standards that test for data safety, privacy, and security. We've earned the trust of many third-party auditors.

**Learn more**  → (/security)



ISO/IEC 27001
(/security/compliance/iso-27001)



ISO/IEC 27017
(/security/compliance/iso-27017)



ISO/IEC 27018
(/security/compliance/iso-27018)



SOC 1 (/security/compliance/soc-1)



FISC (Japan)
(/security/compliance/fisc-japan)



FedRAMP (/security/compliance/fedramp)

* Exact list of certifications and standards may vary for specific data center, please contact sales to request additional information.

# Resources



### Regions and Zones

**Learn more** → (/docs/geography-and-regions)



### Best practices for Compute Engine region selection

**Learn more** → (/solutions/best-practices-compute-engine-region-selection)



### The latest blog posts for infrastructure updates

**Read blog** → (/blog/products/infrastructure)

### Cloud Pathfinder by Cloudscene

**Find a Google Cloud partner** → (https://gpf.find.cloud/)



## Google Cloud infrastructure

Learn more  →  (/infrastructure)



## Next '19: An Insider's Look— Google's Data Centers

Watch video  ▶ (https://www.youtube.com /watch?v=yfF3pOzdmlE)

---



# Get started

**Learn and build**

New to GCP? Get started with qualifying GCP products for free with a $300 credit.

**try free** (https://console.cloud.google.com/freetrial)

**Need more help?**

Our experts will help you build the right solution or find the right partner for your needs.

**Contact sales** (/contact)

**Find a partner** (https://cloud.withgoogle.com/partners/)

# EXHIBIT CS

3/30/22, 12:13 PM
download the youtube music app - Google Search
Case 3:21-cv-07559-WHA   Document 159-9   Filed 03/30/22   Page 112 of 149



YouTube Music Desktop - PT MDesktop App

**YouTube Music** Desktop. **YouTube Music** Desktop. Free cross platform Desktop **Player** for **YouTube Music**. **Download**. Donate. Enjoy your **music**. On the desktop

https://youtube-music.en.softonic.com › ... › Video    ⋮

### YouTube Music - Download

Nov 10, 2021 — Top **downloads** Video for Android · TubeMate 2 · TubeMate · VidMate · Videoder Video Downloader **App** · MX **Player**.

★★★★☆ Rating: 8/10 · 121 votes · Free · Android · Multimedia

https://www.iskysoft.com › online-video › youtube-mu...    ⋮

### Top 20 YouTube Music Downloader App for Android, iPhone ...

Feb 18, 2022 — Part 1. Top 10 **YouTube Music** Downloader **App** for Android · #1. Droid **YouTube** Downloader · #2. Best Tube - Best/Popular videos · #3. TubeMote · #4.

https://worldscholarshipforum.com › wealth › best-app-...    ⋮

### 10 Best App to Download Music from Youtube in 2022 - World ...

Mar 9, 2022 — You can **download** Mp3 or MP4 **music** directly from **YouTube** to your phone using a few **apps**. Here are the best **app** to **download music** from ...

▣  Videos    ⋮


**Download music to listen offline with YouTube Music (Android)**

YouTube · YouTube Viewers
May 12, 2020

4 key moments in this video    ⌄


**How to Use YouTube Music - Beginners Guide**

YouTube · Techboomers
Jun 30, 2020

4 key moments in this video    ⌄


**How to use YouTube Music**

YouTube · 6 Months Later Reviews
Jul 24, 2020

 15 key moments in this video    ⌄

Feedback

→    **View all**

https://support.google.com › youtubemusic › answer    ⋮

### Use YouTube Music with other apps and services - Google ...

**Download** the **YouTube Music app** · Open the Google Play Store on your watch. · Search for YouTube Music. · Select the **YouTube Music app** to start downloading it to ...

## Related searches    ⓘ

Music apps    ⌃

  Could you please share with us, whether you like FireShot or not?

YouTube        Amazon        Apple Music        Shazam        I like it        Spotify        I don't        Deezer
Music          Music

→    See more

3/30/22, 12:13 PM
Case 3:21-cv-07559-WHA    Document 159-9    Filed 03/30/22    Page 114 of 149
download music app - Google Search_Only www.google.age_scan4



# EXHIBIT CT



≡  Google Nest Help    🔍 Describe your issue                          ⊞  **Sign in**

**Help Center**   Community                                          Google Nest ↗

Speakers and Displays    Thermostats    Cameras and Doorbell    Alarm System    Lock    Smoke Alarms    Wi-Fi    Your privacy

Get started  ›  Explore what you can do with Google Nest devices  ›  Meet the Google Home app

⚠ We are experiencing longer than normal wait times for support. We appreciate your patience and understanding during this time.

# Meet the Google Home app

The Google Home app helps you set up and control Google Nest, Google Home, and Chromecast devices. You can control thousands of compatible lights, cameras, speakers and more, all from a single app, as well as see your reminders and recent notifications.

**Android**    iPhone & iPad

## Get the latest version of the Google Home app

Download or update the Google Home app ↗ from the Google Play Store.

## Ways to use the Google Home app

You can use the Google Home app to:

- Set up Google Nest and Home devices (Google Home, Google Nest Mini (2nd gen), Google Home Mini (1st gen), Google Home Max, Google Nest Audio, Google Nest Hub, Google Nest Hub Max), Wifi devices (Google Nest Wifi, Google Wifi, OnHub), and Chromecast devices (Chromecast with Google TV, Chromecast, Chromecast Ultra, Chromecast Audio, and TVs and speakers with Chromecast built-in).
- Control, organize and manage compatible lights, cameras, TVs and more, all from just one place. The Google Home app works like a remote with thousands of smart home devices from most popular brands.
- Manage your Google Assistant settings and preferences.
- Manage device settings.

## Home ⌂

From Home ⌂ you can control your Google Nest, Google Home, Chromecast, and other smart devices. This is also where you can set up new devices, and see all of your devices organized by rooms in your home.

### Home

You'll find the name of your home at the top of the screen. If you have multiple homes set up, you can tap your home name to switch between homes.

### Quick Actions

Here you have general controls over your whole home. Each button acts as a control for a device, service or group of devices and services. Each has a different function depending on which device it represents and the state that device is in.

🌙 **Lights off**: Turn off your smart lights by room, or turn off all smart lights in the home.

💡 **Lights on**: Turn on your smart lights by room, or turn on all smart lights in the home.

▶ **Media**: Shows media you currently have playing and which device it's playing on. If you have more than one device, you can choose to stream from one device to another.

📞 **Call Home**: Call your Home to ring all your devices linked to Duo.

📢 **Broadcast**: Broadcast a message to your Google Assistant speakers and Smart Displays from the Google Home app.

🌡 **Thermostat**: Opens the controls for your thermostat. If you have more than one smart thermostat, you can choose which one to control.

📷 **Cameras**: Shows the video feed from your camera. If you have more than one camera, you can choose which one to view.

📶 **Wifi**: Run speed tests and manage your Nest Wifi, Google Wifi, or OnHub network and settings.

🔄 **Routines**: Create and manage routines for your device.

⚙ **Settings**: Opens your home settings.

◰ **Action chips**: Quickly connect smart home devices, link media services, and take other recommended actions.

## Devices in your home

### Rooms

Your Google Nest, Google Home, Chromecast, and other smart home devices are listed by room. Tap on a device to open the controls for that device.

**Explore what you can do with Google Nest devices**

📄 Introducing home view on your Google Nest display

📄 Have a conversation with your speaker or display

📄 Explore what you can do with Google Nest devices

📄 **Meet the Google Home app**

📄 Preview Program overview

📄 What you can ask the Google Assistant

📄 Learn about the Feed in the Home app

Have a question?

Get an answer from an expert on the Google Home Help Forum.

GOOG-SONOSWDTX-00007538

### In your home

Devices that are part of your home, but are not currently assigned to any room will be listed here. Tap on a device to open the controls for that device. You will also be able to assign them to a room.

### Groups

Speaker groups on your local Wi-Fi network will appear here. Tap on a group to open the controls for the speaker group.

### Other cast devices

Devices that are connected to your local Wi-Fi network, but aren't added to your home can be found here.

### Device controls

From **Home** 🏠, tap on a device to control your device or access its settings. Different types of devices will have different controls.

- **Google Nest and Home speakers and displays** - Control the speaker's volume and EQ, or access settings. You can also play, pause, skip forward or backward in a song, podcast or audiobook, or stop casting.
- **Chromecast devices** - Control the display's volume, or access settings. You can also play, pause, skip forward or backward in a video, movie or TV show or stop casting.
- **Lights** - Turn your smart lights on and off and adjust their brightness (if supported).
- **Thermostat** - Adjust your thermostat's set point, change modes, and see the ambient temperature.
- **Smart Plugs** - Turn your smart plug on and off.
- **Cameras** - View the stream from cameras.
- **Speaker Groups** - Control the volume and EQ of all devices in the speaker group, or access the group's settings. You can also play, pause, skip forward or backward in a song, podcast or audiobook, or stop casting.

## Feed 🔄

The **Feed** 🔄 tab is where you can get alerts about important device activities and reminders.

- **Priority events** – See highlights from the last 30 days.
- **48-hour recap** – Get an overview of your device events for the past 48 hours.
- **Discover** – Learn about new features, supported queries, Chromecast-enabled apps, and offers available for your devices.

## Account menu

Select your photo on the upper right corner of your Google Home app to access the following settings:

- 👤 **Add another account** - Set up devices and services, add household members, and create speaker groups and homes.

- 👥 **Manage accounts on this device** - Add or remove accounts.

- ⚙️ **Home app settings** - Manage your General Privacy & Legal, and app settings.

- Email notifications - Manage your email notifications.
- Clear saved Wi-Fi networks - Clear all saved Wi-Fi networks.
- Clear app locations - Remove your saved locations.
- Partner Connections - Choose which data you share with Google Nest partners.
- Search and watch history - Manage your search and watch history.
- Google Nest privacy FAQs - Read privacy FAQs.
- Supplemental Nest Terms of Service.
- Open Source licenses.
- App info - View the app version.
- Google app settings - View your Google app settings.
- Rate the app - Rate the app in the Google Play store.

- 🎙️ **Assistant settings** - Manage your Google Assistant settings, services, and linked devices.

- ✅ **My Activity** - See and manage your Google Assistant activity.

- ❓ **Help & Feedback** - Access the Chromecast and Google Nest Help Centers. Get answers to questions and find troubleshooting information. Submit a feedback report for your Google Nest, Google Home, Chromecast, and Chromecast Built-In devices.

## Home Settings ⚙️

### General

- **Home information** - Manage your home nickname and address.
- **Household** - Manage home members.
- **Rooms and devices** - View your existing rooms and devices.

### Features

- **Notifications** - Choose which app notifications you want to receive.
- **Digital Wellbeing** - Manage your Digital Wellbeing settings.
- **Routines** - Create and manage routines for your device.
- **Nest Wifi** - Manage your Nest Wifi, Google Wifi, or OnHub network name, password, and settings.
- **Nest Aware** - Manage subscription and features (migrated accounts only).

### Services

- **Video** - Set your preferred photo and video providers.
- **Music** - Choose from popular music providers.
- **Radio** - Choose your preferred radio service.
- **Live TV** - Link Live TV services.
- **Voice and video calls** - View and manage your calling preferences.



- **Shopping list** - View and manage your shopping lists.
- **Works with Google** - Link and manage your Works with Google services.

📖  Give feedback about this article

Was this helpful?    [ Yes ]    [ No ]

## Need more help?

Try these next steps:

💬 **Ask the Help Community**
Get answers from community experts

🎧 **Contact us**
Tell us more and we'll help you get there

©2020 Google · Privacy Policy · Terms of Service          English ▾

GOOG-SONOSWDTX-00007540

# EXHIBIT CU

# Devices & services country availability

Here's where you can find devices available for purchase on the Google Store today.

To buy a device from the Google Store, your shipping address must be in the same region as the Google Store you purchased it from. See the list of regions where Google Store operates ⧉ .

**Note:** If an item is out of stock, join the waitlist to be notified as soon as it's available for purchase. For the most current information, we recommend joining the waitlist instead of contacting Google Store support. Stock is limited, if a waitlist is not available, check back regularly for new units.

## Phones



### Pixel 6 Pro

Australia, Canada, France, Germany, Ireland, Italy, Japan, Singapore, Spain, Taiwan, United Kingdom, United States



### Pixel 6

Australia, Canada, France, Germany, Ireland, Italy, Japan, Singapore, Spain, Taiwan, United Kingdom, United States



### Pixel 5a (5G)

Japan, United States (except Puerto Rico)



### Pixel 3

Certified refurbished might be available on the Google Store in the United States.

## Home & Entertainment



### Google Wifi

Austria, Belgium, Canada, Denmark, Finland, France, Germany, Ireland, Italy, Netherlands, Norway, Portugal, Spain, Sweden, Switzerland, United Kingdom, United States (except Puerto Rico)



### Google Nest Audio

Australia, Austria, Belgium, Canada, Denmark, France, Germany, Ireland, Italy, Japan, Netherlands, Norway, Singapore, South Korea, Spain, Sweden, Switzerland, Taiwan, United Kingdom, United States (except Puerto Rico)



### Google Nest Hub Max

Australia, Canada, France, Japan, United Kingdom, United States (except Puerto Rico)



### Google Nest Hub (2nd gen)

Australia, Austria, Belgium, Canada, Denmark, France, Germany, Ireland, Italy Japan, Netherlands, New Zealand, Norway, Singapore, South Korea, Spain, Sweden, Switzerland, Taiwan, United Kingdom, United States (except for Puerto Rico)



### Google Home Max

Australia, Canada, France, Germany, United Kingdom, United States (except Puerto Rico)



### Google Nest Mini

Australia, Austria, Belgium, Canada, Denmark, France, Germany, Ireland, Italy, Japan, Netherlands, Norway, Singapore, South Korea, Spain, Sweden, Switzerland, Taiwan, United Kingdom, United States (except Puerto Rico)



### Google Home

Australia, Austria, Canada, Denmark, France, Germany, Ireland, Italy, Japan, Netherlands, Norway, Singapore, South Korea, Spain, Sweden, United Kingdom, United States (except Puerto Rico)



### Google Nest Wifi Router

Australia, Canada, France, Germany, Japan, Singapore, United Kingdom, United States (except Puerto Rico)



### Google Nest Wifi Point

Australia, Canada, France, Germany, Japan, Singapore, United Kingdom, United States (except Puerto Rico)



### Nest x Yale Lock with Google Nest connect

Canada, United States (except Puerto Rico)



### Nest Doorbell (wired)

Austria, Belgium, Canada, Denmark, Finland, France, Germany, Ireland, Italy, Netherlands, Spain, Sweden, Switzerland, United Kingdom, United States (except Puerto Rico)



### Nest Doorbell (battery)

Australia, Austria, Belgium, Canada, Denmark, Finland, Ireland, Italy, France, Germany, Japan, Netherlands, New Zealand, Norway, Spain, Sweden, Switzerland, United Kingdom, United States



### Google Nest Thermostat

Canada, United States (except Puerto Rico)



### Google Nest Learning Thermostat (3rd gen)

Belgium, Canada, France, Ireland, Italy, Netherlands, Spain, United Kingdom, United States (except Puerto Rico)



### Google Nest Temperature Sensor

Canada, United States (except Puerto Rico)

3/30/22, 3:24 PM
Case 3:21-cv-07559-WHA    Document 159-9    Filed 03/30/22    Page 123 of 149
Devices & services country availability - Google Store Help



### Google Nest Thermostat E

Belgium, Canada, France, Ireland, Italy, Netherlands, Spain, United Kingdom, United States (except Puerto Rico)



### Google Nest Protect (2nd gen)

Austria, Belgium, Canada, Denmark, Finland, France, Germany, Ireland, Italy, Netherlands, Spain, Sweden, Switzerland, United Kingdom, United States (except Puerto Rico)



### Google Nest Connect

United States (except Puerto Rico)



### Nest Cam (outdoor or indoor, battery)

Australia, Austria, Belgium, Canada, Denmark, Finland, India, Ireland, Italy, France, Germany, Japan, Netherlands, New Zealand, Norway, Spain, Sweden, Switzerland, United Kingdom, United States



### Nest Cam (indoor, wired)

Australia, Austria, Belgium, Canada, Denmark, Finland, Ireland, Italy, France, Germany, Japan, Netherlands, New Zealand, Norway, Spain, Sweden, Switzerland, United Kingdom, United States (except Puerto Rico)



### Nest Cam with Floodlight

Australia, Austria, Belgium, Canada, Denmark, Finland, France, Ireland, Germany, Netherlands, New Zealand, Norway, Sweden, United Kingdom, United States (except Puerto Rico)



### Voice Remote for Chromecast with Google TV



Australia, Canada, France, Germany, Ireland, Italy, Japan, Spain, United Kingdom, United States (except Puerto Rico)



### Chromecast with Google TV

Australia, Canada, France, Germany, Ireland, Italy, Japan, Spain, United Kingdom, United States (except Puerto Rico)



### Ethernet Adapter for Chromecast (4K Google TV)

Australia, Canada, France, Germany, Ireland, Italy, Japan, Spain, United Kingdom, United States (except Puerto Rico)



### Chromecast (3rd generation)

Australia, Canada, Denmark, Finland, Japan, Netherlands, New Zealand, Norway, Singapore, South Korea, Sweden, France, Germany, Italy, Spain, United Kingdom, United States (except Puerto Rico)



### Chromecast (2nd generation)

Austria, Belgium, Ireland, Hong Kong, South Korea, Portugal, Switzerland, Taiwan



### Chromecast Ultra

Denmark, Finland, Netherlands, New Zealand, Norway, Sweden



### Chromecast Audio

Australia, Austria, Belgium, Canada, Denmark, Finland, France, Germany, Hong Kong, Ireland, Italy, Japan, South Korea, Netherlands, New Zealand, Norway, Portugal, Spain, Sweden, Switzerland, Taiwan, United Kingdom, United States (except Puerto Rico)

Case 3:21-cv-07559-WHA    Document 159-9    Filed 03/30/22    Page 125 of 149

# Gaming



### Stadia

Austria, Belgium, Canada, Denmark, Finland, France, Germany, Ireland, Italy, Netherlands, Norway, Spain, Sweden, Switzerland, United Kingdom, United States (except Hawaii and Puerto Rico)

# Laptops & Tablets



### Google Pixelbook Go

Canada, United Kingdom, United States (except Puerto Rico)



### Google Pixelbook

Canada (except Quebec), United Kingdom, United States (except Puerto Rico)

# Fitbit



### Fitbit Charge 5

Australia, Canada, France, Germany, Ireland, Italy, Japan, Singapore, Spain, Taiwan, United Kingdom, United States



### Fitbit Inspire 2

Australia, Canada, France, Germany, Ireland, Italy, Japan, Singapore, Spain, Taiwan, United Kingdom, United States



### Fitbit Luxe

Australia, Canada, France, Germany, Ireland, Italy, Japan, Singapore, Spain, Taiwan, United Kingdom, United States



### Fitbit Sense

Australia, Canada, France, Germany, Ireland, Italy, Japan, Singapore, Spain, Taiwan, United Kingdom, United States



### Fitbit Versa 3

Australia, Canada, France, Germany, Ireland, Italy, Japan, Singapore, Spain, Taiwan, United Kingdom, United States

## Programs & Subscriptions



### Nest Aware

Australia, Austria, Belgium, Canada, Denmark, Finland, France, Germany, Ireland, Italy, Japan, Netherlands, New Zealand, Norway, Spain, Sweden, Switzerland, United Kingdom, United States (except Puerto Rico)



### Pixel Pass

United States (except Puerto Rico)



### Preferred Care

Canada, United States

## Accessories



### Google Pixel Stand (2nd gen)

Australia, Canada, France, Germany, Ireland, Italy, Japan, Singapore, Spain, Taiwan, United Kingdom, United States



### Google Pixel Buds (2nd generation)

Australia, France, Germany, Ireland, Italy, Japan, Singapore, Spain, United Kingdom



### Pixel Buds A-Series

Australia, Canada, France, Germany, Ireland, Italy, Japan, Singapore, Spain, Taiwan, United Kingdom, United States



### Titan Security Key USB-C/NFC

Austria, Belgium, Canada, France, Germany, Italy, Japan, Spain, Switzerland, United Kingdom, United States (except Puerto Rico)



### Titan Security Key USB-A/NFC

Austria, Belgium, Canada, France, Germany, Italy, Japan, Spain, Switzerland, United Kingdom, United States (except Puerto Rico)

## Delivery restrictions

You can't buy devices on the Google Store in the following regions:

**Note:** This list is a sample of places we know we can't deliver. It may not include all undeliverable territories.

- Andorra
- Canada: Nunavut, Northwestern Territories, Yukon
- Finland: Aland Islands
- France: Guadeloupe, Martinique, Réunion, St. Pierre and Miquelon, and French Guiana
- Germany: Busingen and the Isle of Heligoland
- Hong Kong: Sha Tau Kok, Ta Kwu Ling, Man Kam To, Mai Po, Lok Ma Chau, Closed area, Lo Wu, Po Toi, Tung Lung Chau, Grass Island, Crooked Island (Kat O), Tung Ping Chau, Mui Wo, Lamma Island, Peng Chau, Cheung Chau, Tai O, Lantau Island
- Italy: Vatican City, Livigno, San Marino, Campione d'Italia
- Monaco
- Portugal: Madeira, Azores
- Spain: Ceuta, Melilla, and the Canary Islands
- United Kingdom: Isle of Man, Channel Islands, Gibraltar
- United States: Virgin Islands, Guam

3/30/22, 3:24 PM
Case 3:21-cv-07559-WHA     Document 159-9     Filed 03/30/23     Page 128 of 149
Devices, services, country availability - Google Store Help

## Need more help?
Try these next steps:

 **Contact us**
Tell us more and we'll help you get there

# EXHIBIT CV





**Nest Hub Max Smart Display with Google Assistant - Chalk**
**$229.99**
Model: GA00426-US    SKU: 6348560
★★★★★ (2,546)
**Get it today**

Pickup: Ready in 1 hour at South Loop
Act Fast – Only 1 left at your store!
See all pickup locations

FREE Shipping: Get it by tomorrow
See all shipping options for 60607

Installation: As soon as Tue, Apr 5

☐ Compare    ☐ Save

**Nest Hub Max Smart Display with Google Assistant - Chalk**
**$229.99**
Model: GA00426-US    SKU: 6348560
Color: Chalk
Free item with purchase
★★★★★ (2,546)

**Add to Cart**

Act Fast – Only 1 left at your store!
See all pickup locations

FREE Shipping: Get it by tomorrow
See all shipping options for 60607

Installation: As soon as Tue, Apr 5

☐ Compare    ☐ Save

**Google - Nest Audio - Smart Speaker - Chalk**
**$99.99**
Model: GA01420-US    SKU: 6428305
Color: Chalk
★★★★★ (950)

**Add to Cart**

**Google - Nest Cam Battery 2 Pack - Snow**
**$329.99**
Model: GA01894-US    SKU: 6473265
★★★★☆ (596)
See More Options

**Add to Cart**

☐ Compare    ☐ Save

**Google - Nest Cam (Wired) - Snow**
**$99.99**
Model: GA01998-US    SKU: 6473271
★★★★☆ (300)

**Add to Cart**

**Google - Geek Squad Certified Refurbished AC1200 Dual-Band Mesh Wi-Fi Router (3-Pack) - White**
**$104.99**
Save $95   Was $199.99
Model: GSRF GA02434-US    SKU: 6468007
★★★★☆ (42)

**Add to Cart**

**Google - Geek Squad Certified Refurbished AC1200 Dual-Band Mesh Wi-Fi Router (3-Pack) - White**
**$104.99**
Save $95   Was $199.99
Model: GSRF GA02434-US    SKU: 6468007
★★★★☆ (42)

**Add to Cart**



**Nest Wifi - Mesh Router (AC2200) and 2 points with Google Assistant - 3 pack - Snow**

Model: GA00823-US    SKU: 6382518

★★★★½ (5,637)

**$249.00**
Save $100   Was $349.00

Add to Cart

**Nest Wifi - Mesh Router (AC2200) and 1 point with Google Assistant - 2 pack - Snow**

Model: GA00822-US    SKU: 6382512

Color: Snow

Model: GA00822-US    SKU: 6382512

Color: Snow

★★★★½ (5,637)

**$189.00**
Save $80   Was $269.00

Add to Cart

Add to Cart

ADVERTISEMENT

## Bring on-screen action to

**Chromecast with Google TV - 4K - Snow**

Model: GA01919-US    SKU: 6425976

★★★★½ (6,466)

**$49.99**

Add to Cart

**Google - Nest Wifi - Mesh Router (AC2200) - Snow - Snow**

Model: GA00595-US    SKU: 6382499

★★★★½ (995)

**$139.00**
Save $30   Was $169.00

Add to Cart

**Google - Nest Doorbell (Wired) Smart Wi-Fi Video Doorbell**

Model: NC5100US    SKU: 6172796

★★★★½ (4,901)

**$229.99**

Add to Cart

**Google - Pixel 6 Pro 128GB (Unlocked) - Stormy Black**

Model: GA03149-US    SKU: 6483636

**$899.00**
with activation today

**Google - Pixel 6 Pro 128GB (Unlocked) - Stormy Black**

Model: GA03149-US    SKU: 6483636

**$899.00**
with activation today



Color: Stormy Black

⭐⭐⭐⭐ (206)

See Details

**Google - Pixel Buds A-Series True Wireless In-Ear Headphones - Clearly White**

**Model:** GA02213-US    **SKU:** 6461033

**Color:** Clearly White

⭐⭐⭐⭐ (594)

**$99.99**

🛒 Add to Cart

**Google - Nest Cam with Floodlight - Snow**

**Model:** GA02411-US    **SKU:** 6473270

⭐⭐⭐⭐ (242)

**$279.99**

🛒 Add to Cart

**Google - Nest Cam Battery - Snow**

**Model:** GA01317-US    **SKU:** 6473262

⭐⭐⭐ (596)

See More Options

**$179.99**

🛒 Add to Cart

See More Options

**Google - Wifi - Mesh Router (AC1200) - 3 pack - White**

**Model:** GA02434-US    **SKU:** 6421176

⭐⭐⭐⭐ (2,022)

**$180.00**

Save $19.99   Was $199.99

🛒 Add to Cart

**Google - Geek Squad Certified Refurbished Nest Wifi AC2200 Router - Snow**

**Model:** GSRF GA00595-US    **SKU:** 6467858

⭐⭐⭐⭐ (19)

**$84.99**

Save $84.01   Was $169.00

🛒 Add to Cart

**Google - Pixel 6 128GB (Unlocked) - Stormy Black**

**Model:** GA02900-US    **SKU:** 6483635

**Color:** Stormy Black

⭐⭐⭐⭐ (622)

**$599.00**

with activation today

See Details



**Google - Nest Doorbell Battery - Snow**
Model: GA01318-US   SKU: 6473256
Color: Snow

★★★★☆ (561)

★★★★☆ (561)

**$179.99**

Add to Cart

**Google - Nest Learning Smart Wifi Thermostat - Black**
Model: T3018US   SKU: 6345162
Color: Black

★★★★★ (13,913)

**$249.99**

Add to Cart

**Google - Geek Squad Certified Refurbished AC1200 Dual-Band Mesh Wi-Fi Router - White**
Model: GSRF GA02430-US   SKU: 6468004

★★★★★ (18)

**$49.99**
Save $50   Was $99.99

Add to Cart

**Google - Chromecast Streaming Media Player - Charcoal**

★★★★★ (18)

**$29.99**

**Google - Chromecast Streaming Media Player - Charcoal**
Model: GA00439-US   SKU: 6288362

★★★★★ (8,934)

**$29.99**

Add to Cart

**Package - Google - Nest Protect 2nd Generation (Battery) Smart Smoke/Carbon Monoxide Alarm - White (2 pack)**

★★★★★ (2,732)

**$224.98**
Package Price
Save $15   Reg $239.98

Add to Cart

1-24 of 170 items

⟨ 1 **2** 3 ... 8 ⟩

Related Searches alexa | chromecast | nest | roku

**Search Feedback:** Did you find what you were looking for?

# EXHIBIT CW

Clement S. Roberts (SBN 209203)
*croberts@orrick.com*
ORRICK HERRINGTON & SUTCLIFFE LLP
405 Howard Street
San Francisco, CA 94105
Tel: (415) 773-5700 -- Fax: (415) 773-5759

Alyssa Caridis (SBN 260103)
*acaridis@orrick.com*
ORRICK HERRINGTON & SUTCLIFFE LLP
777 South Figueroa Street, Suite 3200
Los Angeles, CA 90017
Tel: (213) 629-2020 -- Fax: (213) 612-2499

George I. Lee
*lee@ls3ip.com*
Sean M. Sullivan
*sullivan@ls3ip.com*
Rory P. Shea
*shea@ls3ip.com*
J. Dan Smith
*smith@ls3ip.com*
Michael P. Boyea
*boyea@ls3ip.com*
Cole B. Richt*er*
*richter@ls3ip.com*
LEE SULLIVAN SHEA & SMITH LLP
656 W Randolph St, Floor 5W
Chicago, IL 60661
Tel: (312) 754-0002 -- Fax: (312) 754-0003

*Attorneys for Sonos, Inc.*

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GOOGLE LLC, | Case No. 3:20-cv-6754 |
| *Plaintiff,* | |
| v. | **SONOS, INC.'S THIRD SUPPLEMENTAL RESPONSES AND OBJECTIONS TO GOOGLE'S FIRST SET OF INTERROGATORIES [1-20]** |
| SONOS, INC., | |
| *Defendant.* | Judge: Hon. William Alsup |
| | Complaint Filed: September 28, 2020 |

1    00043808-812.

2        Sonos reserves the right to revise, correct, add to, supplement, or clarify its response to

3    this Interrogatory as additional information is discovered and/or becomes available.

4

5    **INTERROGATORY NO. 15**

6        *Separately for each asserted claim of the Asserted Patents, set forth the complete basis*

7    *for any contention that Google indirectly infringes such claim, including by identifying all*

8    *documents supporting that contention.*

9

10   **RESPONSE TO INTERROGATORY NO. 15**

11       Sonos objects to this interrogatory as overbroad, unduly burdensome, and not reasonably

12   proportional to the needs of the case insofar as it purports to require Sonos to "set forth the

13   **complete** basis for **any** contention that Google indirectly infringes . . . including by identifying

14   **all** documents supporting that contention."

15       Sonos further objects to this Interrogatory as premature to the extent it seeks expert

16   discovery in advance of the date set forth in the Federal Rules of Civil Procedure and/or the

17   Court's Scheduling Order.

18       Sonos further objects to this Interrogatory on the ground that it is a premature contention

19   interrogatory that has been filed before a substantial amount of discovery has been conducted in

20   this lawsuit.  *See* Fed. R. Civ. P. 33(a)(2) ("[T]he court may order that [a contention]

21   interrogatory need not be answered until after designated discovery is complete . . . .").

22       Sonos further objects to this Interrogatory as premature to the extent that some of the

23   information called for by this interrogatory is in the possession of Google or third parties and has

24   not yet been produced in this case.

25       Subject to, and without waiving, the foregoing Specific and General Objections, Sonos

26   states that much of the information necessary to respond to this Interrogatory is uniquely within

27   the possession of Google or third parties, and Sonos will seasonably supplement its response to

28   this Interrogatory upon obtaining such information, including at least information produced in

response to subpoenas served on Spotify, as well as Google documents produced in response to Request For Production Nos. 6, 24, 25, 26, and Google's responses to Interrogatory No. 17, which are incorporated by reference herein.

Sonos also incorporates by reference herein its preliminary infringement contentions and, when served, its final infringement contentions.

Sonos reserves the right to revise, correct, add to, supplement, or clarify its response to this Interrogatory as additional information is discovered and/or becomes available.

**FIRST SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 15 (3/21/2022)**

Sonos incorporates by reference its response and objections above.  Sonos further responds as follows:

**A. '615 and '033 Patents**

With actual knowledge of the '615 and '033 Patents and Sonos's contention of how the Accused Products meet the asserted claims of the '615 and '033 Patents, Google – through its website, advertising and promotional material, user guides, and/or the Google Play Store – has and continues to actively, knowingly, and intentionally encourage others to make, use, offer to sell, or sell Accused Products in the United States and/or import Accused Products into the United States, which Google knows results in direct infringement.

For example, Google actively, knowingly, and intentionally instructs and encourages customers to download, install and/or update Google's Cast-enabled apps that allow a customer to transfer playback of streaming media content from the customer's smartphone, tablet, or computer devices to a Cast-enabled media player and then control the Cast-enabled media player's playback, including but not limited to the YouTube app, YouTube Kids app, YouTube TV app, YouTube Music app, and Google Play Music app, accessed via either an app store or Chromecast-enabled site URL (including youtube.com, music.youtube.com, tv.youtube.com, and spotify.com).  Google knows that when its customers download, install and/or update these Cast-enabled apps, this thereby "make[s]" an infringing device, which constitutes direct infringement of claims 13-15, 18-21, 23-26, 28-29 of the '615 Patent and claims 1-2, 4, 7-13 of the '033 Patent under

35 U.S.C. § 271(a).   Example evidence of these activities by Google can be seen in*, e.g.,* GOOG-SONOSWDTX-00006564 - GOOG-SONOSWDTX-00006566 at 564 (encouraging customers to "[d]ownload the YouTube app" and "[i]nstall" the "YouTube Music" app); SONOS-SVG2-00060188 - SONOS-SVG2-00060191 at 188 (encouraging customers to download the YouTube app); SONOS-SVG2-00060176 - SONOS-SVG2-00060179 at 176 (encouraging customers to download the YouTube Kids app); SONOS-SVG2-00060184 - SONOS-SVG2-00060187 at 184 (encouraging customers to download the YouTube TV app); GOOG-SONOSWDTX-00023379 - GOOG-SONOSWDTX-00023380 at 379 (encouraging customers to download the Google Play app); SONOS-SVG2-00060180 - SONOS-SVG2-00060183 at 180 (encouraging customers to download the YouTube Music app); SONOS-SVG2-00060385 (encouraging customers to "download the YouTube app" on "phones or tablets running Android version 4.0 and above."); SONOS-SVG2-00060444 (encouraging customers to "update to the most up-to-date version" of the YouTube app); GOOG-SONOSWDTX-00031612 - GOOG-SONOSWDTX-00031613 at 612 (encouraging customers to "download the YouTube TV app" ); GOOG-SONOSWDTX-00031651 - GOOG-SONOSWDTX-00031654 at 653 (encouraging customers to download the YouTube TV app); GOOG-SONOSWDTX-00022229 - GOOG-SONOSWDTX-00022231 at 230 (encouraging customers to download "Chromecast-enabled apps"); GOOG-SONOSWDTX-00007285 - GOOG-SONOSWDTX-00007286 at 285 (encouraging customers to download various "Chromecast-enabled apps," including "Google Play Music, Spotify, Pandora, iHeartRadio, TuneIn Radio, Deezer, Rhapsody, Napster, NPROne, BeyondPod, and more," to "cast to your audio device from your mobile device or tablet"); GOOG-SONOSWDTX-00036843 - GOOG-SONOSWDTX-00036844 (encouraging customers to download Cast-enabled apps, including Google Play Music and YouTube Music); GOOG-SONOSWDTX-00006553 - GOOG-SONOSWDTX-00006554 at 554 (Google software engineer encouraging customers to "download the YouTube Music app in the Play Store or App Store."); GOOG-SONOSWDTX-00019270 - GOOG-SONOSWDTX-00019271 at 270 (encouraging customers to "download the YouTube Music … app."); GOOG-SONOSWDTX-00020857 - GOOG-

**HIGHLY CONFIDENTIAL –**
**ATTORNEYS' EYES ONLY**
319
SONOS'S 3RD SUPP. RESP. AND OBJS.
TO GOOGLE'S FIRST ROGS [1-20]
CASE NO. 3:20-CV-06754-WHA

1    SONOSWDTX-00020858 at 857 (instructing customers how to download the Google Play

2    Music app).

3          As another example, Google actively, knowingly, and intentionally instructs and

4    encourages customers to download, install and/or update Cast-enabled software (e.g., firmware

5    updates and/or Cast-enabled apps) onto the Cast-enabled displays.  Google knows that when its

6    customers download, install and/or update Cast-enabled software (e.g., firmware updates and/or

7    Cast-enabled apps) onto the Cast-enabled displays, this thereby "make[s]" an infringing device,

8    which constitutes direct infringement of claims 13-15, 18-21, 23-26, 28-29 of the '615 Patent and

9    claims 1-2, 4, 7-13 of the '033 Patent under 35 U.S.C. § 271(a).   Example evidence of these

10   activities by Google can be seen in, e.g., SONOS-SVG2-00062706 ("When a firmware update is

11   available, your device will automatically download the update via an Over-the-Air (OTA)

12   update."); SONOS-SVG2-00062709 - SONOS-SVG2-00062710 at 709 ("If your Nest products

13   have a reliable internet connection, they should update their software automatically."); SONOS-

14   SVG2-00062711 ("To enjoy the latest and greatest features available on Google Nest or Home

15   speaker or display, your device may need to be updated to the most recent software version. This

16   is done automatically as part of setup so there's nothing you need to do to get the update.");

17   SONOS-SVG2-00062707 - SONOS-SVG2-00062708 at 707 ("Google Nest connected home

18   devices will receive automatic security updates for at least five years from the date we start

19   selling them on the US Google Store.").

20         As another example, Google actively, knowingly, and intentionally encourages customers

21   to use Cast-enabled computing devices installed with one or more of the accused Cast-enabled apps

22   (including Google's own Cast-enabled apps and third-party Cast-enabled apps, such as Spotify) and

23   use Cast-enabled displays.  Google knows that when its customers use Cast-enabled computing

24   devices installed with one or more of the accused Cast-enabled apps (including Google's own Cast-

25   enabled apps and third-party Cast-enabled apps, such as Spotify) and use Cast-enabled displays, this

26   constitutes direct infringement of the asserted claims of the '615 Patent and '033 Patent under 35

27   U.S.C. § 271(a).  Example evidence of these activities by Google can be seen in the foregoing and

28   in the following evidence in which Google instructs and encourages customers to subscribe to

one or more aforementioned Cast-enabled apps that allow a user to transfer playback of streaming media content from the user's smartphone, tablet, or computer devices to a Cast-enabled media player and then control the Cast-enabled media player's playback. *See, e.g.,* GOOG-SONOSWDTX-00027825 - GOOG-SONOSWDTX-00027827 at 825 (encouraging customers to subscribe to YouTube TV, YouTube Premium, and YouTube Music Premium); SONOS-SVG2-00060452 - SONOS-SVG2-00060457 (encouraging customers to subscribe to YouTube TV by offering a free trial); GOOG-SONOSWDTX-00043828 - GOOG-SONOSWDTX-00043830 (encouraging customers to subscribe to YouTube Premium by offering a free trial); SONOS-SVG2-00060449 - SONOS-SVG2-00060451 (encouraging customers to subscribe to YouTube Premium); SONOS-SVG2-00060415 - SONOS-SVG2-00060417 at 415 (encouraging customers to "[g]et [YouTube] Music Premium to listen ad-free" and offering a free trial); SONOS-SVG2-00060389 - SONOS-SVG2-00060390 (explaining to customers the benefits of subscribing to YouTube Music Premium, including the ability to "[c]ast music to a speaker or TV device"); GOOG-SONOSWDTX-00007005 - GOOG-SONOSWDTX-00007007 at 005 (encouraging customers to get a YouTube Premium and YouTube Music Premium membership); SONOS-SVG2-00060391 - SONOS-SVG2-00060392 at 391 (encouraging customers to "[g]et a YouTube student membership" for YouTube Premium and YouTube Music Premium); SONOS-SVG2-00060445 - SONOS-SVG2-00060447 (encouraging customers to subscribe to YouTube Premium); SONOS-SVG2-00060441 - SONOS-SVG2-00060443 at 441 (encouraging customers to "[s]ign up for YouTube TV"); SONOS-SVG2-00060448 (encouraging customers to sign up for YouTube TV); SONOS-SVG2-00060386 - SONOS-SVG2-00060388 at 386 (encouraging customers to "sign up for YouTube TV" by offering a free trial); GOOG-SONOSWDTX-00031651 - GOOG-SONOSWDTX-00031654 at 651 (encouraging customers to "[s]ign up for YouTube TV"); SONOS-SVG2-00060341 - SONOS-SVG2-00060342 at 341 (encouraging customers to "[s]ign up for YouTube TV"). Further example evidence of these activities can be seen throughout Google's website that includes a webpage entitled "Play media from Chromecast-enabled apps to your Google Nest or Google Home speaker or display," which instructs and encourages Google's customers

**HIGHLY CONFIDENTIAL –**
**ATTORNEYS' EYES ONLY**

321

SONOS'S 3RD SUPP. RESP. AND OBJS.
TO GOOGLE'S FIRST ROGS [1-20]
CASE NO. 3:20-CV-06754-WHA

1  to "[c]ast from Chromecast-enabled apps to speaker or display" and "[c]ontrol everything from

2  playback to volume." GOOG-SONOSWDTX-00005631 - GOOG-SONOSWDTX-00005636 at

3  631; *see also, e.g.,* GOOG-SONOSWDTX-00022718 - GOOG-SONOSWDTX-00022719 at 718

4  (instructing and encouraging Google's customers to "[c]ast audio from Chromecast-enabled apps

5  to speakers); GOOG-SONOSWDTX-00005979 (instructing and encouraging Google's

6  customers to "[c]ast from the YouTube app and YouTube.com"); SONOS-SVG2-00060341 -

7  SONOS-SVG2-00060342 at 341 (instructing and encouraging Google's customers to "[c]ast

8  YouTube TV using Chromecast"); SONOS-SVG2-00060340 (instructing and encouraging

9  Google's customers to "[w]atch YouTube Kids videos" with "Chromecast"); SONOS-SVG2-

10  00060001 - SONOS-SVG2-00060002 at 001 (instructing and encouraging Google's customers to

11  "[l]isten to music with Google Play Music and Chromecast"); GOOG-SONOSWDTX-00005760

12  - GOOG-SONOSWDTX-00005761 at 760 ("Learn how to cast to your speakers").

13         As a further example, Google actively, knowingly, and intentionally encourages customers

14  to use Cast-enabled computing devices installed with one or more of the accused Cast-enabled apps

15  (including Google's own Cast-enabled apps and third-party Cast-enabled apps, such as Spotify) and

16  use Cast-enabled displays when it advertises for purchase Google's "Pixel" smartphones, tablets,

17  and computer devices (e.g., the Pixel, Pixel XL, Pixel 2, Pixel 2 XL, Pixel 3, Pixel 3 XL, Pixel

18  3a, Pixel 3a XL, Pixel 4, Pixel 4 XL, Pixel 4a, Pixel 4a (5G), Pixel 5, Pixel 5a (5G), Pixel 6, and

19  Pixel 6 Pro phones, the Pixel Slate tablet, and the Pixelbook and Pixelbook Go laptops) that are

20  preinstalled (or can be installed) with one or more aforementioned Cast-enabled apps that allow a

21  user to transfer playback of streaming media content from a purchased smartphone, tablet, or

22  computer device to a Cast-enabled media player. Example evidence of these activities by

23  Google can be seen in*, e.g.,* SONOS-SVG2-00060374 - SONOS-SVG2-00060379 (encouraging

24  customers to buy Pixel phones); SONOS-SVG2-00060192 - SONOS-SVG2-00060198

25  (encouraging customers to buy the Pixel 6 Pro and Pixel 6 phones); SONOS-SVG2-00060430 -

26  SONOS-SVG2-00060440 (encouraging customers to buy the Pixel 6 phone); GOOG-

27  SONOSWDTX-00006481 - GOOG-SONOSWDTX-00006495 (encouraging customers to buy

28  the Pixel 5 phone); GOOG-SONOSWDTX-00006045 - GOOG-SONOSWDTX-00006047

1  (encouraging customers to buy the Pixel 4a phone); GOOG-SONOSWDTX-00006452 - GOOG-

2  SONOSWDTX-00006471 (encouraging customers to buy the Pixel 4 phone); GOOG-

3  SONOSWDTX-00006372 - GOOG-SONOSWDTX-00006392 (encouraging customers to buy

4  the Pixel 3a phone); GOOG-SONOSWDTX-00007857 - GOOG-SONOSWDTX-00007861

5  (Former Google GM & VP encouraging customers to pre-order the Pixel 3 and Pixel 3XL

6  phones); GOOG-SONOSWDTX-00007954 - GOOG-SONOSWDTX-00007956 (Google VP of

7  Product Management encouraging customers to pre-order the Pixel 4 and Pixel 4XL phones);

8  GOOG-SONOSWDTX-00006363 - GOOG-SONOSWDTX-00006371 (encouraging customers

9  to buy the Pixelbook Go); GOOG-SONOSWDTX-00006187 - GOOG-SONOSWDTX-

10 00006193 (encouraging customers to buy the Pixelbook Slate); SONOS-SVG2-00060409 -

11 SONOS-SVG2-00060414 (encouraging customers to buy the Pixelbook); GOOG-

12 SONOSWDTX-00008145 - GOOG-SONOSWDTX-00008148 (Google Director of Product

13 Management encouraging customers to buy the Pixelbook); SONOS-SVG2-00060380 -

14 SONOS-SVG2-00060383 (enticing customers with "special offers" to encourage them to buy

15 Pixel phones).

16      As a further example, Google actively, knowingly, and intentionally encourages

17 distributors and retailers to offer to sell and sell Cast-enabled computing devices installed with one or

18 more of the accused Cast-enabled apps, as well as Cast-enabled displays.  Google knows that

19 distributors and retailers offer to sell and sell Cast-enabled computing devices installed with one or

20 more of the accused Cast-enabled apps, as well as Cast-enabled displays, which constitutes direct

21 infringement of the asserted claims of the '615 Patent and '033 Patent under 35 U.S.C. § 271(a).

22 Example evidence of these activities by Google can be seen in, *e.g.,* SONOS-SVG2-00062689 -

23 SONOS-SVG2-00062703 at 693(Google SVP and CBO publicly reporting that Google has

24 "signed partnership agreements with over 45 carriers and retailers across nine countries at launch

25 – including deep collaboration with each of the major US carriers: AT&T, T-Mobile, and

26 Verizon."); SONOS-SVG2-00062703 - SONOS-SVG2-00062705 at 703 (providing a list of 13

27 "carriers with 5G" that work with a Pixel phone); SONOS-SVG2-00062715 - SONOS-SVG2-

28 00062720 (search results for sellers of Cast-enabled displays); SONOS-SVG2-00062712 -

SONOS'S 3RD SUPP. RESP. AND OBJS.
TO GOOGLE'S FIRST ROGS [1-20]
CASE NO. 3:20-CV-06754-WHA

1  SONOS-SVG2-00062714 at 712  ("You can purchase Google Nest or Home devices from the

2  Google Store or an authorized reseller, depending on the device and country.").

3  **B. '966 Patent**

4  With actual knowledge of the '966 Patent and Sonos's contention how the Accused

5  Products meet the asserted claims of the '966 Patent, Google – through its website, advertising

6  and promotional material, user guides, and/or the Google Play Store, and via audible or visual

7  instructions emitted from or displayed on the Cast-enabled media players, Cast-enabled computing

8  devices, and/or Cast-enabled displays – has and continues to actively, knowingly, and intentionally

9  encourage others to make, use, offer to sell, or sell computing devices installed with at least the

10  Google Home app in the United States and/or import such devices into the United States, which

11  Google knows results in direct infringement.

12  For example, Google's website includes a webpage entitled "Create and manage speaker

13  groups," which instructs and encourages Google's customers to "[g]roup any combination of

14  Google Nest or Google Home speakers and displays and Chromecast devices together for

15  synchronous music throughout the home."  GOOG-SONOSWDTX-00007122 - GOOG-

16  SONOSWDTX-00007128 at 122.

17  For example, Google actively, knowingly, and intentionally instructs and encourages

18  customers to download, install and/or update the Google Home app onto smartphones, tablets,

19  and computer devices.  Google knows that when its customers download, install and/or update

20  the Google Home app onto smartphones, tablets, and computer devices, this thereby "make[s]" an

21  infringing device, which constitutes direct infringement of claims 1-4, 6-12, 14-16 of the '966 Patent

22  under 35 U.S.C. § 271(a).   Example evidence of these activities by Google can be seen in, *e.g.,*

23  *See, e.g.,* GOOG-SONOSWDTX-00022675 - GOOG-SONOSWDTX-00022676 at 675

24  (encouraging customers to download the Google Home app); GOOG-SONOSWDTX-00007538

25  - GOOG-SONOSWDTX-00007540 at 538 ("Download or update the Google Home app");

26  GOOG-SONOSWDTX-00005649 - GOOG-SONOSWDTX-00005650 at 649 ("Download the

27  Google Home app"); GOOG-SONOSWDTX-00005760 - GOOG-SONOSWDTX-00005761 at

28  760 ("download the Google Home app"); GOOG-SONOSWDTX-00005984 - GOOG-

SONOS'S 3RD SUPP. RESP. AND OBJS.
TO GOOGLE'S FIRST ROGS [1-20]
CASE NO. 3:20-CV-06754-WHA

SONOSWDTX-00005985 ("You can download the Google Home app from the Google Play Store or the App store."); GOOG-SONOSWDTX-00007318 ("On your phone or tablet, download the latest version of the Google Home app available on Android or iOS."); GOOG-SONOSWDTX-00007329 ("You can download the Google Home app from the Google Play Store or the App store."); GOOG-SONOSWDTX-00007490 - GOOG-SONOSWDTX-00007491 ("Your child needs to download the Google Home app from the Google Play Store on their phone."); GOOG-SONOSWDTX-00007639 - GOOG-SONOSWDTX-00007640 at 639 (Google Product Manager encouraging customers to "download the Google Home app"); GOOG-SONOSWDTX-00008437 - GOOG-SONOSWDTX-00008440 at 438 ("Download the latest version of the Google Home app available on Android or iOS."); GOOG-SONOSWDTX-00015803 - GOOG-SONOSWDTX-00015804 at 803 (Download the Google Home app on Android or iOS."); GOOG-SONOSWDTX-00016964 - GOOG-SONOSWDTX-00016966 at 965 ("download the Google Home app"); GOOG-SONOSWDTX-00021429 - GOOG-SONOSWDTX-00021431 at 430 ("download the Google Home app"); GOOG-SONOSWDTX-00022294 ("On your mobile device or tablet, download the Google Home app."); GOOG-SONOSWDTX-00022919 ("If you don't already have the Google Home app downloaded on your Android device, the Play Store app will open and you can download the Google Home app."); GOOG-SONOSWDTX-00026760 ("download the Google Home app"); GOOG-SONOSWDTX-00027617 ("Click below to download the Google Home app on your mobile phone or tablet."); GOOG-SONOSWDTX-00027684 - GOOG-SONOSWDTX-00027685 at 684 ("Download the Google Home app."); GOOG-SONOSWDTX-00029578 - GOOG-SONOSWDTX-00029579 at 578 ("Download the Google Home app."); SONOS-SVG2-00060393 - SONOS-SVG2-00060394 at 393 ("Download the Google Home app."); GOOG-SONOSWDTX-00022894 ("Install the Google Home app by downloading the Google Home app on your Chromecast-supported Android device."); GOOG-SONOSWDTX-00023223 (encouraging customers to "upgrade to the latest version of the Google Home app."); SONOS-SVG2-00060384 ("Click one of the buttons below to download the Google Home app on your mobile phone or tablet"); GOOG-SONOSWDTX-00005770 - GOOG-SONOSWDTX-00005772

**HIGHLY CONFIDENTIAL –
ATTORNEYS' EYES ONLY**

SONOS'S 3RD SUPP. RESP. AND OBJS.
TO GOOGLE'S FIRST ROGS [1-20]
CASE NO. 3:20-CV-06754-WHA

1  ("Install the Google Home app by downloading the Google Home app on your Chromecast-

2  supported Android device.").

3        As another example, Google actively, knowingly, and intentionally encourages customers

4  to use Cast-enabled computing devices installed with one or more of the accused Cast-enabled apps

5  (including Google's own Cast-enabled apps and third-party Cast-enabled apps, such as Spotify) and

6  use Cast-enabled displays when it advertises for purchase Google's "Pixel" smartphones, tablets,

7  and computer devices (e.g., the Pixel, Pixel XL, Pixel 2, Pixel 2 XL, Pixel 3, Pixel 3 XL, Pixel

8  3a, Pixel 3a XL, Pixel 4, Pixel 4 XL, Pixel 4a, Pixel 4a (5G), Pixel 5, Pixel 5a (5G), Pixel 6, and

9  Pixel 6 Pro phones, the Pixel Slate tablet, and the Pixelbook and Pixelbook Go laptops) that are

10  preinstalled (or can be installed) with one or more aforementioned Cast-enabled apps that allow a

11  user to transfer playback of streaming media content from a purchased smartphone, tablet, or

12  computer device to a Cast-enabled media player.  Example evidence of these activities by

13  Google can be seen in*, e.g.,* As yet another example, Google instructs and encourages Google's

14  customers to directly infringe one or more asserted claims of the '966 Patent by purchasing

15  Google's own "Pixel" smartphones, tablets, and computer devices (e.g., the Pixel, Pixel XL,

16  Pixel 2, Pixel 2 XL, Pixel 3, Pixel 3 XL, Pixel 3a, Pixel 3a XL, Pixel 4, Pixel 4 XL, Pixel 4a,

17  Pixel 4a (5G), Pixel 5, Pixel 5a (5G), Pixel 6, and Pixel 6 Pro phones, the Pixel Slate tablet, and

18  the Pixelbook and Pixelbook Go laptops) that are preinstalled (or can be installed) with the

19  Google Home app.  *See, e.g.,* SONOS-SVG2-00060374 - SONOS-SVG2-00060379

20  (encouraging customers to buy Pixel phones); SONOS-SVG2-00060192 - SONOS-SVG2-

21  00060198 (encouraging customers to buy the Pixel 6 Pro and Pixel 6 phones); SONOS-SVG2-

22  00060430 - SONOS-SVG2-00060440 (encouraging customers to buy the Pixel 6 phone);

23  GOOG-SONOSWDTX-00006481 - GOOG-SONOSWDTX-00006495 (encouraging customers

24  to buy the Pixel 5 phone); GOOG-SONOSWDTX-00006045 - GOOG-SONOSWDTX-

25  00006047 (encouraging customers to buy the Pixel 4a phone); GOOG-SONOSWDTX-00006452

26  - GOOG-SONOSWDTX-00006471 (encouraging customers to buy the Pixel 4 phone); GOOG-

27  SONOSWDTX-00006372 - GOOG-SONOSWDTX-00006392 (encouraging customers to buy

28  the Pixel 3a phone); GOOG-SONOSWDTX-00007857 - GOOG-SONOSWDTX-00007861

**HIGHLY CONFIDENTIAL –**
**ATTORNEYS' EYES ONLY**
326
SONOS'S 3RD SUPP. RESP. AND OBJS.
TO GOOGLE'S FIRST ROGS [1-20]
CASE NO. 3:20-CV-06754-WHA

1   (Former Google GM & VP encouraging customers to pre-order the Pixel 3 and Pixel 3XL

2   phones); GOOG-SONOSWDTX-00007954 - GOOG-SONOSWDTX-00007956 (Google VP of

3   Product Management encouraging customers to pre-order the Pixel 4 and Pixel 4XL phones);

4   GOOG-SONOSWDTX-00006363 - GOOG-SONOSWDTX-00006371 (encouraging customers

5   to buy the Pixelbook Go); GOOG-SONOSWDTX-00006187 - GOOG-SONOSWDTX-

6   00006193 (encouraging customers to buy the Pixelbook Slate); SONOS-SVG2-00060409 -

7   SONOS-SVG2-00060414 (encouraging customers to buy the Pixelbook); GOOG-

8   SONOSWDTX-00008145 - GOOG-SONOSWDTX-00008148 (Google Director of Product

9   Management encouraging customers to buy the Pixelbook); SONOS-SVG2-00060380 -

10   SONOS-SVG2-00060383 (enticing customers with "special offers" to encourage them to buy

11   Pixel phones).

12       Google also knows (or should know) that its actions will induce users of the Accused

13   Products to directly infringe one or more asserted claims of the '966 Patent, and that users of the

14   Accused Products directly infringe one or more asserted claims of the '966 Patent.  For instance,

15   Google supplies software components included in the Google Home app for installation onto

16   computing devices outside the United States.  Google intends that others outside the United

17   States, including users, install these software components onto computing devices and knows

18   that such installation does in fact occur and that such installation, if occurring in the United

19   States, would directly infringe one or more asserted claims of the '966 Patent.

20   **C. '885 Patent**

21       Despite knowing of the '885 Patent, Google actively, knowingly, and intentionally

22   induced the infringement of the '885 Patent by actively encouraging others to make, use, offer to

23   sell, or sell the Cast-enabled media players in the United States and/or import the Cast-enabled

24   media players into the United States in violation of 35 U.S.C. § 271(b).  In particular, with actual

25   knowledge of '885 Patent, Google intentionally causes, urges, or encourages users of the Cast-

26   enabled media players to directly infringe one or more asserted claims of the '885 Patent by

27   promoting, advertising, and instructing customers and potential customers about the Cast-

28   enabled media players and uses thereof, including infringing uses.  For example, Google's

**HIGHLY CONFIDENTIAL –**
**ATTORNEYS' EYES ONLY**
327
SONOS'S 3RD SUPP. RESP. AND OBJS.
TO GOOGLE'S FIRST ROGS [1-20]
CASE NO. 3:20-CV-06754-WHA

website includes a webpage entitled "Create and manage speaker groups," which instructs and encourages Google's customers to "[g]roup any combination of Google Nest or Google Home speakers and displays and Chromecast devices together for synchronous music throughout the home." GOOG-SONOSWDTX-00007122 - GOOG-SONOSWDTX-00007128 at 122.

As yet another example, Google instructs and encourages Google's customers to directly infringe one or more asserted claims of the '855 Patent by purchasing Cast-enabled media players. *See, e.g.,* GOOG-SONOSWDTX-00007541 - GOOG-SONOSWDTX-00007552 (encouraging customers to buy the Nest Audio); GOOG-SONOSWDTX-00005212 - GOOG-SONOSWDTX-00005214 at 212 (Google Product Manager encouraging customers to pre-order the Nest Mini); SONOS-SVG2-00060395 - SONOS-SVG2-00060398 (encouraging users to buy the Google Home Mini); SONOS-SVG2-00060426 - SONOS-SVG2-00060429 (encouraging customers to buy "smart speakers" including the Nest Mini and Nest Audio); SONOS-SVG2-00060418 - SONOS-SVG2-00060425 (encouraging customers to buy the Nest Hub (2nd gen)); SONOS-SVG2-00060399 - SONOS-SVG2-00060408 (encouraging customers to buy the Nest Hub Max); GOOG-SONOSWDTX-00005645 - GOOG-SONOSWDTX-00005648 at 646 (encouraging customers to buy Cast-enabled media players); GOOG-SONOSWDTX-00006022 - GOOG-SONOSWDTX-00006036 (encouraging customers to buy the Chromecast with Google TV); GOOG-SONOSWDTX-00005206 - GOOG-SONOSWDTX-00005208 at 208 (Google VP of Product Management encouraging customers to buy the Google Home Mini and the Google Home Max); GOOG-SONOSWDTX-00005229 - GOOG-SONOSWDTX-00005231 at 231 (Google General Manager encouraging customers to buy the Nest Hub Max, Nest Hub, Google Home, and the Google Home Max); GOOG-SONOSWDTX-00006122 - GOOG-SONOSWDTX-00006126 at 122 (encouraging customers to buy the Google Home Max); GOOG-SONOSWDTX-00006170 - GOOG-SONOSWDTX-00006171 (encouraging customers to buy the Google Home Max, Nest Mini, and the Nest Audio); GOOG-SONOSWDTX-00006172 - GOOG-SONOSWDTX-00006173 at 172 (encouraging customers to buy the Nest Mini, Nest Hub, Nest Hub Max, and the Google Home Max); SONOS-SVG2-00060380 - SONOS-SVG2-00060383 (enticing customers with "special offers" to encourage them to buy

HIGHLY CONFIDENTIAL –
ATTORNEYS' EYES ONLY

SONOS'S 3RD SUPP. RESP. AND OBJS.
TO GOOGLE'S FIRST ROGS [1-20]
CASE NO. 3:20-CV-06754-WHA

1   Cast-enabled media players); GOOG-SONOSWDTX-00005659 - GOOG-SONOSWDTX-

2   00005662 (encouraging customers to buy the Chromecast (3rd Generation)).

3        Google also knows (or should know) that its actions will induce users of the Cast-enabled

4   media players to directly infringe one or more asserted claims of the '885 Patent, and that users

5   of the Cast-enabled media players directly infringe one or more asserted claims of the '885

6   Patent.  For instance, Google supplies Cast-enabled media players while knowing the use of

7   these Cast-enabled media players will infringe one or more asserted claims of the '885 Patent

8   and that Google's customers then directly infringe one or more asserted claims of the '885

9   Patent.

10       Sonos reserves the right to revise, correct, add to, supplement, or clarify its response to

11  this Interrogatory as additional information is discovered and/or becomes available.

12

13  **INTERROGATORY NO. 16**

14       *Identify the particular portions, source code, or functionality of all accused applications*

15  *for Android and iOS devices which Sonos contends meets, in whole or in part, one or more*

16  *limitations of the Asserted Claims.*

17

18  **RESPONSE TO INTERROGATORY NO. 16**

19       Sonos objects to this interrogatory as overbroad, unduly burdensome, and not reasonably

20  proportional to the needs of the case insofar as it purports to require Sonos to "[i]dentify . . . ***all***

21  accused applications for Android and iOS devices . . . ."

22       Sonos also objects that the interrogatory is vague and ambiguous, particularly with

23  respect to what is meant by "particular portions" of "all accused applications."

24       Sonos further objects that the term "Asserted Claims" have not been defined in the

25  interrogatories.  Sonos will interpret "Asserted Claims" to mean the asserted claims of the

26  Asserted Patents in this litigation.

27       Sonos further objects to this Interrogatory as premature to the extent it seeks expert

28  discovery in advance of the date set forth in the Federal Rules of Civil Procedure and/or the