# EXHIBIT 1

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | | |
|---|---|---|
| SONOS, INC., | § § § | |
| Plaintiff, | § § | |
| v. | § § | NO. 6:20-cv-00881-ADA |
| Google LLC, | § § | |
| Defendant. | § § § § | |

**PLAINTIFF SONOS, INC.'S FINAL INFRINGEMENT CONTENTIONS**

infringement. As another example, after installing the software components included as part of the firmware updates onto Cast-enabled media players, users have used Cast-enabled media players, which also constitutes direct infringement of the asserted claims.

### D.     Infringement Under 35 U.S.C. § 271(f)(1)

Pursuant to 35 U.S.C. § 271(f)(1), Google has also infringed by supplying in or from the United States software and/or firmware components, which constitute substantial portions of the components of Sonos's patented inventions, and actively, knowingly, and intentionally induced (and continues to actively, knowingly, and intentionally induce) others outside of the United States to combine these software and/or firmware components in a manner that, if such combination would have occurred in the United States (as it does pursuant to the theories set forth in Section III.B), infringes the asserted claims of the Asserted Patents. And these combinations by those outside of the United States do in fact occur. Accordingly, by supplying such software and/or firmware components from the United States, Google is liable for infringement under 35 U.S.C. § 271(f)(1).

*'615 and '033 Patents*: As set forth in Exhibits A and B, each Cast-enabled computing device, as well as each Cast-enabled display, infringes every asserted claim of the '615 and '033 Patents. Despite knowing of the '615 and '033 Patents, Google supplies software components for performing the accused Cast functionality as part of Google's own Cast-enabled apps for installation onto Cast-enabled computing devices and also as part of Google's own Cast-enabled software (e.g., firmware and/or Cast-enabled apps) for installation onto Cast-enabled displays. These software and/or firmware components are at least substantial portions of the components of the patented inventions of the '615 and '033 Patents. Google supplies these software and/or firmware components from the United States to various entities outside the United States. Google then induces those entities to combine the supplied components in a manner that would, if combined within the United States, constitute infringement. Google has actively, knowingly, and intentionally induced (and continues to actively, knowingly, and intentionally induce) these

entities to make such combinations outside the United States in various ways, in violation of 35 U.S.C. § 271(f)(1).

For example, through Google's website, advertising and promotional material, user guides, and/or the Google Play Store, Google has actively, knowingly, and intentionally encouraged and induced (and continues to actively, knowingly, and intentionally encourage and induce) others outside the United States to install one or more of the accused Cast-enabled apps (including Google's own Cast-enabled apps and third-party Cast-enabled apps such as Spotify) onto computing devices outside of the United States.  If this combination were done within the United States, that act would constitute "mak[ing]" an infringing device, which constitutes direct infringement of the asserted claims of the '615 and '033 Patents under 35 U.S.C. § 271(a).

As another example, through Google's website, advertising and promotional material, user guides, and Cast-enabled apps, Google has actively, knowingly, and intentionally encouraged and induced (and continues to actively, knowingly, and intentionally encourage and induce) others outside the United States to install Cast-enabled software (e.g., firmware updates and/or Cast-enabled apps) onto the Cast-enabled displays outside of the United States.  If this combination were done within the United States, that act would constitute "mak[ing]" an infringing device, which constitutes direct infringement of the asserted claims of the '615 and '033 Patents under 35 U.S.C. § 271(a).

As another example, through Google's relationship with third-party manufacturers, third-party distributers, or via an otherwise affiliated entity that acts in a manufacturer or distributor role, Google actively, knowingly, and intentionally encourage and induces or instructs such parties to install one or more of the accused Cast-enabled apps (including Google's own Cast-enabled apps and third-party Cast-enabled apps such as Spotify) onto computing devices outside of the United States.  If this combination were done within the United States, that act would constitute "mak[ing]" an infringing device, which constitutes direct infringement of the asserted claims of the '615 and '033 Patents under 35 U.S.C. § 271(a).

As another example, through Google's relationship with third-party manufacturers, third-party distributers, or via an otherwise affiliated entity that acts in a manufacturer or distributor role, Google actively, knowingly, and intentionally encourage and induces or instructs such parties to install Cast-enabled software (e.g., firmware updates and/or Cast-enabled apps) onto the Cast-enabled displays outside of the United States.  If this combination were done within the United States, that act would constitute "mak[ing]" an infringing device, which constitutes direct infringement of the asserted claims of the '615 and '033 Patents under 35 U.S.C. § 271(a).

As still another example, through Google's relationship with entities (including affiliated entities) that operate servers outside of the United States that host Cast-enabled apps for download onto Cast-enabled computing devices and/or Cast-enabled software (e.g., firmware and/or Cast-enabled apps) for download onto Cast-enabled displays, Google actively, knowingly, and intentionally encourages and induces or instructs these entities to load, store, or otherwise provide the Cast-enabled apps and/or Cast-enabled software onto these servers.  If this combination were done within the United States, that act would constitute direct infringement of certain asserted claims of the '615 and '033 Patents by "mak[ing]" and/or "us[ing]" servers that host such software in violation of 35 U.S.C. § 271(a).

As still another example, through its relationship and collaboration with third parties outside the United States such as Spotify that develop and release third-party Cast-enabled apps having the accused Cast functionality for transferring playback of streaming media content from a Cast-enabled computing device or Cast-enabled display to a Cast-enabled media player and then controlling the Cast-enabled media player's playback via the Cast-enabled computing device or Cast-enabled display, Google has provided software components to these third parties and then actively, knowingly, and intentionally induced (and continues to actively, knowingly, and intentionally induce) such third parties to incorporate these software components into apps and products in a manner that if done within the United States, would constitute direct infringement of certain asserted claims of the '615 and '033 Patents by "mak[ing]" or "us[ing]" an infringing device under 35 U.S.C. § 271(a).

*'966 Patent*: As set forth in Exhibit C, each computing device installed with at least the Google Home app infringes every asserted claim of the '966 Patent. Despite knowing of the '966 Patent, Google supplies the Google Home app from the United States to various entities outside the United States. Google then induces those entities to combine the Google Home app in a manner that would, if combined within the United States, constitute infringement. Google has actively, knowingly, and intentionally induced (and continues to actively, knowingly, and intentionally induce) these entities to make such combinations outside the United States in various ways, in violation of 35 U.S.C. § 271(b).

For example, through Google's website, advertising and promotional material, user guides, and/or the Google Play Store, and via audible or visual instructions emitted from or displayed on the Cast-enabled media players and Cast-enabled displays, Google has actively, knowingly, and intentionally encouraged and induced (and continues to actively, knowingly, and intentionally encourage and induce) others outside the United States to install the Google Home app onto computing devices outside the United States. If this combination were done within the United States, that act would constitute "mak[ing]" an infringing device, which constitutes direct infringement of the asserted claims of the '966 Patent under 35 U.S.C. § 271(a).

As another example, through Google's relationship with entities (including affiliated entities) that operate servers outside of the United States that host the Google Home app for download onto smartphone, tablet, and computer devices, Google actively, knowingly, and intentionally encourage and induces or instructs these entities to load, store, or otherwise provide the Google Home app onto these servers. If this combination were done within the United States, that act would constitute direct infringement of certain asserted claims of the '966 Patent by "mak[ing]" and/or "us[ing]" servers that host such software in violation of 35 U.S.C. § 271(a).

*'885 Patent*: As set forth in Exhibit D, each Cast-enabled media player infringes every asserted claim of the '885 Patent. Despite knowing of the '885 Patent, Google supplies from the United States software components for performing the accused functionality as part of firmware

-20-

updates for Cast-enabled media players. Google then through Google's website, advertising and promotional material, user guides, the Google Home app (among other apps offered by Google), and/or the Google Play Store, Google has actively, knowingly, and intentionally encouraged and induced (and continues to actively, knowingly, and intentionally encourage and induce) others outside the United States to install firmware updates onto Cast-enabled media players outside the United States. If this combination were done within the United States, that act would constitute "mak[ing]" or "us[ing]" an infringing device, which constitutes direct infringement of the asserted claims of the '885 Patent under 35 U.S.C. § 271(a).

As another example, through Google's relationship with third-party manufacturers, third-party distributers, or via an otherwise affiliated entity that acts in a manufacturer or distributor role, Google actively, knowingly, and intentionally encourage and induces or instructs such parties to, outside of the United States, install or load firmware onto Cast-enabled media players. If this combination were done within the United States, that act would constitute "mak[ing]" an infringing device, which constitutes direct infringement of the asserted claims of the '885 Patent under 35 U.S.C. § 271(a).

### D. Infringement Under 35 U.S.C. § 271(f)(2)

Pursuant to 35 U.S.C. § 271(f)(2), Google has also infringed by supplying software components in or from the United Sates to be combined, installed, loaded, and/or used by others outside of the United States, where these software components are components of the patented inventions that have no substantial noninfringing use and are not staple articles or commodities of commerce – with knowledge that these software components were especially made or adapted for use and an intent that these software components would be combined, installed, loaded, and/or used outside the United States such that, if such combination, installation, load, and/or use occurred within the United States (as it does pursuant to the theories set forth in Section III.C), it would infringe the asserted claims of the Asserted Patents. And these combinations by those outside of the United States do in fact occur. Accordingly, by supplying such software

components in or from the United States, Google is liable for infringement under 35 U.S.C. § 271(f)(2).

*'615 and '033 Patents*: As set forth in Exhibits A and B, each Cast-enabled computing device, as well as each Cast-enabled display, infringes every asserted claim of the '615 and '033 Patents. Despite knowing of the '615 and '033 Patents, Google supplies software components for performing the accused Cast functionality as part of Google's own Cast-enabled apps for installation onto Cast-enabled computing devices outside the United States and also as part of Google's own Cast-enabled software (e.g., firmware and/or Cast-enabled apps) for installation onto Cast-enabled displays outside the United States.  Google intends that others outside the United States, including users, install these software components onto computing devices and Cast-enabled displays and knows that such installation does in fact occur and that such installation, if occurring in the United States, would constitute "mak[ing]" an infringing device thereby directly infringing the asserted claims of the '615 and '033 Patents under 35 U.S.C. § 271(a).

Despite knowing of the '615 and '033 Patents, Google additionally supplies software components for performing the accused Cast functionality to third parties (such as Spotify) that incorporate such software code into third-party Cast-enabled apps for installation onto Cast-enabled computing devices and/or Cast-enabled displays outside of the United States.  Google intends that these third parties (such as Spotify) incorporate such software code into third-party Cast-enabled apps for installation onto Cast-enabled computing devices and/or Cast-enabled displays outside of the United States and knows that such incorporation does in fact occur and that such incorporation, if occurring in the United States, would constitute "mak[ing]" an infringing device thereby directly infringing the asserted claims of the '615 and '033 Patents under 35 U.S.C. § 271(a).

As another example, Google supplies software components for performing the accused Cast functionality to third-party manufacturers, third-party distributers, or to an otherwise affiliated entity that acts in a manufacturer or distributor role, who then, outside of the United

States installs these software components onto computing devices outside of the United States. Google intends that these parties install these software components onto computing devices outside of the United States. If this combination were done within the United States, that act would constitute "mak[ing]" an infringing device, which constitutes direct infringement of the asserted claims of the '615 and '033 Patents under 35 U.S.C. § 271(a).

As another example, Google supplies software components for performing the accused Cast functionality to entities (including affiliated entities) that operate servers outside of the United States that host Cast-enabled apps for download onto Cast-enabled computing devices and/or Cast-enabled software (e.g., firmware and/or Cast-enabled apps) for download onto Cast-enabled displays. Google intends that these entities load, store, or otherwise provide the Cast-enabled apps and/or Cast-enabled software onto these servers. If this combination were done within the United States, that act would constitute direct infringement of certain asserted claims of the '615 and '033 Patents by "mak[ing]" and/or "us[ing]" servers that host such software in violation of 35 U.S.C. § 271(a).

Google knows the foregoing software components for performing the accused Cast functionality are material components of infringing devices and the patented inventions that are not staple articles or commodities of commerce suitable for substantial noninfringing use because the only possible use for these software components is to be loaded, installed, an/or run on infringing Cast-enabled computing devices and Cast-enabled displays.

*'966 Patent*: As set forth in Exhibit C, each computing device installed with at least the Google Home app infringes every asserted claim of the '966 Patent. Despite knowing of the '966 Patent, Google supplies software components for performing the accused functionality as part of the Google Home app in or from the United States to various entities outside the United States. Google knows and intends for those entities to combine the software components in a manner that would, if combined within the United States, constitute infringement because each combination or installation of the Google Home app onto a computing device would constitute

-23-

"mak[ing]" an infringing device and thus directly infringe the asserted claims of the '966 Patent under 35 U.S.C. § 271(a).

Google knows that the software components included in the Google Home app are material components of infringing devices that are not staple articles or commodities of commerce suitable for substantial noninfringing use because the only possible use for these software components is to be installed and run on infringing computing devices.

Along with its actual knowledge of the '966 Patent, Google knew (or should have known) that the software components included in the Google Home app were especially made or adapted for installation on infringing devices, and that installation of these software components by others outside of the United States would, if done within the United States, constitute (and continues to result in) direct infringement of the '966 Patent under 35 U.S.C. § 271(a) because each such installation "makes" a device that meets every element of every asserted claims.

Moreover, as a result of Google's providing software components of the Google Home app, others have outside of the United States combined the Google Home app in a manner that, if done within the United States, would constitute direct infringement of the asserted claims of the '966 Patent. For example, others outside the United States have installed the Google Home app onto computing devices outside the United States. If this combination were done within the United States, that act would constitute "mak[ing]" an infringing device, which constitutes direct infringement of the asserted claims of the '966 Patent under 35 U.S.C. § 271(a).

As another example, Google supplies software components of the Google Home app to entities (including affiliated entities) that operate servers outside of the United States that host the Google Home app for download onto smartphone, tablet, and computer devices. Google intends that these entities load, store, or otherwise provide the Google Home app onto these servers. If this combination were done within the United States, that act would constitute direct infringement of certain asserted claims of the '966 Patent by "mak[ing]" and/or "us[ing]" servers that host such software in violation of 35 U.S.C. § 271(a).

-24-

*'885 Patent*: As set forth in Exhibit D, each Cast-enabled media player infringes every asserted claim of the '885 Patent. Despite knowing of the '885 Patent, Google supplies in or from the United States software components for performing the accused functionality as part of firmware updates for Cast-enabled media players, and users install such a firmware update outside of the United States in a manner that, if done within the United States, would constitute "mak[ing]" an infringing device and thereby directly infringe the asserted claims of the '885 Patent under 35 U.S.C. § 271(a). The software components included in the firmware updates are material components of the patented invention that are not staple articles or commodities of commerce suitable for substantial noninfringing use because the only possible use for these software components is to be installed and run on Cast-enabled media players.

Along with its actual knowledge of the '885 Patent, Google knew (or should have known) that the software components included in the firmware updates were especially made or adapted for installation on Cast-enabled media players, and that installation of these software components by others outside the United States would, if done within the United States, have resulted in (and continues to result in) direct infringement of the '885 Patent under 35 U.S.C. § 271(a) because each such installation "makes" an updated player that meets every element of every asserted claims.

Moreover, as a result of Google providing such firmware updates others have outside of the United States combined the firmware updates in a manner that, if done within the United States, would constitute direct infringement of the asserted claims of the '885 Patent. For example, users have, outside of the United States, installed the supplied software components included as part of the firmware updates onto Cast-enabled media players outside the United States, which if done within the United States would constitute "making" updated Cast-enabled media players, which constitutes direct infringement.

As another example, Google provides firmware to manufacturers, third-party distributors, or an otherwise affiliated entity that acts in a manufacturer or distributor role, who then, outside of the United States installs or loads such firmware onto Cast-enabled media players. If this

combination were done within the United States, that act would constitute "mak[ing]" an infringing device, which constitutes direct infringement of the asserted claims of the '885 Patent under 35 U.S.C. § 271(a).

Dated:  September 10, 2021	Respectfully submitted,

By: /s/ *Cole B. Richter*
      Cole B. Richter

Mark D. Siegmund
State Bar No. 24117055
Law Firm of Walt, Fair PLLC.
1508 North Valley Mills Drive
Waco, Texas 76710
Telephone: (254) 772-6400
Facsimile: (254) 772-6432
mark@waltfairpllc.com

Jeffrey L. Johnson
Texas Bar No. 24029638
ORRICK, HERRINGTON & SUTCLIFFE LLP
609 Main Street, 40th Floor
Houston, TX 77002
Telephone:  713.658.6400
Facsimile:  713.658.6401
jj@orrick.com

Clement Seth Roberts
California Bar No. 209203
ORRICK, HERRINGTON & SUTCLIFFE LLP
405 Howard St.
San Francisco, CA 94105
Telephone:  415.773.5484
Facsimile:  415.773.5759
croberts@orrick.com

Bas de Blank
California Bar No. 191487
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Blvd.
Menlo Park, CA 94205
Telephone:  650.614.7343
Facsimile:  650.614.7401
bdeblank@orrick.com

Alyssa Caridis
California Bar No. 260103
ORRICK, HERRINGTON & SUTCLIFFE LLP
777 South Figueroa St., Suite 3200

Los Angeles, CA 90017
Telephone: 213.612.2372
Facsimile: 213.612.2499
acaridis@orrick.com

Kristina D. McKenna
Massachusetts Bar No. 706245
ORRICK, HERRINGTON & SUTCLIFFE LLP
222 Berkeley St., Suite 2000
Boston, MA 02116
Telephone: 617.880.1800
Facsimile: 617.880.1801
kmckenna@orrick.com

George I. Lee
Illinois Bar No. 6225430
Sean M. Sullivan
Illinois Bar No. 6230605
Rory P. Shea
Illinois Bar No. 6290745
J. Dan Smith
Illinois Bar No. 6300912
Cole B. Richter
Illinois Bar No. 6315686
LEE SULLIVAN SHEA & SMITH LLP
656 W. Randolph St., Floor 5W
Chicago, IL 60661
Telephone: 312.754.9602
Facsimile: 312.754.9603
lee@ls3ip.com
sullivan@ls3ip.com
shea@ls3ip.com
smith@ls3ip.com
richter@ls3ip.com

***ATTORNEYS FOR PLAINTIFF SONOS, INC***

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on September 10, 2021, a copy of the foregoing was served via email to all counsel of record.

By: */s/ Cole B. Richter*
       Cole B. Richter