CLEMENT SETH ROBERTS (STATE BAR NO. 209203)
croberts@orrick.com
BAS DE BLANK (STATE BAR NO. 191487)
basdeblank@orrick.com
ALYSSA CARIDIS (STATE BAR NO. 260103)
acaridis@orrick.com
EVAN D. BREWER (STATE BAR NO. 304411)
ebrewer@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105-2669
Telephone:   +1 415 773 5700
Facsimile:   +1 415 773 5759

SEAN M. SULLIVAN (admitted *pro hac vice*)
sullivan@ls3ip.com
COLE RICHTER (admitted *pro hac vice*)
richter@ls3ip.com
LEE SULLIVAN SHEA & SMITH LLP
656 W Randolph St., Floor 5W
Chicago, IL 60661
Telephone:   +1 312 754 0002
Facsimile:   +1 312 754 0003

*Attorneys for Plaintiff Sonos, Inc.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| SONOS, INC.,<br><br>　　　　　*Plaintiff*,<br><br>　　v.<br><br>GOOGLE LLC,<br><br>　　　　　*Defendant*. | Case No. 3:21-cv-07559-WHA<br>Related to Case No. 3:20-cv-06754-WHA<br><br>**SONOS, INC.'S REQUEST FOR ADDITIONAL INFORMATION REGARDING THE COURT'S DISCLOSURE OF POTENTIAL CONFLICT**<br><br>Second Amended Complaint Filed: February 23, 2021 |

1   Sonos appreciates the Court's disclosures at the May 18, 2022 status conference. As the
2   Court can appreciate, the disclosures came as a surprise to Sonos, and it has been diligently working
3   through the issues created by the disclosure. So that undersigned counsel can better advise our
4   client on these fairly complicated issues, we would like to take the Court up on the offer it made,
5   at the hearing, to ask a few questions. *See* Dkt. 202 (Transcript of 5/18/22 hearing), Tr. 4:13-14.
6   In particular Sonos asks the Court to consider providing an additional disclosure about (1) the
7   identity of the clerk, (2) the circumstances of clerk's prior work for Google, and any plans he may
8   have to return to the company, (3) whether the clerk has previously worked for, or plans to work
9   for, Quinn Emanuel, (4) the structure of the "blind trust" and (5) the clerk's participation in this
10  case. Sonos also seeks an additional week to evaluate the issue and any additional facts the Court
11  may provide.

12  As the Court knows, a judge's reliance on a conflicted advisor is a well-established basis
13  for recusal under 28 U.S.C. § 455(a): "'[C]onflicted advisors who participate or influence a judge
14  require[ ] the judge's disqualification' under [28 U.S.C.] § 455(a)." *In re Kempthorne*, 449 F.3d
15  1265, 1270 (D.C. Cir. 2006) (quoting *In re Kensington Int'l Ltd.*, 368 F.3d 289, 311 (3d Cir. 2004)).
16  Thus, "[e]ven if the judge has no reason to recuse herself based upon her own circumstances, a law
17  clerk's relationships might cause the impartiality of decisions from that judge's chambers in which
18  the clerk participates reasonably to be questioned." *Hamid v. Price Waterhouse*, 51 F.3d 1411,
19  1416 (9th Cir. 1995).

20  In *Hall v. Small Business Administration*, the Fifth Circuit disqualified a district court judge
21  after it came to light that (among other ethical concerns over the law clerk's participation in the
22  case) the judge's law clerk had accepted, prior to the judgment being entered, an offer to join the
23  law firm which represented the winning party. 695 F.2d 175, 178 (5th Cir. 1983). The clerk
24  continued to work on the case after accepting the employment offer, but the judge did not believe
25  that the clerk changed the court's decisions. The circuit court noted that § 455(a) requires "the
26  appearance of impartiality" and therefore it did not matter "[w]hether or not the law clerk *actually*
27  affected the [judge's] decision." *Id.* at 179 (emphasis added). Rather, the conflicted law clerk's
28  work on the case created an appearance of partiality to a reasonable observer and necessitated

1 recusal. The court also emphasized that law clerks hold a special position of trust and influence
2 insofar that they are "sounding boards for tentative opinions and legal researchers who seek the
3 authorities that affect [the judge's] decision." *Id.*

4 On the other hand, many cases confirm that if a conflicted law clerk is *timely* screened from
5 a case, then judicial disqualification under § 455(a) is unnecessary. For example, in *Milgard*
6 *Tempering, Inc. v. Selas Corp. of America*, the Ninth Circuit did not require recusal where the judge
7 promptly "completely sealed … off" his law clerk from a case once she accepted an offer of
8 employment from one of the parties' counsel. 902 F.2d 703, 714 (9th Cir. 1990); *see also Hamid*,
9 51 F.3d at 1416 ("[i]f a clerk has a possible conflict of interest it is the clerk, not the judge, who
10 must be disqualified"). However, "[i]f a law clerk continues to work on the case in which his or
11 her impartiality might reasonably be questioned … the clerk's actual or potential conflict may be
12 imputed to the judge." *Mathis v. Huff & Puff Trucking, Inc.*, 787 F.3d 1297, 1311 (10th Cir. 2015).
13 In sum, if the law clerk working on this case has had a conflict of interest, he should have been
14 promptly screened from the case, and his continued work on the case *after* the conflict arose may
15 result in the conflict being imputed to the Court.

16 Sonos now provides the law governing the specific circumstances at issue here and about
17 which it needs more information.

18 ***Stock ownership:*** The Court disclosed that the law clerk working on this case owns stock
19 in Google – but expressed apparent uncertainty over whether the rule applicable to judges (i.e., that
20 even one share of stock created a conflict) applied to clerks. Dkt. 202, Tr. 3:9-14. The answer is
21 that it does: a clerk's financial interest in the outcome of a case (even as to one share of stock) is a
22 direct violation of the Federal Judicial Center's ethical rules ***specifically for law clerks***. In
23 particular, those rules provide that "[i]f you, your spouse, or child owns *even one share* of stock in
24 a party to a case, you have a financial interest in the party and cannot work on the case." *See*
25 Maintaining the Public Trust, Ethics for Federal Judicial Law Clerks, 2019 Rev. 4th Ed., at 11-12
26 (emphasis in original); Code of Conduct for Judicial Employees, Canon 3.F.(2)(a)(iii). Thus, the
27 law clerk should not have worked on this case at any time during which the clerk owned Google
28 stock. Because this is a bright line rule, Sonos does not need additional information about *how*

1   *much* Google stock the clerk owns.  But Sonos would like to know *when* the conflict was created
2   and, in particular, (i) if the clerk has owned Google stock the entire time he has been working on
3   the case and (ii) when that involvement began.

4       ***Blind Trust***: The Court informed the parties that the clerk placed the Google stock in a
5   blind trust about two weeks ago.  Dkt. 202, Tr. 3:11.  While we appreciate the clerk's and the
6   Court's attempts to mitigate the conflict, putting the stock in a blind trust does not cure the ethical
7   violation (even on a going forward basis) because the clerk still *owns* the stock.  As an initial matter,
8   extensive authority under 28 U.S.C. § 455 confirms that the placement of stock in a blind trust does
9   not cure a conflict of interest created by stock ownership.  Under § 455(b)(4), a judge "*shall* also
10  disqualify himself" if "[h]e knows that he, individually or as a fiduciary, or his spouse or minor
11  child residing in his household, has a financial interest in the subject matter in controversy or in a
12  party to the proceeding."  Congress enacted Section 455(b)(4) as a bright-line, "absolute prohibition
13  against a judge's knowingly presiding in a case in which he has a financial interest," regardless of
14  which party holds the interest.  *Union Carbide Corp. v. U.S. Cutting Serv., Inc.*, 782 F.2d 710, 714
15  (7th Cir. 1986).  Section 455(d)(4) has no "'de minimis' exception for recusal based on a financial
16  interest; rather, a bright line rule requires recusal based on ownership of even a single share of stock
17  in a party."  McKeown, *To Judge or Not to Judge: Transparency and Recusal in the Federal*
18  *System*, 30 Rev. Litig. 653, 669 n.57 (2011).

19      While conflicts under § 455(b) are not waivable by parties, *see* § 455(e), the statute creates
20  one exception to the rule requiring recusal.  Under § 455(f), judges may cure the need for a recusal
21  otherwise required under § 455(b)(4) where the judge "divests himself or herself of the interest that
22  provides the grounds for the disqualification."  But placing one's interest in a party under the control
23  of a blind trust does not fall within this exception.  To "divest" an interest means to "deprive or
24  dispossess" oneself of that interest.  Webster's New World Dictionary 400 (3d ed. 1988).  And
25  under § 455(d)(4), "financial interest" does not mean *knowledge or control* of an interest, but
26  "ownership" of an "interest, however small."

27      For this reason, a "judge's use of a blind trust does not obviate the judge's recusal
28  obligations" under § 455(f).  Committee on Codes of Conduct, Advisory Opinion No. 110;

1   McKeown, 30 Rev. Litig. at 669 n.57 ("[A] judge cannot avoid recusal by placing assets in a blind
2   trust or by avoiding knowledge of the judge's financial holdings but must remain informed about
3   the judge and the judge's family members' financial interests."); *see also* 5 C.F.R. § 2634.403(a)(2)
4   (similar rule for Executive Branch officials).  The Ninth Circuit has thus held that § 455(c)
5   "precludes use of a so called blind trust." *In re Cement Antitrust Litig. (MDL No. 296)*, 688 F.2d
6   1297, 1314 n.18 (9th Cir. 1982) (quoting H.R. Rep. No. 93-1453 at 6356, 93rd Cong., 2d Sess.
7   (1974)); 2D Guide to Judiciary Policy, Ch. 3 § 365.20 (2014) ("The Code of Conduct for United
8   States Judges … precludes judges, [or] their spouses … from owning a blind trust.").  While the
9   above authorities discuss whether a blind trust cures the conflict created by a Judge's ownership of
10  stock, the principles apply with equal force to a law clerk's ownership of stock.

11       Because the law is, however, less developed about the applicability of blind trusts to clerks'
12  ownership of stock, Sonos seeks additional information so that it can more fully evaluate the
13  relationship between the present circumstances and the case law cited above.  In particular, Sonos
14  asks the Court to consider making an additional disclosure about (i) whether the Google stock is
15  the only asset in the blind trust; (ii) what information (if any) about the value of the assets in the
16  trust does the clerk have access to; and (iii) whether the trustee has discretion to *sell* the asset, or
17  only to *hold* the assets.  This information is important because, for example, if the Google stock is
18  the only (or dominant) asset in the trust and the total asset value of the trust is knowable to the clerk
19  then the clerk will continue to know if he owns the stock.  Conversely, if the trust is *truly* blind (in
20  the sense that the clerk has no way to know whether he continues to hold the asset) he may wrongly
21  assume that he continues to own it even when he doesn't.  Put differently, both alternatives are
22  problematical, but the *way* in which they are problematical is different.

23       ***Former employment*:** The Court also disclosed that the "law clerk that I have working on
24  my IP cases told me that he had worked at Google at some point in the past." Dkt. 202, Tr. 3:4-5.
25  The Court believed this wasn't a conflict because the employment was "some years" in the past.
26  *Id.* at 3:7.  Based on the information provided at the status conference, Sonos cannot determine
27  whether there may be an actual or potential conflict associated with the Court's law clerk's former
28  employment with Google.  In addition, based on publicly available LinkedIn profiles, one of the

1  clerks currently working in the Northern District of California (i) has worked for *both* Google and
2  Quinn Emanuel and (ii) worked in the Google legal department *during the time* period at issue in
3  this litigation – i.e., during the period when the parties were cooperating and when Google contends
4  *it* came up with and disclosed the technology claimed in some of Sonos's asserted patents.  Sonos
5  therefore requests that the Court consider making an additional disclosure regarding the clerk's
6  prior employment history.

7  A law clerk may not work on a matter if the law clerk has any "personal knowledge of
8  disputed evidentiary facts concerning the proceeding."  *See* Code of Conduct for Judicial
9  Employees, Canon 3.F.(2)(a)(i).  Similarly, a law clerk is prohibited from working on a matter if
10 "he or she served as lawyer in the matter in controversy, ***or a lawyer with whom he or she***
11 ***previously practiced law had served (during such association) as a lawyer concerning the matter***
12 (provided that the prohibition relating to the previous practice of law does not apply if he or she did
13 not work on the matter, did not access confidential information relating to the matter, and did not
14 practice in the same office as the lawyer)."  *Id.* 3.F.(2)(a)(ii) (emphasis added).

15 Under both Canon 3.F.(2)(a)(i) and (a)(ii), Sonos is concerned, absent additional
16 information, that a former employee of Google could have a conflict here if the former employee
17 had any legal role at the company and either (i) practiced in the same office as other Google lawyers
18 who were involved in the contracts that Google has put at issue here or (ii) had independent prior
19 relevant factual knowledge of or access to confidential information relating to the matter.

20 Under Canon 3.F.(2)(a)(i), a former employee of Google might also have a conflict with
21 respect to this matter even in the absence of former legal employment with Google if the former
22 employee's work related to the technology at issue in this matter.  The Court did not discuss either
23 of these Canons, but noted that the Court did not believe there was a problem because of the passage
24 of time since the clerk's employment at Google.  Dkt. 202, Tr. 3:4-7.  The passage of time is
25 irrelevant; the question is whether the clerk has any actual or imputed knowledge of the matters at
26 issue here.  And without additional information about the clerk's former employment, Sonos cannot
27 make a full and fair examination of the circumstances.  And, in light of the *Hall* and *Milgard* cases
28

cited above, to the extent the Clerk has current plans (or a standing offer) to return to either Google or Quinn Emmanuel, Sonos respectfully requests that those plans and offers be disclosed.

***Involvement***:  Sonos is acutely aware that its request for the Court to consider additional disclosures creates potential issues relating to both the clerk's privacy and the possible invasion of the privacy of the Court's internal processes.  It is therefore, with the utmost reluctance, that we ask the Court to consider making an additional disclosure relating to the clerks' involvement in this matter.  Sonos absolutely accepts that the Court is responsible for and the ultimate decision maker with respect to ***all*** of its decisions.  But § 455(a) protects against even the appearance of partiality, not just actual bias.  Sonos therefore asks the Court to consider providing additional information on the clerk's involvement to date in discussing the merits (including the merits of the pending claim construction and summary judgment motions) and/or drafting the Court's previously issued opinions.  The answers to these questions will help Sonos determine, inter alia, whether a motion to disqualify either or both the clerk or the judge is necessary, and the scope of the appropriate remedy.

\*   \*   \*

For the foregoing reasons, Sonos asks the Court to consider (i) whether it can or will provide an additional disclosure of information and (ii) granting Sonos an additional week to evaluate the circumstances and any additional disclosure the Court chooses to make.

Dated:  May 24, 2022

By:  */s/ Clement Seth Roberts*
CLEMENT SETH ROBERTS
BAS DE BLANK
ALYSSA CARIDIS
EVAN D. BREWER

ORRICK, HERRINGTON & SUTCLIFFE LLP

SEAN M. SULLIVAN
COLE B. RICHTER

LEE SULLIVAN SHEA & SMITH LLP

*Attorneys for Plaintiff Sonos, Inc.*