<pre>
 1                  UNITED STATES DISTRICT COURT

 2                NORTHERN DISTRICT OF CALIFORNIA

 3  Before The Honorable William Alsup, Judge

 4

 5  SONOS, INC.,                )
                                )
 6          Plaintiff,          )
                                )
 7  vs.                         )   No. C 21-07559-WHA
                                )
 8  GOOGLE, LLC,                )
                                )
 9          Defendant.          )
    _____)

10
                                San Francisco, California
11                              Wednesday, June 1, 2022

12      TRANSCRIPT OF PROCEEDINGS OF THE OFFICIAL ELECTRONIC
            SOUND RECORDING   7:57 - 8:29 = 32 MINUTES
13

14  APPEARANCES:

15  For Plaintiff:
                            Orrick, Herrington & Sutcliffe
16                            LLP
                            The Orrick Building
17                          405 Howard Street
                            San Francisco, California
18                            94105
                        BY:  CLEMENT S. ROBERTS, ESQ.
19
                            Orrick Herrington & Sutcliffe
20                            LLP
                            777 South Figueroa Street
21                          Suite 3200
                            Los Angeles, California 90017
22                      BY:  ALYSSA M. CARIDIS, ESQ.

23

24          (APPEARANCES CONTINUED ON NEXT PAGE)

25
</pre>

2

1  APPEARANCES:  (Cont'd.)

2  For Defendant:

3                            Quinn Emanuel Urquhart &
                              Sullivan LLP

4                            50 California Street
                            22nd Floor

5                            San Francisco, California
                              94111

6                        BY: MELISSA J. BAILY, ESQ.
                        BY:  LANA M. ROBINS, ESQ.

7

8  Transcribed by:          Echo Reporting, Inc.
                            Contracted Court Reporter/

9                            Transcriber
                            echoreporting@yahoo.com

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

3

1  Wednesday, June 1, 2022                           7:57 a.m.

2                      P-R-O-C-E-E-D-I-N-G-S

3                            --oOo--

4          THE CLERK:  Calling civil action 21-cv-07559,

5  Sonos, Inc. versus Google, LLC and all related cases.

6      Counsel, please state your appearances for the record,

7  beginning with counsel for plaintiff.

8          MR. ROBERTS:  Good morning, your Honor.  Clem

9  Roberts from Orrick Herrington for Sonos.

10         MS. BAILY:  (Inaudible.)

11         THE COURT:  Say that again.

12         THE CLERK:  Approach the podium.

13         MS. BAILY:  Melissa Baily for Google.

14         THE COURT:  Okay.  Welcome to you.

15     All right.  This is a motion to file a third amended

16  complaint.

17     Go ahead and summarize your position.

18         MR. ROBERTS:  Thank you, your Honor.

19     What I'd like to do, with your permission, is start

20  with your order dismissing the second amended complaint and

21  saying what we needed to do to amend.  And then if your

22  Honor will allow me the time the point to you specifically

23  where in the proposed third amended complaint we did what

24  you asked us to do.

25     Would that be an okay way to proceed?

4

1          THE COURT:  Well, how long will that take?

2          MR. ROBERTS:  Five minutes.

3          THE COURT:  Okay.  You have five minutes.

4          MR. ROBERTS:  Thank you, your Honor.

5     So in your order, your Honor -- and I'm looking at page

6  eight -- you said that where a defendant had filed or a

7  party had filed a declaratory judgment action, the accused

8  infringer has presumably already studied the patent versus

9  the accused product and indeed has sufficiently studied them

10  to assert under Rule 11 that the accused product does not

11  infringe the specified patent, regardless of whether a

12  cease-and-desist letter or other notice has been set.

13     And you therefore concluded -- and this is on page

14  10 -- that applying that principle, Sonos should be allowed

15  to counterclaim, that is, Sonos should be allowed to plead

16  the infringer's knowledge of the patent and that the

17  infringer has had sufficient time to analyze the product

18  vis-a-vis those patents, along with the other specifics

19  needed to show willfulness.

20     Accordingly, Sonos will be allowed to make the

21  willfulness allegation, either by way of counterclaim in the

22  dec relief action or by way of amendment in the Texas action

23  that has now come to this district.

24     And if I could point your Honor to the proposed amended

25  complaint, in particular to paragraph 55, you will see that

5

1  it says there -- this is new material shown in the

2  redline -- that on September 28, 2020, prior to Sonos's

3  commencement of the instant action on September 29, 2020,

4  Google initiated a declaratory judgment action in this

5  district asking the Court for an affirmative ruling that by

6  way of Google's making, using, selling, offering for sale,

7  and importation, Google does not infringe the '033, '966,

8  and '615 patents.

9      So we specifically added to the complaint an allegation

10 starting on paragraph 55 about their declaratory judgment

11 action.

12     And then we went on in the subsequent paragraphs, 56

13 and 57, to talk about the Rule 11 obligation to conduct an

14 investigation.

15     And then following that, starting in paragraphs 58, 59,

16 et cetera, we talked about the investigation that they

17 presumably did in some detail.

18     And that then results in paragraph 63, saying quote,

19 "In either case, as a result of Google's own investigation

20 to support the factual allegations it levied in its DJ

21 action, Google learned of the asserted patents and learned

22 of its alleged infringement."

23     So what we did is we took specifically your assertion,

24 your order that said that we could rely upon their DJ

25 complaint and their Rule 11 investigation showing advance

6

1  knowledge and sufficient time, and we put that specifically

2  in the complaint in these paragraphs.

3      Now, what I want to point out to your Honor is in their

4  opposition to our motion to amend, they did not challenge

5  the sufficiency of those allegations.  If you look at their

6  opposition to our motion to amend, they make three

7  arguments, your Honor.  And these arguments are on pages of

8  their motion -- and this is document 167.

9      The three arguments they make about futility start on

10  page six, go on to page seven and page eight.  And the

11  argument they make -- starting on page seven, their first

12  argument is that the discussions -- the licensing

13  discussions that we argued about aren't sufficient.  But

14  that's not what I'm relying on.  Not relying on the

15  licensing discussions.

16      And the second argument it makes is about the '855

17  patent.  I have separate arguments about the '855 patent,

18  but that's not what we're talking about here.

19      And, third, they say it could become futile, depending

20  upon what the appellate court does in the interlocutory

21  decision.  And of course the appellate court did not grant

22  either of the parties interlocutory appeal.  And so it did

23  not become moot.

24      So my point is, your Honor, you made an order.  You

25  said we had to do.  We did that exact thing.  And their

7

1  opposition to our motion to amend doesn't challenge the

2  sufficiency of that thing.

3       That's my primary argument on the first two patents.

4       I'd like to add on the '885 patent, that we've added an

5  additional factual allegation as well.  And this, your

6  Honor, shows up in paragraph 29.

7       And what we've done in paragraph 29 is -- again, this

8  is a new allegation.  It says, "On January 8, 2021, counsel

9  sent Google's counsel a copy of an amended complaint and

10 supplemental infringement contentions detailing Google's

11 infringement of the '885 patent."

12      So this is a new allegation in paragraph 29 that on

13 January 8, 2021, we sent them supplemental infringement

14 contentions detailing their infringement of the '885 patent.

15 And that is important, your Honor, because the '885 patent

16 was not added to the case until five weeks later.  It was

17 not added to the Texas case until February 17, 2021.

18      And one of the things you said in your order, your

19 Honor, was that, you know, the day before -- the notice we

20 gave them the day before we sued wasn't sufficient because

21 it didn't show sufficient time.

22      And here we have a five-week gap between us giving them

23 the detailed infringement contentions and the date the '885

24 patent was added to the case.  And that five-week gap, your

25 Honor, we think is sufficient time.

8

    Now, to be clear, I'm not asking you to hold that five
weeks is always sufficient.  But what I would say is, here,
where you've got big law firms on either side, the parties
are all spun up, they're engaging in litigation back and
forth, if we give them detailed infringement contentions,
five weeks is absolutely a sufficient time to come to a
reasonable understanding and have that knowledge.

    And so I would submit, both with respect to the '885
where we added this additional factual allegation about the
detailed infringement contentions we gave them in January
and with respect to the other two patents at issue in the
motion where we've specifically added the allegations about
reliance on the DJ complaint, that we've done exactly what
you order sets out and they haven't challenged it.

    Now, I did want to come back to their argument about
the '885 patent and their opposition.  This is the argument
I skipped over.  It's on page eight of their opposition,
which is document 167.

    Their argument here is that Google's original
declaratory judgment complaint did not seek a declaratory
judgment of noninfringement of the '885 patent.

        THE COURT:  Wait.  Repeat that again.

        MR. ROBERTS:  Yes.  So their argument is -- I'll
just read the whole thing.  "Sonos's second theory that
Google's DJ action establishes knowledge of the '885 patent

9

1    is fatally deficient.  Google's original DJ complaint did

2    not seek a judgment of noninfringement of the '885 patent."

3        This is bait and switch, because as to the '885, I am

4    not relying on the DJ action.  As to the '885 patent, I'm

5    relying on the fact that five weeks before that patent was

6    added to the Texas case, we gave them notice of the patent.

7    And as newly alleged in paragraph 29 of the third amended

8    complaint, we specifically gave them detailed infringement

9    contentions as to the '885 patents five weeks before that

10   patent was added to the Texas case.

11       Okay.  One more thing, your Honor --

12           THE COURT:  You keep saying one more thing.

13           MR. ROBERTS:  I do because they come to me one at

14   a time.

15           THE COURT:  All right.  This will be the last "one

16   more thing."

17           MR. ROBERTS:  Thank you, your Honor.

18       I just want to touch on the fact that we have also

19   added -- your original order also dealt with contributory

20   infringement.  And we have also added specific allegations

21   for the contributory infringement piece.

22       And I just wanted to point out to you where those were

23   so you have them in the record in case you were curious and

24   were looking.  And those allegations, they're different but

25   I would, for example, start you with paragraph 143.

1    And if you turn to paragraph 143, you will see that we

2  did exactly what you said we should, which is in your order

3  you said you didn't identify the specific components and

4  then explain how those components have no substantial

5  noninfringing use.

6    And so, for example, your Honor, in paragraph 143 --

7  and this is all new material in the proposed amended

8  complaint -- we identified the specific components and then

9  in paragraph 144 we explain why those components have no

10  substantial noninfringing use.

11    It's right there.  And they have not challenged the

12  sufficiency of those allegations in their opposition.

13    With that, I will --

14      THE COURT:  All right.  Thank you.

15    Let's hear from the other side.  Ms. Baily.

16      MS. BAILY:  Melissa Baily for the record.

17    Your Honor, I'll take the points in the order that they

18  were raised.

19    With respect to the first point -- and I too will start

20  with the text of your prior order -- your order made some

21  statements about what Sonos could add to its amended

22  complaint to establish knowledge with respect to the dec

23  relief action that Google filed.

24    Your order also said that that would not be enough for

25  willfulness.  And why is that.  That's because Sonos also

11

1  has to plead a specific intent to infringe.

2       Sonos has done the opposite of that in this draft

3  amended complaint.  What Sonos has done is said that there

4  is an evidentiary basis, that Google had an evidentiary

5  basis to contend and believe noninfringement, and that that

6  evidentiary basis was so obvious that Google gleaned it

7  immediately and told this Court and Sonos about that belief

8  and its noninfringement position.

9       That belief and its noninfringement position have

10  abided to this day.  Even if you look at the summary

11  judgment briefing on the showdown claims, Google has filed a

12  motion for summary judgment of noninfringement with respect

13  to both claims.  Sonos only filed a motion for summary

14  judgment of infringement with respect to one of them.

15       Google from the moment that it received notice from

16  Sonos with respect to these patents has taken the position

17  that they are not infringed, and there is no allegation in

18  the third amended complaint or the draft of it that suggests

19  that Google acted against an objective chance that it would

20  be found likely of infringement.

21       They've actually alleged the opposite.  They've alleged

22  in many, many paragraphs that Google investigated, that

23  Google talked to its engineers, that Google immediately

24  gleaned noninfringement because with respect to the patents

25  at issue here, your Honor -- I don't know if you've spent

1    time with them yet -- it was immediately apparent with

2    respect to some of the limitations that Google clearly did

3    not infringe, and with respect to other limitations it took

4    longer to sort of delve into it and come to the same

5    conclusion on multiple bases.

6         But it superficially was clear that Google didn't

7    infringe and also, frankly, that the patents were invalid.

8    I mean the zone team***17:49:45*** patents -- this is an

9    argument for another day, but it doesn't take much to read

10   those patents and come to the conclusion that the patents

11   are invalid under section 101 and numerous other sections of

12   the Patent Code.

13            THE COURT:  What are you saying, that they --

14   they're presumed valid at this stage, aren't they?  So are

15   you saying that their own complaint has to lay out and

16   negative -- negative the potential argument that the patents

17   are invalid?

18            MS. BAILY:  No.  But Sonos has alleged in its

19   complaint that Google acted with the specific intent to

20   infringe, right, so --

21            THE COURT:  Don't they say that?

22            MS. BAILY:  No.  They say that Google was of the

23   immediate view that it did not infringe.  They say the

24   opposite.  They say that Sonos --

25            THE COURT:  Show me where they say that.

13

1        MS. BAILY:  So, for example, paragraph 58.

2        THE COURT:  Wait, let me find the -- somewhere in

3   here I've got it.

4     Okay.  All right.  Proposed TAC, but I don't see any

5   TAC.  This has been mislabeled, I'm sorry.

6        MS. BAILY:  It's Exhibit 8.

7        THE COURT:  Exhibit what?

8        MS. BAILY:  8.

9        THE COURT:  What they told me is the third amended

10  complaint is a brief on appeal.

11       MS. BAILY:  I can read it to your Honor.  I mean

12  that paragraph is short.

13       THE COURT:  No, I want to see if I can find it

14  elsewhere in here.

15       I'm sorry.  Read it to me, please.

16       MS. BAILY:  "Thus by presenting to the Court and

17  signing Google's DJ pleading on September 28, 2020, Google's

18  counsel represented that the factual contentions contained

19  therein had evidentiary support and were based on knowledge,

20  information and belief formed after an inquiry reasonable

21  under the circumstances."

22     And then the paragraphs go on to describe what would be

23  a sufficient investigation in order for Google to have made

24  those representations to the Court.

25     And what I'm saying, your Honor, is the allegations

14

1 here are that Google -- what your order said was:  Look, if

2 Google filed a dec relief complaint, then they obviously

3 looked at the letter that was sent and had knowledge of the

4 patents, because they were able to look and file a dec

5 relief complaint of noninfringement.

6      But knowledge of the patents is insufficient.  What you

7 also have to show is specific intent to infringe, and all

8 that's shown --

9          THE COURT:  How does the plaintiff ever allege

10 that?  No one is going to ever admit that.  So there's --

11 but nevertheless willfulness allegations are allowed all the

12 time.

13      So you're asking them to plead something that's

14 impossible to prove at this stage.

15          MS. BAILY:  I don't believe that's true, your

16 Honor.  Let me give you a hypothetical.

17          THE COURT:  All right.  Explain to me why that's

18 not right.

19          MS. BAILY:  Because take a hypothetical example

20 where a patent holder sends a notice letter and it's met

21 with silence.  And then the patent holder follows up over

22 and over again and gets no response.

23      And finally, the patent holder says:  Hey, we're filing

24 tomorrow because you're still doing what you're doing, and

25 obviously you haven't told us any reason why our allegations

15

1  are unfounded, so we're filing tomorrow.

2      And the accused infringer files a dec relief complaint.

3      Maybe in that hypothetical circumstance, depending on

4  the facts of the case, the patent holder can say they acted

5  with reckless disregard.  They didn't even say anything to

6  us.  They ignored us and they didn't say:  Hey, look at all

7  these noninfringement positions we have or enter into any

8  kind of discussion.

9      And maybe you can draw an inference from that that

10 there was willful infringement.

11     But when an accused infringer comes back immediately

12 and says, "Look, we don't infringe.  It is plainly obvious

13 on the face of these patents," then there is no specific

14 intent to infringe unless you can show otherwise.

15         THE COURT:  All right.  Hold that thought.

16     I want you to come forward on the plaintiff's side.

17 And you don't get to make a speech.  You just get to answer

18 the one question.

19     What Ms. Baily is saying is that, okay, the declaratory

20 relief action proves knowledge -- not proves but is enough

21 to allege knowledge, but you have to go further and allege

22 specific intent to infringe.

23     And where do you allege that?

24         MR. ROBERTS:  Yes, your Honor.  Your order, page

25 four of 13, with respect to willfulness, this order agrees

16

1 that specific intent to infringe be pled with plausibility.

2 This means that knowledge of the patent and knowledge of

3 infringement must be pled with plausibility.

4     So your order specifically said that to plead specific

5 intent with plausibility, you must plead knowledge of

6 infringement and -- knowledge of the patent and knowledge of

7 infringement.

8     And where they filed the DJ action, they had knowledge

9 of the patent and knowledge of infringement.

10          THE COURT:  Wait.  But the DJ action said they did

11 not infringe, so what is your allegation that they had

12 knowledge of infringement?

13          MR. ROBERTS:  Paragraph 63, your Honor, same

14 paragraph.  So if you look, and -- 63 and 65.

15     So this is starting on line 11.  "Rather than cease its

16 infringing activity, switch to an alternate design or

17 request to Sonos that Google ought to be given more time to

18 do the above, Google chose to continue to make, use, sell,

19 offer for sale and import the accused product, and thus to

20 continue with the allegedly infringing activity despite its

21 knowledge of the asserted patent and its knowledge of its

22 alleged infringement thereof."

23     So we specifically allege that they did that based upon

24 their pre-filing investigation.

25     And we went on, your Honor, in paragraph 65:  "Nor has

17

1  Google at any point to date" -- that includes today --

2  "presented an articulable noninfringement or invalidity

3  position."

4        Sonos has asked for Google's noninfringement positions

5  via interrogatory.  We go through on September 7, 2021.

6  Google answered only with a bald assertion that Sonos had

7  not established infringement, and for each independent claim

8  a conclusory statement that Google does not practice each

9  and every claim element.

10        So what she wants is a failure to come forward with

11  plausible infringement contentions.  We have that in this

12  case.

13            THE COURT:  Okay.  Thank you.

14        Ms. Baily, all right, what would you like to say in

15  response?

16            MS. BAILY:  I'd like to say two things, your

17  Honor.

18        First, the paragraphs that were just quoted actually

19  prove my point.  Google doesn't infringe, so Google didn't

20  design around.  Designing around would indicate a knowledge

21  of infringement, but Google doesn't infringe.

22        And with respect to the --

23            THE COURT:  But they allege you infringe.

24            MS. BAILY:  They allege we infringe, but there has

25  to be a specific intent to infringe on Google's part.  If

18

it's the case, your Honor, that every time a party alleges
you infringe, you're willful if you don't change your
conduct, it assumes that there is actual infringement.
There's no room to say in response, "I don't infringe and
let me tell you why you shouldn't bring this complaint."

THE COURT:  But isn't that for -- isn't that --
you fight that out before the jury, don't you?

MS. BAILY:  Well, I guess --

THE COURT:  Under your theory, even if they gave
you a detailed letter explaining why you infringe, then you
would come back, just say, "No, no.  That's not correct.
We're not going to change our product.  We're going to forge
right ahead," and then you would say, "Well, you didn't
plead specific intent.

MS. BAILY:  Well, your Honor, let me say this.
What I'm proposing is a way that your order -- it's
consistent with your order and also makes willfulness the
exception rather than the rule, which is the intent, right?
Willfulness is supposed to be for cases where an accused
infringer acts like a pirate wantonly, as they say, right?

Now, there's no allegation here when Google immediately
understood that it didn't infringe and represented that to
the Court.  And it's detailed in the complaint that we must
have and did have an evidentiary basis for that position.
That is contrary to proving up willfulness.

1    It's the opposite.  It's the same way in which you can

2  rely on an opinion of counsel if you're before the jury.

3  And there aren't -- there may be cases where you can file a

4  dec relief claim and you can say noninfringement and there

5  might still be a viable dispute of fact that can be pled

6  about whether truly there was or wasn't a specific intent to

7  infringe.

8    But this is not that case when all Google has done is

9  say that it doesn't infringe.

10         THE COURT:  All right.  What do you say about the

11  '885?

12         MS. BAILY:  So with respect to the '885 patent,

13  obviously, the timeline of events with respect to that

14  patent is completely different.

15    Google filed its dec relief in September 2020.  Sonos

16  filed its complaint in September 2020.  That happened.  Then

17  the '885 -- or the '855?  Now, I don't know which one it is.

18  But that patent issued in November 2020, so after the dec

19  relief cause of action complaint and Sonos's complaint was

20  filed.

21         THE COURT:  But they gave you five weeks to

22  evaluate it before they moved to amend, and wouldn't that

23  be --

24         MS. BAILY:  Well --

25         THE COURT:  Couldn't the jury decide that was

20

1   enough time?

2          MS. BAILY:  No, because, your Honor, the reason

3   why gave us the amended complaint is because they had a meet

4   and confer requirement under the rules of the Western

5   District of Texas.

6          THE COURT:  But so what?  That still gave you five

7   weeks.

8          MS. BAILY:  They gave us five weeks.  They said --

9   so I'll point you in the record.  It's at docket 39-3.  This

10  was not a "Hey, here's notice," you know, "What do you

11  think?"  This was a "Hey, we are amending our complaint and

12  let me satisfy my local rule obligation to do that."

13      I mean if that was enough, following the rules of the

14  Court to amend your complaint to establish willfulness, that

15  can't be.  I mean --

16          THE COURT:  Why not?  I mean let's just say you

17  looked at it and you said, "My god, we do infringe this one.

18  We'd better change our product."

19          MS. BAILY:  Right, so --

20          THE COURT:  And if you don't do that, why wouldn't

21  that have been --

22          MS. BAILY:  Exactly, exactly.  If that's what we

23  did, then there would be a willfulness claim.  It's all

24  backwards, your Honor.  I mean they are satisfied --

25          THE COURT:  But they are asserting willfulness --

21

1          MS. BAILY:  Right.

2          THE COURT:  -- for '885.

3          MS. BAILY:  Right.  Based on fulfilling a local

4  rule that said that to amend their complaint they had to

5  share it with us and meet and confer first, in the context

6  of litigation already.

7          THE COURT:  Well, you say that like it's shocking,

8  but I'm not so sure that's shocking.

9          MS. BAILY:  Well, it's not shocking, but that's

10  the problem.  Willfulness is alleged in every single case.

11  Willfulness is supposed to be the exception.

12      And it's not a matter that you can't amend later if you

13  find in discovery that there actually is willful conduct.

14  If you're doing discovery of infringement, then you're going

15  to discover things about infringement.  And if there's a

16  case to be made for willfulness, then you move to amend.

17      But this process of just every case is willful because

18  we're following the local rules and we have to send you the

19  amended complaint, or you know, we're going to say we're

20  going to file tomorrow and create a willfulness claim by

21  sending a letter and saying, "Hey, we're going to file

22  tomorrow."

23      I mean that's I thought what sort of your order and the

24  general thrust of the cases have been trying to rein in, and

25  I think appropriately so, given the high standard for

22

1 willfulness.

2          THE COURT:  All right.  You get to make one more

3 point, and then I've got to go to the next case.

4          MS. BAILY:  Okay.  So my last point is on the

5 indirect infringement issue.

6      So you'll see that what Sonos is done in its amended

7 complaint is double down basically on what your Honor said

8 was not appropriate.

9      So in your order, your Honor said you're looking at the

10 apps as a whole when you're looking at whether there are

11 substantial noninfringing uses.  And that's not proper

12 because the app as a whole is YouTube, but the function is

13 casting YouTube onto a second device.  That's not all of

14 YouTube as a feature that can be added or removed.

15      And so what your Honor said in your order was go back

16 and look at the features.  And what Sonos has done is

17 doubled down on the app side and added a lot of allegations

18 on the app as a hole.

19      And then in the alternative, it argues about the

20 feature, but all it says with respect to the feature, this

21 alternative argument, is just a statement that the accused

22 features cannot be used for purposes other than

23 infringement.

24      It's the same conclusory statement that you said was

25 too conclusory in your order with respect to the apps.  And

23

1  so if you look, for example, at paragraph 146, you will see

2  that the only time that an allegation is made with respect

3  to the feature, the component, as adequately pled, is just

4  the same conclusory legal allegation that your Honor said

5  was too conclusory in your order.  And those paragraphs are

6  112, 146, 181 and 214.

7      So in our view, with respect to indirect infringement

8  for this additional reason, the third amended complaint has

9  not cured the problem.

10         THE COURT:  Okay.  Thank you.

11      I'll give you one minute for rebuttal.

12         MR. ROBERTS:  Thank you.

13      None of the arguments she made today are in their

14  brief.

15      Two --

16         THE COURT:  What are you talking about?  Is that

17  true?

18         MR. ROBERTS:  Your Honor, look at their futility

19  argument.  I talked you through the three futility arguments

20  they made.  They didn't make any argument about specific

21  intent.  They didn't make any argument about indirect

22  infringement.  It's not in their opposition.

23      Two, they said willfulness is only for rare cases where

24  you act like a pirate.  That's a misstatement of the law.

25  We briefed this the last time around.  This was Halo and I

24

1  believe <u>Eko Brands</u>.  The piracy applies -- comes in once the

2  Court has made a determination that the jury comes back with

3  willfulness and the Court is looking at exceptional

4  misconduct, at that point the Court asks the exceptional

5  misconduct case question as part of the decision whether or

6  not to award attorneys' fees.

7          So she misstated the law.

8          And then three, what is the purpose of the meet and

9  confer requirement?  The purpose of the meet and confer

10  requirement is the same as the purpose of cease and desist,

11  which is we don't want people coming into court and just

12  filing these things.  We want people to give advance notice.

13          And the local rules do not require us in Texas to give

14  them our contentions.  So when we sent them this, they said

15  part of the meet and confer requirement, we went above and

16  beyond the meet and confer requirement and gave them

17  specific contentions as to infringement, which were not

18  required.

19          And that created knowledge of the way in which we're

20  claiming that they infringed, which they then ignored for

21  five weeks.

22          Finally, for indirect infringement, your Honor, we did

23  not just do what she said we did.  And if you look

24  specifically, we explained why the app is an infringement

25  component.

25

1    Very briefly, the claims of this patent are directed to

2 a device which is capable of performing certain features.

3 The app is a piece of software that gets loaded on the

4 device.

5    There is no other purpose for the app other than to

6 load it on a device.  And once you load the app on the

7 device, between the device and the app you have created an

8 infringement system.

9    So we specified that the app is the accused component,

10 that that component has no purpose other than to be loaded

11 on the device, and that once you have done that, you've

12 created an infringing component.

13    And that is exactly what the Court told us we had to

14 do, which is explain why the thing that we were pointing to

15 had no alternative feature.

16    And then we went on and made the same argument for the

17 cast functionality itself in the alternative.  So we

18 explained it with respect to the accused component, which is

19 software, and then we explained it again for the

20 particularly accused function within that software.

21    We've done it at two levels.

22    Thank you.

23    THE COURT:  All right.  I don't have a ruling just

24 yet.  I am in the process of transitioning this entire case

25 to a different law clerk, and I need some assistance from

26

1  that new law clerk to help me with these issues.

2      Good luck to both sides.  Thank you.

3          MR. ROBERTS:  Can I ask a brief scheduling

4  question, your Honor?

5          THE COURT:  I don't know, what's your question?

6          MR. ROBERTS:  My understanding is you have a

7  criminal trial going on next week.  And we also have summary

8  judgment scheduled for the morning.  Is that something you

9  anticipate moving to the afternoon or bumping out --

10         THE COURT:  I'll have to move it for sure.  I

11 don't know the answer.  I hadn't even thought -- we'll have

12 to discuss when we're going to do that.

13         MR. ROBERTS:  Thank you, your Honor.

14         THE COURT:  Thank you for bringing that up.  All

15 right.

16     Okay.  Thank you.  Good luck to both sides.

17     (Proceedings adjourned at 8:29 a.m.)

18

19

20

21

22

23

24

25

27

1                    CERTIFICATE OF TRANSCRIBER
2

3       I certify that the foregoing is a true and correct
4 transcript, to the best of my ability, of the above pages of
5 the official electronic sound recording provided to me by
6 the U.S. District Court, Northern District of California, of
7 the proceedings taken on the date and time previously stated
8 in the above matter.

9       I further certify that I am neither counsel for,
10 related to, nor employed by any of the parties to the action
11 in which this hearing was taken; and, further, that I am not
12 financially nor otherwise interested in the outcome of the
13 action.

14
15
16           Echo Reporting, Inc., Transcriber
17               Thursday, June 2, 2022
18
19
20
21
22
23
24
25