Pages 1 - 34

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable William H. Alsup, Judge

```
GOOGLE LLC,                     )
                                )
          Plaintiff,            )
                                )
  VS.                           )  NO. C 20-06754 WHA
                                )
SONOS, INC.,                    )
                                )
          Defendant.            )
_____)
                                )
SONOS, INC.,                    )
                                )
          Plaintiff,            )
                                )
  VS.                           )  NO. C 21-07559 WHA
                                )
GOOGLE LLC,                     )
                                )
          Defendant.            )
_____)
```

San Francisco, California
Thursday, December 8, 2022

**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES**:

For Plaintiff:

                   QUINN, EMANUEL, URQUHART & SULLIVAN LLP
                   50 California Street, 22nd Floor
                   San Francisco, California 94111
             BY:   **MELISSA J. BAILY, ATTORNEY AT LAW**
                   **JOCELYN MA, ATTORNEY AT LAW**

         **(APPEARANCES CONTINUED ON FOLLOWING PAGE)**

REPORTED BY:  Ana Dub, RDR, RMR, CRR, CCRR, CRG, CCG
              CSR No. 7445, Official U.S. Reporter

```
 1   APPEARANCES VIA ZOOM:   (CONTINUED)

 2   For Plaintiff:
                          QUINN, EMANUEL, URQUHART & SULLIVAN LLP
 3                        865 South Figueroa Street, Tenth Floor
                          Los Angeles, California 90017
 4                BY:  NIMA HEFAZI, ATTORNEY AT LAW

 5

 6   For Defendant:
                          ORRICK, HERRINGTON & SUTCLIFFE
 7                        1000 Marsh Road
                          Menlo Park, California 94025
 8                BY:  BAS de BLANK, ATTORNEY AT LAW

 9
                          ORRICK, HERRINGTON & SUTCLIFFE LLP
10                        51 West 52nd Street
                          New York, New York 10019
11                BY:  JOSEPH KOLKER, ATTORNEY AT LAW

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

 1    <u>Thursday - December 8, 2022</u>                                <u>8:31 a.m.</u>

 2                        P R O C E E D I N G S

 3                            ---o0o---

 4        **THE CLERK:**  Calling Civil Action 20-6754 and related

 5    cases, Google LLC vs. Sonos, Inc.

 6        Counsel, please approach the podium and state your

 7    appearances for the record, beginning with counsel for

 8    plaintiffs.

 9        **MS. BAILY:**  Good morning, Your Honor.  Melissa Baily for

10    Google.  With me is Nima Hefazi and a junior associate,

11    Jocelyn Ma.

12        **THE COURT:**  Great.  Welcome to all of you.

13        And?

14        **MR. de BLANK:**  Good morning, Your Honor.  Bas de Blank

15    with Orrick, Herrington & Sutcliffe on behalf of Sonos; and

16    with me, who will argue, is Joseph Kolker, who's a junior

17    associate.

18        **THE COURT:**  Great.  Welcome to all of you.

19        So now, this is a motion to amend invalidity contentions.

20        **MS. MA:**  That's right, Your Honor.

21        **THE COURT:**  You get to go first.

22        **MS. MA:**  Thank you.

23        Google's request to amend its invalidity contentions

24    should be granted because it's really a straightforward

25    application of this district's Patent Local Rule 3-6.  And what

1    that rule states is when -- there's good cause to amend

2    contentions when the Court's claim construction differs from

3    what the moving party's proposal was.  As long as that party

4    moves diligently, then good cause is found.

5         The case law in this district uniformly states that the

6    diligence requirement is met when a party moves within 30 days

7    of that new construction.  Some courts have actually held a

8    longer period, like three months demonstrates diligence; but 30

9    days is a bright-line rule.

10        **THE COURT:**  Wait a minute.  Didn't I say 28 days at one

11   point?

12        **MS. MA:**  That's right, Your Honor.  I think your case

13   management order with respect to backup contentions does

14   require 28 days.

15        **THE COURT:**  Okay.

16        **MS. MA:**  That's somewhat of a different scenario, which I

17   can address later on.

18        But this Court, on August 2nd, adopted a construction for

19   the term "playback queue" that was different from either

20   Google's or Sonos's proposals.  And accordingly, Google then

21   diligently prepared a supplemental claim construction chart to

22   provide more details about certain prior art and then moved to

23   amend 28 days later, which, as you mentioned, is consistent

24   with your case management order.  And so this 30-day

25   bright-line rule should really apply, and Google should be

1  granted leave to amend.

2      Now, Sonos's primary argument seems to be that the Court's

3  construction was really not different from Google's proposal,

4  minimally different.  I think they use terms like "nearly word

5  for word" or "substantively the same."

6      The first point on that, that's just facially false when

7  you take a look at the Court's ultimate construction and

8  Google's proposed construction.  There are clear limitations

9  that Google proposed that the Court decided not to adopt.

10      But more importantly, Sonos's assertion that the Court's

11  construction has to be materially different or drastically

12  different in order for it to grant Google's request to amend

13  just has no support in the case law in this district.  Judges

14  have actually explicitly rejected the notion that there is some

15  heightened requirement that the Court's claim construction had

16  to be unforeseen or so different before a party can move to

17  amend.

18      And I would direct Your Honor to a couple cases that

19  Google cites in its reply on pages 4 and 5; specifically,

20  *Impinj v. NXP* and *Technology Properties*.  In both of those

21  cases, the court rejected this heightened standard.

22      And Sonos knows this, and it knows this because it

23  actually argued this exact issue when it was moving to amend

24  its infringement contentions shortly before the patent

25  showdown.  There, Sonos argued that it didn't matter that the

1    constructions were foreseeable or covered by Sonos's own

2    construction of a playback queue.   Instead, Sonos told

3    this Court it's a 28 day bright-line rule; no further analysis

4    is required.

5         So it would really be fundamentally unfair for Sonos to

6    argue that it can amend under a bright-line rule when it's

7    favorable to them; yet attempt to hold Google to a heightened

8    standard that really finds no support in the case law.

9         And the last thing I'll touch upon, Your Honor, is that

10   Sonos hasn't identified any prejudice.

11        **THE COURT:**  Could I go back and ask a procedural question

12   here?

13        **MS. MA:**  Sure.

14        **THE COURT:**  I have a prior -- back in 2019 -- no,

15   actually, I don't think it was 2019.   It was probably 2020.

16   But, yeah.   2020, I had a case called *Fluidigm vs. IonPath*.

17   Did you read that decision of mine?

18        **MS. MA:**  Yes.

19        **THE COURT:**  Okay.   So what I dealt with there was what we

20   call backup contentions.

21        **MS. MA:**  Right.

22        **THE COURT:**  And I think what I held there was, once you

23   get notice of the backup -- I'm sorry -- once you get notice of

24   the other side's contentions, claim construction contentions,

25   that you have 28 days to supply the other side with your backup

1    contentions in the event that it turns out they're correct.

2        And here's the problem I was dealing with, which is that

3    each side would set forth their primary contentions, but not

4    set forth any backup contentions.  And then months, even years

5    would go by.  And then eventually, the judge would say one side

6    is right or one side is wrong; and then the losing side would

7    say, "Okay, Judge, now we get to start all over again.  Here

8    are our contentions on that."  So these cases go on forever and

9    run up enormous cost.

10       So what I tried to say in the *Fluidigm* case was:  Look,

11   you know what the other side is arguing.  What is your

12   invalidity contention going to be in that event, in the event

13   that they're right?  So that everyone knows, and both sides

14   have to do that.

15       Now, I think I also addressed in that, what happens

16   when -- let's see -- what if the judge adopts something you

17   could not have foreseen?  Then I said you have 28 days from

18   that point to amend your -- to move to amend.  So there is that

19   possibility that the judge throws a curve ball no one could

20   have foreseen.

21       So what happened in this case?  Did you have backup

22   contentions?  In this case, were there backup contentions?  Or

23   is this the first time you're trying to put in backup

24   contentions?

25       **MS. MA:**  So, Your Honor, our infringement -- excuse me --

1  our invalidity contentions addressed both Google's proposed

2  construction of the term "playback queue" as well as Sonos's

3  construction, although Sonos's proposal was that no

4  construction was necessary and that it should be given the

5  plain and ordinary meaning.

6       And so what Google attempted to do, given that sort of

7  lack of guidance, is look at Sonos's infringement contentions

8  and what --

9       **THE COURT:**  Sonos's what?

10      **MS. MA:**  -- infringement contentions and what it was

11  accusing of infringing its patent, and make a good faith effort

12  to address, you know, what we thought Sonos was interpreting as

13  "plain and ordinary meaning."

14      And so we did, in fact, have contentions that would have

15  addressed or attempted to address Sonos's construction.  Of

16  course, in this case, the Court opted not to adopt either

17  construction.  And I think even under *Fluidigm*, we did move

18  within 28 days of sort of a construction that neither party

19  expected.

20      **THE COURT:**  All right.  That's what I wanted to hear.  I'm

21  not sure I agree with you yet, but I -- so what you're telling

22  me is that I threw you a curve ball and you didn't anticipate

23  it, neither side anticipated it; and therefore, you get to

24  amend.

25      All right.  I've got another question for you.  I'm not

1  saying that you get to amend yet.  Maybe you don't.  But how

2  drastically different are these new invalidity contentions

3  compared to the ones you had before?

4      **MS. MA:**  These invalidity -- these proposed amendments are

5  very narrow.  They don't actually disclose any additional prior

6  art or devices.  It's the same prior art that's been disclosed,

7  which is YouTube Remote, which I'm sure Your Honor is very

8  familiar with from the previous summary judgment briefing.

9      But what Google is attempting to amend to include is

10  additional information and source code citations for a feature

11  called Party Mode.  And I can go into more detail about

12  Party Mode, but Party Mode is a feature that was not at issue

13  for the other patent, for the patent showdown, and Party Mode

14  does read on the claims of the '033.  And so that's what we're

15  attempting to amend now.

16      **THE COURT:**  So you're saying it's the same prior art but

17  different parts of the prior art?

18      **MS. MA:**  Correct.  It's a completely different operation

19  mode.

20      **THE COURT:**  Okay.  Hold all that thought.

21      **MS. MA:**  Okay.

22      **THE COURT:**  Tell me why we shouldn't allow amendment.  Go

23  ahead.

24      **MR. KOLKER:**  Good morning, Your Honor.

25      On diligence, I just want to note that the parties'

1   dispute here is not principally about how much time is too much

2   time.  It's really about what is the proper trigger date under

3   Your Honor's ruling and under the patent local rules.

4        Google's position is that because the Court didn't grant

5   precisely the claim construction proposed by Google or by

6   Sonos, Google didn't have any obligation to amend its

7   contentions until the Court issued that ruling.

8        We think that's wrong for at least three reasons.  And I

9   would just note that we're not asking for a heightened

10  standard.  All of our arguments are about the facts of this

11  case and, I think, specific to this case.

12       So the first reason we think that's wrong is that we don't

13  think Google has really explained why the Court's claim

14  construction actually changed the *status quo* in any meaningful

15  way.  The Court's claim construction ruling on "playback queue"

16  did not go outside the bounds established by either party's

17  proposal.  Sonos proposed a very broad construction, and Google

18  proposed a narrower construction.  And the Court didn't go

19  outside of that but, instead, landed somewhere in the middle;

20  we argue closer to Google.

21       But either way, Google agrees with us.  On page 1 of

22  Google's reply, Google states in the first paragraph that (as

23  read):

24            "The Court's ruling on claim construction

25       materially broadened Google's proposed construction

1    and materially narrowed Sonos's construction."

2        So every element in the claim construction ruling that

3    the Court adopted comes either from Google's proposed

4    construction or from Sonos's.  So we think that every aspect of

5    the claim construction ruling was governed by Google's

6    obligations under both patent local rule and its obligations to

7    provide backup contentions.

8        So Google has yet to articulate any reason why

9    YouTube Remote wouldn't invalidate the '033 patent under either

10   party's original proposed claim construction but would under

11   the Court's.

12       **THE COURT:**  Say that again.  Say that last sentence again.

13   Google has not?

14       **MR. KOLKER:**  In other words, Your Honor, what I'm trying

15   to say is that Google has not explained why Party Mode would

16   invalidate the patent under the new ruling, where it wouldn't

17   have done so under either party's proposed construction.

18       And I would note that they have conceded, as I think they

19   have to, that our ruling -- excuse me -- our proposed

20   construction was broad in the extreme compared to theirs.  So

21   it's hard for us to understand --

22       **THE COURT:**  But is it true that you just said "plain and

23   ordinary meaning"?

24       **MR. KOLKER:**  Your Honor, in the disclosure, that's my

25   understanding.

1          The parties then briefed claim construction in summary

2    judgment.  In the process of the -- in the claim construction

3    process, it became clear to both parties what are the moving

4    disputes.  And all of the differences between the claim

5    construction ruling and Google's proposal were either

6    non-substantive or tracked disputes that Sonos raised with

7    Google in that process.

8          **THE COURT:**  Keep going.

9          **MR. KOLKER:**  Thank you, Your Honor.

10         We think there's a second reason that Google has not shown

11   diligence, and that is because Google was on notice of Sonos's

12   proposed construction well before the Court's ruling on that

13   construction for the reasons I just explained and, obviously,

14   they were aware of their own proposed construction as well.

15   But in both cases, Google declined to amend its invalidity

16   contentions until after this claim construction ruling.

17         We're not asking for a heightened standard.  We're just

18   saying that although the timing aspect of the rule is a bright

19   line, it's not a mechanical application.  You know, if you

20   change one word non-substantively, it's hard to see why, under

21   the spirit and purpose and text of the local rules, Google

22   should get to amend again.

23         **THE COURT:**  Well, but didn't I delete something about the

24   client's -- I deleted some phrase from Google's proposal,

25   something to the effect whether or not the client would

1    designate.  How did I change it?

2        **MS. MA:**  Your Honor, you eliminated the limitation that

3    the queue had to be selected by the user.

4        **THE COURT:**  Right.  So that was not just a small point.

5        **MR. KOLKER:**  Your Honor, thank you for that question.

6        I agree with you that to the extent that Google identifies

7    any material change, that's any change with a nexus to what

8    they're now trying to amend in, it is that limitation in

9    question.

10       So Google discusses this at page 6 of its reply, arguing

11   that the Court broadened Google's construction of

12   "playback queue" so that the content didn't have to be selected

13   by the user.  So as a result, Google seems to suggest now that

14   "playback queue" is broad enough to cover playback queues that

15   included content selected by entities other than the user.  So

16   what, then, is the entity other than the user that Google

17   points to here?  It seems to be a group of users.

18       And that's hard for us to understand why they couldn't

19   have served these invalidity contentions long ago, you know,

20   either in response to our "plain and ordinary meaning"

21   disclosure -- proposed construction in the disclosure, or after

22   the whole process of claim construction where we made clear

23   that we did not think that that was a proper limitation.

24       But all of that aside, we haven't heard any explanation

25   from Google as to why Party Mode wasn't already viable, among

1  other things, because a user already meant one or more users.

2  And if you look at Google's reply, at page 2, they themselves

3  explain that Party Mode, quote, allows a user to invite one or

4  more guests.  So that description by Google itself shows that

5  removing "by the user" has no impact.

6      **THE COURT:**  Can I interrupt here?

7      Explain to me on the Google side.  Counsel says you have

8  not given us any --

9      **MS. MA:**  Your Honor --

10     **THE COURT:**  Wait, wait, wait.  Let me finish my point, and

11  then you can --

12     **MS. MA:**  Apologies.

13     **THE COURT:**  Counsel says you have not explained in your

14  brief how you would win under this new construction.  Go ahead.

15  In other words, why your new invalidity contention would be

16  successful.

17     **MS. MA:**  Your Honor, that's just factually incorrect.

18  Google did explain that in its brief, but I can go ahead and

19  address that right now.

20     Google's proposal for "playback queue" was that multimedia

21  had to be selected by the user, the singular user.  So what

22  Google argued is that the user has to directly populate and

23  manage the queue, the queue in YouTube Remote, which is stored

24  in the cloud with respect to the Party Mode feature.

25     And Google's proposed amendments relate to this -- to

1　the Court's modified scope because now "the user" is not the

2　only one who can control and manage the queue.  A group of

3　users, any number of users could do so.  And that opened the

4　door for Google to assert Party Mode as prior art that

5　invalidates the '033 patent.

6　　　**THE COURT:**  The word "party" -- I'm curious -- is that

7　used like in party line, like in the old days where you had a

8　party line telephone; or is it like a party, like a Christmas

9　party?  What does the word "party" mean?

10　　　**MS. MA:**  Your Honor, I wasn't involved in the

11　nomenclature, but my understanding is that it's a party as in:

12　We are having a party, and we can all manage a playlist and add

13　to the playlist and play the songs we want to play, and I can

14　invite you to my party.

15　　　**THE COURT:**  And then I could designate songs?

16　　　**MS. MA:**  Correct.

17　　　**THE COURT:**  Okay.  Now, is it your -- is it really true

18　that if you are allowed to make this contention, then the

19　patent is invalid -- I'm sorry -- the claim is invalid?  Is

20　that --

21　　　**MS. MA:**  That's our position, yes, because if --

22　　　**THE COURT:**  But is that just your position, or is it

23　really true?  I mean, I would hate to turn down a winning

24　point; but I hear all the time "That's our position" but they

25　don't really believe it.

1     **MS. MA:**  I believe it, Your Honor.  It's true.

2     **THE COURT:**  You do?  Okay.

3     **MS. MA:**  If I could just address Sonos's point that it's,

4 you know, a slight modification.

5     During the party's claim construction briefing, this

6 limitation that Google proposed by the user for playback is

7 something Sonos vehemently opposed; and that's because part of

8 its infringement allegations include accusing features where

9 the queue is chosen by a server, not a user.  And so that's why

10 Sonos fought so hard to keep this limitation out of this

11 construction.  And it did.  It was successful.

12     Now Sonos is turning around and saying:  This is a minor

13 modification.  Google shouldn't be able to amend its invalidity

14 contentions because of it.  It's trivial.

15     If it's trivial, then we would ask that this limitation be

16 put back into the claim construction, and then Sonos would have

17 to answer as to, you know --

18     **THE COURT:**  All right.  Let me ask Sonos.

19     Is it true that it's part of the same prior art, this

20 YouTube?

21     **MR. KOLKER:**  Your Honor, we agree that this prior art is

22 prior art that Google has relied on throughout this case.

23     **THE COURT:**  What is your prejudice -- if I were to allow

24 this, what would be the prejudice to your side?

25     **MR. KOLKER:**  Yes, Your Honor.  And I will address your

1    prejudice question first, and I would just ask if I might,

2    after that, just note two more brief points on diligence.

3            **THE COURT:**  All right.  Go ahead.

4            **MR. KOLKER:**  Thank you, Your Honor.

5            So, Your Honor, if Google is permitted to amend here, we

6    will be prejudiced, first, because the entire purpose of the

7    patent local rules and this Court's showdown procedure is to

8    allow parties to plan discovery and narrow disputes as cases

9    approach trial.

10           We will also be prejudiced because at the showdown motion

11   for summary judgment briefing, Google relied extensively on

12   broad, sweeping language and arguments regarding the mutual

13   exclusivity of local playback queue and remote playback queue

14   in Google's products, and we have various illustrations of that

15   at pages 4, 5, and 19 of our opposition brief.  And if Google

16   had disclosed this theory at any point when we say that they

17   should have, which is either after our claim construction

18   disclosure or during the claim construction briefing when the

19   disputes between the parties over this term and others

20   crystallized, we would have had very different arguments at our

21   disposal in the summary judgment briefing on the '615 patent.

22           At a minimum, their arguments now show that Google's

23   products can have multiple queues, something that Google

24   denied.

25           So -- and I would just note that the Court's ruling on

1    summary judgment relied on this idea that there are not two

2    queues but, instead, only that the cloud queue runs the show.

3    And I think that was a key holding supporting the Court's

4    ruling on summary judgment of infringement of the '615 patent.

5          **THE COURT:**  Let me stop you there.  If I were to allow

6    this, is it your thought that you would bring a new motion for

7    summary judgment?

8          **MS. MA:**  A new motion for summary judgment?

9          **THE COURT:**  Look, I don't have -- I got -- see all these

10   lawyers back there?  I don't want to go through summary

11   judgment again.  We're going to go to trial.

12         So is it your thought that you would get a new shot at

13   summary judgment?

14         **MS. MA:**  Well, Your Honor, the previous round of summary

15   judgment related to the patent showdown only.  So that related

16   to only the '615 patent.  But in the main trial, we actually --

17         **THE COURT:**  Isn't that what we're talking about here?

18         **MS. MA:**  No.  This is a separate patent that wasn't part

19   of the patent showdown.

20         You've already invalidated the claim that was at issue in

21   the patent showdown.

22         We have a separate set of deadlines, a separate round of

23   summary judgment for the other remaining patents that weren't

24   at issue during the patent showdown.

25         **THE COURT:**  Oh, I see.  All right.  I thought I held that

1   Google infringed.

2       **MS. MA:**  That was for a separate patent, the patent that

3   Sonos chose.

4       **THE COURT:**  I see.  For the one that you selected, I said

5   it was invalid?

6       **MS. MA:**  Correct.

7       **THE COURT:**  For the one that you selected, I said you were

8   correct and there was infringement?

9       **MR. KOLKER:**  That's correct, Your Honor.

10      **THE COURT:**  All right.  But on the one that I said there

11  was infringement, is it your idea that you would have a new

12  round of summary judgment on invalidity?

13      **MS. MA:**  No, Your Honor.  You've already invalidated that

14  particular claim.

15      **THE COURT:**  I have not, have I?  Have I done that?

16      **MR. KOLKER:**  So, Your Honor, if I can briefly try and

17  explain.  The ruling on summary judgment that the Court issued

18  that was adverse to us was a ruling that the '615 patent was

19  both invalid and non-infringed.

20      And so I understood Your Honor to be asking whether Google

21  would file --

22      **THE COURT:**  But what was the one that I ruled in your

23  favor on?

24      **MR. KOLKER:**  That related to a different -- a related, but

25  different set of technology called the zone scenes, which is

1  the '885 patent.  And we don't see a direct implication between

2  this motion and the '885 summary judgment.

3       **THE COURT:**  Which one then does this relate to?

4       **MS. MA:**  The '033 patent, which is a continuation of the

5  '615 patent.

6       **THE COURT:**  So something for which there has been no

7  motion practice?

8       **MS. MA:**  Correct.

9       **THE COURT:**  Okay.

10      **MS. MA:**  Correct.

11      **THE COURT:**  I was wrong about -- I'm glad you straightened

12  me out on that.

13      Okay.  Go ahead.  I interrupted you, and you had more

14  points to make.

15      **MR. KOLKER:**  Thank you, Your Honor.  I just have one brief

16  point on prejudice and two very brief points on diligence.

17      The last thing I want to say on prejudice is that we

18  didn't take discovery on these new -- this new invalidity

19  argument with respect to prior art that's been in the case all

20  along because it wasn't in the case.  And a party merely saying

21  "We would like to amend the invalidity contentions" when we

22  think it's improper under the rules doesn't presumptively put

23  it into the case.  And so as a result, we didn't take that

24  additional discovery that we would have needed to if it were in

25  the case.  So that's the last reason that I think that we have

 1    prejudice here.

 2         **THE COURT:**  Has the discovery period now closed?

 3         **MR. KOLKER:**  It has, Your Honor.  Fact discovery,

 4    Your Honor.

 5         **THE COURT:**  All right.  What do you say to that point that

 6    they were deprived of the opportunity to take discovery?

 7         **MS. MA:**  Sure, Your Honor.

 8         We brought this motion back in August, August 30th.  Fact

 9    discovery just closed November 30th.  And so Sonos has been on

10    notice of our proposed amendment for three months.  And

11    YouTube Remote source code was provided to Sonos in

12    December 2021.  So in the last three months, Sonos has had

13    every opportunity to go and review that source code.  It hasn't

14    changed.  Sonos has, in fact, gone to our offices to review it.

15    Sonos has requested printouts of that source code and received

16    those.

17         And so the idea that Sonos was deprived of the opportunity

18    to take discovery on these proposed amendments is false.

19         **THE COURT:**  What do you say to that?

20         **MR. KOLKER:**  Your Honor, there were -- there are follow-up

21    depositions we would ask the Court to allow us to take of

22    engineers who have already been deposed and who have -- who we

23    would have follow-up questions for them.

24         It is true that we have not asked to redepose them because

25    we didn't think that these invalidity arguments were properly

1    in the case yet.  It's also true that Google has not proffered

2    them to us by saying:  Here are the dates on which they're

3    available.  It's my understanding that at least one of the

4    engineers is in Europe, in a different time zone.  So there are

5    some logistical issues that, you know, require the parties'

6    cooperation.

7         **THE COURT:**  Well, this would be witnesses with YouTube or

8    witnesses with Google?

9         **MR. KOLKER:**  Your Honor, I'm not prepared to answer that

10   question, but perhaps my friend on the other side.

11        **MS. MA:**  Sure.  The previous witnesses who were deposed on

12   YouTube Remote are Google engineers who worked on the

13   YouTube Remote or know about the YouTube -- how the

14   YouTube Remote product works.

15        **THE COURT:**  How do they know?  Is that part of Google?  Is

16   that right?

17        **MS. MA:**  Yes.  Yeah, YouTube Remote is a Google product,

18   yes -- or, yeah.

19        **THE COURT:**  I thought YouTube was a different company.

20   It's now part of Google?

21        **MS. MA:**  Yes.  I think it has been since maybe the early

22   2000s.

23        **THE COURT:**  Well, I'm not -- I do use Google.  I don't use

24   YouTube, very often anyway, unless I want to hear Johnny Cash,

25   I might.  But I don't have an app.

1       All right.  What else do you -- I'll give each of you one

2   last chance to say whatever you want.

3       **MR. KOLKER:**  Thank you, Your Honor.  If I may, I just want

4   to close with two brief additional points on diligence.  One of

5   them -- I'm sorry, Your Honor.  Just one last point.  And

6   I think that this highlights the question that you just asked,

7   which is whether YouTube it part of Google in whatever form it

8   is.

9       I think that this case -- this motion might be very

10  different, and some of the case law that Google cites reflects

11  different results in certain cases had this prior art been

12  prior art that Google did not have access to for the entirety

13  of this case because it is its own prior art.  And so that, for

14  me, is why it is particularly hard for me to understand,

15  especially once Sonos made clear that we thought this was

16  the -- this term required the broadest possible construction

17  and once the parties, you know, briefed the specific disputes,

18  including the by-the-user limitation that Google proposes, why

19  Google could not have been prepared to conform its invalidity

20  contentions to both parties' proposed construction.

21      And so, I mean, I can't tell you whether Google didn't

22  investigate whether YouTube Remote invalidated under both

23  parties' proposed constructions or whether it did and made a

24  strategic decision not to raise this; but either way, I think

25  that shows a lack of diligence.

1          **THE COURT:**  Okay.  You get the last word.

2          **MS. MA:**  Thank you, Your Honor.

3          I want to clarify one thing that counsel said, which is

4    the entire point that Google is engaging in gamesmanship

5    because we're accusing the same functionality that we said was

6    a local playback queue and now we are saying that same

7    technology is a remote playback queue.  That's just -- that's

8    completely false.  Like I said before, it's an entirely

9    different feature.

10         **THE COURT:**  When are the expert reports due that relate to

11   this issue?

12         **MS. MA:**  Opening expert reports were due November 30th,

13   and Sonos will have a chance to respond to those by

14   December 23rd.  And that's the first time Sonos will need to

15   address this -- these proposed amendments.

16         **THE COURT:**  Does your expert rely upon this YouTube

17   feature, Party feature?

18         **MS. MA:**  Yes.  Our expert did, in fact, include that in

19   his expert report, his opening expert report.

20         **THE COURT:**  All right.  Okay.  I interrupted you.  Please

21   finish.

22         **MS. MA:**  Right.

23         So as I was saying, there's really going to be no

24   discussion of Party Mode in the '615 summary judgment briefing,

25   and so there's really no inconsistency here.

1      The fact that YouTube Remote uses a remote playback queue

2   in one mode and a local playback queue in a different mode

3   really doesn't change the fact that -- you know, it doesn't

4   change the infringement -- the Court's reasoning on

5   infringement or on invalidity.

6      The second thing I wanted to address is the idea that --

7      **THE COURT:**  I'm still -- something is -- you say that this

8   is not related to the summary judgment motions that I ruled on

9   in the past; but on the other hand, you say that it was my

10   summary judgment claim construction that prompted this motion.

11   That's the part I'm not tracking on.  So what am I missing

12   here?

13      **MS. MA:**  Your Honor, I think the distinction is that the

14   summary judgment order -- in the summary judgment order, you

15   construed the term "playback queue."  That term is in both the

16   '615 patent and the '033 patent.  So that construction would

17   be -- would carry over.

18      But what Sonos is saying is they are prejudiced because we

19   accuse the same technology as you held invalidated the '615

20   patent as now also invalidating the '033 patent, even though

21   one relates to a local playback queue and one relates to a

22   remote playback queue.

23      But the fact of the matter is, Google is not contending

24   that the exact same functionality is both.  They are different

25   functionalities operating in different modes.

1    **THE COURT:**  On the one where I made this claim

2    construction on summary judgment, what patent number was that?

3    **MS. MA:**  '615.

4    **THE COURT:**  And who won that motion?

5    **MS. MA:**  Google did.

6    **THE COURT:**  You won that motion, even though I ruled

7    against you on the claim construction?

8    **MS. MA:**  Correct.

9    **THE COURT:**  How could that be?  If you lost claim

10   construction, how did you manage to win?

11   I can't remember well enough.  So some day I'll be back

12   into it and I'll remember.

13   But, so you're telling me that I said:  I disagree with

14   Google on its claim construction is broader than that; but,

15   nevertheless, Google wins?  That's what I said?

16   **MS. MA:**  Yes.

17   **THE COURT:**  Is that right?

18   **MS. MA:**  Yes.

19   **MR. KOLKER:**  Your Honor, if I may.

20   **THE COURT:**  Wait.  Just say "yes" or "no" first, is that

21   right?  And then you can explain.

22   **MR. KOLKER:**  I'm sorry, Your Honor.  The question was?

23   **THE COURT:**  The question is:  Where this claim

24   construction of mine came up was the '615; right?  Did you win

25   on that one or lose?

1    **MR. KOLKER:**  We lost on infringement and invalidity, and

2    there was a mixed result on claim construction.

3        **THE COURT:**  Wait.  You lost on infringement and lost on --

4    well, then how could -- if you lost on everything, how did

5    you -- it doesn't matter that you won on claim construction;

6    right?

7        **MR. KOLKER:**  We're not arguing that it does, Your Honor.

8        **THE COURT:**  All right.  So is that case now out of the

9    case?

10       **MR. KOLKER:**  That patent is now out of the case,

11   Your Honor.

12       **THE COURT:**  So I held that that patent was invalid?

13   **MS. MA:**  Correct.

14       **THE COURT:**  And I also held it was not infringed?

15   **MS. MA:**  That's correct.

16       **THE COURT:**  So that was the one you put in play?

17   **MS. MA:**  Right.

18       **THE COURT:**  All right.  So that case is out.

19       But the same term applies in some other of the

20   multitudinous -- the people in the audience don't understand

21   this.  There are hundreds of these patents.  Maybe that's an

22   exag- -- how many are there?  How many?  Three or four?  How

23   many patents are there in this case?

24       **MS. MA:**  There were four.  Now there are three.

25       **THE COURT:**  All right.  Four.

1    So you can't imagine the headaches.  Each one of these has

2  many claims.  It's very hard for the poor judge to keep it

3  straight.

4    Okay.  So you won; you won.  And what you're saying is

5  that the way I construed the patents, even though it was not

6  adopting your position, you won anyway?

7    **MS. MA:**  Right.

8    **THE COURT:**  And therefore, since this has implications for

9  other patents downstream, you want to amend?

10   **MS. MA:**  Correct.

11   **THE COURT:**  All right.  Have you each -- I think I got it

12  straight for a few seconds.  Okay?

13   All right.  Had you finished your last remark?

14   **MS. MA:**  I'll just briefly wrap up by saying, Sonos's idea

15  that, you know, Google had access to this product for years

16  is -- YouTube Remote was launched in 2010.  There are no longer

17  active -- there are no longer engineers actively working on it.

18  And so the fact that we didn't -- we didn't amend our

19  invalidity contentions prior to the Court's claim construction

20  doesn't show lack of diligence.

21   **THE COURT:**  When are we going to even have the trial on

22  the '615 or these other patents?

23   **MS. MA:**  The '615 is out, but in May of 2023.

24   **THE COURT:**  So we're going to have a trial on all

25  remaining patents?

1    **MS. MA:**  Correct.

2    **THE COURT:**  Is that right?

3    **MS. MA:**  Yes.

4    **THE COURT:**  Not just the showdown, but all remaining

5    patents?

6    **MS. MA:**  Right.

7    **THE COURT:**  Okay.  All right.  What else?

8    **MR. KOLKER:**  Your Honor, just two very brief responses to

9    the questions that you posed to my friend on the other side, if

10    that's all right.

11    You asked:  How is it that Google lost on claim

12    construction and yet won on both infringement and invalidity?

13    I think that's a very fair question.

14    Sonos's answer is that, in substantial part, Google won on

15    claim construction.  We proposed a plain and ordinary meaning

16    construction, as broad as possible; Google proposed a lot of

17    limitations; and Your Honor adopted, in large part, Google's

18    proposal with a few modifications.  And I don't think that that

19    is -- I don't think that my description of what was adopted is

20    controversial.

21    And the last point I just want to raise in response is,

22    Google, in the '615 summary judgment practice, argued both that

23    their prior art invalidated our patent and that, during the

24    damages period, did not infringe our patent.

25    That's a tricky line to hold, and the way that Google

1    squared that was by saying prior to, I believe, 2013, our

2    technology, the accused products only used a local playback

3    queue; and from 2013 on, they moved to the cloud, which Google

4    argued was a remote playback queue or a cloud queue.  And this

5    is where in our brief, at pages 4, 5, and 19, we illustrate

6    multiple ways in which Google emphasized that you can't have

7    two of these at the same time with our technology.

8        And so the reason that we say that we are being prejudiced

9    by this is because Google's position now is that you can have

10   the same capabilities simultaneously through the Party Mode

11   functionality with the same prior art that the '615 summary

12   judgment already revolved around.

13       And that's all I wanted to say.

14       **THE COURT:**  All right.  I'm going to make a ruling now.

15   You ready?

16       **MS. MA:**  Yes.

17       **THE COURT:**  To me, this is arguments -- I see the

18   arguments both ways, and you both did a great job.

19       My claim construction didn't adopt either side's and was

20   somewhere in the middle.  And Sonos did not help the cause too

21   much because it said "plain and ordinary meaning," which is a

22   flexible way of punting and kicking the can down the road,

23   because you can always argue anything means plain and ordinary

24   meaning.  So that's not a helpful -- it's not too helpful.  So

25   it got punted into the briefing, and it was really Google who

1  came up with the limitation, and then I rejected your

2  limitation, Google's limitation.

3      And so then, within 28 days of that order, Google, even

4  though you won, won as to that particular claim, there are

5  other claims in suit that turn on the same phrase; and

6  downstream, we will have to deal with the extent to which those

7  claims are valid or infringed.  Now, so that's one point.

8      Another point is that you made the motion in a timely way,

9  I think.  I don't think you're untimely.  And part of the delay

10  here is my fault.

11      You noticed it for an earlier date; right?

12  **MS. MA:**  Correct.  Yeah.

13  **THE COURT:**  But because of trials that I had, I didn't

14  have time to deal with your motion; and so, therefore, I

15  changed the date.  And that's not really Google's fault.

16  That's my fault.

17      There's another point I wanted to make.

18      Oh.  This is not like you're trying to bring in new art.

19  It's the same art, complicated art, but a different feature of

20  the same prior art.  So that makes it less problematic.

21      The main thing that I see that's a problem is that Sonos

22  ought to have an opportunity to depose those same people on the

23  new -- whatever it was that you were referring to.

24      So I'm going to allow your new amendment.  I'm going to

25  allow you to make this amendment on the Google side.

1    And I'm going to allow Sonos to have the discovery that it

2   needs on these two engineers, and maybe there's some other

3   limited discovery that would be permitted.  And you should meet

4   and confer as to any further discovery that would be reasonably

5   necessary in light of this change in the invalidity

6   contentions.

7    If this means that you need more time on the opposition

8   expert report, I will be favorably inclined to that, but I ask

9   you also to try to meet and confer on a schedule that works.

10   But please don't say "the holidays."  You can say "Christmas

11   Day" and "New Year's Day," but don't say "the holidays,"

12   because you lawyers can do some work in the month of December

13   so that we don't get our schedule thrown off too much.

14    Please don't ask me to change your trial date.  I know

15   that's what Google secretly has in mind.  You want to kick

16   down the can -- you want to put pressure on that trial date.

17   I'm smiling as I say that because I -- but it's halfway true.

18   You're the defendant.  You're the one that would have to pay

19   money if you lose.  So I don't want to change the trial date.

20   So try to do your best to get this discovery done, I'm thinking

21   like in the next couple of weeks.

22    So if I was in Google's position, I would say, "Engineer X

23   is available at our office on December 23rd, and Engineer Y is

24   available on December 28th.  Come and depose them."

25    And if Sonos says, "Too bad.  That's too bad for you,"

```
 1   then, Sonos, they're going to make them available, even if it's
 2   over the holidays.  That's what you want.  You get that
 3   opportunity.  But you don't get to say, "Oh, no, let's change
 4   it to January 14th."  That would be too much of a change, in my
 5   view.  I think you can get the depositions done in December.
 6   What is today?  December 8th?  Plenty of days left.  Get it
 7   done in December so that the report doesn't get delayed too
 8   much more.
 9        All right.  That's my ruling.  I don't want to -- if you
10   have any question about the schedule going forward, I guess I
11   could try to answer it, but I'm reluctant to say much more than
12   I have.
13        Ms. Ma, on your side, what do you have to say?
14        MS. MA:  Google is certainly willing to work with Sonos on
15   these depositions.  I think we'd request that the scope be
16   limited to the amendments and not just, you know, a
17   wholesale --
18        THE COURT:  Anything reasonably related to the amendments
19   is fair game.
20        MS. MA:  Understood.
21        THE COURT:  If it's not reasonably related to the
22   amendments, it's not fair game.  And that's the best I can say.
23   But you should not be stingy on that.
24        All right.  Anything on your side?
25        MR. KOLKER:  No, Your Honor.  Understood, and thank you.
```

1    **THE COURT:**  All right.  Go forth.  Do good.  Thank you.

2    **MS. MA:**  Thank you.

3    **THE COURT:**  There'll be a minute order.  I'm not going to

4    get out a written order.  There'll be a minute order granting

5    the motion to amend.

6        All right.  How is my court reporter doing?  You okay?

7    Good?

8    **THE OFFICIAL REPORTER:**  Yes.

9    **THE COURT:**  All right.  Let's go to the next case.

10        (Proceedings adjourned at 9:17 a.m.)

11        ---o0o---

12

13        <u>**CERTIFICATE OF REPORTER**</u>

14        I certify that the foregoing is a correct transcript

15    from the record of proceedings in the above-entitled matter.

16

17    DATE:  Thursday, December 15, 2022

18

19

20        *Ana Dub*

21    _____

22    Ana Dub, CSR No. 7445, RDR, RMR, CRR, CCRR, CRG, CCG
                Official United States Reporter

23

24

25