1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SONOS, INC.,

          Plaintiff,

   v.

GOOGLE LLC,

          Defendant.

No.  C 20-06754 WHA
No.  C 21-07559 WHA

(Consolidated)

**FINAL CHARGE TO THE JURY**

1.

    Members of the jury, it is now my duty to instruct you on the law that applies to this case. Each of you will receive a copy of these instructions to consult during your deliberations. These instructions have several parts.  This first part will address guidelines for evaluating evidence, burden of proof, and related matters.

2.

    It is your duty to find the facts from all the evidence in the case.  To those facts you must apply the law as I give it to you.

You must follow the law as I give it to you whether you agree with it or not. You must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathies. This means that you must decide the case solely on the evidence before you. Perform these duties fairly. You will recall that you took an oath promising to do so at the beginning of the case.

In following my instructions, you must follow all of them and not single out some and ignore others; they are all equally important. You must not read into these instructions, or into anything the judge may have said or done, as suggesting what verdict you should return. That is a matter entirely up to you.

3.

I will now instruct you about what is evidence in this case and how you may use it. The evidence from which you are to decide what the facts are consists of:

(1)   The exhibits that have been received into evidence;

(2)   The sworn testimony of witnesses who appeared in court, on both direct and cross-examination, regardless of who called the witnesses;

(3)   The sworn testimony of witnesses in depositions, read into evidence or shown by video;

(4)   Any facts to which all lawyers have stipulated (*i.e.*, agreed upon) before you in court. You must treat any stipulated facts as having been conclusively proven.

4.

In reaching your verdict, you may consider only the evidence that I have just described. Certain things are not evidence, and you may not consider them in deciding what the facts are. I will list them for you:

(1)   Arguments and statements by trial counsel are not evidence. Trial counsel are not witnesses. What they said in opening statements, closing arguments, and elsewhere is intended to help you interpret the evidence, but your interpretation of the evidence controls.

(2)   A suggestion in a question to a witness by trial counsel or the judge is not evidence unless it is adopted by the answer of the witness. In other

United States District Court
Northern District of California

words, a question by itself is not evidence.  Consider it as evidence only in light of the answer.

(3)   An objection to a question to a witness by trial counsel is not evidence. Lawyers have a duty to their clients to consider objecting when they believe a question is improper.  The objection itself, however, is not evidence that a question *was* improper.  If an objection to a question is sustained (*i.e.*, not overruled), you must disregard the question and any answer.

(4)   Anything you may have seen or heard when court was not in session is not evidence.  Again, you are to decide the case solely on the evidence received at trial.

5.

Evidence may be direct or circumstantial.  Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw, heard, or did. Circumstantial evidence is proof of one or more facts from which you could find another fact.

By way of example, if you wake up in the morning and see that the sidewalk is wet, you may find from that fact that it rained during the night.  However, other evidence, such as a turned-on garden hose, may explain the presence of water on the sidewalk.  Therefore, before you decide that a fact has been proven by circumstantial evidence, you must consider all the evidence in the light of reason, experience, and common sense.  In determining what inferences to draw from evidence, you may consider, among other things, a party's failure to explain or deny that evidence.

6.

The law permits you to give equal weight to direct and circumstantial evidence, but it is for you to decide how much weight to give to any evidence.

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify.  Nor does it depend on which side called the witnesses or produced the evidence.  The testimony of one witness worthy of belief is sufficient to prove any fact.

7.

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe.  You may believe everything a witness says, part of it, or none of it.  In considering the testimony of any witness, you may take into account:

(1)   The opportunity and ability of the witness to see, hear, or know things testified to;

(2)   The memory of the witness;

(3)   The manner of the witness while testifying;

(4)   The interest of the witness in the outcome of the case, and any bias or prejudice;

(5)   Whether other evidence contradicted the testimony of the witness;

(6)   The reasonableness of the testimony of the witness in light of all evidence; and

(7)   Any other factors that bear on believability.

8.

You have heard testimony from witnesses who testified about their opinions and the reasons for those opinions.  These witnesses were Dr. Kevin Almeroth, Dr. Dan Schonfeld, Mr. James Malackowski, and Mr. Christopher Bakewell.  This opinion testimony is allowed because of the specialized knowledge, skill, experience, training, or education of these witnesses with respect to the underlying technology (for Dr. Almeroth and Dr. Schonfeld) and the assessment of damages (for Mr. Malackowski and Mr. Bakewell).

Such opinion testimony should be judged like any other testimony.  With two exceptions that I will explain later on, you may accept or reject opinion evidence and give it as much weight as you think it deserves, considering the witnesses' specialized knowledge, skill, experience, training, or education, the reasons provided for the opinion, and all the other evidence in the case.  The two exceptions involve opinion evidence regarding (1) If This Then That ("IFTTT") offered by Mr. Malackowski and Dr. Almeroth to support Sonos's damages

4

1  analysis, and (2) "idle mode" offered by Dr. Schonfeld to support Google's non-infringement

2  analysis.

3      Note that these witnesses' opinions are necessarily based on assumed sets of

4  circumstances.  In evaluating these opinions, you should take into account the extent to which

5  you agree or do not agree with the circumstances assumed by these witnesses.

6  9.

7      Any witness may be discredited or impeached by contradictory evidence or by evidence

8  that, at some other time, the witness has said or done something (or has failed to say or do

9  something) that is inconsistent with the present testimony.  If you believe that any witness has

10  been impeached and thus discredited, you may give the testimony of that witness the

11  credibility, if any, you think it deserves.

12      Discrepancies in a witness's testimony, or between a witness's testimony and that of

13  other witnesses, do not necessarily mean that such a witness should be discredited.  Inability to

14  recall and innocent misrecollection are common.  You should consider whether a discrepancy

15  pertains to an important matter or only to something trivial.

16      A witness willfully false in one part of that witness's testimony, however, is to be

17  distrusted in other parts.  You may reject the entire testimony of a witness who has willfully

18  testified falsely on a material point, unless, from all the evidence, you believe that the

19  probability of truth favors that witness's testimony in other particulars.

20  10.

21      In these instructions, I will refer to a party's "burden of proof."  Let me explain.  When a

22  party has the burden of proof on any issue, it means you must be persuaded by the evidence of

23  the truth of that party's allegation with respect to that issue.  But how persuaded must you be

24  for that party to meet its burden?  There are two standards of proof that you will apply to the

25  evidence in this case, depending on the issue you are deciding.

26      On most issues, you must decide whether certain facts have been proven by a

27  *preponderance of the evidence*.  A preponderance of the evidence means that the fact that is to

28  be proven is more likely true than not.  To put it differently, if you were to put the evidence

5

United States District Court
Northern District of California

favoring one party and the evidence favoring the other party on opposite sides of a scale, the party with the burden of proof on the issue would have to make the scale tip toward its side, even if just slightly. If that party fails to meet this burden, then that party loses on the issue.

On other issues, you must decide whether certain facts have been proven by *clear and convincing evidence*. This is a more demanding standard of proof. Clear and convincing evidence means that the fact to be proven is highly probable. A slight tip of the scale in favor of the party with the burden of proof on an issue would not be enough to support a finding of clear and convincing evidence. The party with the burden of proof on the issue must present evidence that leaves you with a firm belief or conviction that the fact has been proven. Again, if that party fails to meet this burden, then that party loses on the issue.

Both of these standards are different from what you may have heard about in criminal proceedings where a fact must be proven *beyond a reasonable doubt*. As you move from preponderance of the evidence (where the proof need only be sufficient to tip the scale in favor of the party proving the fact), to beyond a reasonable doubt (where the fact must be proven to a very high degree of certainty), you may think of clear and convincing evidence as being between those two standards.

11.

I will now instruct you on the law in this case. Before summarizing the contentions of the parties and what each side must prove to win on its contentions, however, I feel it is important to remind you why you are being asked to decide the facts in this matter.

A patent is an intellectual property right over a new invention granted by our federal government. It is a right to exclude others from exploiting the invention during the life of the patent, which typically lasts twenty years. Ordinarily, for twenty years, a patent owner has a limited monopoly and can exclude others from making, using, selling, offering to sell, and importing into the United States the invention claimed by a patent.

As the Supreme Court once explained it, the patent system is "a reward, an inducement, to bring forth new knowledge." One way the patent system requires this new knowledge is through its disclosure requirement. In exchange for a limited monopoly on the invention, a

United States District Court
Northern District of California

patent owner must publicly disclose technical details about how to make and use the invention. The patent document itself must include the disclosure, usually called a specification, and it is published as part of the patent. This ensures that others can learn from the disclosure and contributes to the advancement of knowledge.

Importantly, the disclosure requirement also helps prevent inventors from receiving rights broader than their contributions. No patent owner should receive a right to exclude others from exploiting something that the patent owner did not, in fact, disclose. A patent, therefore, must describe the invention and how it differs from what was already known in the art at the relevant time. Patents are presumed valid, but they may be invalidated by a jury if the claimed invention was not, in fact, new or was obvious in view of what came before, which is referred to as the "prior art."

12.

I will now summarize the contentions of the parties and what each side must prove to win on its contentions.

In brief, Sonos seeks money damages from Google for infringement of the '885 and '966 patents. Specifically, Sonos seeks money damages from Google for infringement of claim 1 of the '885 patent and claims 1, 2, 4, 6, and 8 of the '966 patent. As you heard throughout the case, patent claims are numbered paragraphs at the end of the patent that describe the limits of the patent's protection.

Separately, and as a defense to infringement, Google seeks to invalidate the asserted claims of the '885 and '966 patents. If the asserted claims are invalid, Google does not have to pay any money damages to Sonos, even if the asserted claims are otherwise infringed.

13.

With respect to the '885 patent, Sonos accuses Google media players of infringement of claim 1. These media players are Google's Chromecast, Chromecast Audio, Chromecast Ultra, Chromecast with Google TV, Home, Home Mini, Home Max, Nest Audio, Nest Mini, Nest Hub (a/k/a Home Hub), Nest Hub Max, and Nest Wifi Point. We will refer to these as the "'885 accused products."

You will recall that I have already determined that the original versions of the '885 accused products infringed claim 1 of the '885 patent. I have also already determined that Google's infringement of the '885 patent was not willful, recognizing that this patent issued after this lawsuit was filed and that Google did not have sufficient notice of infringement.

But I have not determined whether the *redesigned* versions of the '885 accused products infringe claim 1. Sonos contends that they do, and Google disputes this. You must decide whether or not Google's redesigned products infringe claim 1. And, if that claim is valid, you will need to decide the amount of money damages to compensate Sonos for infringement of the '885 patent.

14.

With respect to the '966 patent, Sonos accuses "computing devices," such as phones, tablets, and laptops, that have or had the Google Home app installed. We will refer to these as the "'966 accused products."

I have not made any determination on whether the original and redesigned versions of the '966 accused products infringe any of the asserted claims of the '966 patent. The same goes for the determination of whether any infringement of the '966 patent was willful. You must decide whether or not the asserted claims of the '966 patent have been infringed. And, if you decide that any of the asserted claims are valid and infringed, you will need to decide any money damages to be awarded to Sonos to compensate it for infringement of the '966 patent. You will also need to make a finding as to whether any infringement of the '966 patent was willful. If you decide that any infringement was willful, that decision should not affect any damages award you give. I will take any willfulness finding by you into account later.

15.

You will need to understand these patent claims. You must interpret the language of the claims using its plain and ordinary meaning, except where I give you a specific definition.

I have interpreted the meaning of some of the language in the patent claims involved in this case. You must accept these interpretations as correct. My interpretation of the language should not be taken as an indication that I have a view regarding the issues of infringement and

invalidity.  Once more, factual determinations bearing on infringement and invalidity are yours to make.

| Patent Claim | Claim Term | Construction |
|---|---|---|
| '885 patent claim 1 | "indication that the first zone player has been added to a . . . zone scene" | "indication from the network device that the first zone player has been added to a zone scene" |
| '885 patent claim 1; '966 patent claims 1, 2, 4, 6, and 8 | "zone scene" | "a previously-saved grouping of zone players according to a common theme" |

You may recognize these constructions.  Early in the trial, the parties requested that I read to you a stipulated version of "what I had previously determined," which I did.  The above constructions, however, are more precise, and they are the ones that control.

Previously, the parties requested I tell you that "for the '885 patent, I have determined that the phrase 'indication that the first zone player has been added to a zone scene' means 'indication from the network device that the zone player has been added *by the user* to a zone scene.'"  I have now omitted the user language from the construction above.

16.

I will now instruct you on the law regarding invalidity of patents.  There can be no infringement of invalid patent claims, so it is necessary to decide if the asserted claims of the '885 and '966 patents are invalid.

Patents are issued by the Patent and Trademark Office and are presumed to be valid.  The burden of proof to prove invalidity of a claim is on Google, and that burden of proof is by clear and convincing evidence.  I already explained to you what I mean by clear and convincing evidence.  To prove invalidity of any asserted claim, Google must persuade you by clear and

United States District Court
Northern District of California

1   convincing evidence that the asserted claim is invalid.  A patent claim is invalid if the claimed

2   invention would have been obvious to a person having ordinary skill in the art at the time of

3   the claimed invention, which I will further explain in detail.  The claims have already been

4   explained at length in this trial, so I will not go into them here.

17.

6   With one exception, you must consider each of the asserted claims of the patent

7   individually.  The one exception to considering claims individually concerns dependent claims.

8   A dependent claim includes all of the requirements of a particular independent claim, plus

9   additional requirements of its own.  If you find that an independent claim is invalid, its

10   dependent claims, due to the additional limitations, are not necessarily invalid.  Conversely, if

11   you find that an independent claim is not infringed, you must also find that its dependent

12   claims are not infringed.  And, if you find that an independent claim has been infringed, you

13   must still separately decide whether the additional requirements of its dependent claims have

14   also been infringed.

15   Sonos asserts independent claim 1 of the '885 patent as to the redesigned versions of the

16   '885 accused products.  Sonos asserts claims 1, 2, 4, 6, and 8 of the '966 patent.  Claim 4

17   depends from claim 3.  Claims 2, 3, 6, and 8 depend from claim 1.

18.

19   The question of invalidity of a patent claim is determined from the perspective of a

20   person having ordinary skill in the art in the field of invention in the relevant timeframe.  Here,

21   the parties have stipulated to the level of ordinary skill in the art and the relevant timeframe.

22   For the '885 and '966 patents, that timeframe is December 2005.  And, the level of ordinary

23   skill in the art is a person having (a) a bachelor's degree in computer science, computer

24   engineering, electrical engineering, or an equivalent thereof; and (b) 2–4 years of professional

25   experience in the field of networking and networked-based systems or multimedia playback

26   systems, such as consumer audio systems, or an equivalent level of skill, knowledge, or

27   experience.

28

United States District Court
Northern District of California

19.

In deciding what would have been known by those of ordinary skill in the art, you may take into account the extent to which a patent specification explained a point in detail, or did not explain a point in detail. On the one hand, a detailed explanation may indicate that the inventor expected those of ordinary skill in the art might need the details to practice that point. On the other hand, cursory detail may indicate that the inventor expected those of ordinary skill in the art would already know enough to practice that point with only minimal disclosure.

You will recall that the specification, which comes before the patent claims, is supposed to include a description of the invention and an explanation of how to practice it. An important aspect of our patent system is to confer a right of exclusive ownership of an invention for twenty years in exchange for an explanation to the world of how to practice it. You may consider the extent to which the detail provided in the specification explains how to implement certain aspects of the invention as indicative of the view of the inventor as to how much help those of ordinary skill in the art would have needed that detail to practice the invention.

If one of the claimed inventive features of a claim over the prior art received very little explanation in the patent specification, then you may infer that the inventor expected those of ordinary skill in the art already understood how to implement that aspect of the claimed invention. Conversely, if considerable detail was set forth as to that claimed inventive aspect, then you may infer that the inventor expected those of ordinary skill in the art would need the extra detail to practice the claimed invention. It is up to you to decide how much weight to give any evidence, including this inference.

20.

In order for someone to be entitled to a patent, their alleged invention must actually be "new" and, even if it is new, it must not be obvious in light of the prior art. Prior art is considered in determining whether a claim of a patent would have been obvious to a person having ordinary skill in the art in the relevant timeframe, in this case, December 2005. Prior art may include items that were publicly known, or that have been used or offered for sale, or references, such as publications or patents, that disclose the claimed invention or elements of

United States District Court
Northern District of California

1    the claimed invention.  The prior art must predate the stipulated conception date, the date that

2    Sonos allegedly conceived of the invention, which is December 21, 2005.

3        For example, the Sonos 2005 system is prior art because it was shipped to customers as

4    early as January 2005.  Similarly, the Sonos forum posts that expressly predate December 21,

5    2005, are prior art (*e.g.*, those of "theboyg" and "JeffT").  Meanwhile, the Creston 2008 user

6    manual is not prior art because it was published after December 21, 2005.

21.

8        Google contends that the asserted claims of the '885 and '966 patents are invalid because

9    their claimed inventions would have been obvious in December 2005 to those of ordinary skill

10   in the art.  A patent claim is invalid if the claimed invention would have been obvious to a

11   person having ordinary skill in the art at the time the claimed invention was made.  In other

12   words, even if the claimed invention was new in the sense that it had never been described

13   before in the prior art, it might nevertheless be true (or not true) that the claimed invention

14   would have been obvious to a person having ordinary skill in the art with knowledge of all the

15   prior art.

22.

17       The ultimate conclusion of whether a claim is obvious must be based upon your

18   determination of several factual issues.  (Lawyers often refer to these as the *Graham* factors.)

19       *First*, you ordinarily must decide the level of ordinary skill in the art that someone would

20   have had at the time the claimed invention was invented.  Here, the lawyers have done that for

21   you.  I already instructed you on this.

22       *Second*, you must decide the scope and content of the prior art.  In order to be considered

23   as prior art to the asserted patents, the items must be reasonably related to the claimed

24   invention of that patent.  An item is reasonably related if it is in the same field as the claimed

25   invention or is from another field to which a person of ordinary skill in the art would look to

26   solve a known problem.

27       *Third*, you must decide what difference, if any, existed between the claimed invention

28   and the prior art.

12

*Finally*, you should consider any of the following factors that you find have been shown by the evidence:

    (1) Commercial success of a product due to the merits of the claimed invention;

    (2) A long felt need for the solution provided by the claimed invention;

    (3) Unsuccessful attempts by others to find the solution provided by the claimed invention;

    (4) Copying of the claimed invention by others;

    (5) Unexpected and superior results from the claimed invention;

    (6) Acceptance by others of the claimed invention as shown by praise from others in the field or from the licensing of the claimed invention;

    (7)  Other evidence tending to show nonobviousness;

    (8) Independent invention of the claimed invention by others before or at about the same time as the named inventor thought of it; and

    (9) Other evidence tending to show obviousness.

23.

A patent claim composed of several elements is not proved obvious merely by demonstrating that each of its elements was independently known in the prior art.  In evaluating whether such a claim would have been obvious, you must consider whether Google has proven, by clear and convincing evidence, that a person having ordinary skill in the art, as of December 2005, with knowledge of the prior art, would have been *motivated* to combine their teachings to achieve the invention set forth in each asserted claim.  If you determine that Google has made this showing, then you must further determine whether Google has proven, by clear and convincing evidence, that a person having ordinary skill in the art, as of December 2005, with knowledge of the prior art, would have had a *reasonable expectation of success* in combining those teachings to achieve the invention set forth in each asserted claim.

United States District Court
Northern District of California

24.

In making these factual determinations, you may also consider:

(1) Whether an inventor would look to the prior art to help solve the particular problem at hand;

(2) Whether the change was merely the predictable result of using prior art elements according to their known functions, or whether it was the result of true inventiveness;

(3) Whether there is some teaching or suggestion in the prior art to make the modification or combination of elements claimed in the patent;

(4) Whether the innovation applied a known technique that had been used to improve a similar device or method in a similar way; and

(5) Whether the claimed invention was one of a relatively small number of possible approaches to the problem with a reasonable expectation of success by those of ordinary skill in the art.

25.

You must be careful not to determine obviousness using the benefit of hindsight; many true inventions might seem obvious after the fact. You should put yourself in the position of a person of ordinary skill in the art at the time the claimed invention was invented, and you should not consider what is known today or what is learned from the teaching of the patent.

26.

I will now instruct you on the law regarding infringement of patents and the rules you must follow in deciding whether Sonos has proven that Google has infringed. More specifically, I will now instruct you on the rules you must follow in deciding whether the redesigned versions of the '885 accused products infringe claim 1 of the '885 patent, and whether the original and redesigned versions of the '966 accused products infringe claims 1, 2 4, 6, and 8 of the '966 patent.

United States District Court
Northern District of California

United States District Court
Northern District of California

27.

The burden of proof on Sonos for proving all infringement is a preponderance of the evidence. I already explained to you what I mean by preponderance of the evidence. As applied here, this means that in order to prove infringement of any asserted claim, Sonos must persuade you that it is more likely than not that Google has infringed the asserted claim. Infringement (or not) is a question of fact for you to decide.

28.

Before explaining ways in which a patent may be infringed and how to determine infringement, I will instruct you on two relevant rulings that I have made.

*First*, with respect to the '966 accused products, I have determined that the mere installation of the Google Home app on a computing device does not itself infringe. The claim language does not recite any functions to be performed by the accused products unrelated to those computing devices "serving as a controller." Significantly, a computing device is not capable of serving as a controller unless it is networked with at least three zone players that may be added to overlapping zone scenes. Until, if ever, a computing device with the Google Home app installed is networked with at least three zone players that may be added to overlapping zone scenes using the Google Home app, it cannot fall within the claims of the '966 patent. And Google is not capable of infringing unless a computing device is networked with at least three zone players that may be added to overlapping scenes using the Google Home app. I instruct you that only computing devices networked with at least three zone players that may be added to overlapping zone scenes using the Google Home app qualify for consideration. This would be a subset of the computing devices that Sonos has accused of infringing. But that subset may (or may not) infringe. That determination will be up to you and must be made based on your finding of whether or not all other claim requirements, or "limitations," are met as to that subset.

*Second*, with respect to the redesigned '885 and '966 products, as you may recall, I struck Dr. Schonfeld's testimony concerning "idle mode" from the evidence. You must disregard that testimony. Idle mode was used to refer to a mode that is neither "standalone" nor "group" with

United States District Court
Northern District of California

respect to non-infringement of the new version of the accused products. As a witness providing opinion testimony, Dr. Schonfeld was limited to discussing what was mentioned in his expert reports, and none of Dr. Schonfeld's expert reports discussed idle mode, or any third mode, for that matter. As a witness providing testimony as to facts only, however, Mr. Ken MacKay was allowed to discuss "idle mode." The weight you ascribe to his testimony is up to you.

29.

I will now instruct you on the relevant ways in which a patent may be infringed and how to determine infringement. A patent can be infringed directly and indirectly. I will first instruct you on *direct infringement*.

You will recall a patent's claims define what is covered by the patent. Sonos claims that Google directly infringed the '885 and '966 patents. To decide whether an accused product directly infringes an asserted claim in this case, you must compare an accused product with an asserted claim and determine whether every requirement of the asserted claim is included in the accused product. If so, the accused product directly infringes that claim. If, however, the accused product is missing even one requirement of the asserted claim, the accused product does not directly infringe that claim. Whether Google knew its products infringed, or even knew of the patents, does not matter in determining direct infringement.

30.

If an asserted claim uses the term "comprising," that asserted claim is to be understood as an "open claim." An open claim is infringed when every requirement in that claim is present in the accused product. The fact that an accused product also includes other parts, or performs other functions, will not avoid infringement, so long as the accused product satisfies every requirement in the asserted claim.

31.

An accused product directly infringes an asserted claim if it is reasonably capable of satisfying the claim elements, even though it may also be capable of non-infringing modes of operation. If a claim requires only that the system or product has the capability to perform a

16

function, a product with that capability directly infringes even though that capability is not used.

As stated above, I have found that Google cannot infringe the '966 patent with respect to computing devices with the Google Home app installed that are not yet networked with at least three zone players that may be added to overlapping zone scenes using the Google Home app. For those that are so networked, it is up to you to decide whether Sonos has proven direct infringement.

32.

You have heard evidence about both Sonos's commercial products and Google's accused products. However, in deciding the issue of direct infringement — and all other infringement, for that matter — you may not compare Google's accused products to Sonos's commercial products. Rather, you must compare Google's accused products to the asserted claims of the '885 and '966 patents.

33.

I will now instruct you on *indirect infringement*. Sonos accuses Google of indirectly infringing the '966 patent. If you find that Google infringed the '966 patent directly or indirectly, you may indicate on the verdict form that Google has infringed that patent.

There are two forms of indirect patent infringement:  induced and contributory infringement.  I will take them up in turn.

34.

Sonos asserts that Google has actively induced others (mainly consumers) to infringe the '966 patent by inducing them to install the Google Home app on their computing devices.  In order for Google to have induced infringement, Google must have induced another to directly infringe an asserted claim of the '966 patent.

If there is no direct infringement by anyone, there can be no induced infringement.  As with direct infringement, you must determine induced infringement on a claim-by-claim basis.

United States District Court
Northern District of California

In order to be liable for inducing infringement, Google must:

(1) Have intentionally taken action that actually induced infringement;

(2) Have been aware of the '966 patent; and

(3) Have known that the acts it was causing would infringe the patent.

Google may be considered to have known that the acts it was causing would infringe the asserted claims if it subjectively believed there was a high probability that the accused product was directly infringing and nevertheless took steps to avoid learning that fact, thereby blinding itself.

35.

Sonos also argues that Google is guilty of contributory infringement. Contributory infringement may arise when someone supplies something that is used to infringe one or more of the patent claims. As with direct infringement, you must determine contributory infringement on a claim-by-claim basis.

In order for there to be contributory infringement by Google, someone other than Google must directly infringe a claim of the '966 patent; if there is no direct infringement by anyone, there can be no contributory infringement.

If you find consumers or someone else have directly infringed the '966 patent, then contributory infringement exists if:

(1) Google supplied an important component of the infringing part of the product;

(2) That component is not a common component suitable for non-infringing use; and

(3) Google supplied the component with the knowledge of the '966 patent and knowledge that the component was especially made or adapted for use in an infringing manner.

A "common component suitable for non-infringing use" is a component that has uses other than as a component of the patented product, and those other uses are not occasional, farfetched, impractical, experimental, or hypothetical.

18

United States District Court
Northern District of California

United States District Court
Northern District of California

1    Google may be considered to have known that the acts it was causing would infringe the

2    asserted claims if it subjectively believed there was a high probability that the accused product

3    was directly infringing and nevertheless took steps to avoid learning that fact, thereby blinding

4    itself.

5                                                 36.

6    I will now instruct you on *willful infringement*. In this case, Sonos argues that Google

7    willfully infringed the '966 patent.

8    To prove willful infringement, Sonos must first persuade you that Google infringed the

9    '966 patent. The requirements for proving such infringement were already discussed. If you

10   decide that Google has infringed any of the asserted claims of the '966 patent, you must go on

11   and address the additional issue of whether the infringement was willful. You will address this

12   question separately on the verdict form.

13                                                37.

14   Willfulness requires you to determine whether Sonos has proven that it is more likely

15   than not that Google knew of the '966 patent and that the infringement by Google was

16   intentional. You must base your decision on Google's knowledge and actions at the time of

17   infringement.

18   You may not determine that the infringement was willful just because Google was aware

19   of the '966 patent and infringed it. Instead, you must also find that Google deliberately

20   infringed the '966 patent or recklessly disregarded Sonos's patent rights.

21   Again, if you decide that any infringement was willful, that decision should not affect any

22   damages award you give. I will take willfulness into account later.

23                                                38.

24   To determine whether Google acted willfully, consider all facts and assess Google's

25   knowledge and intent at the time of the challenged conduct. Knowledge of a fact may be

26   inferred where a party intentionally blinds itself to that fact.

27

28

Facts that may be considered include but are not limited to:

(1) Whether or not Google acted consistently with the standards of behavior for its industry;

(2) Whether or not Google reasonably believed its products did not infringe or that the patent was invalid at the time of infringement;

(3) Whether or not Google made a good-faith effort to avoid infringing the asserted patents; and

(4) Whether or not Google tried to cover up its infringement.

39.

You have heard evidence that Google filed a declaratory relief lawsuit seeking a judgment stating that it did not infringe the '966 patent, among others, one day before Sonos filed its infringement lawsuit alleging that Google infringed the '966 patent, among others. Google filed its 12-page complaint in the Northern District of California several hours after it received an email from Sonos's counsel informing Google that Sonos would be filing an 87-page complaint in the Western District of Texas. Sonos's attached draft complaint expressly discussed the '966 patent and provided claim charts making a case for Google's infringement.

Under the Federal Rules of Civil Procedure, Google's presentation to a court of the complaint for declaratory relief contained a certification by Google's lawyers that, to the best of their knowledge, information, and belief, found after an inquiry reasonable under the circumstances, the statements made in their complaint for declaratory relief were warranted under the law and the factual contentions had evidentiary support.

In light of this certification, you may infer that the lawyers and party who presented the complaint had conducted an inquiry reasonable under the circumstances into the '966 patent and the extent to which it was or was not infringed on behalf of Google. You may also infer that such an inquiry would have provided knowledge to Google of the '966 patent prior to the commencement of this litigation. It is up to you to decide how much weight to give any evidence, including this inference.

40.

I will now instruct you on the measure of damages.  By instructing you on the measure of damages, I am not suggesting which party should win on any issue.

Since I have already found that the original versions of the accused products infringe claim 1 of the '885 patent, if that claim is found to be valid, you must determine the amount of money damages to be awarded to Sonos to compensate it for infringement of the '885 patent. Similarly, if you find that any asserted claim of the '966 patent is infringed and valid, you must determine the amount of money damages to be awarded to Sonos to compensate it for infringement of the '966 patent.  If the asserted claims of both patents are ultimately found to be invalid, however, Google will not have to pay money damages.  Once more, this is because there can be no infringement of invalid patent claims.

41.

The amount of damages must be adequate to compensate Sonos for infringement.  A damages award should put the patent holder in approximately the financial position it would have been in had the infringement not occurred, but in no event may the damages award be less than a reasonable royalty.  You should keep in mind that the damages you award are meant to compensate a patent holder and not to punish an infringer.

Sonos and Google agree that any damages for infringement of the '885 patent began on November 24, 2020, and any damages for infringement of the '966 patent began on November 5, 2019.

42.

Sonos has the burden of proof to persuade you of the amount of its damages by a preponderance of the evidence.  You should award only those damages that Sonos more likely than not suffered.  While Sonos is not required to prove its damages with mathematical precision, it must prove them with reasonable certainty.  Sonos is not entitled to damages that are remote or speculative.

As I mentioned during trial, Google challenged the testimony of the witness who Sonos called to testify regarding the IFTTT app and associated damages calculation, Mr.

Malackowski, as well as the associated IFTTT testimony of Dr. Almeroth.  One of my functions as a judge presiding over a trial is to ensure that the evidence you consider meets the minimum requirements for admissibility.  Upon further review, I have found that this testimony and theory of damages does not meet those minimum requirements.  As such, I have made a ruling striking this IFTTT theory from the record.  What this means is that you shall not factor in any information regarding IFTTT into your calculation of damages.  And, you cannot factor in the damages figures he calculated:  $12,246,294 with respect to infringement of the '885 patent, and $77,546,923 with respect to infringement of the '966 patent.  You can, however, use other evidence on the record to calculate a damages award.  There are license agreements admitted into evidence that you may find sufficiently comparable and that you may use, along with other evidence of economic value, if applicable.

43.

To calculate damages, you calculate a royalty.  A royalty is a payment made to a patent holder in exchange for a license, which confers the right to practice the claims found valid and infringed.  The proper approach to calculating a royalty is to consider a hypothetical negotiation between Sonos and Google at the time infringement began in which both sides acted reasonably to negotiate a license for a nonexclusive right to practice these claims.

In considering the nature of this hypothetical negotiation, you must assume that both parties would have acted reasonably and would have entered into a license agreement.  You must also assume that both parties believed the claims were valid and infringed.  Your role is to determine what the result of that negotiation would have been.  The test for damages is what royalty would have resulted from the hypothetical negotiation and not simply what either party would have preferred.

It is up to you, based on the evidence, to decide what type of royalty is appropriate in this case.  A royalty can be calculated in several different ways, and it is for you to determine which way is the most appropriate based on the evidence you have heard.  You should consider all the facts known and available to the parties at the time the infringement began.  I will now instruct you on various ways to calculate a royalty.

22

44.

In determining the amount of a reasonable royalty, you may consider evidence on any of the following factors, referred to by the parties as the *Georgia-Pacific* factors, in addition to other evidence presented by the parties on the economic value of the patent (with the exception that you must ignore the evidence involving IFTTT). It will be up to you to determine which factors may or may not be relevant to this case. These factors are:

- The royalties received by Sonos for the licensing of the patent in suit, proving or tending to prove an established royalty.

- The rates paid by Google for the use of other patents comparable to the patent in suit.

- The nature and scope of the license, as exclusive or non-exclusive; or as restricted or non-restricted in terms of territory or with respect to whom the manufactured product may be sold.

- Sonos's established policy and marketing program to maintain its patent monopoly by not licensing others to use the alleged invention or by granting licenses under special conditions designed to preserve that monopoly.

- The commercial relationship between Sonos and Google, such as whether they are competitors in the same territory in the same line of business; or whether they are inventor and promoter.

- The effect of selling the patented specialty in promoting sales of other products of Google; the existing value of the alleged invention to Sonos as a generator of sales of its non-patented items; and the extent of such derivative or convoyed sales.

- The duration of the patent and the term of the license.

- The established profitability of the product made under the patent; its commercial success; and its current popularity.

- The utility and advantages of the patented property over the old modes or devices, if any, that had been used for working out similar results.

- The nature of the alleged patented invention; the character of the commercial embodiment of it as owned and produced by Sonos; and the benefits to those who have used the alleged invention.

- The extent to which Google has made use of the alleged invention; and any evidence probative of the value of that use.

- The portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the alleged invention or analogous inventions.

United States District Court
Northern District of California

- The portion of the realizable profit that should be credited to the alleged invention as distinguished from non-patented elements, the manufacturing process, business risks, or significant features or improvements added by Google.

- The opinion testimony of qualified experts.

- The amount that a licensor (such as Sonos) and a licensee (such as Google) would have agreed upon (at the time the infringement began) if both had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee— who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the alleged patented invention— would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a prudent patentee who was willing to grant a license.

No one factor is dispositive, and you can and should consider the evidence that has been presented to you in this case on each of these factors. You may also consider any other factors which in your mind would have increased or decreased the royalty Google would have been willing to pay and Sonos would have been willing to accept, acting as normally prudent businesspeople.

45.

Comparable agreements are another factor that may inform your decision as to the proper amount and form of the royalty award, similar to the way in which the value of a house is determined relative to comparable houses sold in the same neighborhood.

Whether an agreement is comparable to the license under the hypothetical license scenario depends on many factors, such as whether they involve comparable technologies, comparable economic circumstances, comparable structure, and comparable scope. If there are differences between an agreement and the hypothetical license, you must take those into account when you make your reasonable royalty determination.

46.

The ultimate combination of royalty base and royalty rate must reflect the value attributable to the infringing features of the product, and no more. When the accused infringing products have both patented and unpatented features, measuring this value requires you to identify and award only the value of the patented features.

United States District Court
Northern District of California

1    In this case, the '885 and '966 patents cover only one component of the product that

2    Google uses or sells.  It is Sonos's burden to separate the value of the patented contribution

3    from the value of other parts of the product that are not attributable to the alleged invention.

4        If you find that Google failed to keep proper records, any doubts that you may have on

5    the issue of damages due to any such failure to keep proper records should be decided in favor

6    of Sonos.  I am not suggesting that Google failed to keep proper records.  That would be a

7    question for you to decide.

8                                        47.

9        One way to calculate a royalty is to determine what is called a "per-unit royalty."  To

10   calculate a per-unit royalty, you must first determine the "base," that is, the product on which

11   Google is to pay.  You then need to multiply the number of units by the "rate" that you find

12   would have resulted from the hypothetical negotiation.

13                                       48.

14       Another way to calculate a royalty is to determine a one-time lump sum payment that

15   Google would have paid at the time of the hypothetical negotiation for a license covering all

16   sales of the licensed product, both past and future.  This differs from payment of a per-unit

17   royalty because, with a per-unit royalty, Google pays based on the number of actual licensed

18   products it sells.  When a one-time lump sum is paid, Google pays a single price for a license

19   covering both past and future infringing sales.

20                                       49.

21       I will now turn to the third and final part of the instructions.  When you begin your

22   deliberations, you should elect one member of the jury as your foreperson.  That person will

23   preside over the deliberations and speak for you here in court.

24       You will then discuss the case with your fellow jurors to reach agreement if you can do

25   so.  Your verdict as to the charge must be unanimous.  Each of you must decide the case for

26   yourself, but you should do so only after you have considered all of the evidence, discussed it

27   fully with your fellow jurors, and listened to the views of your fellow jurors.

28

50.

Do not be afraid to change your opinion if the discussion persuades you that you should. Do not come to a decision simply because other jurors think it is right. It is important that you attempt to reach a unanimous verdict but, of course, only if each of you can do so after having made your own conscientious decision. Do not change an honest belief about the weight and effect of the evidence simply to reach a verdict. I will give you a verdict form to guide your deliberations.

51.

As I noted before the trial began, when you retire to your assigned room to deliberate, you will have with you the following things:

(1) A work copy of these jury instructions for each of you;

(2) A work copy of the verdict form for each of you;

(3) The official verdict form; and

(4) All of the exhibits received into evidence.

52.

Some of you have taken notes during the trial. Whether or not you took notes, you should rely on your own memory of what was said. Notes are only to assist your memory. You should not be overly influenced by notes. When you go into the assigned room, the Clerk will bring to you the trial exhibits received into evidence to be available for your deliberation.

53.

At no time may you conduct your own research about: the definition of the claims alleged, the meaning of any term, the law governing the claims alleged, the process of jury deliberations, or any other topic. You may not consult any law books, internet sources, non-jurors, or any other resources for information on how to reach a verdict or understand the law. If you have a question, you must direct it, in writing, to me.

54.

A Court Security Officer will be outside the jury room door during your deliberations. If it becomes necessary during your deliberations to communicate with me, you may send a note through the court security officer, signed by your foreperson or by one or more members of the jury. No member of the jury should ever attempt to communicate with me except by a signed writing via the court security officer, and I will respond to the jury concerning the case only in writing or here in open court.

If you send out a question, I will consult with the parties before answering it, which may take some time. You may continue your deliberations while waiting for the answer to any question. Remember that you are not to tell anyone — including me — how the jury stands, numerically or otherwise, until after you have reached a unanimous verdict or have been discharged. Do not disclose any vote count in any note to me.

55.

If you do not reach a verdict by the end of the day, please place your work materials in the brown envelope provided and cover up any easels with your work notes so that if my staff needs to go into the room, they will not even inadvertently see any of your work in progress.

You have been required to be here each day when trial was in session from 7:45 A.M. to 1:00 P.M. Now that you are going to begin your deliberations, however, you are free to modify this schedule within reason. For example, if you wish to continue deliberating in the afternoons after a reasonable lunch break, that is fine. I do, however, recommend that you continue to start your deliberations by 7:45 A.M. If you do not reach a verdict by the end of today, then you will resume your deliberations on the next court day.

It is very important that you let us know via the court security officer in advance what hours you will be deliberating so that the lawyers and parties may be present in the courthouse at any time you are deliberating.

56.

You may only deliberate when all of you are together. This means, for instance, that in the mornings before everyone has arrived or when someone steps out of the room to go to the

27

restroom, you may not discuss the case.  As well, the admonition that you are not to speak to anyone outside the room about this case still applies during your deliberations.

57.

After all of you have reached a unanimous agreement on a verdict, your foreperson will fill in, date, and sign the verdict form and advise me through the court security officer that you have reached a verdict.  The foreperson should hold onto the filled-in verdict form and bring it into the courtroom when the jury returns the verdict.

Thank you for your careful attention.  You have done yeoman's work in this case, which is now in your hands.  You may now go to the assigned jury room and begin your deliberations.

**IT IS SO ORDERED.**

Dated:  May 19, 2023.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE